17 CV 3014 (VEC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIAH LOPEZ,

Plaintiff,

-against-

NEW YORK CITY and PROJECT RENEWAL, Inc.,

Defendants.

**NEW YORK CITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12 (B)(1) AND 12(B)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for New York City*
*100 Church Street – Room 2-110*
*New York, NY  10007*

*Of Counsel:  Thomas B. Roberts*
*Tel:  (212) 356-0872*
*Matter #: 2017-018545*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF FACTS .................................................................................................. 2

LITIGATION BEFORE JUSTICE JAFFE ........................................................................ 4

THE EMERGENCY MOTION IN FEDERAL COURT ................................................... 9

ARGUMENT

       POINT I

              LEGAL STANDARD ........................................................................... 11

       POINT II

              PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA* ................................................................................ 12

       POINT III

              PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL .................................................. 15

CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                     <u>**Pages**</u>

<u>Allen v. McCurry</u>,
    449 U.S. 90 (1980)............................................................................................12

<u>Arnold v. Beth Abraham Health Servs.</u>,
    2009 U.S. Dist. LEXIS 121382 (S.D.N.Y. 2009),
    *aff'd sub nom. on other grounds*, <u>Arnold v. 1199 SEIU</u>
    420 Fed. Appx. 48 (2d Cir. 2011)....................................................................14

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009)....................................................................................11, 12

<u>Bell Atl. Corp. v. Twombly</u>,
    550 U.S. 544 (2007)............................................................................................11

<u>Bryant v. Wright</u>,
    451 Fed. Appx. 12 (2d Cir. 2011)....................................................................12

<u>Burka v. New York City Transit Auth.</u>,
    32 F.3d 654 (2d Cir. 1994)................................................................................14

<u>Collard v. Inc.Village of Flower Hill</u>,
    759 F.2d 205 (2d Cir. 1985)..............................................................................13

<u>Conason v. Megan Holding, LLC</u>,
    25 N.Y.3d 1, 6 N.Y.S.3d 206 (2015) ................................................................15

<u>Green v. McLaughlin</u>,
    480 Fed. Appx. 44 (2d Cir. 2012)....................................................................12

<u>Harris v. N.Y. State Dep't of Health</u>,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002)..............................................................14

<u>Kosakow v. New Rochelle Radiology Assoc., P.C.</u>,
    274 F.3d 706 (2d Cir. 2001)..............................................................................15

<u>Leo v. New York City Dep't of Educ.</u>,
    13 CV 2271, 2014 U.S. Dist. LEXIS 161480 (E.D.N.Y. Nov. 17, 2014) ...............15

<u>Lopez v. New York City Department of Homeless Services & Project Renewal</u>,
    Sup. Ct. N.Y., County of N.Y., 100632/2017........................................2, 3, 4, 6, 8, 9

<u>Lopez v. New York City Department of Homeless Services</u>,
    Sup. Ct. N.Y., County of N.Y., 100871/2017................................................10, 11

**Cases** **Pages**

Loren v. N.Y. City Dep't of Educ.,
  13 CV 7597 (VEC), 2015 U.S. Dist. LEXIS 82767 (S.D.N.Y. June 25, 2015) ......................13

Migra v. Warren City School Dist. Bd. of Education,
  465 U.S. 75 (1984)................................................................................................................12

Monahan v. N.Y.C. Dep't of Corr.,
  214 F.3d 275 (2d Cir. 2000)..................................................................................................12

Moran v. New York Dep't of Health,
  1997 U.S. App. LEXIS 7173 (2d Cir. 1997) ........................................................................14

Nash v. Bd. of Educ. of N.Y.,
  2016 U.S. Dist. LEXIS 135793 (S.D.N.Y. Sep. 22, 2016)....................................................15

Parker v. Blauvelt Volunteer Fire Co.,
  93 N.Y.2d 343 (1999)............................................................................................................15

Scherer v. Equitable Life Assur. Soc'y of U.S.,
  347 F.3d 394 (2d Cir. 2003)..................................................................................................12

Schwartz v. Pub Adm'r of Cty of Bronx,
  24 N.Y.2d 65 (1969) .............................................................................................................15

Smith v. Cuomo,
  06 CV 3181, 2007 U.S. Dist. LEXIS 97105 (E.D.N.Y. Sept 30, 2007)..................................13

