**Department of
Homeless Services**

**Special Cases:**
- If NYPD, FDNY or EMS has been called, and is not responding within a reasonable time, immediate notification must be made to at least the Assistant Commissioner for guidance and assistance
- In confirmed or suspected cases of contagious disease (i.e. chickenpox, Hepatitis A, tuberculosis, measles, meningitis), the Assistant Commissioner should alert the Agency Medical Director immediately

# EXHIBIT E



**PROJECT RENEWAL**

**DHS Commitment Contract**

Date:

A Commitment Contract is being put in place to ensure that you utilize all shelter services effectively and appropriately to guarantee that you find adequate housing.

I, Mariah Lopez, CARES ID [redacted] will adhere to all shelter/ clinical rules and regulations, including but not limited to the items listed below:

I understand that my stay at Marsha's House is conditional and in exception to the age limits of the program.

I understand that I will be transferred to another DHS facility if I am not successfully housed within 60 days of entry into the program.

I will meet with my assigned Case Manager on a bi-weekly basis for case management and Independent Living Plan Reviews.

If I choose not to utilize the onsite psychiatric service I will provide an updated psychiatric evaluation to ensure that my housing package is appropriately updated.

If I choose not to utilize the shelter free onsite medical service I will sign consent forms with the shelter so that my outside provider can be contacted to support the documentation provided.

In the event that I am providing the shelter with documentation, such as a doctor's note, I will not alter any portion of the document.

I will provide an updated PPD so that shelter staff can create an appropriate housing package and keep it updated.

I will provide an updated Award Letter on a monthly basis to ensure that my housing package is appropriately updated.

I will attend all scheduled housing interviews as scheduled by the shelter.

I will accept the first suitable housing option presented to me.

I will work with my assigned Case Manager at the shelter and present all grievances to the shelter before prematurely reaching out to any DHS representatives other than the Ombudsman office

I will keep all of my personal items inside of my assigned locker and utilize the lock provided to me.

I understand that by not following all of the shelter rules and regulations, it will be a direct set back to finding permanency and housing and against DHS regulations.

By signing this document, I am agreeing to and understand the terms of this Commitment Contract.

_Mariah Lopez_                                    4/21/17
Mariah Lopez                                      Date

_[signature]_                                     4/21/17
Assistant Director                                Date

_[signature]_                                     4/21/17
Shelter Director                                  Date

# EXHIBIT F

- 6 -

**Incident Report Home On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations**

## Details

| | | |
|---|---|---|
| Type: | On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations | Priority: 3 |
| Date of Incident: 4/24/2017 | | Time of Incident: 01:10 AM |
| Reported By: KGRINNELL-CP | | Status: In Review [View History] |
| Closure Date: | | Disposition: |

## Incident Participants

| Action | First Name | Last Name | Role | Status | Suspension/Sanction Indicator | Attached Document(s) |
|---|---|---|---|---|---|---|
| View | MARIAH | LOPEZ | Perpetrator | Active | | Attached Document (s) |
| View | Troy | Miller | Witness | Active | | Attached Document (s) |

## Description of Incident

Created by: Kaedon Grinnell
04/24/2017 11:11 AM
On 4/24/17 at 1:10 AM client Mariah Lopez entered the facility with outside food. She was informed that as per Project Renewal policy no outside food was permitted in the facility. The client disregarded the directive and stated "if you want to keep your f@#king job you better leave me the f@%k alone." The client proceeded to enter the facility despite staff's request.

## Incident Location

1st Floor access control

## Immediate Action Taken

Client was informed of the facility rules. Incident report was filed.

## Incident Responders

| Action | Responder | Time Called | Time Arrived | Name | Badge | Unit | Comments |
|---|---|---|---|---|---|---|---|

## Injuries

| Action | Name | Injury | Hospital | Hospital Name |
|---|---|---|---|---|

## DHS Review/Recommendations

| Action | Review/Recommendation | Indicators |
|---|---|---|

## Incident Disposition Comments

Close

# EXHIBIT G

 **Department of Homeless Services**

## NYC Department of Homeless Services Incident Report

Priority Code: 3
Time: 02:00 AM
Facility Class: Shelter

Date: 04/24/2017
Facility Name: Marsha's House
Facility Type: Adult Shelter

Day of Week: Monday
Facility Code: X185
Primary Type: On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations

Secondary Types: On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations

PERSONS INVOLVED: O=Other S=Staff C=Client   V=Victim W=Witness Ob=Observer P=Perpetrator O=Other

| O-S-C | V-W-Ob-P-O | Last Name | First Name | Sex | CARESID | SSN | Age | DOB |
|-------|------------|-----------|------------|-----|---------|-----|-----|-----|
| S | W | Murray | Vanessa | | | | | |
| C | P | ▇ | ▇ | Transgender male to female | ▇ | ▇ | 20 | ▇ |
| C | P | LOPEZ | MARIAH | Female | ▇ | | 31 | ▇ |

BRIEF DESCRIPTION OF INCIDENT: (Who, what, where, when) Attach additional sheet if necessary

Created by: Kaedon Grinnell
04/24/2017 09:55 AM
During the 2 AM bed count RAS Murray found client ▇ ▇ ▇ in client Mariah Lopez' ▇ bed on the 6th floor. RAS Murray informed the clients that they were not permitted to be in another client's bed. Client # ▇ and ▇ stated that they would be sleeping there for the night despite being informed of the rules.

IMMEDIATE ACTION TAKEN: (By on-site staff responding to the incident)
An incident report was filed.

RESIDENT STATEMENT ATTACHED, WHEN APPLICABLE. (See Part 491.7(d)(15))

DOC||INCIDENT_REPORTS



**Department of Homeless Services**

☐ Resident statement attached.
☐ Resident refused but offered.
☐ Resident unable to provide statement due to medical or related emergency reason.
☐ Other _____

Report Prepared By/Signature: *[signature]*   Title: *Shelter Director*
Date: 4/24/17

Report Reviewed By/Signature: *[signature]*   Title: *ASSISTANT DIRECTOR*
Date: 4/24/17

☐ Security/Peace Officer Report Attached

**REVIEW/RECOMMENDATION:** *To be completed by DHS Staff*

**INDICATORS:** *To Be Completed by DHS Staff*

_____   Date: _____
Signature of DHS Program Analyst

**DISPOSITION/FINAL ACTION TAKEN:** *To be completed by DHS Program Administrator*

_____   Date: _____
Signature of DHS Program Administrator

DATE REPORT RETURNED TO FACILITY (CLIENT SUSPENSIONS ONLY): _____

Priority One Incidents are the most serious and urgent. Priority One Incidents include:

