# EXHIBIT S

```
+-------------------------------------+
|     ADMINISTRATIVE DIRECTIVE        |
+-------------------------------------+
```

TRANSMITTAL:  94 ADM-20

DIVISION:  Economic
           Security

TO:     Commissioners of
        Social Services

DATE:  December 29, 1994

SUBJECT:  Preventing Homelessness and Providing Assistance to Homeless
          Persons

SUGGESTED
DISTRIBUTION:    |   Public Assistance Staff
                 |   Medical Assistance Staff
                 |   Food Stamp Staff
                 |   Directors of Services
                 |   Staff Development Coordinators

CONTACT
PERSON:          |   Call 1-800-342-3715 and ask for the following:
                 |
                 |   Economic Security:  Maureen Standish, extension 3-6555
                 |   Food Stamps:  County Representative, extension 4-9225
                 |   Health and Long Term Care:  Upstate - Sharon Burgess
                 |                                extension 3-5531
                 |                                In New York City,
                 |                                (212) 383-2512
                 |   Housing and Adult Services:  Jane Wagner - 432-2403

ATTACHMENTS:     |   Attachment - Filing References

FILING REFERENCES

| Previous ADMs/INFs | Releases Cancelled | Dept. Regs. | Soc. Serv. Law & Other Legal Ref. | Manual Ref. | Misc. Ref. |
|---|---|---|---|---|---|
| See Attachment | See Attachment | See Attachment | See Attachment | See Attachment | See Attachment |

DSS-296EL (REV. 11/94)

Date: December 29, 1994

Trans. No.  94 ADM-20                                    Page No.  2

---

I.    <u>PURPOSE</u>

      The purpose of this directive is to advise social services districts
      (districts) of their responsibilities with respect to providing
      assistance to homeless persons and persons in danger of becoming
      homeless.

II.   <u>ORGANIZATION AND CONTENT</u>

      The program and policy issues presented in this directive cover a
      variety of subjects and items. Where appropriate, the
      Food Stamp (FS) and Medical Assistance (MA) implications are
      identified in the discussion of Public Assistance (PA). The
      regulations cited in this Administrative Directive (ADM) may be
      referred to for a more complete understanding of any given subject.
      This directive was developed in consultation with staff from
      the districts.

                                                                    Page

      I.    Purpose                                                   2
      II.   Organization and Content                                 2
      III.  Background                                               3
      IV.   Program Implications                                     4
      V.    Required Action                                          5
            A.   Definition of Homeless                              5
            B.   Preventing Homelessness                             6
                 1.   Early intervention to prevent evictions        6
                      a.   Paying arrears for applicants             7
                      b.   Advance allowances for recipients         8
                      c.   Using Emergency Assistance for
                           Adults (EAA) to pay arrears               9
                      d.   Determining whether future
                           rent can be paid                         10
                 2.   Clothing and furniture replacement            10
                 3.   Restaurant allowance                          11
                 4.   Maintenance of housing                        11
                 5.   Water allowance                               11
                 6.   Property repairs                              12
                 7.   Equipment replacement or repair               12
                 8.   District withholding of rent                  12
                 9.   PA recipient withholding of rent              13
            C.   Finding New Housing                                13
                 1.   Security deposits                             13
                 2.   Moving expenses                               14
                 3.   Broker's/finder's fees                        14
                 4.   Purchase of furniture                         15

Date:   December 29, 1994

Trans. No.   94 ADM-20                                              Page No. 3

|  |  |  |  |
|---|---|---|---|
|  | 5. | Shared housing | 15 |
|  | 6. | Transportation and child care allowances to locate housing | 21 |
|  | 7. | Storage of furniture and personal belongings | 22 |
| D. |  | Providing Temporary Housing for the Homeless | 22 |
|  | 1. | Sanctioned persons/undocumented aliens | 23 |
|  | 2. | Dealing with homeless persons during non-business hours | 23 |
|  | 3. | Types of temporary housing assistance | 24 |
|  |  | a.    Tier I family shelters | 25 |
|  |  | b.    Tier II family shelters | 25 |
|  |  | c.    Shelters for pregnant women | 26 |
|  |  | d.    Shelters for adults | 26 |
|  |  | e.    Other temporary housing | 27 |
|  |  | f.    Hotels/motels | 28 |
|  | 4. | Budgeting of income in temporary housing situations | 29 |
|  | 5. | Resources | 31 |
|  | 6. | Claiming for categories of assistance available to assist homeless persons | 31 |
|  | 7. | Restriction of temporary housing assistance payments | 32 |
|  | 8. | District of fiscal responsibility | 33 |
| E. |  | Responsibilities of Homeless Persons | 34 |
| F. |  | Additional Issues Regarding Homeless Persons | 35 |
|  | 1. | Timely and adequate notice | 35 |
|  | 2. | Additional Assistance for Homeless Persons | 36 |
|  |  | a.    Protective services for adults | 36 |
|  |  | b.    Family and children's services | 38 |
|  | 3. | Employment issues of the homeless | 39 |
|  | 4. | Persons with AIDS or HIV-related illness who are faced with homelessness | 40 |
| G. |  | Medical Assistance Implications | 40 |
|  | 1. | Emergency Care | 40 |
|  | 2. | Public Shelters | 41 |
|  | 3. | Pregnant Women | 42 |
|  | 4. | SSI-Related Individuals | 42 |
|  | 5. | EAF Recipients | 42 |
| VI. |  | Systems Implications | 42 |
|  | A. | Upstate | 42 |
|  | B. | Downstate | 43 |
| VII. |  | Effective Date | 44 |

III.   BACKGROUND

[The problem of homelessness has grown steadily over the past several years and now is a major public policy issue,  on both  the national and State level.  Homelessness is no longer only a temporary big city problem but is spreading throughout rural and  suburban  areas,  and requires both short-term and long-term remedies.  Not only have the

Date:  December 27, 1996

Trans. No.  94 ADM-20                                    Page No. 4

numbers of homeless persons increased, but the characteristics of the homeless population have changed. Today's homeless include a growing number of families, especially single parent families with young children who have been evicted or otherwise displaced from their homes. In fact, the number of homeless families has increased more dramatically than any other homeless group.]

This administrative directive sets forth the benefits available to persons to assist them to retain their housing or to obtain housing when they are homeless. The Department and the districts have certain basic responsibilities concerning homeless persons. Over the past several years, the Department has implemented several measures to assist homeless persons directly and has established policies aimed at preventing and alleviating homelessness. Districts play an important role in using PA programs to preserve housing for eligible persons. Preserving housing is less costly, both in fiscal and social terms, than addressing the many and varied problems that homelessness causes.

[In addition to statutes, regulations and Department policies, each district is required to comply with all court decisions which apply to the district's policies related to homeless persons and families. Examples of such court decisions are the Callahan v. Koch and the Eldridge v. Koch cases. These cases require New York City to provide temporary housing to homeless single adult men and women provided they meet the need standard for HR or they are in need of temporary housing by reason of physical, mental or social dysfunction.]

Although no federal or State statute or regulation specifically requires that temporary housing assistance be provided to homeless persons, the Department has since 1983 required social services districts to assist eligible homeless persons. Though primarily intended as short-term emergency relief, for over a decade, temporary housing assistance in some districts has been used predominantly as a form of long-term assistance for persons made homeless as a result of economic deprivation or physical or mental impairment. The considerable resources now devoted by some districts to temporary housing assistance necessitates that the obligation placed upon districts to assist homeless persons better reflect the balance between the needs of those seeking assistance and the desire of the Department and districts to provide this assistance in a rational, cost-effective manner.

While it is a matter of critical importance to the Department that districts have the means for providing necessary assistance to the truly homeless, the general principle that individuals and families have primary responsibility for securing their own housing remains. Social services districts are neither expected nor obligated to provide temporary housing assistance to persons otherwise capable of making their own housing arrangements. Physical or mental impairment that limits a person's ability to secure housing may necessitate the provision of assistance in appropriate cases. Absent such considerations, however, the individual or family requesting assistance must clearly demonstrate that reasonable efforts have been

Case 1:17-cv-03014-MKV-OTW   Document 46-9   Filed 07/28/17   Page 6 of 49

Date:  December 27, 1996

Trans. No.  94 ADM-20                                    Page No. 4.1

made to secure housing and that no other housing can be accessed even
on a temporary basis.

The requirements of this directive reflect a recognition that
temporary housing resources are not unlimited and that each district
is permitted to establish processes for the provision of temporary
housing assistance that affords it needed flexibility in structuring
its temporary housing programs.  By developing standards that more
specifically define eligibility for assistance, the Department has
recognized that the district's ability to provide housing depends, in
part, on there being an obligation on the part of individuals and
families to use available resources and to seek necessary assistance
to avoid homelessness whenever possible.  Standards which make clear
the obligations both of the district and of persons seeking temporary
housing assistance will help to ensure the most appropriate and
effective use of this costly yet critical benefit.

IV.  PROGRAM IMPLICATIONS

Districts, as well as State entities, have certain responsibilities
to provide services and assistance in an effort to prevent
homelessness, to meet the temporary housing and other immediate needs
of eligible homeless persons, and to assist homeless persons to
secure permanent housing.  Eligible homeless persons are those
persons who are both homeless and eligible for PA, as described in
Section V.D.4. of this ADM.  Determination of their eligibility for
PA is one of the major subjects of this ADM.  Major district
responsibilities discussed in this ADM include the following:

A.   Each district must have procedures to ensure that the
     emergency needs of homeless persons are evaluated and that
     homeless persons are advised of their rights to emergency and
     on-going assistance.

B.   Each district must have procedures to permit persons who are
     in danger of becoming homeless to notify the district of such
     danger and to seek the assistance of the district in avoiding
     homelessness.  For those persons eligible for such
     assistance, such procedures must provide for prompt
     preventive efforts and intercession at the earliest
     reasonable indication of possible homelessness.  Each
     district should make special efforts to ensure that an
     employed applicant receives such assistance in a way that
     helps the applicant maintain his/her employment.

C.   Each district must have procedures to ensure that homeless
     persons or persons in danger of becoming homeless can apply
     for temporary housing whenever such housing is needed.  These
     procedures must be made known to the public.  The date and
     time of the initial contact by the homeless person, an
     authorized representative, a community agency or other
     interested person acting on behalf of the homeless person and
     the reason for the homelessness, in addition to all

Date:  December 27, 1996
Trans. No.  94 ADM-20                                    Page No. 5

information or advice provided by the district, must be
recorded in the case record.

D.   Each district must provide temporary housing assistance as
soon as possible to eligible homeless persons who have no
other available temporary or permanent housing. The district
must make reasonable efforts to determine the applicant's
eligibility prior to providing temporary housing assistance.
It is the expectation that assistance will be provided within
48 hours of application for such assistance. In districts
that operate emergency assistance units (EAUs), application
for temporary housing assistance commences at the time at
which the applicant appears, and is logged in, at the EAU.
Any person who is determined to be eligible or ineligible for
such housing must be given a written immediate need notice
(DSS-4002) and be advised of the right to request an
expedited State fair hearing.