Sosa v. J.P. Morgan Chase Bank,
  33 A.D. 3d 609, 822 N.Y.S.2d 122 (2d Dep't 2006) ..............................................................13

In re Teltronics Servs., Inc.,
  762 F.2d 185 (2d Cir. 1985)...................................................................................................13

Walker v. Schult,
  717 F.3d 119 (2d Cir. 2013)...................................................................................................12

Yeiser v. GMAC Mortg. Corp.,
  535 F. Supp. 2d 413 (S.D.N.Y. 2008)................................................................................12, 13

**Statutes**

C.P.L.R. § 7803.3...................................................................................................................14, 16

C.P.L.R. § 7806......................................................................................................................13

C.P.L.R. Article 78 ......................................................................4, 6, 7, 8, 10, 11, 13, 14, 15, 16

**Statutes**                                                                                           **Pages**

Fed. R. Civ. P. 8(a)(2)...................................................................................................11

Fed. R. Civ. P. 12(b)(6)............................................................................................11, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MARIAH LOPEZ,

                                        Plaintiff,

              -against-

NEW YORK CITY and PROJECT RENEWAL, Inc.,

                                        Defendants.

------------------------------------------------------------------------x

**NEW YORK CITY'S
MEMORANDUM OF
LAW IN SUPPORT OF
ITS MOTION TO
DISMISS THE
AMENDED
COMPLAINT
PURSUANT TO FED. R.
CIV. PRO. 12 (B)(1)
AND 12(B)(6)**

17 Civ. 3014 (VEC)

Plaintiff has sued both New York City and Project Renewal, Inc. in this court and in the Supreme Court of New York State, County of New York, seeking identical relief based upon identical factual allegations. Justice Barbara Jaffe of the state court has already issued a decision and judgment on the merits that holds (i) the New York City Department of Homeless Services ('DHS") made a lawful, reasonable and appropriate decision to transfer Plaintiff from the Marsha's House shelter in the Bronx; (ii) that DHS did not make the transfer in retaliation for Plaintiff having filed this action or for Plaintiff's speech at Marsha's House; (iii) that DHS made the transfer due to Plaintiff's threats against and physical attacks upon the staff at Marsha's House, and (iv) that Marsha's Hosue was not the only reasonable accommodation for Plaintiff in the shelter system. Based upon this prior judgment, New York City now moves to dismiss this federal action because the prior state judgment must be given *res judicata* effect and because the findings of the state court are entitled to collateral estoppel. These doctrines preclude the relitigation in federal court of the issues and facts already determined by the state court.

## STATEMENT OF FACTS[1]

DHS operates a shelter system that provides housing for approximately 59,000 individuals.  Most of DHS' shelters for single adults are operated by non-profit social service providers ("shelter operators") with which DHS contracts.  DHS attempts to provide shelters appropriate to the needs of various sets of its clients, and in 2016 DHS contracted with Project Renewal, Inc., a non-profit shelter operator, to operate a shelter designed to house young clients, under age 30, who self-identify as lesbian, gay, bisexual, transgender or questioning ("LGBTQ").  The resulting shelter, known as Marsha's House, opened on February 15, 2017 and is located on East 185th Street in the Mount Eden neighborhood of the Bronx.  It is the only DHS shelter specifically designated for LGBTQ individuals, however, LGBTQ individuals reside in many other DHS shelters, and DHS endeavors to make all of its shelters accessible to LGBTQ individuals.

Plaintiff returned to the DHS shelter system in April 2017 and requested to be placed in Marsha's House.  On April 20, 2017, representatives of Project Renewal, Inc. met with Plaintiff to explain the rules of the shelter and to obtain her agreement to comply with the rules and regulations of DHS and the shelter.  Plaintiff acknowledged receipt of those rules and signed agreements to comply with the rules,[2] however, Plaintiff established a pattern of violating the rules of Marsha's House and of threatening the employees of Project Renewal, Inc.

---

[1] For a fuller and more detailed statement of facts, see the accompanying Declaration of Thomas B. Roberts dated July 28, 2017 (the "Roberts Declaration").

[2] Attached as Exhibit B to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 to the Roberts Declaration, is a true and correct redacted copy of the rules that Plaintiff acknowledged receiving on April 20, 2017 and her agreements to comply with those rules signed on April 20, 2017.