- Homicide, suicide, or death on site attempted homicide, attempted suicide, assault resulting in life-threatening injury, or accident resulting in life-threatening injury (including drug overdose) Use of a firearm Rape, attempted rape, or sexual assault Arrest for alleged child abuse or emergency transport of child for medical treatment due to suspected child abuse Fire, disaster, or other environmental concern that involves a life-threatening injury or the evacuation of an entire site as directed by emergency personnel or FDNY response Riot, bomb threat, hostage taking/abduction, or missing children Unscheduled on-site presence of the press or elected official Assault or threatening behavior that results in life-threatening injury or accident resulting in life-threatening injury (including overdose) Arrest of DHS staff on site Heating, water, electrical failure, or other environmental issue (i.e. asbestos,



**Department of Homeless Services**

lead, radon), that is expected to last more than 4 hours Domestic violence that results in the victim pressing charges, arrest of the assailant and/or the relocation of the victim

**Priority Two Incidents** include problems that are not immediately life-threatening or dangerous, but still must be reported promptly, so that agency administrators are informed of the incident and can resolve the matter within appropriate time frames

- Physical fights that do not result in arrest
- Allegations of: rape, attempted rape or sexual assault that do not result in arrest
- Arrest of a client, staff, or visitor for criminal activity occurring in the facility, including harassment, intimidation or victimization (I.e. stealing, extortion, loan sharking)
- Incidents that occur off shelter premises (including client deaths) and/or involve persons known to be current shelter clients and that would otherwise be classified as Priority One
- Child abuse that is reported and results in the removal of children by ACS, but no arrests are made
- Theft or vandalism of property valued at $1500 or more
- Intentional fire setting or damage to facility equipment by a client
- Possession, use, or sale of drugs or alcohol on premises resulting in suspension of a client
- Possession of a firearm

**Priority Three Incidents** include unusual occurrences that need to be recorded and reviewed for possible corrective action:

- On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations
- Off-site incidents involving clients and/or staff that affect community quality of life, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations
- Removal via EMS, of any client for any reason other than a Priority One or Priority Two event

**Special Cases:**

- If NYPD, FDNY or EMS has been called, and is not responding within a reasonable time, immediate notification must be made to at least the Assistant Commissioner for guidance and assistance
- In confirmed or suspected cases of contagious disease (i.e. chickenpox, Hepatitis A, tuberculosis, measles, meningitis), the Assistant Commissioner should alert the Agency Medical Director immediately

# EXHIBIT H

- 8 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REC
SDNY PRO.
2017 APR 25  PM 4:40
S.D. OF N.Y.

_Monah Lopez_

Write the full name of each plaintiff.

No. _____
(To be filled out by Clerk's Office)

-against-

_NYC Dep Homeless Services,_
_Project Renewal Inc._

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

I.   **LEGAL BASIS FOR CLAIM**

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights

☑ Other: *Service Animal denied entry to Homeless Shelter*

II.   **PLAINTIFF INFORMATION**

Each plaintiff must provide the following information. Attach additional pages if necessary.

| Mariah | Lopez M | Lopez |
|---|---|---|
| First Name | Middle Initial | Last Name |

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (If you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

| County, City | State | Zip Code |
|---|---|---|

III.   **PRISONER STATUS**

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

*New York City Dep Homeless Services*

First Name · Last Name · Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City · State · Zip Code

Defendant 2:

*Project Renewal*

First Name · Last Name · Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City · State · Zip Code

Defendant 3:

First Name · Last Name · Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City · State · Zip Code

Defendant 4:

First Name · Last Name · Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City · State · Zip Code

**V.   STATEMENT OF CLAIM**

Place(s) of occurrence: _____

Date(s) of occurrence: _____

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

I am legally disabled, diagnosed with "Impulse
Control disorder", "PTSD" and anxiety. I am also
at risk of being literally forced into the Street
(homeless) Because NYC Dep of Homeless Services
is requiring me to "Prove" my dog is a "Service
Animal".

After almost three weeks of back and
forth between NYC HRA advocates (in favor of my
entry to my shelter of record with San Service Animal)
as well as multiple attempts by my sex to either
find alternative housing besides NYC DHS Shelters,
or get DHS officials to Provide an expedited process
for my entry to "Marshas House" Shelter.
I have no choice but to exit the Shelter System
tomorrow; or abandon my Service Dog.

Tomorrow the last available alternative option
for housing myself and animal together, out side of
DHS Shelter System will expire. A friend
who has been allowing me and the dog

to Sleep on the floor, is moving to morrow.

I am also engaging in Survival Sex in order to home to money needed to pay dog walkers or other fees as incurred as a result of my still being obligated to care for my Service Animal, despite her being housed apart from me. I have spent my entire April SSI payment already and I am being accused of neglecting my dog & I'm made home less tomorrow.

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

I'm having fewer symptoms of PTSD and anxiety. I'm also being "forced" by the actions of the defendant, to do the only thing possible to keep my animal with me: Engage in Sex work in order to pay for actual housing school or shelter (Hotels, friends Houses). I have made NYC Dep of Homeless service officials and Project Renewal shelter admin. aware as well.

**VI.   RELIEF**

State briefly what money damages or other relief you want the court to order.

I would like an order which directs NYC Dep of Homeless Services and Project Renewal ("Marshas House") to allow access to entry with my Service Animal, under Titles II and III of the ADA, given the animal has acceptable proof of health, safety and vaccination, as well as proof of registry and license under NYS and NYC Law.

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 4/25/17 | *(signature)* Lopez |
| Dated | Plaintiff's Signature |
| Moriah | |
| First Name | Middle Initial     Last Name |

Prison Address          Nome less

County, City          State          Zip Code

IM Homeless if DHS Does

Date on which I am delivering this complaint to prison authorities for mailing:

Not Allow Dog / Service

Animal

phone is Best

— Cell

Page 6

Mariah Lopez

NYC Dep of Homeless Services
Project Renewal

I make this affidavit on
this day April 25TH 2017 under
Penalty of Perjury. I attach the
following

A - NYC DHS Reasonable Accomodation Form
(photo copy)
B- letter from Case manager
C- print out of emails to NYC Public Advocate
D- Letter from mental Health Professional regarding
my disability
E → letter from Lisa Parish, NYC ACS

Mariah Lopez

Case 1:17-cv-03014-VEC   Document 2   Filed 04/25/17   Page 8 of 15



**HOUSING WORKS
COMMUNITY
HEALTHCARE**

57 Willoughby St., Brooklyn, NY 11201
347.473.7417 • www.housingworks.org/heal

April 25, 2017

To Whom It May Concern:

Mariah Lopez DOB █████, █████ is an ████████ client enrolled in Housing Works Health Home Program. Ms. Lopez signed consent with us on December 22, 2016 and is currently receiving care management services. Her care team is listed below with contact telephone numbers.