E.   In providing assistance to homeless persons, districts must
consider the differing service needs of families and of
single adults. Experience has demonstrated, for example,
that homeless single adults exhibit a higher incidence of
physical or mental impairment, chronic drug or alcohol use
and prior incarceration or institutionalization than is found
among homeless families. Factors such as these are relevant
to the determination of housing needs and are appropriate
considerations in the establishment by social services
districts of procedures for the provision of temporary
housing assistance.

F.   Each district must have procedures, consistent with Section
IV-A of 86 ADM-7, to identify and, where appropriate, meet
the immediate food and other immediate health and safety
needs of eligible homeless persons.

G.   Each district must have procedures, consistent with Section
IV-C of 86 ADM-7, to provide Medical Assistance (MA) to
otherwise eligible homeless persons.

V.   **REQUIRED ACTION**

A.   Definition of Homeless

For PA, FS and MA purposes, a homeless person is an
individual or family that is undomiciled, has no fixed
address, lacks a fixed regular nighttime residence, resides
in a place not designed for or ordinarily used as a regular
sleeping accommodation for human beings (such as a hallway,
bus station, lobby or similar place), resides in a homeless
shelter, resides in a residential program for victims of
domestic violence, or resides in a hotel/motel on a temporary
basis. For FS purposes, a homeless person also includes an
individual or family that resides in some other temporary
living accommodation in the residence of another, or resides
in an institution that provides a temporary residence for
individuals intended to be institutionalized.

Date:. December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 6

For PA and MA purposes, a person living in the home of a legally responsible relative (i.e., the parent of a child under the age of 21 years and a spouse) is not considered homeless, even if the residency is temporary. However, in the case of a spouse, or child under 21 years of age who alleges physical, sexual or emotional abuse, the district must investigate the suitability of the home before denying temporary housing. While the concept of "legally responsible relative" does not apply to the FS Program, for FS purposes, parents and children 21 years of age or younger living together must meet the household composition requirements for separate household status, before being considered to be homeless on the basis of residing together temporarily. Spouses can never be considered to be separate FS households. Therefore, if one spouse has permanent living accommodations and the other spouse moves in temporarily, the spouse cannot be considered to be homeless.

Persons who meet any of the above criteria must be treated as homeless, in accordance with the instructions in this directive.

NOTE:   Domestic     violence     issues     are     addressed comprehensively in 94 ADM-11.

Pursuant to Section 131-u of the Social Services Law and Department regulation 18 NYCRR Part 408, social services districts are required to refer victims of domestic violence to residential programs for victims of domestic violence, when available.

B.     **Preventing Homelessness**

1.     Early Intervention to Prevent Evictions

When an applicant for or recipient (A/R) of PA is faced with possible eviction or foreclosure for non-payment of rent, mortgage or taxes, a district must act promptly to assist in preventing the eviction or foreclosure, if appropriate. The district must intercede as early as is possible and appropriate. A district must not wait until a notice of eviction or foreclosure is issued. If a landlord or mortgage holder expresses, either orally or in writing, the intention to pursue legal eviction or foreclosure proceedings if rent arrears, mortgage or taxes are not paid, the district must initiate action to prevent an eviction or foreclosure, if the person or family is otherwise eligible. A district also should determine an A/R's eligibility for rent subsidies (i.e., subsidy to avoid need to place a child in foster care and subsidy to help an A/R with AIDS or HIV-related illness retain housing). If no other action, including

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 7

---

relocation of the person or family or agreement with the landlord or mortgagor can prevent homelessness, the district must consider the payment of reasonable arrears, if such payment will prevent eviction or foreclosure and the A/R can meet future rental, mortgage or tax obligations (See V.B.1.d). Such payments of arrears must be made in accordance with Department regulations 18 NYCRR 370.3, 352.7, 372, 397 and 423 and Section V.D.8. of this ADM.

When reviewing an applicant's eligibility for EAF and EAA to pay rent arrears, a district must review the applicant's prior authorization, within the past 12 months, of EAF for any emergency need and EAA for shelter arrears. Department regulation 18 NYCRR 372.1(b) limits EAF authorization to once in a 12 month period. Department regulation 18 NYCRR 397.5 limits the payment of shelter arrears to once in a 12 month period, unless the social services official recommends an additional payment in this 12 month period and it is approved by this Department.

During recertification reviews, districts also should discuss with recipients whether there are any rent, mortgage or tax arrears. In this way, problems can be dealt with before they evolve into an eviction or foreclosure proceeding. Districts should explain voluntary rent restriction, if there are indications that the recipient may not be able to manage his or her grant and pay the rent on a regular basis.

.a.   Paying Arrears for Applicants

Concerning the payment of rent, mortgage or tax arrears to prevent eviction or foreclosure, Department regulation 18 NYCRR 352.7(g)(3) permits a district to pay arrears to an applicant to prevent eviction or foreclosure. This regulation applies to those persons who apply for assistance to meet a specific need or who apply for on-going assistance. The amounts of payments made under this regulation to applicants eligible for ADC, EAF, or recurring HR which exceed maximum shelter allowances are subject to recoupment and recovery. Any applicant who receives a shelter arrears payment and becomes a recipient of on-going PA must agree to restriction of shelter payments in accordance with Department regulation 18 NYCRR Part 381. A district must evaluate the applicant's ability to meet the on-going shelter costs in the future, (i.e., is the inability to pay rent a temporary situation or a permanent one that might

Date:   December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 8

---

make rehousing at a lower shelter cost a more
appropriate solution). A district should assist an
employable applicant to initiate or increase
employment in order to pay future rent. Even if an
applicant can meet shelter costs in the future, the
district has the discretion to refuse to pay
shelter arrears to maintain a specific housing
accommodation if the applicant has sufficient
income or resources to secure and maintain
alternate permanent housing.

Additionally, an applicant ineligible for ADC, EAF,
EAA or recurring HR (i.e., a person eligible for
Emergency Home Relief [EHR] only) who meets all
other requirements in 352.7(g)(3) and whose
household's gross monthly income does not exceed
one hundred twenty-five percent of the federal
income official poverty line must sign an agreement
to repay the amount of the shelter arrears payment
within twelve months. If a person applies for
recurring HR at the same time that he/she applies
for EHR and such person cannot be assisted to
obtain employment, and is determined to be eligible
for recurring HR, the agreement to repay the
shelter arrears payment becomes void. Only the
amount of the shelter arrears that exceeds the
shelter maximum is to be recouped. Subsequent
shelter arrears assistance cannot be provided under
EHR unless the applicant is current in the
repayment of assistance. If a person who has
signed such a repayment agreement becomes eligible
for recurring assistance at a later date, the
repayment agreement is suspended while the person
is in receipt of recurring assistance. Payments
for shelter arrears are not counted as income when
calculating FS and MA eligibility.

b.   Advance Allowances for Recipients

Department regulation 18 NYCRR 352.7(g)(4), in
authorizing a district to provide an "advance
allowance" to a recipient to prevent eviction or
foreclosure does not limit the payment of rent,
mortgage and tax arrears to the maximum shelter
allowance. An advance may be provided only if the
recipient requests it in writing and agrees in
writing to a recoupment from future PA grants.
Before providing an advance allowance, the district
must investigate whether restriction of future
shelter payments based on a determination of
mismanagement is appropriate. Additionally, an
allowance which exceeds the appropriate district

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 9

maximum monthly shelter allowance can be made only if the recipient:   (1) agrees to use all available liquid resources for the payment of shelter expenses necessary to prevent eviction or foreclosure; (2) demonstrates an ability to pay shelter expenses in the future, including amounts in excess of the appropriate district maximum monthly shelter allowance;   (3) agrees to future restriction of rent or mortgage payments; and (4) has not previously received this allowance and, subsequent to receiving such allowance, requested discontinuation of restriction of the shelter payments to which he/she agreed.   Advance allowances are not counted as income when calculating FS and MA eligibility.

c.   Using EAA to Pay Arrears for Those Persons and Couples Determined to be Eligible for or in Receipt of Supplemental Security Income (SSI) and/or Additional State Payments.

Department regulation 18 NYCRR 397.5 (1)(3) requires a district to pay up to four months of shelter arrears or other items under EAA to prevent eviction or foreclosure, when other housing accommodations appropriate for a person's best interest are not available in the area. Although a payment of this type is limited to four months of arrears, the dollar amount of the payment is not limited to the maximum shelter allowance. Payments for shelter arrears are not counted as income when calculating FS and MA eligibility.   Department regulation 18 NYCRR 397.5(a)(4), which limits the payment of shelter under EAA to the maximum PA shelter allowance, does not address the loss of shelter due to evictions.   It addresses the replacement of shelter lost due to burglary, theft, vandalism or as a result of fire, flood or other similar catastrophe which could not have been foreseen by, and was not under the control of the person applying therefor.

If there is a child under 21 years of age in the household, the household's eligibility for EAF must be determined.   If such household is eligible for EAF, then it should receive EAF. However, EAF may not be used to duplicate or replace PA already granted.

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 10

d.   Determining Whether Future Rent Can be Paid

For all categories of assistance, the reasonable-
ness of the request to pay rent, mortgage and tax
arrears  must be evaluated when determining whether
to pay the arrears.  A district must use discretion
when determining reasonableness.  For example, if
it is unlikely that the A/R can meet the continuing
rental,  mortgage or tax obligation, a payment of
the arrears may not solve the problem.  If arrears
accrued because  the housing is too costly for the
A/R, there is no third party to assist with the
housing costs, and the A/R's income is not likely
to increase in the near  future,  an alternative
solution,   such as rehousing in permanent or
temporary accommodations, may have to be pursued.

In evaluating an A/R's ability to meet future
housing expenses, individual circumstances should
be considered.  Some factors that may be considered
in evaluating whether future housing costs can be
met include, but are not limited to:

(1)   the continuation of the A/R's employment, the
      guarantee of future employment, or enhanced
      employment through efforts to assist A/Rs;
(2)   the presence of non-public assistance (NPA)
      household members who assist with housing
      payments;
(3)   the receipt of exempt or disregarded income
      that can be applied to housing payments;
(4)   access to in-kind sources of food and/or
      clothing,   or evidence of management and
      homemaking skills that could make available
      part  of the non-shelter portions of the grant
      for housing payments;
(5)   the possibility of shared housing with another
      PA recipient and the provision of a non-
      prorated  shelter allowance in accordance with
      Department regulation 18 NYCRR 352.32; and
(6)   the  contribution toward housing costs of non-
      legally   responsible  relatives,   friends,
      organizations,   or other sources (such as
      housing vouchers).  The ability of these
      persons  and/or organizations to provide such
      contribution must be verified.

2.   Clothing and Furniture Replacement

An allowance for the partial  or total  replacement  of
clothing or  furniture  lost in a flood, fire or other
like  catastrophe  must  be  provided  under  Department

Date:  December 29, 1994

Trans. No.   94 ADM-20                              Page No. 11

---

regulation 18 NYCRR 352.7(d).  Department regulations 18
NYCRR 397.5(a) and (h) provide for meeting repair and
replacement needs under EAA.  Allowances for the partial
or total replacement of clothing or furniture lost in a
flood, fire or other like catastrophe are not counted as
income when calculating FS and MA eligibility.