On Tuesday April 25, 2017, Plaintiff filed the complaint in this federal action (Dkt No.2) alleging that DHS and Project Renewal, Inc. were violating the Americans with Disabilities Act ("ADA") in that Plaintiff has "impulse control disorder, PTSD and anxiety" and that she needed her dog due to these disabilities.  On Thursday April 27, 2017, Judge Caproni issued a Temporary Restraining Order that ordered DHS to permit Plaintiff to bring her dog to the shelter until Monday May 1, 2017. (Dkt. No. 8)  On Friday April 28, 2017, DHS determined that permitting Plaintiff to have her dog was a reasonable accommodation for her disability. Since then Plaintiff has been permitted to bring her dog into Marsha's House and any other DHS facility, and the parties to the federal action accordingly permitted the TRO to dissolve. Accordingly, as noted by this Court on June 30, 2017, Plaintiff's ADA claim set forth in the original complaint is moot.  See transcript of June 30, 2017 proceedings at page 2. (Dkt. No. 42)

Despite having her dog, Plaintiff continued to threaten the staff at Marsha's House and to violate the shelter's and DHS' rules, as detailed in DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 to the Roberts Declaration.

On Tuesday May 9, 2017, Project Renewal, Inc. requested that DHS suspend Plaintiff for three days due to her bringing alcohol into the shelter.[3]  On Wednesday May 10, 2017, Mr. Uetake, the DHS Program Administrator responsible for Marsha's House, decided to transfer Plaintiff to a shelter with greater mental health services and permanent DHS police, instead of private security guards.  However, Mr. Uetake had not yet decided which shelter to transfer Plaintiff to.  At a meeting on May 10, 2017, Marsha's House's shelter director advised Plaintiff that she would be transferred to another shelter on May 11, 2017.   Mr. Uetake,

---

[3] Attached as Exhibit P to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 to the Roberts Declaration, is a true and correct copy of the May 9, 2017 Suspension Request.

subsequently decided to transfer Plaintiff to the WIN West shelter, and Ms. Lopez was given notice of her new shelter assignment on May 11, 2017.

WIN West is a shelter for single adult females run by Women In Need, Inc. at 341 West 51st Street in Manhattan (between 8th and 9th avenues) that has prior and ongoing experience with transgender clients. WIN West has extensive mental health services on site, and its staff receives EEO Diversity Training and Employment Sensitivity Training. The WIN West shelter is safe, and the shelter has DHS Police security.

## LITIGATION BEFORE JUSTICE JAFFE

On Friday May 12, 2017, Plaintiff commenced an Article 78 proceeding in the Supreme Court of New York State in New York County, Lopez v. DHS & Project Renewal, 100632/2017, challenging DHS' decision to reassign her from Marsha's House and asserting that the reassignment was illegal retaliation (i) for Plaintiff having brought the federal action under the ADA and (ii) for Plaintiff having objected to what Plaintiff believed to be discrimination against transgender clients of Marsha's House. Specifically, Plaintiff alleged at page 2 of her Article 78 petition that "[I] believe that the Administrative Transfer [Project Renewal's Director Keadon Grinnell] personally requested and pushed for is retaliation for my lawsuit and TRO in Federal Court as well as my confronting him yesterday in a private meeting. The transfer came after an incident where I passionately objected to discrimination I witnessed by food-service staff against trans clients. The incident is simply an excuse to transfer me."[4]

Justice Jaffe heard oral argument from Plaintiff and from counsel for DHS on May 12, 2017. Plaintiff contended that the WIN West shelter was not a reasonable

---

[4] Attached as Exhibit 1 to the Roberts Declaration is a true and correct copy of Plaintiff's May 12, 2017 Request For Judicial Intervention, Order to Show Cause as endorsed by Justice Jaffe, and Notice of Petition in Lopez v. DHS & Project Renewal, 100632/2017.

accommodation for her because it was not safe for transgender women.[5]  Plaintiff also contended that DHS had transferred her because she had witnessed and objected to what she believed was discrimination at Marsha's House: "Mariah's here now in this court because she was transferred after seeing discrimination."[6] At the end of the argument Justice Jaffe orally instructed DHS to permit Plaintiff to return to Marsha's House for the weekend and instructed the parties to return on Monday May 15, 2017.