Ms. Lopez is currently homeless and has been working with her care team to obtain housing. Currently, Ms. Lopez reports her fear of being homeless and her need to engage in sex work to pay for hotels/housing. She also reports to us that she was accepted to Marsha's Place and cannot stay there because her dog is not allowed. Her care team is actively aware of her homeless status and has been assisting her with housing through her current care plans. Ms. Lopez is consistently engaged with the team. If you have any questions, please feel to reach out to us for assistance.

Care Manager – Dana Bannerman ████████
Care Navigator – Luvenia Suber ████████
Unit Supervisor – Andrea Kiliaris ████████

Sincerely,

Andrea Kiliaris, MSW
Health Home Unit Supervisor
Housing Works

**REASONABLE ACCOMMODATION REQUEST FORM**

# Re: I don't want to do SEX WORK: NYC's BIG mistake

mariah lopez [REDACTED]e@gmail.com>

Sat 4/22/2017 3:11 PM

To:Julissa Gonzalez <jgonzalez@pubadvocate.nyc.gov>;

Cc:Amanda Masters <amasters@pubadvocate.nyc.gov>; mviverito@council.nyc.gov <mviverito@council.nyc.gov>;
newsroom@dnainfo.com <newsroom@dnainfo.com>; rparascandola@nydailynews.com <rparascandola@nydailynews.com>;
[REDACTED]; Brettschneider, Eric (ACS) <eric.brettschneider@acs.nyc.gov>; Parrish, Lisa
(ACS) <Lisa.Parrish@acs.nyc.gov>; Bannerman, Dana <D.Bannerman@housingworks.org>; gary english
[REDACTED]; Redfield, Elena <redfielde@hra.nyc.gov>; [REDACTED]; Molly Thomas-
Jensen <MThomas-Jensen@pubadvocate.nyc.gov>; Mlopez@helpusa.org <Mlopez@helpusa.org>;
Carmen Jack Giordano [REDACTED]>; Cdonald@publicadvocate.nyc.gov
<Cdonald@publicadvocate.nyc.gov>; Alexia Lewnes [REDACTED]; Blakney, Jennie <Jennie.Blakney@doh.nj.gov>;
Ashley Sharpton [REDACTED]; Dominique Sharpton [REDACTED]; Nathanael Holley
[REDACTED]; MURRAYW@dany.nyc.gov <MURRAYW@dany.nyc.gov>; Doran, Katie <DORANK@dany.nyc.gov>; Paul
Schindler <editor@gaycitynews.com>; Paul Lucas <[REDACTED]; Stephen Marshall <smarshall@nationalactionnetwork.net>;
STRADFORD, WENDELL <wendell.stradford@nypd.org>; news@news10.com <news@news10.com>; Doug ODell <dodell@sco.org>;
NYC NLG Street Law Team <streetlawteam@gmail.com>; Palmer, Steven [REDACTED];
noah.remnick@nytimes.com <noah.remnick@nytimes.com>; gideon@gideonlaw.com <gideon@gideonlaw.com>; Kaedon Grinnell
<Kaedon.Grinnell@projectrenewal.org>; Jim Fouratt [REDACTED]; Erykah Ramdass [REDACTED]; Chanel Lopez
btorres@aliforneycenter.org <btorres@aliforneycenter.org>; Chadwick Mills [REDACTED];
<Clopez@avp.org>;

📎 2 attachments (1 MB)

IMG_1067.PNG; IMG_1068.PNG;

"A public entity may **ask** if the animal is required because of a disability and what work or task the animal has been
trained to perform. A public entity shall not require **documentation**, such as proof that the animal has been certified,
trained, or licensed as a **service animal**."

Julissa (see above and attached),

The failure of the Public Advocate to act in the affirmative to assure that I, as a vulnerable person with a disability
am housed and safe, when the law is clear on this matter is disturbing and represents a failure to fulfill the duties of
the office. The inaction of Miss James office, via expedited court proceedings or extra judicial remedies, to act
(outside of sending emails) is shameful and contributes to the disenfranchisement of disabled New Yorkers, many of
whom are ex-foster kids, or have PTSD or other conditions which do not render them obviously disabled.

  Virtually EVERY public accommodation I have tried to acces with my service animal makes the illegal and
prohibited request that I "prove" my animal is a service animal. As someone with PTSD related to abuses by NYC
Police and Corrections officers, I find it unacceptable (and sadly ironic) that the office of the Public Advocate
is allowing both myself and thousands of other New Yorkers to be abused and denied access to safe housing or
other public accommodations because Service Animal cases don't seem urgent enough.

  If Kalif Browder was alive, and still suffering from PTSD from undue trips to Rikers or misconduct by police (like
myself...ask Mrs Masters), he would have to right under federal law to bring his service animal with him
EVERYWHERE; stores, restaurants, hospitals, NYC shelters (direct or contracted) and anywhere else he'd be
traveling. He'd like daily encounter discrimination and confrontation by employees of some kind or another, making
erroneous request for "proof" or "certification" of his animals training and legality. He'd be alone, without the aid of
public officials he swear to uphold and protect the law.

NYC's abysmal record of educating the public around the ADA, NYS and NYC human rights laws, WOULD PUT HIM IN DIRECT CONTACT WITH NYPD (the direct catalyst for his PTSD) OVER and OVER again. The first thing that ignorant people do in response to someone defending their rights under Title's II and III of the ADA is to call the police and allege criminal trespass.

Store clerks, MTA workers, NYC Hospital and even NYS Court officers who operate or Courts (ironically) would turn him away, threaten to arrest him, and create conflict where NONE MUST/SHOULD exist under Federal State and Local law. Kalif too, would probably be thrust deeper into his emotions and also feel isolated, victimized and without a public advocate in HIS HOME CITY. As someone who has sued "NYC" and won or settled with the result being tax payers footing the bill for the ignorance bureaucrats multiple times, I urge the public advocate to stop standing idol and move swiftly and urgently to correct this embarrassing and harmful disregard for well established law and precedent. The Public Advocates roles of protector and defender are three fold in this matter; She must advocate for the rights of the disabled person, the uniformed general public, as well as City agencies with illegal or archaic policies which result in unnecessary litigation and the squanderance of tax payers dollars. This issue should be a no brainer to resolve in a forward thinking town like the big apple. Yet I have been chronically homeless for years because apathy and ignorance, having to have sex to survive or not leave my birthplace.

PTSD is a serious life threatening condition and Public Advocate James should be ashamed of herself for not taking up the plight of those who use Service Animals to aid their heal. She seems either unaware of the general issue of NYs ignorance around Service Animals (specifically the prohibition of public accommodations asking for documented proof or certification of an animal's authenticity as a service animal), or is too busy trying to find big ticket campaign platform issues to champion as she mulls a run for her next public job, to utilize her unique powers under the law to bring relief to potentially tens of thousands of New Yorkers or visitors to this City. Either way, the issue of ADA Service Animal noncompliance is SERIOUS AND URGENT. City Officials MUST act without further delay to ensure that New York isn't lying to the world when it claims to be safe and welcoming to all, even the disabled.