3.   Restaurant Allowance

A restaurant allowance authorized under Department regu-
lation 18 NYCRR 352.7(c) must be provided when persons
are unable to prepare meals at home on a permanent or a
temporary basis, or when meals are not provided in the
living arrangement.  For example, a recipient sharing
housing with another family may not have use of the
cooking facilities.  The provision of a restaurant
allowance to that recipient could lessen tensions which
might lead the host family to ask the recipient to leave
the household.  Restaurant allowances paid directly to a
recipient are counted as income when calculating FS
eligibility.  Vendor restricted restaurant allowances
are not counted as income when calculating FS and MA
eligibility.

4.   Maintenance of Housing

Department regulation 18 NYCRR 352.3(c) provides for the
payment of household expenses including, but not limited
to, the payment of rent for a period of 180 consecutive
days per stay when a recipient is receiving care
temporarily in a medical facility.  Medical facilities
include acute care hospitals, nursing homes, MA funded
alcohol treatment programs, State psychiatric centers
and VA hospitals.  Such recipients are not eligible for
FS and must be removed from the FS household, upon entry
into the medical facility.

5.   Water Allowance

Department regulation 18 NYCRR 352.3(b) requires the
payment of a separate water allowance for a recipient
who rents or owns his/her own home and who has a direct
obligation to a vendor for water charges.  The
regulation also requires the shelter allowance for a
recipient who is obligated through a lease agreement to
pay for sewer, water and/or garbage disposal to include
an amount for such charges, to the extent to which the
total of the rent allowance plus such charges does not
exceed the applicable maximum shelter allowance.  Water
allowances and allowances for sewer and garbage disposal
are not payable to persons in Section 8 certificate
housing.  Payment of a water allowance as a regular on-

Date:  December 29, 1994

Trans. No.  94 ADM-20                                          Page No. 12

going need in a PA household is counted as income when calculating FS eligibility. When calculating FS eligibility, the household is entitled to count as a shelter expense the amount of the FS standard utility allowance or the actual amount it pays for utilities, whichever is higher. If water, fuel and utilities for an HR/PG-ADC recipient are paid for by voucher, then they are excluded as income for FS purposes and cannot be counted as a deduction. The FS standard utility allowances are not counted when calculating MA eligibility.

6.   Property Repairs

Department regulation 18 NYCRR 352.4(d) provides for the payment for repairs of property owned by an A/R when the property is income producing and the repairs are essential to retain that status, or when the repairs are necessary to the health or safety of the recipient. A district should evaluate whether it is more appropriate to assist an A/R to make alternate housing arrangements than to make repairs to the property. The district must weigh such factors as whether the repairs are necessary for the A/R's health and safety, the costs of the repairs in relation to the value of the property, whether the work requested is a repair or whether it is a capital improvement, and whether rehousing is a viable alternative for the particular A/R. Allowances for repairs are not counted as income when calculating FS and MA eligibility.

7.   Equipment Replacement or Repair

Department regulation 18 NYCRR 352.7(b) provides for the essential repair of heating equipment, cooking stoves and refrigerators provided provision cannot be made otherwise. If the district determines that replacement is more cost effective than repair, replacement can be authorized. Such allowances for repair or replacement of cooking stoves and refrigerators must not exceed the amounts in schedule SA-4a.

8.   Withholding of Rent by a District

Social Services Law Section 143-b, commonly called the Spiegel Act, allows a district to withhold the payment of rent, on behalf of a PA recipient, under certain circumstances including when there are housing conditions which are dangerous, hazardous or detrimental to life and health of the recipient. In order to use this law, the cooperation of local code enforcement agencies is necessary to document the nature and severity of code violations. Withholding of shelter

Date:  December 29, 1994

Trans. No.   94 ADM-20                                Page No. 13

payments pursuant to the Spiegel Act gives the recipient an absolute defense against the landlord's action for eviction based on non-payment of rent. When the Spiegel Act has been invoked by the district, the district must advise the PA recipient. If legal action has been initiated by the landlord, the district must notify the recipient. If the actual rent exceeds the shelter allowance, the district may withhold only the amount of the shelter allowance, unless the recipient gives permission for the district to withhold the actual amount of rent.

Where the district is withholding rent, the withheld rent is not counted as income when calculating FS eligibility and is not allowed as a FS shelter expense. When the withheld rent is paid to the landlord, it is not counted as income when calculating FS and MA eligibility.

9.   Withholding of Rent by a PA Recipient

Under certain circumstances, a recipient has the right to withhold rent payments. However, before doing so, the recipient should be referred to a legal advocate for assistance. When a recipient presents evidence that he/she has withheld rent because of a legitimate dispute with the landlord, the shelter allowance must be provided in the PA grant. However, the recipient should be advised not to spend this money because a court may order part or all of it to be paid to the landlord. The accumulated money is not a resource for the purpose of determining ongoing eligibility for PA. Participation in a rent strike, a court action, or verification that basic services (for example, heat) have not been provided is sufficient evidence to continue shelter payments. The withheld shelter allowance is counted as income when calculating FS eligibility and the total rent cost is counted as a FS shelter expense. When calculating MA eligibility, a shelter allowance withheld from the landlord has no impact. It should be noted that two-party rent checks are restricted rent checks. If a recipient believes that he/she has a legitimate dispute with the landlord, he/she should notify the appropriate district worker so that the district can withhold the rent.

C.   **Finding New Housing**

1.   Security Deposits

Department regulations 18 NYCRR 352.6(a),(b),(c) and (d) govern the provision of security deposits and specify

Date:  December 29, 1994

Trans. No.   94 ADM-20                                          Page No. 14

the  circumstances  under  which  a  security  deposit  should
be provided.  In many instances, the ability of a person
to  pay  a  security  deposit  makes  the  difference  between
securing  housing  and  becoming  or  remaining  homeless.
Security  deposits  are  not  limited  to  the  applicable
maximum  shelter  allowances.    Payment  of  a  security
deposit is not counted as income when calculating FS and
MA eligibility.

The  Department  has  issued  an  Administrative  Directive,
93 ADM-10,  which sets forth the requirements and policy
relating to the issuance of security deposits.

2.    Moving Expenses

Household moving expenses may be paid  under  Department
regulations  18  NYCRR  352.6(a)(1)  and  397.5(e).    These
regulations set forth the  circumstances  under  which
moving expenses may be paid,  and include the payment of
expenses  for  moving  to,    from,   or  between  temporary
housing accommodations.  Allowances for household moving
expenses  are  not  counted  as  income  when  calculating  FS
eligibility.

If the payment of moving expenses is  necessary  because
of  non-payment  of   rent  (and the failure to pay rent
is not due to a legitimate landlord/tenant dispute,   a
rent  strike,   or  as  a  result  of  the  application  of
Section 143-b of the Social Services  Law)  or  verified
client  caused  damages,   such  payment  constitutes  an
overpayment and is subject to recoupment.  The amount of
such   recoupment   is   not   counted  as  income  when
calculating FS and MA eligibility.

3.    Broker's/Finder's Fees

Department regulations 18 NYCRR 352.6(a)(1) and 397.5(j)
also   permit  a  district  to  pay  broker's/finder's fees.
A  district  may  determine  the  amount  of  a  broker's/
finder's fee that  is  necessary  to  secure  permanent
housing  in  that  district.    These  payments  are  not
limited to the maximum shelter allowances.   Allowances
for broker's/finders fees are not counted as income when
calculating FS and MA eligibility.

If the payment of broker's/finder's  fees  is  necessary
because  of  non-payment of rent (and the failure to pay
rent is not due to a legitimate landlord/tenant dispute,
a  rent  strike,   or  as  a  result  of  the  application  of
Section 143-b of the Social Services  Law)  or  verified
client caused damages, it constitutes an overpayment and
is  subject  to  recoupment.   The   amount   of   such
recoupments is not counted as income when calculating FS
and MA eligibility.

Date: December 29, 1994

Trans. No.  94 ADM-20                                        Page No. 15

4.  Purchase of Furniture

Department regulations 18 NYCRR  352.7(a)  and  397.5(a)
and  Schedule SA-4a set forth the conditions under which
a district may pay for the purchase of necessary and
essential furniture, furnishings, equipment and supplies
required for the establishment of a home.    Department
regulation 18 NYCRR  397.5(f) permits districts to pay
for necessary furniture and clothing to enable a  person
to  move into his/her own residence from a nursing home,
hospital or  other  institution.     Allowances for the
purchase  of  necessary  and  essential  furniture,
furnishings, equipment and supplies required  for the
establishment  of a  home  and allowances for necessary
furniture and clothing to enable a person to  move  into
his/her own residence from a nursing home,  hospital or
other institution  are  not  counted as income. when
calculating FS and MA eligibility.

5.  Shared Housing

a.  PA Individual/Family Residing with Persons Not
Receiving PA (NPA household)

A  district  should  evaluate  whether temporary or
permanent housing with friends or relatives is
available to a homeless person.   When housing with
friends or non-legally responsible relatives who
are not  in receipt  of PA is available,  but not
without cost,  the PA recipient may  contribute to
the housing costs,  or a room and board rate may be
negotiated  with  the  prime  tenant/homeowner
(Department regulation 18 NYCRR 352.8).

(1)  Contributing  Toward  Costs of  NPA  Household
Expenses

(a)  Public Assistance Budgeting

The  actual  amount  the  PA  recipient
contributes  to  the  NPA  household's
expenses,  up to the shelter maximum with
heat allowance for the appropriate family
size,  must be provided in the PA budget
as  the  shelter allowance.  This amount
must be provided even if it exceeds the
actual  rent or mortgage cost incurred by
the host household. In addition, the PA
recipient  is  eligible  for a basic
allowance,  a home energy allowance,  a
supplemental home energy allowance, a
restaurant allowance if the PA family
does  not  have  the  use  of  cooking

Date:  December 29, 1994

Trans. No.  94 ADM-20                                          Page No. 16

---

facilities,  and any other appropriate
special needs allowances.

NOTE:   When  the  NPA  prime  tenant
receives  a  rent  subsidy  under  the
Section 8  certificate  program,  the PA
shelter allowance will be the amount from
the  appropriate Section 8 rent allowance
schedule,  as  set  forth  in  Department
regulation  352.3(d)(iii) or (iv).   When
the PA household has  a  room  and  board
arrangement  with a Section 8 certificate
prime tenant, the negotiated rate maximum
is  determined  by  using the appropriate
Section 8  rent  allowance  schedule   in
place  of  the district shelter allowance
with heat schedule [352.3(a)] in the room
and board methodology.

(b)   Food Stamp Budgeting

Persons  who live together,  and purchase
and  prepare  food  together,  must  be
treated as a single FS household.  If the
PA  recipient purchases and prepares food
with  the  host  household,  then the host
household must be included as part of the
FS  household.   If the NPA host household
refuses  to  be  included  in  the  FS
household,  even though it purchases and
prepares food with the PA household, then
the PA household is not eligible for FS.