Justice Jaffe heard further oral argument from Plaintiff and from counsel for DHS on Monday May 15, 2017.[7]  Plaintiff continued to contend, among other things, that her transfer resulted from retaliation for her speech: "So all of this, I think, is connected to the fact that I am being the proverbial squeaky wheel and blowing the loudest whistle possible.  And I brought serious complaints from the other clients,…"[8]

At the end of that argument, Justice Jaffe ordered DHS to permit Plaintiff to return to Marsha's House.  Specifically, Justice Jaffe ordered: "Pending the determination of this proceeding, respondents are stayed from enforcing the transfer referral of petitioner to the Win West Shelter.  Respondents to appear or answer on or before 5/24 before 5 pm.  This order is conditioned on petitioner complying with respondents' rules & regulations.  Respondents' employees are likewise directed to comply with the pertinent laws & rules of the facility."[9]

---

[5] Attached as Exhibit 2 to the Roberts Declaration is a true and correct copy of the transcript of the argument on May 12, 2017.  See pages 3, 4, 11 & 19.

[6] Id. at page 16.

[7] Attached as Exhibit 3 to the Roberts Declaration is a true and correct copy of the transcript of the argument on May 15, 2017.

[8] Id. page 5.

[9] See endorsement to OTSC in Exhibit 1 to the Roberts Declaration.

Plaintiff was unable to comply with Justice Jaffe's requirement that Plaintiff comply with DHS' and Marsha's House's rules and regulations, and on Wednesday May 24, 2017, Plaintiff became involved in a variety of incidents at Marsha's House and hit a security guard.  The New York City Police were called, the police arrested Plaintiff, and reportedly, during the arrest, Plaintiff bit one of the arresting officers.[10]

As a result of this incident, DHS suspended Plaintiff on May 24 from the shelter system for seven days, until May 31, 2017.  Also on May 24, 2017, DHS filed its answer and supporting affidavits to the Verified Petition in Lopez v. DHS & Project Renewal, 100632/2017, the Article 78 proceeding before Justice Jaffe.[11]

On the evening of Friday May 26, 2017, Plaintiff returned to Marsha's House and threatened to kill one of the staff, telling the staff member, "I showed your picture to everyone in Fort Green Brooklyn."  "I'm going to have my cousins come and blow your fucking head off."  "I hate your fucking ass I'm going to get you killed."[12]

On May 31, 2017, the parties appeared before Justice Jaffe, who heard argument concerning the Article 78 proceeding.[13]  Counsel for DHS submitted a copy of Exhibit 8 to the Roberts Declaration to Justice Jaffe and explained the events that had taken place since May 15,

---

[10]  Attached as Exhibit 4 to the Roberts Declaration is a true and correct copy of the incident reports concerning Plaintiff's actions on May 24, 2017.  Attached as Exhibit 5 to the Roberts Declaration is a true and correct copy of the New York Unified Court System, Case Details Summary, dated May 25, 2017, concerning the criminal charges brought against Plaintiff arising from these incidents.

[11]  Attached as Exhibit 7 to the Roberts Declaration is a true and correct copy of DHS' Answer and supporting affidavits as filed in Lopez v. DHS & Project Renewal, 100632/2017.

[12]  Attached as Exhibit 8 to the Roberts Declaration is a true and correct copy of the incident reports concerning Plaintiff's actions on May 26, 2017.

[13]  Attached as Exhibit 9 to the Roberts Declaration is a true and correct copy of the transcript of the May 31, 2017 argument before Justice Jaffe.

2017.  Plaintiff objected to defendants' arguments and continued to assert that defendants were acting in retaliation for her federal suit and her speech at Marsha's House: "But, since the TRO was granted, I started organizing, in a civilized way, which is, I think, the most concerning to the City attorneys.  I believe that the ten page report that I wrote is telling and disturbing for more than one reason."[14]

After hearing this argument, Justice Jaffe lifted her prior stay, permitted DHS to transfer Plaintiff to a shelter other than Marsha's House, including the WIN West shelter, and took the merits of the Article 78 proceeding under advisement.  In her June 14, 2017 decision and judgment, Justice Jaffe explained her lifting of the stay as follows: "Given the incidents that preceded those allegedly precipitating petitioner's arrest, which were essentially uncontested except to the extent that petitioner sought to excuse them, and absent a sufficient showing that immediate and irreparable injury would result if DHS were not restrained from transferring petitioner to WIN West, I lifted the stay and marked as fully submitted petitioner's motion for a preliminary injunction and her petition." [15]