IF Kalif were alive and tried to use an animal to treat and aid his condition, he might very well have been pushed deeper into depression, his anxiety and increased startle response to increasingly limit his fair and reasonable access to literally tens of thousands of places of public accommodations across the five boroughs, I know this from first hand experience. Every mom and pop store, City run place, or wealthy chain business would confront him upon entry and demand imaginary "papers" for his animal. His youth, race, and appearance of not generally presenting as a "disabled" person wouldn't help the matter either.

I hope Miss James reflects on Mr Browder every time his name crosses her path of vision, when she hears his name, or when she uses her dreadful plans to rename his hell on earth in his dishonor. I hope Mr Browder's PTSD and his connection to this City's history, as well as the use of Service Animals as legitimate tools for treating many conditions, is something that forces the Public Advocate to act holistically.

Not addressing this issue pits New Yorkers against each other unnecessarily, costs the City money, and also leaves out huge potential for thousands of NYC Animal Care & Control dogs to be destroyed and not saved for their potential functional value and place in society.

It is my hope that Miss James, despite her apparent sluggish or nonexistent response to the issues described above, act immediately to educate the public and City agencies of the law concerning Service Animals. I also insist that she use the unique powers of her office to defend every single New York resident or visitor who is denied their rights under the law, instead of making what are most like administrative decisions to only bring "good cases" with outcomes expected to boost her public profile. People are suffering and in danger because of the Public Advocates inaction.

As the activist granddaughter of one of Miss James most cherished mentors (Edward Carter), I plan on taking her on personally until she fulfills her duties. I've had the City Law department on its toes and reeling from the mistakes of those in public office before. I always win in the end.

Hopefully, the Public Advocate will step in and stop the City from having to pay a hefty price for the ignorance and apathy of those sworn to uphold the law and protect the public coffers. My grandfather, as if not, I will seek the absolute maximum monetary penalty under the law for my years of suffering. My grandfather, as well as activist Trans mother, would be outraged at my situation, but would also have it NO zither way: I'm standing up for what's right, and I will win again! Whether the current local law needs to be changed or the existing legislation needs enforcing. Either way I'm pissed, and the City is failing to do the act in the interest of justice.

2/4

This will be my last attempt at convincing the City of New York (officials or its law departments) that what's happening to me is not legal, ethical, or moral. Next stop............a "courtroom", where the law, for the most part, is adhered to, honored and defended. I will use part of any money I receive to honor Mr Browder and many other New Yorkers with PTSD from either the NYPD or Rikers, the right way. That's a promise.

Yours in earnest

Mariah Lopez
Lifelong New Yorker and Activist

P.S.
Please tell the Public Advocate "Carter here!"

On Friday, April 21, 2017, Julissa Gonzalez <jgonzalez@pubadvocate.nyc.gov> wrote:
Mariah,

I have been following up with DHS regarding their policies and ADA compliance. DHS' response to our request was as follows:

"DHS is working with the provider and the client to address her concern. We are working with the client to determine what specific task the animal is trained to perform, if the animal is a service animal. Or, if the animal is an emotional support animal, staff will guide the client to obtain the proper documentation from a medical provider to substantiate the reasonable accommodation request. The DHS Legal team has been made aware of the situation and will review documents on this case as soon as they are received.

I will provide you with an update once all the documents have been reviewed and a decision has been made."

Our General Counsel has reviewed their written policies and their response to our office. After reviewing all correspondence as well as the letter you provided us from Housing Works mental health provider, we have determined that they are able to require you to make a formal request for a reasonable accommodation if you wish to have an emotional support animal. They are also able to request documentation from your medical provider if you're making a request for reasonable accommodation . According to our General Counsel the letter you provided us from Housing Works should fulfill their request for documentation from a medical provider. We cannot submit the letter you provided our office to DHS without your written consent. If you respond to this email granting me permission to share the letter with DHS, I will do so and continue following up on this matter. You may also choose to submit it directly to the provider on your own if you prefer.

I will await your response before proceeding.

Sincerely,

Julissa Gonzalez Santiago.

Director of Constituent Services

NYC Public Advocate Letitia James

**Julissa Gonzalez**
Director of Constituent Services

: Office of the Public Advocate Letitia James
: 1 Centre Street, 15th Floor, New York, NY 10007
: Direct Line: (212) 669-4892
  Fax: (212) 669-4701
  jgonzalez@pubadvocate.nyc.gov

On Fri, Apr 21, 2017 at 8:11 PM, mariah lopez <mariah4change@gmail.com> wrote:
The City not following the ADA Service Animal Provisions is WHY IM FORCED TO DO SEX WORK, I will not abandon my dog.

Simple.



**HOUSING WORKS**

Downtown Brooklyn Health Center
57 Willoughby Street
Brooklyn, NY 11201
TEL 347-473-7400 FAX 212-229-2178

April 6, 2017

TO WHOM IT MAY CONCERN:

Ms. Mariah Lopez (DOB: ███████) is currently under our professional care for treatment for a mental illness defined by the DSM-V. Her mental impairment substantially limits one or more major life activities. I have prescribed an emotional support animal as part of the treatment program developed for Mariah. The presence of this emotional support animal, particularly her dog, is necessary for Mariah's mental health.

I am familiar with the voluminous professional literature concerning the therapeutic benefits of assistance animals for people with disabilities such as that experienced by Mariah. Upon request, I will share citations to relevant studies, and would be happy to answer other questions you may have concerning my recommendation that Ms. Lopez have an emotional support animal. Should you have additional question, please do not hesitate to contact me.

I am licensed by the state of New York to practice in Psychiatry. My license number is 401561.

Please allow Ms. Mariah Lopez to keep and maintain her emotional support animal in her place of residence and to be accompanied by her emotional support animal elsewhere as allowed.

Sincerely,

JESSICA PACANNUAYAN, NP
LICENSE # 401561

Jessica Pacannuayan, NPP
Housing Works Inc.
57 Willoughby street, LL
Brooklyn, NY
(347) 473- 7400



**Administration for
Children's Services**

David A. Hansell
Commissioner

Andrew White
Deputy Commissioner

Lisa Parrish
Senior Advisor
Office of LGBTQ Policy
& Practice
Division of Policy,
Planning and
Measurement
150 William Street
19th Floor
New York, NY 10038
212-341-3103 (o)

April 6, 2017

To: PACT Reviewer, NYC Human Resources Administration (HRA)

From: Lisa Parrish, Senior Advisor

Re: Mariah Lopez, Client ID # ████ 2010e Supportive Housing Application

Mariah Lopez (DOB ████████) was in the custody of ACS when she turned 21 years old and aged out of care. Since that time she has periodically contacted ACS for assistance and consistently reported that she has been chronically homeless.