If the PA household and the NPA household
do  not  purchase  and  prepare  food
together,  then  the  FS  household
composition  rules must be applied before
determining whether the two households
may  be  considered  separate  for  FS
purposes.   Food  stamp  household
composition  rules  require  that  the
following persons be treated as a  single
household  even  if  purchasing  and
preparing food separately:

-   a  spouse  of  a  member  of  a
    household;

-   a child under 18 years of age, other
    than  a  foster  child  under  the
    parental  control  of  an  adult
    household  member  who  is  not  the
    child's parent or stepparent;

Date:   December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 17

a parent and his or her child or
stepchild 21 years of age or younger
who are living together, unless the
child is a parent living with his or
her child or a spouse living with
his or her spouse.

These rules differ significantly from the
"legally responsible relative" concept
used for calculating eligibility for PA.
Therefore, it is important to review the
FS household composition rules carefully
before determining whether the PA
household and the NPA household may be
treated as separate FS households. The
household's declaration regarding food
purchase and meal preparation must be
accepted when determining the FS
household composition.

Application of the purchasing/preparing
and household composition rules will
result in one of the following FS
situations:

- Mixed Household

    - PA household and NPA host
      household receive FS as one FS
      household.

- Separate Households

    - PA household receives FS; NPA
      household does not receive FS
      because it is ineligible for
      reasons other than purchasing/
      preparing, and/or household
      composition rules, or it did not
      apply for FS.

    - PA household receives FS as one
      household; NPA household receives
      FS as a separate household.

    - PA household does not receive
      FS because it is ineligible, for
      reasons other than purchasing/
      preparing or household composition
      requirements; NPA household
      receives FS.

    - One PA household receives FS as
      two separate households.

Date:  December 29, 1994

Trans. No.   94 ADM-20                                          Page No. 18

- Ineligible Households

    - PA and NPA households are treated as a single household and the household is ineligible for FS.

    - PA and NPA households are treated as separate FS households under purchasing/preparing and household composition rules but both households are ineligible for FS.

Once the appropriate household composition is determined, the amount of the allowable FS excess shelter deduction must be determined and used to calculate the benefits of each FS household.  If the PA and NPA households are one FS household, then the shelter amount used to calculate the FS excess shelter deduction is the amount of rent or mortgage that is paid by the combined PA and NPA households.  If the FS household pays for heat and utilities separate from rent, or is eligible for HEAP, these expenses also are used to calculate the excess shelter deduction.

However, when the PA and NPA households are not receiving FS as a single FS household, the amount which is paid toward housing by each FS household is the shelter cost for that household.  For example, if the PA family is paying $150 of a $300 housing cost, then $150 is the FS shelter cost for the PA family.  Also, the amount each FS household pays toward heat and utilities, or a prorated portion of the heating and/or utility standard, whichever is higher, is used to calculate the excess shelter deduction.

(2)  Paying for Room and Board

    (a)  Public Assistance Budgeting

        In a room and board arrangement, the NPA family charges the PA recipient a flat

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 19

rate which includes room and board.  The
room and board allowance may not exceed
the sum of the basic allowance, the home
energy allowance, the supplemental home
energy allowance and the maximum shelter
allowance (with heat) for the appropriate
PA family size.  In addition, each member
of the PA household is eligible to
receive a monthly personal needs
allowance of $45.

    (b)  Food Stamp Budgeting

Persons who are boarders are ineligible
to receive FS as separate FS households.
However, the NPA family charging board
may request that the boarders be included
as members of its FS household.  The
household would then become a mixed FS
household.

For FS purposes, parents and children may
not be boarders of each other and
siblings may not be boarders of each
other.  If a person is not a boarder for
FS purposes but is a boarder for PA
purposes, it will be necessary to
establish a mixed household case and to
include all income of both the PA and the
NPA households.  Shelter costs are
calculated using the actual shelter
expenses of the dwelling.

  b.  Separate Public Assistance Households Living
Together

If two or more persons or families who are eligible
for separate grants of assistance are sharing
housing because one or both otherwise would be
homeless or in danger of becoming homeless and no
one in one PA household is legally responsible for
anyone in the other PA household, their shelter
allowances must not be prorated notwithstanding
Department regulations 18 NYCRR 352.32(e)(1), (2)
and (3).  Rather, Department regulation 18 NYCRR
352.32(e)(4) should be applied if these recipients
live or move in together.  The budgeting methods
set forth below and outlined in 83 ADM-52 are tools
for districts to help recipients retain or secure
permanent housing.  The district should:

  (1)  Determine each family's proportionate share of
the actual rent.  For example, in a household
consisting of a 3 person ADC household and a 1

Date:   December 29, 1994

Trans. No.   94 ADM-20

person HR household,  where the rent is $300, the ADC household's proportionate share is $225 (3/4 of $300) and the HR household's proportionate share is $75 (1/4 of $300).

(2)   Compare each household's proportionate share of the actual rent to the allowable maximum shelter allowance for the number of people in that household,  and budget the shelter allowance as follows:

(a)   If the proportionate share of rent for each household is greater than the respective maximum shelter allowances,  budget the maximum shelter allowance for each household.

(b)   If the proportionate share of rent for each household is less than the respective maximum shelter allowances,  budget the proportionate share for each household.  However, if one of the PA cases is closed, the remaining household's shelter allowance must be rebudgeted in accordance with procedures contained in 82 ADM-75 and Swift v. Toia (budgeting for NPA,  non-legally responsible household members).

(c)   If one household's proportionate share of the rent is greater than the allowable maximum shelter allowance and the other household's proportionate share of the rent is less than the allowable maximum shelter allowance:

–   The shelter allowance of the first household is the maximum; and

–   The shelter allowance of the second household is the actual total rent minus the shelter allowance of the first household but not more than the maximum shelter allowance.

Food stamp rules regarding household composition, and purchasing and preparing food must be considered when determining FS eligibility for separate PA households living together.   Sharing

Date:  December 29, 1994

Trans. No.  94 ADM-20                                          Page No. 21

housing expenses does not by itself make the separate PA households one FS household.  Further, if there is more than one FS household residing together,  each household is entitled to a shelter expense up to the amount paid toward rent.  Each household also is entitled, as a shelter expense, to the amount paid toward heat and utilities, or a prorated portion of the heating and/or utility standard, whichever is higher.

c.   Separate Public Assistance Cases With Separate Landlord/Tenant Agreements

Where two or more PA households reside together but each household has a separate landlord/tenant agreement, each such household is entitled to a shelter allowance in the amount charged to the respective households, up to the shelter maximum, provided no member of one household is legally responsible for the support of a member of the other household(s).  In these situations, the shelter allowances should not be prorated.  As discussed in 5.b. above, FS rules regarding household composition, and purchasing and preparing food must be considered when determining FS eligibility for separate PA households living together.

6.   Transportation and Child Care to Locate Housing

An EAF allowance must be provided to eligible homeless persons and eligible persons in danger of becoming homeless, under Department regulation 18 NYCRR 372.4, for transportation or child care necessary to permit parents to search for permanent housing.  The allowances provided should be for  the least expensive and most practical method of transportation (for example,  bus), and appropriate child care.  While there is no limit on the amount of times such allowances may be provided to permit a search for housing, or to secure child care, each district should have a method for verifying that the recipient actually used the money to search for housing (for example, a form signed by landlord, rental agent,  or real estate agent) or to secure child care. The method of payment can vary according to case circumstances and type of transportation or child care used (for example, car or bus/subway tokens, voucher for cab, rental of van), or child care provided.  Allowances for transportation and child care necessary to permit parents to search for permanent housing are not counted as income when calculating FS and MA eligibility.

Date:  December 27, 1996

Trans. No.  94 ADM-20                                        Page No. 22

_____

See 88 ADM-41 for a further discussion of school transportation for school-aged children living in temporary housing.

7.  Storage of Furniture and Personal Belongings

Department regulations 18 NYCRR 352.6(f) and 397.5(k) provide for an allowance for storage of furniture and personal belongings when it is essential in circumstances such as relocation, eviction or a move to temporary shelter.  The allowance can continue so long as eligibility for emergency or recurring PA continues and so long as the circumstances necessitating the storage continue to exist.  The need for storage must be essential.  The monetary value of the items may not be considered when evaluating whether to grant a storage allowance.  Districts should obtain a list of stored furniture and keep it in the case file.  Allowances for storage of furniture and personal belongings are not counted as income when calculating FS and MA eligibility.

D.  <u>Providing Temporary Housing Assistance for the Homeless</u>

When eligible persons or families present themselves to a district as being homeless and they are eligible for assistance to meet immediate needs, their immediate needs must be met promptly, in accordance with 86 ADM-7.

[Persons who resided in housing immediately prior to requesting temporary housing assistance and who were not made homeless as a result of a legal eviction or an emergency such as a fire, flood or other condition which rendered the premises uninhabitable are not presumed to be in immediate need of assistance.  In these cases, the district must make every reasonable effort to verify the applicant's eligibility for assistance (see 86 ADM-7), and shall be obligated to provide temporary housing assistance only upon verification that other temporary or permanent housing is not available.  Persons claiming to be victims of domestic abuse or violence should be distinguished from those claiming to be homeless for other reasons and the district must make every effort to ensure that appropriate services are provided in a timely fashion.]

<u>As a general rule, individuals and families must be responsible for making their own housing arrangements. Districts have a limited ability to provide housing and are neither expected nor obligated to provide temporary housing assistance unless it is clearly demonstrated that the person requesting assistance is faced with an immediate need for housing, has made reasonable efforts to secure housing and cannot access any other housing even on a temporary basis.</u>

Date:  December 29, 1994

Trans. No.  94 ADM-20                                Page No. 22.1

Each district must provide temporary housing assistance only to persons who can establish that they are without housing at the time assistance is requested and have sought and cannot access any other housing even on a temporary basis.  Persons who resided in their own or shared housing immediately prior to requesting temporary housing are presumed to not be in immediate need of assistance except in cases where a fire, flood or other sudden emergency has rendered the previous housing uninhabitable.  Such persons must establish that they cannot return to their prior housing.

All applicants must demonstrate by clear, convincing and credible evidence that they have actively sought and are unable to access any other temporary or permanent housing, including housing in which they had previously resided and temporary accommodations provided by friends or relatives. When an applicant has left shared housing, factors such as the duration of the stay, nature of the relationship of the applicant and the primary tenant, conditions in the household and the credibility of the applicant and the primary tenant all must be considered, and a determination of eligibility made based upon the totality of the circumstances.  A primary tenant's claim, oral or written, that the family can no longer reside in the shared housing is not, by itself, sufficient to establish that the housing is no longer available.

Physical or mental impairments of the applicant or a family member that may have limited the applicant's ability to access other housing must be taken into consideration in determining if the applicant has made adequate efforts to secure other housing.  Individuals or families fleeing domestic violence or child abuse should be distinguished from those claiming to be homeless for other reasons and the district must attempt to ensure that appropriate assistance is provided to such persons in a timely manner.

Applicants for temporary housing assistance are required to cooperate with the district's eligibility verification efforts by providing all information and documentation relevant to determining the applicant's eligibility for such assistance.  Districts must make reasonable efforts to verify an applicant's eligibility for assistance.  When assistance in obtaining information or documentation relevant to the verification of eligibility is required from an applicant, the district will attempt to assist the applicant to obtain such information or documentation, if necessary.