Immediately after concluding the appearance before Justice Jaffe on May 31, 2017, the parties appeared before Judge Caproni in the federal case on an emergency motion that Plaintiff had filed on May 30, 2017 seeking an order enjoining Defendants from moving Plaintiff from Marsha's House. (Dkt Nos. 22 & 23)  Judge Caproni heard arguments and took testimony on the emergency motion on May 31, 2017.  Plaintiff continued to contend that the WIN West shelter was not a reasonable accommodation for her because it was not safe for transgender women and called a witness to support that contention.  Judge Caproni heard the testimony, ruled

---

[14] Id. at page 16.

[15] Attached as Exhibit 10 to the Roberts Declaration is a true and correct copy of Justice Jaffe's decision and judgment.  See page 6.

that Plaintiff had not demonstrated irreparable harm if she were transferred to the WIN West shelter, and denied Plaintiff the preliminary relief she requested.

In the wake of these two May 31 proceedings, DHS transferred Plaintiff to the WIN West shelter. Plaintiff, however, never spent a night at the WIN West shelter. At the end of the hearing before Judge Caproni, Plaintiff asserted that she viewed the neighborhood in which the WIN West shelter is located, the Theater District, to be a trigger for her PTSD because she had been sexually abused in that neighborhood when she was a child. DHS took this assertion into account and offered her a bed at four other women's shelters with mental health services. Plaintiff rejected them all, but DHS assigned Plaintiff to the Park Slope Women's shelter at the Park Slope Armory, a safe location that accommodates transgender women, is far from the Theater District, and has significant mental health services provided in part by Housing Works Healthcare, which is the same mental health provider Plaintiff uses. Plaintiff has also refused this assignment and has never spent a night at the Park Slope Women's shelter.

On June 14, 2017, Justice Jaffe issued a decision and judgment in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, denying the Article 78 petition in its entirety and dismissing the proceeding on the merits. In her decision and judgment, Justice Jaffe stated that Plaintiff "alleges that the transfer constitutes a retaliatory measure against her for having obtained an order from the Southern District of New York enjoining respondents from refusing the entry of her service dog into Marsha's Place. Since then, she contends she has been treated differently by staff in that they document her alleged infractions more than they do those of other clients, resulting in a 'paper trail' and her transfer out of Marsha's Place, which transfer she claims resulted from her objection to the mistreatment of transgender clients by food service staff." Justice Jaffe's decision and judgment also noted that Plaintiff sought "an order directing

respondent NYC Department of Homeless Services (DHS) to 'reverse its decision to approve Project Renewal's request to transfer [her] from Marsha's Place Shelter (for transgender people).'" Id. at page 1.

At pages 2 through 6 of her decision and judgment, Justice Jaffe detailed the procedural history of the case and the parties' submissions. Justice Jaffe found that Plaintiff "admits having threatened staff at Marsha's Place" Id. at page 2. The Justice also noted that it has been "petitioner's avowed purpose in advocating for others by verbally threatening staff at Marsha's Place ..." Id. at page 7. Justice Jaffe thus determined that Plaintiff threatened the staff at Marsha's House, that her transfer resulted from such threats, and that the transfer from Marsha's House was justified by those threats: "To the extent that her conduct may be characterized as civil disobedience, under the circumstances presented here, she is herself to blame for the consequences of her conduct." Id. at 9-10. Justice Jaffe concluded that Marsha's House was not the only reasonable placement for Plaintiff in the shelter system, denied the petition in its entirety, dismissed the proceeding, and judgment was entered.