When I met with her on Friday, December 23, 2016, she reported that she was temporarily staying with an aunt in Brooklyn. She told me that for many years she had been "hotel hopping and couch surfing." She also said that she periodically reaches out to former foster parents for help. She reported that she had applied for SEPS through HRA. She told us by phone on January 7, 2016 that the Aunt's house where she was staying had no heat and needed a new boiler. She called me in March and reported that she had to leave the Aunt's house at the end of January when her Aunt's son came home, and that her Aunt had passed away in February. When I met with her today, she says that she has been staying with a friend who is moving out next week and that she needs supportive housing immediately.

I am copying Ms. Lopez' case manager, Dana Bannerman, at Housing Works in the hope that this information will help with the 2010e application, and Elana Redfield, the Director of LGBTQI Affairs within the Office of Advocacy and Outreach at HRA in the NYC Department of Social Services (DSS), who is also in contact with Ms. Lopez.

Please feel free to reach out to me at 212-341-3103 if I can be of any further assistance.

C: Dana Bannerman, Housing Works
   Elana Redfield, Esq., HRA, DSS
   Mariah Lopez

# EXHIBIT I

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   4/27/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MARIAH LOPEZ,

                              Plaintiff,

             -against-

THE CITY OF NEW YORK, and PROJECT
RENEWAL, INC.

                         Defendants.
--------------------------------------------------------------X

17-CV-3014 (VEC)

**TEMPORARY RESTRAINING
ORDER**

VALERIE CAPRONI, United States District Judge:

       On April 25, 2017 Plaintiff, proceeding *pro se*, filed a complaint for preliminary and

permanent injunctive relief alleging that Defendants have refused to permit her service animal

access to a public accommodation in violation of Title III of the Americans with Disabilities Act

(the "ADA"), 42 U.S.C. § 12182(a). Plaintiff concurrently moved for a temporary restraining

order ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure. On April 27, 2017

the Court held a conference in respect of Ms. Lopez's application for a temporary restraining

order.

       The standard for entry of a TRO in this circuit is the same as for a preliminary injunction.

*See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). In order to obtain a TRO (or

preliminary injunction) a moving party must demonstrate: "(1) irreparable harm in the absence of

the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious

questions going to the merits to make them a fair grounds for litigation and a balance of

hardships tipping decidedly in the movant's favor," *MyWebGrocer, L.L.C. v. Hometown Info.,

Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (*quoting Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei

Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).

Federal regulations require public accommodations to modify their "policies, practices, or procedures to permit the use of a service animal by an individual with a disability."[1]  28 C.F.R. § 36.302(c)(1).  The Court finds that Plaintiff has shown that there are "sufficiently serious questions going to merits" of whether her dog is a service animal within the meaning of federal regulations.  See 28 C.F.R. § 36.104 ("Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability . . . .").  Plaintiff has provided the Court and Defendants with information relative to the tasks performed by the animal and an unverified letter from a treating psychiatrist as to the animal's role in her care.  While the Defendants take the position that the animal is in fact an "emotional support" or a "therapy" dog, which the City is not required to accommodate under the ADA, at this provisional stage, plaintiff's showing is adequate.

The Court further finds that Plaintiff has adequately shown a risk of irreparable harm.  Failure to accommodate Plaintiff and the service animal would potentially cause Plaintiff to be without shelter.

Accordingly, IT IS HEREBY ORDERED that the Defendants are provisionally directed to accommodate Plaintiff and her service animal at the "Marsha's House" homeless shelter until 3:00 p.m. on May 1, 2017, unless this Court orders otherwise.  This Order is without prejudice to the Defendants' and Marsha's House's right to require Plaintiff to comply with all applicable

---

[1]      At this stage, the Court assumes, and Defendants do not appear to dispute, that Plaintiff has a "disability" for purposes of the ADA. This is without prejudice to the City's right to dispute Plaintiff's disability at later stages of the litigation.

shelter rules and City and State regulations.[2]  Plaintiff's failure to comply with shelter rules or City and State regulations is grounds to dissolve this TRO.

      IT IS HEREBY FURTHER ORDERED that the parties are directed to appear at 3:00 p.m. on May 1, 2017 in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007 at which time the Court will hold a hearing in respect of Plaintiff's application for temporary injunctive relief.

**SO ORDERED.**

Date:  **April 27, 2017**
        **New York, NY**
        **4:00 p.m.**

                                      **VALERIE CAPRONI**
                                      **United States District Judge**

---

[2]      This temporary restraining order is also without prejudice to the City's resolution of Plaintiff's outstanding application for a reasonable accommodation and the City's administrative procedures concerning placement of Plaintiff in an acceptable shelter.  The Court notes that resolution of the accommodation application or a showing that there are new independent grounds for the City's decision to discharge Plaintiff from the Marsha's House shelter may moot this case.

# EXHIBIT J

Incident Report Home Off-site incidents involving clients and/or staff that affect commun... Page 1 of 1

**Incident Report Home** Off-site incidents involving clients and/or staff that affect community quality of life, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations

## Details

| | | | |
|---|---|---|---|
| Type: | Off-site incidents involving clients and/or staff that affect community quality of life, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations | Priority: 3 | |
| Date of Incident: 5/2/2017 | | Time of Incident: 08:13 AM | |
| Reported By: KROYE-CP | | Status: In Review [View History] | |
| Closure Date: | | Disposition: | |

## Incident Participants

| Action | First Name | Last Name | Role | Status | Suspension/Sanction Indicator | Attached Document(s) |
|---|---|---|---|---|---|---|
| View | Dionne | Barnes | Victim | Active | | Attached Document (s) |
| View | MARIAH | LOPEZ | Perpetrator | Active | | Attached Document (s) |
| View | Troy | Miller | Witness | Active | | Attached Document (s) |

## Description of Incident

Created by: Katina Roye
05/02/2017 11:53 AM
On Tuesday, 5/2/17 at 8:13AM , RA Barnes and RA Miller were walking down the block to enter Marsha's House when client, Mariah Lopez, CARES ID# ____ stated "The same thing that happened to your friend can happen to you. I know people that can make a lot of things happen, and your dead friend on the other side watches over you". Staff removed themselves from the situation and did not enter Marsha's House at the time.

Created by: Katina Roye
05/02/2017 11:56 AM
The statement was directed to RA Barnes.