Temporary housing assistance is a temporary, emergency benefit and is intended to be provided only as long as is reasonably necessary for the recipient to find other housing.  Persons in receipt of temporary housing assistance remain responsible for locating their own housing including,

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 22.2

---

but not limited to, permanent housing, reunification with
family, appropriate residential facilities and, if necessary,
other temporary housing, such as shared housing.

When placing persons in temporary housing or when
transferring persons between temporary housing
accommodations, a district must attempt, but is not required,
to make placements within these persons' community, giving
consideration to the children's educational needs, employment
needs, medical needs and child care needs.

A person does not have to be domiciled or have an address to
be eligible for PA, MA or FS.  A permanent or temporary

Date:   December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 23

residence is not an eligibility requirement for receipt of assistance under these programs. Such persons, if otherwise eligible for assistance, would be eligible to receive a basic allowance plus a home energy allowance, a supplemental home energy allowance and any special needs allowance for which they may be eligible, including restaurant allowances. Homeless persons are entitled to expedited processing of their applications for FS. Expedited FS must be provided within one business day after the application filing date.

1.   Sanctioned Persons/Undocumented Aliens

A person who is a United States resident and who is either a citizen, lawful permanent resident, or a person permanently residing in the United States under color of law (PRUCOL) is eligible for PA, provided he/she meets the PA eligibility requirements, including the requirement to furnish evidence of lawful residence in the United States. All other aliens and persons who fail to furnish evidence of lawful residence may be eligible for EAF only. When a district cannot provide PA to such a person, it must attempt to aid him/her in locating temporary or permanent housing in public, private, non-profit or charitable institutions, if such housing is available.

A sanctioned person is a person who is ineligible for PA because he/she has failed to comply with certain PA eligibility requirements. A person may be sanctioned for such things as failure to comply with work requirements, failure to comply with child support enforcement requirements and refusal to execute a lien or mortgage on real property. Even though PA may not be provided for the sanctioned person, the needs of the remainder of eligible family members must be met. Special attention should be paid to the needs of the children. Where a person is subject to a PA sanction, it must be determined if the sanction also applies to eligibility for FS and MA. Under certain circumstances, a person or household may be ineligible for PA, but remain eligible for FS or MA.

2.   Dealing with Homeless Persons During Non-Business Hours

Each district must have procedures in place to ensure that homeless persons or those in imminent danger of becoming homeless can apply for and obtain temporary housing assistance and other emergency assistance during non-business hours. Obtaining proper documentation and making complete eligibility determinations may be difficult after business hours. Nevertheless, a district must attempt to verify eligibility to the extent possible, given the limitations of the after hours procedures (e.g., a worker on call who performs

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 24

telephone interviews).  The conditions which resulted in
the person or family becoming homeless may prevent a
person from being able to present documentation
necessary for determining eligibility.  For example, a
fire or an illegal lockout by a landlord may make
documents unavailable, at least temporarily.  Sometimes,
collateral contacts can be made by telephone to verify
the homeless persons' statements.  Other times, the
homeless persons may indicate that they can stay with
relatives or friends until the next business day.  In
such cases, the district must be assured that the
relatives or friends are able to provide temporary
housing for the homeless persons.

Where eligibility has not yet been clearly documented, a
district may provide temporary housing assistance until
the next business day, and require the homeless person
to come into the district the next business day to
continue the eligibility determination process.

If a person repeatedly uses the after hours emergency
telephone numbers and fails to come into the district
during normal business hours, the person must be
referred to Adult Protective Services (APS) or to
Preventive Services for Children and their Families,
respectively (see Section V.F.2 a. and b.).  After a
determination has been made that services are not
necessary, the person may be denied temporary housing
assistance based upon failure to cooperate with the
district in determining eligibility.

If an application is completed during non-business
hours, the application filing date for expedited FS
processing is the next business day after the
application is completed.  If local procedures do not
require that the application be completed during the
non-business hours emergency process, applicants must be
advised that they will be entitled to expedited
processing of their FS applications as soon as the
applications are filed.

3.   Types of Temporary Housing Assistance

A district must meet emergency needs of eligible persons
and determine, based upon the particular circumstances,
the most appropriate temporary housing assistance for
such persons.  Homeless persons do not have the right to
choose their own temporary placements.  The overriding
concern is the district's efforts to locate, secure and
pay for housing which meets basic standards of health
and safety, as set forth in applicable Department
regulations.  When the district determines that a
particular temporary housing placement is appropriate,
the homeless person must accept the placement unless, in

Date:   December 29, 1994

Trans. No.   94 ADM-20                                      Page No. 25

the district's judgment, he or she has good cause for
refusing to do so. It may be good cause if the homeless
person would be unable to participate in medical,
alcohol or drug treatment or in employment or training
because of a transportation hardship created by the
location of the temporary housing placement.

a.   Tier I Family Shelters

A Tier I family shelter, often referred to as a
congregate shelter, is a shelter which provides
short-term temporary housing and related activities
to 10 or more homeless families including, at a
minimum, a sleeping area, access to three
nutritional meals a day, supervision, a preliminary
needs determination, and health care. These family
shelters are regulated by Department regulation 18
NYCRR Part 900. A family with a pregnant woman,
child under six months of age, or a child or adult
with a contagious disease or special medical need
may not be placed in a Tier I family shelter. A
family in one of these shelters continues to
receive the regular PA grant minus the shelter
allowance, since the placement in a Tier I shelter
is generally for a period of less than a month.
The family also receives a restaurant allowance, if
appropriate. When calculating FS eligibility for a
family in a Tier I shelter, the shelter allowance
is not counted as income, but if the family is
receiving a restaurant allowance, the restaurant
allowance is counted as income. Also, if the
shelter allowance is paid directly to the shelter
by the district, the household may not claim a
shelter expense.

b.   Tier II Family Shelters

A Tier II family shelter is a shelter which
provides temporary housing and related activities
to 10 or more homeless families including, at a
minimum, private rooms, three nutritional meals a
day, supervision, assessment, permanent housing
preparation, recreation, information and referral,
health care and child care services.

Department regulation 18 NYCRR 352.8 authorizes
payment for a Tier II family shelter which is
regulated by Department regulations 18 NYCRR Part
900. Where the shelter provides three meals a day,
each member of the family receives $63 special
needs allowance. A family in a Tier II shelter
which serves fewer than 3 meals a day receives a
special needs allowance equal to the basic
allowance, the home energy allowance and the

Date:  December 29, 1994

Trans. No.  94 ADM-20                                Page No. 26

---

supplemental home energy allowance for the appropriate family size.  If there are no cooking facilities, a family also receives restaurant allowances (for the number of meals not provided as per schedule SA-5) and, if circumstances warrant, the $36 special restaurant allowance. Additionally, the family receives FS and MA.

Any PA payments made directly to the shelter on behalf of a family or made directly to the family, such as the special needs allowance, basic allowance or restaurant allowance, which are not otherwise excluded, do not count as income when calculating eligibility for MA.  The total amount of the PA payment made directly to the shelter is excluded as income when calculating FS eligibility.

c.  Shelters for Pregnant Women

A shelter for pregnant women provides congregate shelter to 10 or more pregnant women who are unmarried or separated and who have no children currently residing with them.  These shelters provide each person with a sleeping area, three nutritious meals a day, supervision, permanent housing preparation, health services, pre-natal services, and arrangement for the provision of post-natal services.  Department regulation 18 NYCRR 352.8 authorizes payment for housing a homeless pregnant woman in a shelter which is regulated under Part 1000 of Department regulations.  A woman in one of these shelters is eligible to receive a monthly special needs allowance of $45, plus a $50 monthly pregnancy allowance as specified in Department Regulation 18 NYCRR 352.7(k).

Any PA payments made directly to the shelter are exempt as income when calculating eligibility for MA.  Where the PA shelter payment is made directly to the vendor, the amount of such payment is excluded as income when calculating FS eligibility and the household may not claim a shelter expense.  Public assistance payments made directly to the woman, such as the special needs allowance, are counted as income when calculating FS eligibility.  Such payments are not counted as income when calculating MA eligibility.

d.  Shelters for Adults

A shelter for adults is an adult care facility for adults in need of temporary accommodations, supervision and services which provides temporary

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 27

residential care, room, board, supervision, information and referral, and where required by the Department or otherwise deemed necessary by the operator, social rehabilitation services. A facility providing such temporary residential services to fewer than 20 persons is not a shelter for adults unless the facility is operated by a district. A shelter for adults operated by a district, regardless of size, may be referred to as a public shelter.

Part 491 of Department regulations 18 NYCRR sets forth the requirements for the certification and operation of shelters for adults. An operator of a shelter for adults must obtain an operating certificate from the Department's Office of Housing and Adult Services (OHAS) in order to operate the shelter. OHAS inspects these shelters on a regular basis to determine compliance with Department regulations 18 NYCRR Part 491.

e.     Other Temporary Housing

There are facilities for homeless persons which are not Tier I, Tier II or shelters otherwise regulated by the Department. Public assistance for an eligible person residing in a facility not regulated by the Department is authorized under Department regulation 18 NYCRR 352.8. The rate which must be negotiated should be based upon the reasonable cost of the room, board and other covered items provided by a facility. If the facility is commercially operated, Department regulation 18 NYCRR 352.8(b)(1) limits the rate which may be negotiated. An uncertified or unapproved facility is not required to provide any particular housing related activities. However, if additional activities are provided, they should be taken into consideration when negotiating a rate. If the facility only charges for room and housing related activities, then a room rate should be negotiated and the individual or family would be eligible for the appropriate basic allowance, the home energy allowance, the supplemental home energy allowance, and a restaurant allowance if necessary. If the facility provides room and board, then a room and board rate should be negotiated and each member of the family is entitled to a $45 monthly personal needs allowance.

A person residing in one of these facilities may receive FS. Residence in one of these facilities is not considered a boarder situation under FS rules, even though the authority to make these

Date:  December 29, 1994

Trans. No.  94 ADM-20                                      Page No. 28

payments is the regulation regarding negotiated
room or room and board rates. A food stamp
recipient residing in this type of housing meets
the definition of residing in a shelter for
homeless persons.

Where the PA shelter payment is made directly to
the vendor, the amount of such payment is excluded
as income for purposes of calculating FS
eligibility and the household may not claim a
shelter expense. Any other PA payments made
directly to the homeless person and not otherwise
excluded, such as the personal needs allowance,
basic allowance and/or restaurant allowance, count
as income when calculating FS eligibility. These
payments are not counted as income when calculating
MA eligibility.

f.   Hotels/Motels

When no other suitable temporary or permanent
housing, either public or private, is available to
house an eligible homeless person, Department
regulations 18 NYCRR 352.3(e)&(f) authorize an
allowance to be made for shelter in a hotel or
motel. Such placement may be for up to six months
only, unless the commissioner of the social
services district determines annually that housing
other than hotels/motels or shelters regulated
under Part 900 or Part 1000 is not readily
available in the district and submits such
determination to the Department. Upon such annual
determination and submission, reimbursement for
hotel/motel costs, restaurant allowances and rental
fees for refrigerators may continue beyond six
months. A recipient's continued need for
hotel/motel accommodations must be reviewed and
evaluated monthly by the district. A person placed
in a hotel/motel is eligible to receive the basic
allowance, the home energy allowance, the
supplemental home energy allowance, the restaurant
allowance if no cooking facilities are available
and meals are not otherwise provided, and
appropriate special needs allowances. In addition,
he/she is eligible for a hotel/motel shelter
allowance, which is usually paid directly to the
hotel/motel.