## THE EMERGENCY MOTION IN FEDERAL COURT

On June 15, 2017, Plaintiff filed an Emergency Request for TRO in this action (Dkt. Nos. 31), which this court has deemed an amended complaint. (Dkt. No. 39). In the Emergency Request for TRO/Amended Complaint, Plaintiff asserted that "I believe the decision for DHS to move me from Marsha's was retaliatory and DHS refusal to temporarily place me back at Marsha's is a failure to make 'reasonable' accommodations for my disabilities. The refusal by DHS to place me at the only facility that can provide the accommodations I need is motivated by caprice and the desire to silence my whistle blowing at Marsha's House." (Dkt. No. 31 at pages 1-2). In the Emergency Request for TRO/Amended Complaint, Plaintiff demanded the following relief: "DHS to place me back at Marsha's until this Court reviews

whether I will be harmed by a placement other than Marsha's.   DHS to reserve a bed at Marsha's until the conclusion of my ADA case in front of this Court or until I have found permanent housing, since Marsha's is the only trans shelter which has single bed rooms." (Dkt. No. 31 at page 7).  Judge Batts denied the requested TRO on June 15, 2017.  (Dkt. No. 32)  DHS now moves to dismiss the Emergency Request for TRO/Amended Complaint pursuant to F.R.C.P. 12(b)(1) and 12(b)(6).

After Justice Jaffe's decision and judgment and Judge Batts' ruling, Plaintiff has continued her efforts to obtain an order reassigning her to Marsha's House and submitted letters to DHS from her doctors that assert Plaintiff needs certain accommodations.[16]  DHS' Medical Director, Fabienne Laraque, MD, MPH, evaluated these letters, and with Dr. Laraque's participation and approval, on June 26, 2017 DHS issued a "Reasonable Accommodation Request Determination" in which DHS denied Plaintiff's request to be reassigned to Marsha's House and for a private room in a shelter as a habitation but granted Plaintiff access to a private room with a place to lie down and a locking door at the Park Slope Women's shelter when Plaintiff needed to perform dilation.[17]

On June 27, 2017, Plaintiff filed a new Article 78 proceeding in New York County challenging DHS' June 26, 2017 Reasonable Accommodation Request Determination. Lopez v. New York City Department of Homeless Services, 100871/2017, which was assigned

---

[16] See the June 7, 2017 letter of Dr. Harold Reed attached as Exhibit 12 to the Roberts Declaration and the June 20, 2017 letter of Dr. Arty attached as Exhibit 13 to the Roberts Declaration.

[17] Attached as Exhibit 14 to the Roberts Declaration is a true and correct copy of the Reasonable Accommodation Request Determination.

to Justice Nancy Bannon.[18]  On June 29, 2017, the parties appeared before Justice Bannon to argue Plaintiff's application for a TRO.  Justice Bannon denied the application for a stay and set a schedule for DHS to respond to the petition.[19]  On July 20, 2017, DHS filed its Verified Answer and the affirmation of Dr. Laraque in Lopez v. New York City Department of Homeless Services, 100871/2017, and that Article 78 proceeding is scheduled to be argued before Justice Bannon on July 31, 2017.

## ARGUMENT

## POINT I

## LEGAL STANDARD

To survive a Rule 12(b)(1) or 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). While Federal Rule of Civil Procedure 8(a)(2) does not require that a plaintiff plead "detailed factual allegations," the plaintiff must assert more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement." Id. at 678 (internal quotations omitted).

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[18] Attached as Exhibit 15 to the Roberts Declaration is a true and correct copy of the Amended Order to Show Cause with TRO, Request for Judicial Intervention and Verified Petition in Lopez v. New York City Department of Homeless Services, 100871/2017.

[19] See endorsement to Exhibit 15 to the Roberts Declaration.

sense." Iqbal, 556 U.S. at 679 (internal citations omitted). In considering a motion to dismiss, a court must accept all of the factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Id. at 678. When the plaintiff is *pro se*, the court is further obligated to construe the complaint "liberally to raise the strongest arguments it suggests." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotations omitted). The court is not, however, bound to accept as true "mere conclusory statements" in the complaint. Iqbal, 556 U.S. at 678.

Even a *pro se* plaintiff's complaint must be dismissed at the pleading stage if it fails to set forth sufficient factual allegations to state a claim. See, e.g., Green v. McLaughlin, 480 Fed. Appx. 44, 46 (2d Cir. 2012) (affirming dismissal of *pro se* plaintiff's complaint); Bryant v. Wright, 451 Fed. Appx. 12, 14 (2d Cir. 2011) (same).