## Incident Location
185th Street b/t Washington & Bassford Ave

## Immediate Action Taken
Staff removed themselves from the situation.

## Incident Responders
| Action | Responder | Time Called | Time Arrived | Name | Badge | Unit | Comments |
|---|---|---|---|---|---|---|---|

## Injuries
| Action | Name | Injury | Hospital | Hospital Name |
|---|---|---|---|---|

## DHS Review/Recommendations
| Action | Review/Recommendation | Indicators |
|---|---|---|

## Incident Disposition Comments

Close

# EXHIBIT K

Incident Report Home On-site Incidents that are not classified as Priority One or Priority ...   Page 1 of 1

Incident Report Home On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations

### Details

| | |
|---|---|
| Type: On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations | Priority: 3 |
| Date of Incident: 5/4/2017 | Time of Incident: 05:00 PM |
| Reported By: KGRINNELL-CP | Status: Submitted [View History] |
| Closure Date: | Disposition: |

### Incident Participants

| Action | First Name | Last Name | Role | Status | Suspension/Sanction Indicator | Attached Document(s) |
|---|---|---|---|---|---|---|
| View | MARIAH | LOPEZ | Perpetrator | Active | | Attached Document (s) |

### Description of Incident

Created by: Kaedon Grinnell
05/04/2017 09:25 PM
On 5/4/17, the writer received a report from QPS security supervisor that client Mariah Lopez's emotional therapy pet was off leash and walking around the 1st floor foyer unsupervised.

### Incident Location

1st Floor Area

### Immediate Action Taken

The client will be engaged regarding her emotional therapy pet remaining on leash.

### Incident Responders

| Action | Responder | Time Called | Time Arrived | Name | Badge | Unit | Comments |
|---|---|---|---|---|---|---|---|

### Injuries

| Action | Name | Injury | Hospital | Hospital Name |
|---|---|---|---|---|

### DHS Review/Recommendations

| Action | Review/Recommendation | Indicators |
|---|---|---|

### Incident Disposition Comments

Close

# EXHIBIT L

Case Notes: **MARIAH LOPEZ -** ████████                                      Page 1 of 1

---

**Case Notes: MARIAH LOPEZ -** ████

<div align="right">Close</div>

**Notes History**

On: 05/09/2017 01:14 PM
Created By: Kaedon Grinnell
Data:

The writer met with the client on 5/8/17 for an unscheduled meeting to discuss 3 recent incident reports. The first report refers to an incident which took place on 5/7/17 at 10:30 AM. QPS Guard Lashaunda Griffin reports that the client's emotional support animal was off leash on the 3rd floor and approached staff. The client stated that she has been more mindful of keeping her support animal on leash in common areas and will continue to do so. The writer took the opportunity to attempt to engage the client regarding the Emotional Support Animal contract however the client stated that she was uninterested in reviewing it. The writer informed the client that she is bound by the contract however; the client did not acknowledge the contract.

The second report addressed refers to an incident which occurred on 5/7/17 at approximately 8:15pm. QPS Supervisor Oliva reported to Operations that lit candles were found in the client's room. The report states that the client was not present at the time. The client denied the report but she did state that she uses the candles for religious observance and plans to file a reasonable accommodation request. The writer informed the client that any such request would be reviewed by the appropriate parties however, until then lighting candles in the facility is against shelter rules.

The third report addressed refers to an incident which occurred on 5/7/17 at approximately 11:30pm. At that time QPS guards informed Project Renewal Operations staff that the client entered the facility with a bottle of wine. Staff reports that the client appeared to be under the influence at the time of the encounter and she refused to surrender or discard the bottle. It is reported that the client then took the bottle to her unit. The client told the writer that the bottle was a souvenir from her sister's baby shower and she stated that the contents of the bottle were not alcohol. The client was unclear as to what was in the bottle. The client did admit to being intoxicated during the encounter. The writer informed the client that according to shelter rules she is not permitted to have alcohol in the facility. The client stated that she understood the rule and would refrain from bringing any contraband into the facility going forward.

Assessment:

The client was coherent and cordial during the encounter. The client appeared to understand the rules discussed during the meeting.

Plan:

The writer will inform the appropriate DHS and PRI officials of the incident report follow ups.

<div align="center">Close</div>

# EXHIBIT M



## Department of Homeless Services

### NYC Department of Homeless Services Incident Report

Priority Code: 3

Time: 11:25 PM

Facility Class: Shelter

Date: 05/07/2017

Facility Name: Marsha's House

Facility Type: Adult Shelter

Day of Week: Sunday

Facility Code: X185

Primary Type: On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations

Secondary Types:

PERSONS INVOLVED: O=Other S=Staff C=Client   V=Victim W=Witness Ob=Observer P=Perpetrator O=Other

| O-S-C | V-W-Ob-P-O | Last Name | First Name | Sex | CARESID | SSN | Age | DOB |
|-------|------------|-----------|------------|-----|---------|-----|-----|-----|
| S | Ob | Barkley | Lamont | | | | | |
| S | Ob | Daniels | Shareef | | | | | |
| S | Ob | Smith | Cheyenne | | | | | |
| C | P | LOPEZ | MARIAH | Female | ▓▓ | ▓▓ | 32 | ▓▓ |

BRIEF DESCRIPTION OF INCIDENT: (Who, what, where, when) Attach additional sheet if necessary

Created by: Katina Roye

05/08/2017 03:49 PM

On  Sunday, May 7, 2017 at 11:25PM, client Mariah Lopez, CARES ID# ▓▓▓▓▓ entered Marsha's House with a bottle of wine.  QPS, Daniels and Cheyenne informed  R/A Barkley, who asked client to leave the bottle at ACCESS.  Client refused and proceeded upstairs.

IMMEDIATE ACTION TAKEN: (By on-site staff responding to the incident)

Client was informed of the rules and regulations.

RESIDENT STATEMENT ATTACHED, WHEN APPLICABLE. (See Part 491.7(d)(15))

☐ Resident statement attached.



DOC|INCIDENT_REPORTS



**NYC Department of Homeless Services**

- [ ] Resident refused but offered.
- [ ] Resident unable to provide statement due to medical or related emergency reason.
- [ ] Other ______________________________

Report Prepared By/Signature: Katina Roye Title: ASSISTANT DIRECTOR
Date: 5/8/17

Report Reviewed By/Signature: [signature] Title: Shelter Director
Date: 5/8/17

- [ ] Security/Peace Officer Report Attached

**REVIEW/RECOMMENDATION:** ***To be completed by DHS Staff***

**INDICATORS:** ***To Be Completed by DHS Staff***

______________________________ Date: ____________
Signature of DHS Program Analyst

**DISPOSITION/FINAL ACTION TAKEN:** ***To be completed by DHS Program Administrator***

______________________________ Date: ____________
Signature of DHS Program Administrator

DATE REPORT RETURNED TO FACILITY (CLIENT SUSPENSIONS ONLY): ____________

**Priority One Incidents** are the most serious and urgent. Priority One Incidents include:

- Homicide, suicide, or death on site attempted homicide, attempted suicide, assault resulting in life-threatening injury, or accident resulting in life-threatening injury (including drug overdose) Use of a firearm Rape, attempted rape, or sexual assault Arrest for alleged child abuse or emergency transport of child for medical treatment due to suspected child abuse Fire, disaster, or other environmental concern that involves a life-threatening injury or the evacuation of an entire site as directed by emergency personnel or FDNY response Riot, bomb threat, hostage taking/abduction, or missing children Unscheduled on-site presence of the press or elected official Assault or threatening behavior that results in life-threatening injury or accident resulting in life-threatening injury (including overdoes) Arrest of DHS staff on site Heating, water, electrical failure, or other environmental issue (i.e. asbestos, lead, radon), that is expected to last more than 4 hours Domestic violence that results in the victim pressing charges, arrest of the assailant and/or the relocation of the victim