When accommodations with cooking facilities are not
available, hotel/motel accommodations without
cooking facilities may be used. An allowance must
be made for rental of a refrigerator in hotel/motel
rooms when there are no cooking facilities
available and when a refrigerator is available from

Date:   December 29, 1994

Trans. No.   94 ADM-20                                     Page No. 29

the hotel/motel on a rental basis. The refrigerator rental allowance may not exceed $10 per week per room. Refrigerator rental allowances are not counted as income when calculating FS and MA eligibility.

A person temporarily placed in a hotel/motel is entitled to a restaurant allowance of $64 per person per month, when the hotel/motel has no cooking facilities and meals are not otherwise provided. An additional special restaurant allowance of $36 per month is available for any pregnant woman, and child under 18 years of age (regardless of which meals are taken in restaurants). The additional allowance also is available for any person under 19 years of age who is a full-time student regularly attending a secondary school or is in the equivalent level of vocational or technical training if, before attaining age 19, such person reasonably may be expected to complete the program of such secondary school. As stated in V.B.3, restaurant allowances paid directly to a recipient are counted as income when calculating FS eligibility. Vendor restricted restaurant allowances are not counted as income when calculating FS and MA eligibility.

When calculating FS eligibility, the amount of the PA shelter allowance made directly to the vendor is excluded as income and the household may not claim a shelter expense. When a PA shelter allowance for a hotel/motel accommodation without cooking and/or refrigeration facilities is paid directly to the homeless person, the amount of the shelter allowance which is in excess of the PA shelter with heat schedule for the appropriate family size is not counted as income when calculating FS eligibility (i.e., only the "excess shelter payment" is excluded as income if the hotel/motel payment is not vendor restricted). Any part of the shelter allowance which is excluded as income may not be used in determining a household's FS shelter deduction. These payments are not counted when calculating MA eligibility.

4.   Budgeting of Income in Temporary Housing Situations

A person who is homeless may have income which must be budgeted to determine whether any of it must be used to pay for the costs of the temporary housing. In some cases, the amount of the income would make him/her ineligible for PA if he/she were residing in his/her own home. However, when budgeting the income of a homeless person, the actual cost of the temporary housing, the

Date: December 29, 1994

Trans. No.  94 ADM-20                                      Page No. 30

applicable restaurant allowances, basic allowance, home energy, supplemental home energy allowance, and any appropriate special needs allowance must be used in establishing the monthly standard of need and in applying the Gross Income Test, as set forth in Department regulation 18 NYCRR 352.18. Thus, such a person may be eligible for PA while in temporary housing.

The PA budgeting procedures for a homeless person who has income are the usual PA budgeting procedures, regardless of the category of assistance. However, when a homeless person has income and is in temporary housing less than a full calendar month, a per diem PA deficit must be calculated. This is done by dividing the monthly PA deficit by the number of days in the particular month. For example, a homeless person is in a motel for 15 days in June and the monthly PA deficit is $600. The PA deficit is $20 per day or $300 for those 15 days. In determining the standard of need, the actual costs of the temporary housing must be used and the actual income applied.

It is important to note that a homeless family might be financially eligible for ADC or HR when another family with the same amount of income which is not homeless would be ineligible therefor. The reason for the distinction is that you must apply the actual cost of the temporary housing, which can be high, when determining the family's needs. Additionally, many allowances provided to the homeless family, such as the restaurant allowance, security deposit, storage, etc., are provided under ADC.

When calculating FS eligibility, PA income must be applied to shelter costs and special needs related to homelessness before other earned or unearned income is applied. Appropriate income exclusions must be applied against a PA grant to determine what portion of a grant, if any, is to be counted as income when calculating FS eligibility. The amount of the PA shelter allowance paid directly to a temporary housing provider is excluded as income when calculating FS eligibility. Any part of the temporary housing cost which the homeless person pays to the provider from non-PA income constitutes the shelter cost when determining the appropriate shelter deduction for purposes of calculating FS eligibility. Income from PA used to pay for special needs related to homelessness (e.g., $10 refrigerator rental, vendorized restaurant allowances, etc.) must be excluded as income when calculating FS eligibility. Monies paid for special needs from earned and/or other unearned income may not be excluded.

Date:  December 29, 1994

Trans. No.   94 ADM-20

A household which is not eligible for ADC or SSI but which is eligible for HR and which has earned and/or unearned income may be ineligible for FS because the household income is above the gross income limit. Furthermore, some ADC and/or SSI households may be eligible for a zero dollar benefit only, because of the amount of non-PA income.

5.  Resources

A homeless person may be ineligible for ADC or HR because he/she has resources that would make him/her ineligible to receive recurring PA. Such resources must be used if they are immediately available or can be converted to cash to meet the need. If the resources are not immediately available or cannot be readily converted to cash to meet the need, the homeless person may be eligible for EAF or EHR. When calculating FS eligibility, the resources of a homeless person who is not categorically eligible for FS must be determined in accordance with requirements set forth in the Food Stamp Source Book, Section XVI. When calculating MA eligibility, the resources of a homeless person must be evaluated in accordance with the requirements set forth in the MARG, page 356.

6.  Claiming for Categories of Assistance Available to Assist Homeless Persons

A homeless person may be eligible for PA under one or more of the following categories: ADC, PG-ADC, EAF, EAA, HR or EHR. However, EAA does not cover the cost of temporary housing unless the permanent housing was lost through vandalism or as a result of fire, flood or similar catastrophe which could not have been foreseen and not under the control of the SSI recipient. If permanent housing is lost for some other reason, the cost of the temporary housing for the homeless SSI recipient must be covered under HR or EAF.

If a particular item is not covered under ADC, that particular item should be paid for under EAF if the EAF criteria are met. If a homeless family is ineligible for ADC or EAF, the district must evaluate their eligibility for PG-ADC. A single homeless person and a homeless couple without a child may be eligible for HR. If the homeless single person is under 21 years of age and has resided with an eligible relative within six months, or is a pregnant woman (with a medically verified pregnancy) without children, such person may be eligible for EAF.

Generally, the cost of PA provided to a homeless person should be paid for according to the following

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 32

---

hierarchy:  for a person in a hotel/motel-ADC, EAF, PG-ADC and HR; for a person in a Tier I shelter, Tier II shelter or a residential program for victims of domestic violence-EAF, ADC, PG-ADC and HR, provided that the costs are allowable under the PA regulations for the respective programs.

If EAF is claimed for a case that is ADC, PG-ADC or HR, the case type should remain ADC, PG-ADC or HR. The costs of care are claimed as EAF by using the special "f" claiming code on the DSS-3209 upstate or the emergency indicator on DSS-3517 in New York City.

If a homeless person is eligible for EAF and EAA, the district should provide assistance under EAF before providing assistance under EAA. Such a circumstance may occur when the person is an SSI recipient and under the age of 21 or has a child under the age of 21.

NOTE:  When EAF is provided, it is important to ensure that all the EAF eligibility, documentation and authorization requirements detailed in Part 372 of Department regulations 18 NYCRR are met.

Emergency Assistance for Adults is intended to meet the emergency needs of SSI recipients and those persons who have been determined eligible for SSI by the Social Security Administration. Emergency Assistance for Adults may be used to meet certain specified needs. However, this program does not cover the cost of temporary housing assistance for homeless persons. If the need is not covered under EAA, PG-ADC or HR must be provided in accordance with Department regulation 18 NYCRR 370.8.

For costs not allowed under PA regulations, the only other potential funding source is Title XX. A homeless person who receives a service under Title XX must meet the eligibility requirements for the specific service and an authorization must support any payments and corresponding claims.

7.   Restriction of Temporary Housing Assistance Payments

Public assistance payments to an HR recipient may be restricted for administrative ease. Department regulations 18 NYCRR 381.2, 381.3, and 381.4 and the Thomasel v. Perales decision generally require that ADC payments be made directly to the family, unless the family voluntarily requests restricted payments or the district makes a determination that the family has mismanaged their ADC grant. This requirement is based upon federal regulations, the intention of which is to allow and encourage a family to manage its own affairs.

Date:  December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 33

However,   direct  payment  for  temporary  housing  is  not
always an issue of mismanagement, but rather an issue of
the  responsible  and  practical  use  of  resources  by  a
district to meet temporary housing needs of a family  in
crisis.    Direct  payment  in  these  situations  is  not
dependent upon the behavior of any particular family but
upon the nature of the services provided (i.e., provider
agrees to provide temporary shelter upon referral by the
district  in  return  for  a  direct  payment  from  the
district).    Furthermore,   the  Thomasel v.  Perales
decision  and  Part 381 of Department regulation 18 NYCRR
do not apply when a person does not have a  contractual
relationship  with  a  temporary  housing  provider and,
thus, is not a tenant.

8.    District of Fiscal Responsibility

A  district should make every possible effort to place a
homeless    person    within    his/her    own    district.
Nevertheless,  a district may find it necessary,  due to
the  unavailability of temporary housing within  its  own
district,   to  place  a  homeless  person  in  temporary
housing which is located in another district.

If  a  district  must  place  a  homeless  person  into
temporary  housing  in  another  district,   the  placing
district continues to be responsible for the PA,  MA and
FS needs of such person during the stay in the temporary
housing.  If the homeless person subsequently moves into
permanent housing in the district in which the temporary
housing  is  located,   the  placing  district  retains
responsibility  for  the PA needs during the month of the
move out of the  temporary  housing  and  the  following
month.   The placing district retains responsibility for
FS for the month of the move from the temporary housing
(see  Food Stamp Source Book  Section V-B-2.2).    The
placing district retains responsibility for  an  MA-Only
A/R  for  the month of the move to permanent housing and
may  retain  responsibility  for  the  following  month.
After  these  periods  expire,   the  new  district  is
responsible  for providing PA,  MA and FS for which such
person is eligible.   The placing district is responsible
for such things as security deposits,   broker's fees,
moving  expenses  and furniture allowances necessary for
the homeless person to move from the  temporary  housing
into the permanent housing.

A homeless person has the constitutional right to travel
from state to state and from district to district within
the  State  and  to declare his/her own domicile.   If a
homeless PA recipient  from  one  district  applies  for
assistance  in  another district and states that he/she
does not want to return to the district in which  he/she
has  been receiving PA,  the new district is responsible

Date:  December 29, 1994

Trans. No.  94 ADM-20                                           Page No. 34

for securing temporary housing.  However, the former district is responsible for the recurring PA and MA costs for the month the person enters the new district and the following month.  Security deposits, moving expenses, broker's fees and furniture allowances necessary to secure permanent housing in the new district are the responsibility of the former district, if they are required during the month of the move into the new district or the month after.  If these items are required after this time period, they are the responsibility of the new district.  The former district is responsible for providing FS for the month of the move (see **Food Stamp Source Book** Section V-B 2.2).