## POINT II

### PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA*[20]

Federal courts give state court judgments the same preclusive effect as the state in which the judgment was issued. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984). There are three requirements for *res judicata* to take effect: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) *citing* Allen v. McCurry, 449 U.S. 90, 94 (1980); *see also*, Yeiser v. GMAC Mortg. Corp.,

---

[20] In the Second Circuit *res judicata* and collateral estoppel are properly raised in a Rule 12 (b) motion. Loren v. N.Y. City Dep't of Education, 13 cv 7597 (VEC), 2015 U.S. Dist. LEXIS 82767 at *8, n.9. (S..D.N.Y. June 25, 2015) *citing* Scherer v. Equitable Life Assur. Soc'y of U.S., 347 F.3d 394, 398 (2d Cir. 2003).

535 F. Supp.2d 413, 426 (S.D.N.Y. 2008) (*res judicata* applies equally to *pro se* litigants).  In addition, *res judicata* binds the parties "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." In re Teltronics Services, Inc., 762 F.2d 185, 190 (2d Cir. 1985) (internal quotation marks omitted) quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877).

Here, first, Justice Jaffe's decision and judgment are an adjudication on the merits entitled to *res judicata* effect.  Article 78 proceedings are entitled to preclusive effect if "the relief sought in the subsequent proceeding was available to the plaintiff in the prior action." Smith v. Cuomo, 06 CV 3181, 2007 U.S. Dist. LEXIS 97105 at *18-19 (E.D.N.Y. Sept 30, 2007) citing Collard v. Inc. Village of Flower Hill, 759 F.2d 205, 206-07 (2d Cir. 1985) (affirming dismissal of subsequent federal action on grounds of *res judicata* following an unsuccessful Article 78 proceeding), *see also*, Loren v. N.Y. City Dep't of Educ., 13 CV 7597 (VEC), 2015 U.S. Dist. LEXIS 82767 at*11 (S.D.N.Y. June 25, 2015)(Article 78 judgment not given *res judicata* effect where federal claims seek relief unavailable in Article 78).  In both cases, Plaintiff seeks the identical relief of an injunction enjoining DHS from transferring her to a shelter other than Marsha's House, an order mandating that she be reassigned to Marsha's House, and a determination that no shelter other than Marsha's House can reasonably accommodate Plaintiff.  The state court had authority to grant such relief pursuant to C.P.L.R. section 7806, which provides in part, "If the proceeding was brought to review a determination, the judgment may annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action by the respondent."

Second, there is identity of the parties.

- 13 -

Third, the claims asserted in the federal action were raised in the Article 78 before Justice Jaffe. New York takes a "transactional approach" to this element of the test: "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Yeiser, 535 F. Supp. 2d at 422 (quoting Sosa v. J.P. Morgan Chase Bank, 33 A.D. 3d 609, 822 N.Y.S.2d 122, 124 (2d Dep't 2006). Thus, any subsequent action is barred if it arises out of the same general set of circumstances.

Plaintiff asserted the same claims in Justice Jaffe's proceeding that she asserted in her Amended Complaint herein – (i) that she was wrongfully transferred from Marsha's House without cause, (ii) that she was wrongfully transferred from Marsha's House in retaliation for filing this action and in retaliation for complaining about the staff at Marsha's House, and (iii) that Marsha's House is the only reasonable accommodation for Plaintiff. Had Plaintiff established any of these claims, she would have been entitled to relief under C.P.L.R. section 7803.3 because Plaintiff would have demonstrated that DHS' determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion." Id. These claims were presented to Justice Jaffe, and the Justice rejected them, finding that Plaintiff was transferred due to her threats against the staff at Marsha's House, that DHS was justified in transferring Plaintiff in response to those threats, and that Marsha's House was not the only reasonable assignment for Plaintiff in the shelter system. Plaintiff's amended complaint herein seeks to advance identical contentions. The identity of the claims warrants the application of *res judicata*.