**Department of Homeless Services**

Priority Two incidents include problems that are not immediately life-threatening or dangerous, but still must be reported promptly, so that agency administrators are informed of the incident and can resolve the matter within appropriate time frames

- Physical fights that do not result in arrest
- Allegations of: rape, attempted rape or sexual assault that do not result in arrest
- Arrest of a client, staff, or visitor for criminal activity occurring in the facility, including harassment, intimidation or victimization (i.e. stealing, extortion, loan sharking)
- Incidents that occur off shelter premises (including client deaths) and/or involve persons known to be current shelter clients and that would otherwise be classified as Priority One
- Child abuse that is reported and results in the removal of children by ACS, but no arrests are made
- Theft or vandalism of property valued at $1500 or more
- Intentional fire setting or damage to facility equipment by a client
- Possession, use, or sale of drugs or alcohol on premises resulting in suspension of a client
- Possession of a firearm

Priority Three incidents include unusual occurrences that need to be recorded and reviewed for possible corrective action:

- On-site incidents that are not classified as Priority One or Priority Two, but occur in the shelter involving clients, staff, visitors or property, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations
- Off-site incidents involving clients and/or staff that affect community quality of life, including: thefts, physical fights, personal injury, minor property damage, and/or evacuations
- Removal, via EMS, of any client for any reason other than a Priority One or Priority Two event

**Special Cases:**

- If NYPD, FDNY or EMS has been called, and is not responding within a reasonable time, immediate notification must be made to at least the Assistant Commissioner for guidance and assistance
- In confirmed or suspected cases of contagious disease (i.e. chickenpox, Hepatitis A, tuberculosis, measles, meningitis), the Assistant Commissioner should alert the Agency Medical Director immediately

# EXHIBIT N

- 14 -

Case Notes: MARIAH LOPEZ - ▮▮▮▮▮▮                                    Page 1 of 1

---

Case Notes: MARIAH LOPEZ - ▮▮▮▮
                                          Close

**Notes History**

On: 05/10/2017 06:09 PM
Created By: Kaedon Grinnell
Data:

The writer met with the named client on 5/10/17 at 11:30am for an unscheduled meeting. The client reported that she feels the food being served in the facility is inadequate and is not prepared with enough care. The client also voiced concerns regarding the menu selection stating that one of the dinners featured potatoes with a side of potatoes. The writer inquired as to whether there was a protein provided in the meal and the client stated that there was protein in the meal. The writer requested that the client formalize her complaint by making a list of issues that could be addressed directly. The client agreed to do so.

During this meeting the client stated that she required access to transportation to retrieve some of her belongings. The writer scheduled the client to be escorted by the housing coordinator on Friday 5/12.

The client also stated that she misspoke during a previous meeting and she did in fact light candles on the fifth floor and neglected to extinguish them. She was informed that there lighting of candles in the facility is not permitted.

Assessment:

The client appeared to be calm and coherent throughout the meeting.

Plan:

The writer will respond to the client's grievance related to the food standards once received.

                                          Close

# EXHIBIT O

Case Notes: MARIAH LOPEZ - ██████████

Case Notes: MARIAH LOPEZ - ███████

Case Notes: MARIAH LOPEZ - [ ]                                                Page 2 of 3

Close

---

**Notes History**

On: 05/10/2017 06:08 PM
Created By: Kaedon Grinnell
Data:

The writer met with the client on 5/10/17 at approximately 4:15pm along with AD Katina Roye for an unscheduled meeting. The purpose of the meeting was to address an incident report from 12:15pm on 5/10/17 and to provide the client with Notice of Transfer. The incident report stated as follows:

"On 5/10/17 at 12:18pm, kitchen worker Tonya Fowler reports client Mariah Lopez approached her and verbally assaulted her regarding the portion size of another client's lunch. Ms. Fowler reports that Mariah Lopez stated that she would "beat the sh@t out of [her]." Ms. Lopez went on to state that she would be going outside to "get someone to put their hands on her." Assistant Director Katina Roye intervened and client Mariah Lopez moved out of the personal space of the Ms. Fowler and sat down in the cafeteria. Shortly after, AD Roye brought the matter to the attention of the Shelter Director. The Shelter Director and Assistant Director met with Ms. Fowler to discuss the incident. Ms. Fowler stated that she feels unsafe working under these conditions and feels that Ms. Lopez intends to do her harm. She went on to state that Ms. Lopez has regularly harassed her in the cafeteria area. Ms. Fowler was visibly emotional throughout the meeting often crying while voicing her concern for her well-being. The Shelter Director informed Ms. Fowler that the matter would be reported to DHS immediately."

The writer informed the client at the beginning of the meeting that she was to be transferred on 5/11/17 and this meeting served as a notification of transfer and her opportunity for a supervisory review. The client was presented with the Notice of Transfer at which time she refused to sign. The client inquired as to the formal procedure. The writer informed that client that she could use this opportunity to respond as to why she disputes the transfer.

The client began to discuss the incident outlined above and stated that she did in fact make the statements however the statements were a "conditional threat" only to be carried out in the event that the kitchen worker continues to "discriminate with food" specifically portion size. The writer informed the client that her behavior caused the staff to fear for her safety as a result a safety transfer was required.

The client then contacted her "mother" Susan, and began to discuss the details of the incident and the transfer. The client told Susan that she did in fact make those statements and reiterated her concerns regarding the client's portion size.

The client asked if the transfer was initiated by DHS and she was informed that it was initiated by the writer. The client stated that she believed the transfer to be retaliatory due to the fact that the she contacted the writer's supervisory shortly before. The writer informed the client that her transfer was based on her behavior and not any retaliatory action and that the writer was unaware of any communication with PRI program staff. The client requested an audience with Dean Uetaka and Mr. Uetaka was contacted and placed on speaker phone. The client voiced her protest to the transfer and stated that Mr. Uetaka should consider rescinding the request as she plans to take legal action. Mr. Uetaka stated that he would not be engaging the client at this time.

The client revisited the issue of the staff's concern for their well-being and stated that if she is transferred "Ms. Fowler's safety would be more of a concern" than if she was allowed to remain. The client went on to state that when she "puts this issue on her Vlog" she could have a number of people waiting at the site to attack Ms. Fowler.

The client then contacted PRI Executive Director Stephanie Cowles and left the office to have a conversation with her. When the client returned she asked numerous questions regarding the nature of the paperwork and was informed that the forms were standard Notice of Transfer documents. The client then left the office without signing the notice of transfer document.