If a homeless person, not in receipt of PA in one district, applies for assistance in another district and states an unwillingness to return to the former district,  the PA, FS and MA needs must be met by the district to which he/she has applied, provided he/she is otherwise eligible.  When a person in receipt of MA-Only presents himself/herself as homeless in another district,  MA must be provided for the month of the move and may be provided through the end of the following month by the former district of residence.

It should be noted that a person would not be considered homeless if he/she had access to permanent housing in the district he/she left,  provided the housing has no hazardous or dangerous code violations, returning to the housing can be accomplished reasonably and return to such housing would not expose him/her to physical, emotional or sexual abuse.

E.     Responsibilities of Homeless Persons

Being homeless does not by itself exempt a person from having to meet the PA or MA eligibility requirements.  Although a homeless person may have difficulty securing requested items to verify eligibility,  being homeless does not exempt such a person from responsibilities pertinent to establishing eligibility for PA or MA.  Failure to cooperate in establishing PA or MA eligibility makes a homeless person ineligible for PA or MA.  However, the district has an obligation, where necessary, to assist an applicant to verify his/her eligibility.  (See Department regulations 351.5 and 351.6.)

A homeless person has an on-going obligation to seek permanent housing actively when residing in temporary housing.  A homeless person also has an obligation to accept suitable permanent housing found by the district.  If the homeless person refuses an appropriate permanent housing referral without good cause, a district may terminate the temporary housing allowance on the basis that such person has

Date:  December 29, 1994

Trans. No.  94 ADM-20                                Page No. 35

---

failed to use resources that will reduce or eliminate the
need for PA. In determining whether permanent housing is
appropriate, the district must consider such things as the
amount of rent, the amount of space and the number of rooms,
whether the housing is free of code violations, access to
school, necessary medical care, and employment.

When a homeless person refuses, without good cause, to accept
either temporary or permanent housing offered by the
district, referral to the agency's Division of Services must
be made (See F.2 of this Directive).

When a homeless person has income, he/she may be required to
use the income to pay for the temporary housing. A homeless
person must be advised of his/her obligation to make such
payments, the amount of the payments and the mechanism for
making such payments. If failure of a homeless person to
apply available income to the costs of temporary housing
results in discharge from such housing, the district is
obligated to help such person locate alternate temporary
housing. If the person has been informed that continuation
of such behavior will result in ineligibility for continued
temporary housing assistance, a district is not obligated to
provide temporary housing assistance if homelessness results
from such behavior. A district must meet the needs of any
child in the family and a referral to the district's Division
of Services must be made when the child's welfare is being
endangered by the parent's lack of cooperation with the
district. (See Section V.F.2b.).

F.     Additional Issues Regarding Homeless Persons

1.     Timely and Adequate Notice

       There are several difficult situations that arise
       concerning provision of timely notice to PA recipients
       who are homeless.

       A discharge from a Tier I or Tier II shelter is governed
       by Department regulation 18 NYCRR 900.8. Whenever a
       homeless person is being discharged from a Tier I
       shelter, the person must be given written notice of the
       reason for the discharge and must be advised of the
       opportunity to request a post-discharge hearing to be
       provided by the district. Whenever a homeless person is
       being involuntarily discharged from a Tier II shelter,
       the person must be given a written notice of the reason
       for the discharge and must be advised of the opportunity
       to request a pre-discharge hearing. The pre-
       discharge hearing is provided by the district, or the
       shelter if the district designates the shelter to
       provide such hearing. If a Tier II shelter resident
       requests such a hearing, the resident has the right to
       remain in the Tier II shelter until a decision after the

Date:  December 29, 1994

Trans. No.   94 ADM-20

hearing has been issued by the district or by the shelter in those cases when the shelter has provided the hearing. If the resident loses the hearing, the shelter may discharge the resident but must notify the resident of the right to request a fair hearing from this Department in accordance with the provisions of Department regulation 18 NYCRR Part 358.

A transfer or discharge from a Part 1000 (for pregnant women) shelter is governed by Department regulation 18 NYCRR 1000.8.

Whenever a homeless person is transferred from any temporary housing accommodation to another, Department regulation 18 NYCRR 358-3.6(e) provides that timely notice generally is not required. As long as the shelter need is being met in some form, it is unnecessary to provide timely notice and prior hearing. However, each time a person is moved among temporary accommodations, adequate notice and an opportunity for a fair hearing to challenge the adequacy of the new accommodations must be provided for the person.

Timely and adequate notice, and an opportunity for a State fair hearing is required when the transfer to another temporary housing accommodation would result in a change in the PA grant provided directly to the family. For example, a person may be eligible for assistance only because of the high cost of the temporary housing and the need for a restaurant allowance. A transfer to less expensive temporary housing which has cooking facilities could result in such person's ineligibility for the restaurant allowance. In such a situation, unless the person signs a statement indicating that he/she no longer wants to receive PA or agrees to the reduction, a timely notice is required, because the amount of the grant to the recipient (i.e., restaurant allowance) is decreased. Whether or not the person signs such a statement, adequate notice and opportunity for a State fair hearing is required. "Aid to continue" in this situation refers to the grant amount and not the temporary housing placement.

Timely notice is required if a change in temporary housing will result in a change in FS benefits.

2.   Additional Services for Homeless Persons

a.   Protective Services for Adults

Each district should be aware that Protective Services for Adults (PSA) are available and should be provided to each homeless person eligible for

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 37

such services pursuant to Article 9-B of the Social Services Law, Department regulation 18 NYCRR Part 457 and 90 ADM-40. Protective Services for Adults are mandated services which are provided by the district, without regard to an eligible person's income, in accordance with the provisions of Article 9-B of the Social Services Law and Department regulation 18 NYCRR Part 457. Protective Services for Adults are provided to a person who is at least 18 years of age and who, because of a mental or physical impairment:

(1)  is unable to meet essential needs for food, clothing, shelter or medical care, secure entitlements to which he/she is entitled or protect himself/herself from physical or mental injury, neglect, maltreatment or financial exploitation; and

(2)  is in need of protection from actual or threatened harm, neglect or hazardous conditions caused by the action or inaction of himself/herself or others; and

(3)  has no one available who is willing and able to assist him/her responsibly.

The services available under PSA include: assessing a person's services needs, including arranging for health and mental health evaluations; counseling for the client and/or his family; arranging alternative living arrangements, including emergency room and board for up to 30 days; assisting clients to obtain other needed services and benefits which are available from the district or other agencies; arranging for guardianship or other protective arrangements; acting as a guardian, representative or protective payee; and providing homemaker and housekeeper/chore services up to prescribed limits.

NOTE:  While a district may petition the court for guardianship, it is the court that determines whether or not to appoint a guardian. Similarly, the Social Security Administration decides whether to appoint a representative payee and who to appoint.

Although a person in need of PSA has the right to refuse services, the district has a responsibility, nevertheless, to provide services in certain situations. Department regulation 18 NYCRR 457.6 provides, "When the district believes that there is a serious threat to an adult's well being and the

Date:  December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 38

---

adult is incapable of making decisions on his or
her behalf because of mental impairments, the
social services official has a responsibility to
pursue appropriate legal intervention ... even
though such intervention may be against the wishes
of or without the knowledge of the adult at risk."
Department regulation 18 NYCRR 457.6 also sets
forth the specific legal interventions which may be
used on behalf of certain involuntary PSA clients.

b.   Family and Children's Services

A homeless person is responsible for meeting the
needs of his or her child.  A district must provide
social services to an eligible homeless family when
such services are necessary to protect the child
from abuse or neglect, and/or to prevent the child
from needing foster care.  Additionally, a district
must provide other supportive services for which a
homeless family is eligible, when such services
will aid in fostering the family's self-sufficiency
or will soften the impact of the dislocation.  A
district also should provide services to an
eligible family who is in danger of becoming
homeless.

If a PA worker has reasonable cause to suspect a
child is being abused or maltreated, the worker
must make a report to the New York State Child
Abuse and Maltreatment Register (SCR).  A child may
be considered maltreated if such child's physical,
mental or emotional condition has been impaired, or
is in imminent danger of becoming impaired as a
result of the failure of the parent to exercise a
minimum degree of care in certain matters.  These
matters include, among other things, failure to
provide adequate food, clothing, shelter,
education, or medical care when the parent(s) has
the financial resources or is given other
reasonable means to provide such necessities to the
child.  For further guidance, see Appendix C of the
"Child Protective Services Program Manual".

A homeless family may have a child who is at risk
of needing foster care, even though the child is
not being abused or maltreated.  In such a case,
the PA worker should refer the family to the
Division of Services for assessment of the family's
need and eligibility for services, including
preventive services to prevent foster care
placement.  The purpose of services provided by
such Division is to prevent a child from needing
foster care.  Such services must be made available
to a family which applies and is found eligible
therefor.

Date:  December 29, 1994

Trans. No.  94 ADM-20                                Page No. 39

---

An additional aspect of preventive services that PA staff should be aware of is the Preventive Housing Services rent subsidy.   This subsidy may be available to a family whose child is in foster care,  if the primary factor preventing the discharge of the child from foster care is the family's lack of adequate permanent housing.   The subsidy also may be available to assist the family in obtaining adequate permanent housing to prevent the child's need for foster care.   The subsidy may not be used to provide housing for a family in a shelter, hotel, motel or other temporary housing.

A homeless family may not need child protective services or preventive services necessary to avoid placing a child in foster care.  Nevertheless, the family may benefit from other social services.  The district should have a mechanism for assessing such a family's social services needs.   The assessment can be conducted by the PA worker or the Services worker.  However,  the actual provision of services for which the family is eligible should be provided by Services workers or through referrals and/or contracts with voluntary and other governmental agencies.

A family on the verge of becoming homeless should be targeted for intervention services.  When a PA worker believes that a family is likely to become homeless because of the family's specific circumstances, the district should have a mechanism whereby PA can refer the family for services that may prevent the need to leave their residence. Services that could be employed include tenant advocacy,  when landlords are refusing to make necessary safety repairs;  mental health/counseling services, when explosive or non-cooperative parents are alienating landlords;  emergency food and goods which might permit a family to pay the rent; information about referral programs in the family's neighborhood  which may be able to provide advocacy and assistance.

3.   Employment Issues of the Homeless

Homelessness,  in and of itself,  is not a ground for an employability exemption for either PA or FS purposes.  A homeless PA and/or FS recipient is subject to the same kind of employability determination as any other recipient.  Although homelessness does not automatically exempt a person from the usual employment requirements, homelessness does cause a disruption in ordinary daily activities.   For this reason, each homeless person's

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 40

situation must be evaluated carefully to determine if
other factors exist which would exempt the homeless
person from the usual requirements.   For example, a
transportation hardship may exist for employment
purposes because of the location of the person's
temporary housing.