Thus, Plaintiff is barred from relitigating the issues that were already rejected in the state court Article 78 proceeding by Justice Jaffe. *See, e.g.*, Burka v. New York City Transit Auth., 32 F.3d 654, 657-58 (2d Cir. 1994) (dismissing federal claims as precluded by plaintiff's

Article 78 decision); Arnold v. Beth Abraham Health Servs., 09 cv 6049, 2009 U.S. Dist. LEXIS

121382 at *10-11 (S.D.N.Y. 2009), aff'd sub nom. on other grounds, Arnold v. 1199 SEIU, 420

Fed. App'x 48, 50 (2d Cir. 2011) (Article 78 decision barred gender discrimination claims); and

Harris v. N.Y. State Dep't of Health, 202 F. Supp. 2d 143, 168-73 (S.D.N.Y. 2002) (Due Process

claims barred by prior Article 78 decision).    At the least, to the extent Plaintiff seeks

reinstatement at Marsha's House or injunctive or declaratory relief that was available in her

Article 78 proceeding before Justice Jaffe, Plaintiff's claims in the amended complaint for such

relief are barred. See Leo v. New York City Dep't of Educ., 13 CV 2271, 2014 U.S. Dist. LEXIS

161480, at *11 (E.D.N.Y. Nov. 17, 2014) ("[B]ecause reinstatement and removal from the

ineligible list were remedies available in the Article 78 proceeding, Leo's claims for that relief

are barred by res judicata."); and Nash v. Bd. of Educ. of N.Y., 99 cv 9611, 2016 U.S. Dist.

LEXIS 135793, at *16 (S.D.N.Y. Sept. 22, 2016).

## POINT III

### PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Alternatively, the claims in Plaintiff's amended complaint are barred by collateral

estoppel.   New York law provides that, "[c]ollateral estoppel comes into play when four

conditions are fulfilled: (1) the issues in both proceedings are identical, (2) the issue in the prior

proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate

in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid

and final judgment on the merits.   Conason v. Megan Holding, LLC, 25 N.Y.3d 1, 17, 6

N.Y.S.3d 206 (2015) (quotation marks and citations omitted); see also, Parker v. Blauvelt

Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) (collateral estoppel prevents a litigant from

bringing a claim for damages that is premised on an issue that was decided against the plaintiff in

his prior C.P.L.R. Article 78 proceeding); and Moran v. New York Dep't of Health, 1997 U.S. App. LEXIS 7173 at *6-7 (2d Cir. 1997) (ADA and Rehabilitation Act claims precluded by collateral estoppel based upon prior Article 78 decision).  The burden of proving identity and decisiveness of issues rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that she did not have a full and fair opportunity to litigate the issue.  Id.; and Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 730 (2d Cir. 2001) (citing Schwartz v. Public Adm'r of County of Bronx, 24 N.Y.2d 65, 73 (1969).

This case satisfies each of these requirements.  First, as explained above, the issues in both proceedings are identical.  Second, Justice Jaffe determined (i) that Plaintiff threatened the staff at Marsha's House, (ii) that DHS' transfer of Plaintiff from Marsha's House was taken in response to Plaintiff's threats, (iii) that the transfer was not taken in retaliation for Plaintiff filing this action or for her speech at Marsha's House, and (iv) that Marsha's House was not the only reasonable accommodation for Plaintiff in the shelter system.  Accordingly, Justice Jaffe dismissed Plaintiff's proceeding, including her claims of retaliation.  Third, Justice Jaffe's Article 78 proceeding provided a full and fair opportunity to litigate.  Plaintiff's admissions that she threatened the staff at Marsha's House plus the record provided by DHS in the Article 78 – which Plaintiff did not controvert – provided a full and fair record for decision.  And fourth, Justice Jaffe's determinations (i) that Plaintiff threatened the staff at Marsha's House, (ii) that DHS transferred Plaintiff from Marsha's House in response to Plaintiff's threats and not in retaliation for this suit or Plaintiff's speech, and (iii) that Marsha's House was not the only reasonable accommodation for Plaintiff in the shelter system were each necessary to her decision.  Had Plaintiff established any of these claims, she would have demonstrated that DHS'

determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion." and been entitled to relief under C.P.L.R. section 7803.3.

Accordingly, it has been established that (i) that Plaintiff threatened the staff at Marsha's House, (ii) that DHS transferred Plaintiff from Marsha's House in response to Plaintiff's threats and not in retaliation for this suit or Plaintiff's speech, and (iii) that Marsha's House was not the only reasonable accommodation for plaintiff in the shelter system.  These facts mandate that the Amended Complaint be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety and grant the City of New York such other and further relief as may be just.

Dated:      New York, New York
            July 28, 2017


THOMAS B. ROBERTS
Assistant Corporation Counsel

- 17 -