At approximately 5:30pm, the client returned to the office and opened the door holding two plates of food. The client presented as angry and confrontational and continued her claim that there was discrimination against the resident in terms of the portion of food. The client claimed that one plate was considerably larger than the other. The writer informed the client that this interaction was inappropriate and asked her to leave his office. The client continued for some time and then eventually complied.

Assessment:

The client was well mannered and cordial through the initial meeting however, her behavior shifted significantly during the following encounter at 5:30pm.

Plan:

---

The writer will inform DHS that the client received the notification of transfer.

# EXHIBIT P



**Department of
Homeless Services**

## SUSPENSION REQUEST FORM

***Section below to be completed by Shelter Director.***   Kaedon Grinnell

PROGRAM ADMINISTRATOR'S NAME:   Dean Uetake

DATE:  5/9/17

SHELTER NAME:  Marsha's House

NAME OF CLIENT TO BE SUSPENDED:     Mariah Lopez

CARES ID:   ▮▮▮▮   .

NAMES AND CARES ID# OF OTHER INDIVIDUALS INVOLVED IN THE INCIDENT:
RA Barkley / QPS Guard Daniels / QPS Guard Cheyenne

DESCRIPTION OF THE INCIDENT (Attach the Incident Report and, if relevant, attach
other supporting documentation):

***Section below to be completed by Program Administrator.***

NUMBER OF SUSPENSION DAYS REQUESTED:   3

CLIENT'S PRIOR SUSPENSION HISTORY IN THE SHELTER SYSTEM:  n/a

CLIENT'S SHELTER HISTORY (attach CARES printout) : _____



**Department of
Homeless Services**

CLIENT'S SHELTER TRANSFER HISTORY OVER THE PAST YEAR, INCLUDING

REASON FOR THE TRANSFER:
Client was administratively transferred from El Camino Inn to Star Bright Residence - Reason Unknown

MENTAL HEALTH DIAGNOSES:
Client reports Depression, Anxiety and PTSD

MEDICAL ISSUES OR DISABILITIES:
No medical issues known

OTHER PRIOR BEHAVIORAL OR DISCIPLINARY ISSUES:
Client has numerous behavioral issues all documented in CARES Incident Reports.

REASON FOR SEEKING SUSPENSION (CONSIDER WHETHER ANY ALTERNATIVE

RECOURSE MAY OR MAY NOT BE VIABLE):
Client regularly disregards the rules of the facility and has ongoing behavioral issues.

ACTION PLAN FOR CLIENT UPON RETURN FROM SUSPENSION:
Staff will continue to engage client regarding adherence to shelter rules and regulations.

# EXHIBIT Q

Form 402A
U98  Revised

Division of Adult Services
Department  of Homeless Services

## CLIENT NOTIFICATION OF TRANSFER

Shelter:  Marsha's House - 480 e. 185th St. BX NY _____

Date: _05_ / _10_ / _2017_

| CLIENT'S SURNAME: | FIRST NAME: | H.A.  NUMBER: |
|---|---|---|
| Lopez | Mariah | ▇▇▇▇ |

You are being OFFICIALLY transferred by _05_/ _11_ / _2017_, because _____

Administrative Transfer - Safety Concern _____

### Right of Review

Upon receipt of this notice, you are entitled to meet with your caseworker to discuss why you are being transferred. If you disagree with the transfer, you may have a Supervisory Review to respond to the reason(s) for your transfer.

[ ] I  accept the reason(s) for transfer and I do NOT request a Supervisory Review.

   Client's Signature (X) _____                              Date: _____

[ ] I do not accept the reason(s) for transfer and I request a Supervisory Review.

   Client's Signature (X) *Client refused to sign*              Date: _____

[ ] I do not accept the reason(s) for transfer and I do NOT request a Supervisory Review.

   Client's Signature (X) _____                              Date: _____

[ ] Client refused to sign;  however, reason(s) for transfer was explained to client.  Supervisory Review mandated.

WITNESSING CASEWORKER:  *Katina Roye*                *Katina Roye*        5/10/17
                          Print Name                  Signature           Date

SOCIAL SERVICE DIRECTOR/
SHIFT SUPERVISOR: _____

                    Signature         Date          Print Name

_____ I have scheduled a SUPERVISORY REVIEW with client on  _5_ / _10_ / _17_

SHELTER DIRECTOR/DEPUTY:  I have reviewed the reasons for transfer with the client, and find that the transfer is:
( ) Withdrawn; no transfer at this time  ( ) Upheld; transfer will proceed as above  ( ) Revised; new Transfer Shelter and 402A.

*Kreston Grinnell*              *K.G.*            5/10/17
Print Name                      Signature          Date

Distribution:  Original to client, copy to case record.

# EXHIBIT R

7532069_1                              - 18 -                        05/24/17 11:14 AM

Form 402B
Revised 8/10/98

Division of Adult Services
Department of Homeless Services

# SHELTER CLIENT TRANSFER REFERRAL

| CLIENT'S SURNAME: | FIRST NAME: | H.A. NUMBER: |
|---|---|---|
| Lopez | Mariah | ▮ |

* You are being OFFICIALLY transferred on 05 / 11 / 17 to _Win West Shelter_ because:

Administrative Transfer - Safety Concern

| NAME OF SHELTER REFERRED TO: Win West Shelter | ADDRESS OF SHELTER REFERRED TO:: 341 W. 51st Street NY NY |
|---|---|
| CONTACT PERSON AT SHELTER REFERRED TO: Diana Santos | DATE REFERRED / TIME OF CALL: |

* Beginning on 05 / 11 / 2017, your new shelter is your OFFICIAL SHELTER. You are not eligible to transfer for services at any other DHS or DHS contracted Adult Services shelter. You may not transfer to any other DHS or DHS contracted Adult Services shelter without agency approval.

Your Official shelter will provide the following services to you:
1) bed            3) three meals a day          5) toiletries          7) recreation
2) locker        4) clothing                          6) carfare            8) social services

TRANSFER APPROVED BY: _Kaedon Grinnell_        _[signature]_        _5/11/17_
                                            Print Name                    Signature              Date

[ ]  I did NOT request a Supervisory Review and accept the transfer as a change in my official shelter.

   Client's Signature (X) _____    Date: _____

[ ]  I have had a Supervisory Review on __ / __ / __ and I accept transfer to my new official shelter.

   Client's Signature (X) _____    Date: _____

[ ]  I have had a Supervisory Review on __ / __ / __ , but continue to disagree with the change in my official shelter.

   Client's Signature (X) _____    Date: _____

[ ]  Client refused to sign;  however,  form was explained to client.

WITNESSING WORKER: _____
                                        Print Name              Signature              Date

| Time that client left referring shelter _____ A.M. or P.M. |