A quick diversion to employment could alleviate the need
for temporary housing assistance when the primary reason
for homelessness is economic.  However, the provision of
any meaningful employment and training programs to a
homeless person is especially difficult.   The temporary
and transitory nature of some housing placements, the
need to concentrate on finding permanent housing and the
isolation from other supportive services such as child
care, complicate the delivery of employment and training
programs.   Therefore, a district must make special
efforts to meet the employment and training needs of a
homeless person.  For example, a person assigned to the
Public Works Program may require a flexible schedule so
as to allow time to conduct a search for permanent
housing.

4.  Persons With AIDS or HIV-Related Illness Who Are Faced
    With Homelessness

    Districts may provide additional money to house a person
    with AIDS or HIV-related illness who is in danger of
    becoming homeless.    See 90 ADM-8 for further
    information.

G.  **Medical Assistance Implications**

In general, an MA application submitted by a homeless person
should be evaluated in the same manner as other
applications.  A homeless person's residence is generally the
district in which the applicant is present at the time of
application, unless placed by another district or currently
in receipt of MA in another district.  However, the question
of residency should never be a barrier to the provision of
medical care to a homeless person.

The following guidelines should be used with respect to a
homeless person.

1.  Emergency Care

    An emergency for MA purposes is defined as "care
    rendered to patients with severe, life-threatening or
    potentially disabling conditions which require immediate
    intervention."

Date:  December 29, 1994

Trans. No.  94 ADM-20                                         Page No. 41

Once MA eligibility is established, the district must use all reasonable means to assure that the applicant can receive services. When there is not an immediate need for medical services, the district must ensure that arrangements have been made to have a Common Benefit Identification Card (CBIC), or an MA Identification Card (MA ID) for New York City A/Rs, sent to the A/R. When the A/R needs verification of eligibility before the CBIC or MA ID card can be received, the district must assure that such verification is provided through either the issuance of a temporary authorization (DSS 2831A) or temporary (EMEVS) MA card or the district may telephone the provider to explain that eligibility has been determined and that the system is in the process of being updated to reflect eligibility.

The district has limited ability and responsibility to assure provision of medical services until an applicant's MA eligibility is established. While the district should make all attempts to conduct an interview as expeditiously as possible in cases of emergency and may use secondary sources of documentation to confirm eligibility, the district is not required to pay for medical services, even in cases of emergency, until eligibility is confirmed. As 86 ADM-7 directs, the district should refer each applicant who has a true medical emergency to a hospital emergency room. Hospitals are required to address the medical emergency.

NOTE:  MA coverage is provided to illegal or undocumented aliens who require care or services as a result of emergency medical conditions and who are otherwise eligible. In these circumstances, the decision as to whether or not medical treatment is required due to an "emergency" must be made by a licensed physician. See 88 ADM-4 for procedures for documentation of emergencies and authorization of MA.

The "Medical Assistance-Only Cases" section of 86 ADM-7 "Meeting Immediate Needs of Applicants for Public Assistance" sets forth pertinent guidelines.

2.   Public Shelters

Medical Assistance must be provided to a homeless person residing in a public shelter who applies and is determined eligible. To ensure that a homeless person receives his/her Common Benefits Issuance card, see 89 ADM-2, "Home Relief Cash Allowance for Persons in Public Shelters for Adults (Thrower v. Perales)" for a list of mailing address options.

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 42

---

3.  Pregnant Women

Each district was instructed in 90 ADM-9 "MA
Eligibility: Perinatal Care/Presumptive Eligibility" to
accept fiscal responsibility for each presumptively
eligible homeless pregnant woman who states that she is
living in the district.

4.  SSI-Related Individuals

If an applicant is determined eligible as an MA-Only
SSI-related individual, the district must follow the
procedures described in 88 ADM-50 "Federal Changes
Regarding FFP for MA-Only SSI-Related Individuals in
Public Emergency Shelters ..." and 86 ADM-23 "MA-Only
SSI-Related Eligibility Requirements for Temporary
Residents of Public Emergency Shelters for the Homeless
and Limited FFP for MA-Only Recipients in the Month(s)
they Enter or Leave Public Institution".

5.  EAF Recipients

The district should review the cases of homeless persons
receiving assistance under EAF to determine if any such
persons are eligible for MA.  This action is necessary
due to the changes cited in Section (V)(D)(6) of this
administrative directive which require cases to be
claimed as EAF, whenever possible.  Unlike ADC, PG-ADC
and HR, EAF recipients are not automatically eligible
for MA.  Homeless persons who are not eligible for MA
and who have a medical emergency may be eligible for EAF
to pay for medical services.

These policies should be applied when reviewing any MA
application submitted by a homeless person.  However, if it
is subsequently determined that a homeless person is actually
a resident of another district, the district of fiscal
responsibility may change.

VI.   SYSTEMS IMPLICATIONS

A.   Upstate

For local and State management tracking purposes of homeless
trends, it is important for workers to input accurate
homeless indicator codes on screen 1.  The homeless indicator
codes should be maintained by adding and removing in a timely
manner as circumstances change.

Procedures for budgeting PA and FS benefits for a homeless
person are available on ABEL.  The following Shelter Type
codes may be used to correctly budget and uniquely identify
various homeless living arrangements; all allow actual

Date:  December 29, 1994

Trans. No.  94 ADM-20                                    Page No. 43

---

temporary housing costs in excess of the normal shelter
maximum (except "23 - Undomiciled").

> 06 - Hotel/Motel Temporary
> 23 - Undomiciled
> 33 - Homeless Shelter Tier II (Less than 3 meals/day)
> 36 - Shelter for Homeless (Less than 3 meals/day) except
>      those providing three meals per day:
> 19 - Tier II Family Shelter (3 meals/day)
> 21 - Shelter for Homeless (3 meals/day)

All these costs are budgeted with a basic allowance, home
energy allowance, and supplemental home energy allowance
except the following:  a resident of a Tier II shelter which
provides three meals per day (Code 19) - this resident
receives a special needs allowance of $63 per month, per
person and a resident of a shelters for homeless (Code 21)
who receives $45 per month, per person personal needs
allowance.

Whenever a district places a homeless person into temporary
housing in another district, a manually calculated FS benefit
will be required, with the results recorded on the PA/FS
Bottom Line Budget Screen.

Several unique payment types also are available on WMS to
authorize various payments to or on behalf of a homeless
person.

Other specialized codes such as the "Shelter Proration
Indicator" may be used on ABEL to facilitate proper budgeting
of shared housing situations such as described for "Separate
Public Assistance Households Living Together" on pages 19, 20
and 21.  For complete budgeting details please refer to the
ABEL Manual Section K. II. B.

When the district places a homeless person into temporary
housing in another district, workers may use the Cross
District Calculation function on ABEL to automatically
calculate benefits using the new district's standards while
retaining fiscal responsibility.  (This eliminates the former
need to manually calculate FS and use Bottom-Line Budgets.)

B.   Downstate

Current NYC ABEL software contains the following homeless and
temporary shelter codes:

> 06 - Hotel/Motel Temporary
> 23 - Undomiciled
> 33 - Homeless Shelter -Tier I or Tier II (Less than
>      three meals per day)
> 34 - Homeless Shelter - Tier II (Three meals per day)
> 35 - Homeless Shelter - Non-Tier I or Non-Tier II

Date:  December 29, 1994

Trans. No.   94 ADM-20                                    Page No. 44

_____

For Shelter Types 06, 33 and 34, the actual shelter cost paid
is entered in the PA Shelter Amount field.   No entry should
be made in the FS Shelter Amount field.

For  Shelter Type 35,  the worker should only enter an amount
in the FS Shelter Amount field if the client is  required  to
pay  a portion of the shelter cost.   No entry should be made
in the PA Shelter Amount field.

For Shelter Type 23,  no entry is made in either the FS or PA
Shelter Amount fields.

ABEL   includes   input   PA Shelter Amounts  only  in  the
determination  of  eligibility for Public Assistance   for
Shelter  Types  23,   33,   34,   35  and  non-restricted  06
situations.   After determining that a household is  eligible
for Public Assistance, ABEL will not include the amount of PA
shelter  costs  payable  to  the  homeless  facility  in  the
calculation  of  PA  benefits  to  be  received  by  the  PA
household.   The district should issue the shelter payment for
these shelter situations via a single issue payment.   If the
shelter payment for Shelter Type 06 is restricted, the amount
of  shelter entered in the PA Shelter Amount field (capped at
$2,000.00 monthly) must  be  routed  to  the  Income  Support
Center responsible for the PA case.

In some situations, income will exceed needs after passage of
all  PA  Eligibility Tests.   This occurs  due  to  ABEL's
exclusion  of  shelter from total needs in the calculation of
PA benefits described above.    ABEL will output  a  budget
result  which  indicates  the  PA case  is to receive a zero
recurring benefit.   The amount of income in excess of  needs
should  be  applied  against  the  shelter  cost paid to the
facility.   The zero issuance budget can be used to authorize
PA and FS benefits.   A Bottom Line budget is  not  required.
The district  should consult its procedures for instructions
on processing these cases.

Restaurant allowance codes can be entered for  Shelter  Types
06, 23, 33 and 34 but not for 35.

VII.   <u>EFFECTIVE DATE</u>

This Directive is effective December 29, 1994.

                                    _____
                                    Michael J. Dowling
                                    Commissioner

FILING REFERENCES

| Previous ADMs/INFs | Releases Cancelled | Dept. Regs. | Soc. Serv. Law & Other Legal Ref. | Manual Ref. | Misc. Ref. |
|---|---|---|---|---|---|
| 93 ADM-10 | 83 ADM-47 | Part 351 | 131 | PASB | Dear Comm. |
| 91 ADM-43 | | Part 352 | 143-B | XIII-D-all | Letter |
| 91 ADM-38 | | Part 358 | Article 9-B | IX-F-1, X | 8/15/83 |
| 90 ADM-40 | | Part 365 | | XIV-H-all, | Dear Comm. |
| 90 ADM-19 | | Part 366 | | XV, | Letter |
| 90 ADM-13 | | Part 370 | | XVI-all, | 5/15/86 |
| 90 ADM-9 | | Part 372 | | XVII-all, | GIS Message |
| 90 ADM-8 | | Part 381 | | XXIV-C-1, | 87 IM/DC006 |
| 90 ADM-7 | | Part 397 | | XXIII-M- | 87 IM/DC009 |
| 90 ADM-1 | | Part 457 | | all, | 87 IM/DC023 |
| 89 ADM-13 | | Part 491 | | MARG | 87 IM/DC025 |
| 89 ADM-2 | | Part 900 | | pp.392-399 | 92 IM/DC008 |
| 88 ADM-50 | | Part 1000 | | 406-407 | |
| 88 ADM-41 | | | | FSSB | |
| 88 ADM-4 | | | | V-A-4.1 | |
| 87 ADM-42 | | | | V-B-2.1 | |
| 86 ADM-23 | | | | V-B-2.2 | |
| 86 ADM-7 | | | | V-E-1.3 | |
| 83 ADM 52 | | | | VIII-H-all | |
| 83 ADM-47 | | | | XI-C-5.4 | |
| 82 ADM-75 | | | | XVI-C-3 | |
| | | | | V-3.1 | |