Exhibit 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------- x

In the Matter of the Application of

MARIAH LOPEZ,

                                  Petitioner,

                -against-

N.Y.C. DEPARTMENT OF HOMELESS SERVICES,

                              Respondent.

------------------------------------------------------------------------- x

**VERIFIED ANSWER**

Index No. 100871/2017

Motion Seq. No. 1

I.A.S. Part 42 (Bannon, J.)

Respondent, N.Y.C. Department of Homeless Services ("DHS") by its attorney, Zachary W. Carter, Corporation Counsel of the City of New York, as and for its Verified Answer to the Verified Petition, dated June 27, 2017, respectfully alleges as follows:

        1.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "1" of the Verified Petition.

        2.   Admits the allegations set forth in paragraph "2" of the Verified Petition.

        3.   Denies the allegations set forth in the first, second, and third paragraphs of paragraph "3" of the Verified Petition, but admits that Petitioner previously commenced an Article 78 proceeding in the Supreme Court of New York County against DHS and Project Renewal, Inc. challenging her reassignment from the Marsha's House shelter in the Bronx, asserting that her reassignment constituted illegal retaliation for having brought a federal action against the Respondents under the Americans with Disabilities Act ("ADA"), and seeking an order reassigning Petitioner to Marsha's House, which proceeding was assigned to the Honorable Barbara Jaffe, Lopez v. N.Y.C. Homeless Services and Project Renewal, 100632/2017; that Justice Jaffe subsequently dismissed that Article 78 proceeding on the record submitted to the

court; and that Justice Jaffe determined that DHS was entitled to transfer Petitioner from Marsha's House to another shelter within the DHS system. The fourth paragraph of paragraph "3" of the Verified Petition is a legal contention that requires no response, but to the extent a response is required, DHS denies the allegations therein.

4. With regard to paragraph "4" of the Verified Petition, admits that the letter attached as Exhibit A to the Verified Petition (and Exhibit 15 hereto) is from Dr. Pierre Arty, MD and constituted the basis for Petitioner's request for a reasonable accommodation based upon her disability, which request was decided by DHS in the document attached as Exhibit C to the Verified Petition (and Exhibit 16 hereto).

5. With regard to paragraph "4" of the Verified Petition, admits that the letter attached as Exhibit B to the Verified Petition is from Petitioner and purports to state her objections to DHS' Reasonable Accommodation Request Determination dated June 26, 2017 which is attached as Exhibit C to the Verified Petition (and Exhibit 16 hereto).

6. With regard to the first paragraph of the letter attached as Exhibit B to the Verified Petition, deny the allegations therein, except admit that Petitioner provided DHS with a letter from her psychiatrist and a letter from her surgeon, and specifically denies that DHS has failed to offer Petitioner reasonable accommodations for her disabilities and instead avers that DHS has offered her shelter and reasonable accommodations.

7. With regard to the second paragraph of the letter attached as Exhibit B to the Verified Petition, denies the allegations therein, except (i) admits that on April 25, 2017 Petitioner filed a federal suit against the City of New York and Project Renewal, Inc., Lopez v. City of New York and Project Renewal, Inc., 17cv3014 (S.D.N.Y.), alleging that the defendants in that action were violating the Americans with Disabilities Act ("ADA") with regard to

permitting Petitioner to bring her dog into Marsha's House, a DHS shelter in the Bronx operated by Project Renewal, Inc. for LGBTQ single adults, (ii) admits that DHS had assigned Petitioner to receive shelter at Marsha's House, (iii) admits that the federal judge, the Honorable Valerie Caproni, granted Petitioner a TRO permitting her to bring her dog to Marsha's House, (iv) admits that on May 12, 2017 Petitioner filed an Article 78 proceeding in the Supreme Court of New York County against DHS and Project Renewal, Inc. challenging her reassignment from Marsha's House, asserting that the reassignment was illegal retaliation for having brought the federal action under the ADA, and seeking an order reassigning Petitioner to Marsha's House, which proceeding was assigned to Justice Barbara Jaffe, Lopez v. N.Y.C. Homeless Services and Project Renewal, 100632/2017; (v) admits that Justice Jaffe subsequently dismissed that Article 78 proceeding on the record submitted to the court; (vi) admits that Justice Jaffe determined that DHS was entitled to transfer Petitioner from Marsha's House to another shelter within the DHS system, and (vii) denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning 51st Street in Manhattan being a trigger for Petitioner's PTSD or the allegations concerning Petitioner's sexual assault while she was a child.

8. With regard to the third paragraph of the letter attached as Exhibit B to the Verified Petition, denies the allegations therein, except (i) admits that on May 31, 2017 the parties appeared before Justice Jaffe and then Judge Caproni, (ii) admits that on May 31, 2017 Judge Caproni heard testimony concerning the conditions at the WIN West shelter, and (iii) admits that Judge Caproni denied Petitioner's application for a TRO or a preliminary injunction preventing DHS from transferring Petitioner from Marsha's House.

9. With regard to the fourth paragraph of the letter attached as Exhibit B to the Verified Petition, denies the allegations therein, except (i) denies knowledge or information

sufficient to form a belief as to the truth of the allegations concerning Petitioner's exhaustion, and (ii) admits that DHS' Medical Director has spoken with Petitioner's psychiatrist, Dr. Pierre Arty, concerning Petitioner's request for a reasonable accommodation.

10. With regard to the fifth paragraph of the letter attached as Exhibit B to the Verified Petition, denies the factual allegations therein, except (i) admits that Petitioner has obtained relief in several prior suits against the City in matters that did not involve DHS or the City's shelter system, (ii) admits that Petitioner is and identifies as a transgender woman; (iii) denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the individuals who raised Petitioner and Petitioner's role in passing legislation, and (iv) states that the paragraph contains many legal contentions that require no response, but to the extent a response is required, DHS denies those contentions.

11. The sixth and last paragraph of the letter attached as Exhibit B to the Verified Petition constitutes a legal contention that requires no response, but to the extent a response is required, DHS denies the allegations therein.

12. With regard to paragraph "4" of the Verified Petition, admits that the document attached as Exhibit C to the Verified Petition is a true and correct copy of DHS' Reasonable Accommodation Request Determination dated June 26, 2017, which is also attached as Exhibit 16 hereto.

13. With regard to paragraph "4" of the Verified Petition, denies knowledge or information sufficient to form a belief as to the nature or authenticity of the document that is attached as Exhibit D to the Verified Petition.

14. With regard to paragraph "4" of the Verified Petition, admits that the letter attached as Exhibit E to the Verified Petition purports to be from Sarah Acker, ANP-BC, Nurse

Practitioner and purports to provide a basis for Petitioner's request for a reasonable accommodation based upon her disability, which request was decided by DHS in the document attached as Exhibit C to the Verified Petition (and as Exhibit 16 hereto).

15. Denies the allegations set forth in paragraph "5" of the Verified Petition, but admits that Petitioner previously commenced an Article 78 proceeding in the Supreme Court of New York County against DHS and Project Renewal, Inc. challenging her reassignment from Marsha's House, asserting that the reassignment was illegal retaliation for having brought the federal action under the ADA, and seeking an order reassigning Petitioner to Marsha's House, which proceeding was assigned to the Honorable Barbara Jaffe, Lopez v. N.Y.C. Homeless Services and Project Renewal, 100632/2017; that Justice Jaffe subsequently dismissed that Article 78 proceeding on the record submitted to the court; and that Justice Jaffe determined that DHS was entitled to transfer Petitioner from Marsha's House to another shelter within the DHS system.

## AS AND FOR A STATEMENT OF PERTINENT AND MATERIAL FACTS, DHS RESPECTFULLY ALLEGES

16. Petitioner has not served the Respondent in accordance with the signed Order To Show Cause or Verified Petition. Moreover, as Justice Jaffe has already determined, DHS made a lawful, reasonable and appropriate decision to transfer Petitioner from the Marsha's House shelter. The need for the transfer resulted from Petitioner's persistent violation of the rules of Marsha's House, her threats against and physical attacks upon the staff at Marsha's House, and from DHS' desire to place Petitioner in a facility that will provide her more appropriate services and be better equipped to address Petitioner's conduct. DHS has assigned Petitioner to the Park Slope Women's shelter, which has services that are appropriate for Petitioner and is among the best operated and safest DHS shelters for single women, and DHS

has made reasonable accommodations at the Park Slope Women's shelter for Petitioner's disabilities.

17. Accordingly, this Article 78 proceeding should be dismissed (i) because Petitioner has not served the Respondent with process as required by the signed OTSC, (ii) because Petitioner has failed to exhaust the administrative remedies that are available to her to challenge DHS' June 26, 2017 Reasonable Accommodation Request Determination and her current shelter assignment, (iii) because DHS' decision to transfer Petitioner from Marsha's House has already been determined by Justice Jaffe to be neither arbitrary nor capricious and to not be in retaliation for filing the federal ADA action, and because Justice Jaffe's decision and judgment is *res judicata*, (iv) because, to the extent she seeks an order reassigning her to Marsha's House, Petitioner has failed to join an indispensable party, Project Renewal, Inc., and (v) because on the merits DHS' June 26, 2017 Reasonable Accommodation Request Determination is reasonable, appropriate and not arbitrary or capricious and because by assigning Petitioner to the Park Slope Women's shelter, DHS has assigned Petitioner to an appropriate shelter that will make reasonable accommodations for Petitioner's disabilities.

## OVERVIEW OF THE SHELTER SYSTEM AND MARTHA'S HOUSE

18. DHS operates a shelter system that provides housing for approximately 59,000 individuals. DHS generally classifies its shelter clients into three groups: families with children, adult families and single adults. During Petitioner's most recent stay in DHS' shelter system, Petitioner presented as a single adult, and consequently DHS has assigned her to shelters for single adults.

19. Most of DHS' shelters for single adults are operated by non-profit social service providers ("shelter operators") with which DHS contracts. The shelter operator and the shelter operator's employees run the shelter subject to requirements established by DHS. DHS

determines which shelter to assign a particular client to, and DHS is responsible for transferring clients from one shelter to another.  In contracted shelters, it is, however, the shelter operator's employees who have routine interactions with the clients in the shelters through the daily provision of shelter and social services.

20.     Shelter operators often contract with other entities to provide services at the shelters they operate.  Specifically, shelter operators often contract with private security businesses to provide security in their shelters.

21.     DHS attempts to provide shelters appropriate to the needs of various sets of its clients, and in 2016 DHS contracted with Project Renewal, Inc., a non-profit shelter operator, to operate a shelter designed to house young clients, under age 30, who self-identify as lesbian, gay, bisexual, transgender or questioning ("LGBTQ").  The resulting shelter, known as Marsha's House, opened on February 15, 2017 and is located on East 185th Street in the Mount Eden neighborhood of the Bronx.  It is the only DHS shelter specifically designated for LGBTQ individuals.

22.     The clients who reside at Marsha's House have all requested to be placed there on a voluntary basis, and DHS has not made any involuntary placements to Marsha's House.  LGBTQ individuals reside in many other DHS shelters, and DHS endeavors to make all of its shelters accessible to LGBTQ individuals.

23.     Marsha's House currently has beds for approximately 80 clients and is operated by Project Renewal, Inc.  Project Renewal, Inc. has contracted with Quality Protection Services, a business corporation, to provide security at Marsha's House.

24.     Marsha's House provides a variety of services to the clients living there, including meals.  There are, however, only limited onsite mental health services provided at

Marsha's House. On Wednesdays from 9 am to 5 pm there is psychiatrist, and on Thursdays from 9 am to 5 pm there is psychiatric nurse scheduled to be at Marsha's House. These staff mainly perform psychiatric evaluations as a component of clients' housing packages, and not as ongoing clinical work.

## PETITIONER'S HISTORY IN THE DHS SHELTER SYSTEM

25. Petitioner has previously been in the DHS shelter system on at least two occasions, March of 2008 and September of 2014. Petitioner's September 2014 stay in the DHS shelter system for adult families came to an end due to a physical altercation between Petitioner and her then partner. Attached as Exhibit A to DHS' Answer in Lopez v DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted[1] copy of the DHS "Client Home" record concerning Petitioner's history in the shelter system, which is a business record maintained by DHS.

26. Petitioner returned to the DHS shelter system in April 2017 and requested to be placed in Marsha's House. Although Petitioner exceeded the age parameters for assignment to Marsha's House, DHS, at its discretion, placed her in that shelter on or about Thursday April 20, 2017.

27. On April 20, 2017, representatives of Project Renewal, Inc. met with Petitioner to explain the rules of the shelter and to obtain her agreement to comply with the rules and regulations of DHS and the shelter. Petitioner acknowledged receipt of those rules and signed agreements to comply with the rules. Attached as Exhibit B to DHS' Answer in Lopez v DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct

---

[1] The exhibits to the answer in Lopez v. DHS & Project Renewal, 100632/2017 and the exhibits to this answer in 100871/2017 have been redacted to remove personal information, such as birth dates, client numbers and the names of clients who are not party to this litigation.

redacted copy of the rules that Petitioner acknowledged receiving on April 20, 2017 and her agreements to comply with those rules signed on April 20, 2017.

28. Among other things, the rules (i) require clients to submit to passage through an x-ray machine at the entry to the shelter and prohibit clients from bringing alcohol and candles into the shelter (See page 3 of Exhibit B to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, paragraph on "Entry Procedure/Locker Searches"), (ii) prohibit clients from bringing food into the shelter or taking food out of the dining room (See page 4 of Exhibit B, paragraph on "Food and Meals"), (iii) establish a curfew of 10:00 PM for return to the shelter (See page 5 of Exhibit B, paragraph on "Curfew"), and (iv) prohibit clients from entering the sleeping floors while intoxicated or verbally abusing staff or other clients in the shelter (See page 6 of Exhibit B, paragraph listing infractions).  The written agreements signed by Petitioner also provide that "Clients cannot bring alcoholic beverages … into the shelter" and that "There is no fighting or use [of] abusive or threatening language.   Harassment or intimidation of other residents or staff is strictly prohibited."  The agreement also provides that candles and fire hazards are prohibited and that "sexual activity … is not permitted in the shelter facility." (See page 10 of Exhibit B)

29. As detailed below, immediately upon arrival, Petitioner established a pattern of violating the rules of Marsha's House and of threatening the employees of Project Renewal, Inc. who sought to enforce those rules.

30. Although Marsha's House has a curfew of 10:00 PM when residents must be present, Petitioner arrived at Marsha's House at approximately 12:40 AM on the night of April 20-21, 2017.  Petitioner did not have her dog with her at that time, however, Petitioner got into an argument with a Project Renewal employee, Akeem Linton, about whether she could bring

her dog to the shelter.  Mr. Linton reported that when he advised Petitioner that he would consult with his supervisors about her dog, Petitioner told him that "she would have unnamed persons come to the shelter to fight him."  Mr. Linton also reported that Petitioner "came to the operations office several times afterwards to threaten him and stated that he would be attacked after work."  Attached as Exhibit C to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the April 21, 2017, 12:40 AM incident report concerning these events written by Kaedon Grinnell, the Project Renewal Shelter Director.

31. Later that morning, Petitioner made further threats to Mr. Linton, and their disagreement became so heated the police were called to the shelter.  No arrests were made. Attached as Exhibit D to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the April 21, 2017, 11:51 AM incident report concerning these events written by Kaedon Grinnell, the Project Renewal Shelter Director.

32. On Friday April 21, 2017, Petitioner and Kaedon Grinnell, the Project Renewal Shelter Director for Marsha's House, and Katina Roye, the Project Renewal Assistant Director for Marsha's House, signed a "DHS Commitment Contract."  In the contract, Petitioner again agreed, among other things, to "adhere to all shelter/clinical rules and regulations." Petitioner also expressly acknowledged that she "will be transferred to another DHS facility if I am not successfully housed within 60 days of entry to the program."  Attached as Exhibit E to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true a correct redacted copy of the DHS Commitment Contract.

33. Petitioner again violated the curfew on Sunday night April 23-24, 2017, arriving at 1:11 AM with food from outside, which is not permitted in Marsha's House.  Ms. Lopez was informed that she could not bring the outside food into the shelter, but she disregarded the directive and stated, "if you want to keep your fucking job you better leave me the fuck alone," and proceeded to enter the shelter with food.  Attached as Exhibit F to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true a correct copy of the April 24, 2017, 1:10 AM incident report concerning these events written by Kaedon Grinnell, the Project Renewal Shelter Director.

34. Forty minutes later, Petitioner violated another important rule and again refused to comply with staff instructions.  At the 2:00 AM bed count, staff found Petitioner in bed with another client, which is against the terms of the agreement Petitioner had signed.  The staff member informed Petitioner and the other client that they were not permitted to be in bed together, but Petitioner defied the rule and advised the staff member that Petitioner and the other client would stay in bed together.  Attached as Exhibit G to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the April 24, 2017, 2:00 AM incident report concerning these events written by Kaedon Grinnell, the Project Renewal Shelter Director.

35. On Tuesday April 25, 2017, Petitioner filed a complaint in the United States District Court for the Southern District of New York, Lopez v. City of New York and Project Renewal, Inc., 17cv3014 (S.D.N.Y.), alleging that DHS and Project Renewal, Inc. were violating the Americans with Disabilities Act ("ADA") in that Petitioner has "impulse control disorder, PTSD and anxiety" and that she needed her dog due to these disabilities.  Petitioner attached to her federal complaint a letter from Nurse Practitioner Jessica Pacannuayan, which stated that

- 11 -

Petitioner "is currently under our professional care for treatment for a mental illness defined by the DSM-V. ... I have prescribed an emotional support animal as part of the treatment program developed for Mariah." Attached as Exhibit H to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the April 25, 2017 Federal Complaint with its exhibits.

36. On Thursday April 27, 2017, Judge Caproni issued a Temporary Restraining Order that ordered DHS to permit Petitioner to bring her dog to the shelter until Monday May 1, 2017. Attached as Exhibit I to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct copy of the April 27, 2017 Federal TRO.

37. On Friday April 28, 2017, DHS determined that permitting Petitioner to have her dog was a reasonable accommodation for her disability. Since then Petitioner has been permitted to bring her dog into Marsha's House and any other DHS facility, and the parties to the federal action accordingly permitted the TRO to dissolve.

38. Despite having her dog, Petitioner continued to threaten the staff at Marsha's House and to violate the shelter's and DHS' rules.

39. On Tuesday May 2, 2017, Petitioner made threatening statements to two staff members and told them "the same thing that happened to your friend can happen to you. I know people that can make a lot of things happen, and your dead friend on the other side watches over you." Attached as Exhibit J to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the May 2, 2017, 8:13 AM incident report concerning these events written by Katina Roye, the Project Renewal Assistant Director.

40. On Sunday May 7, 2017, at approximately 8:15 PM, Petitioner created a fire hazard at Marsha's House by leaving lit candles unattended in her room.  As noted above, having candles in the shelter is against the rules of Marsha's House, and leaving them unattended while lit endangers everyone in the building.  See Exhibit L to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, for true and correct redacted copy of the May 9, 2017 case notes describing the incident with the candles and Mr. Grinnell's meeting with Petitioner.  Petitioner falsely asserted that she had not left lit candles unattended (three days later she admitted they were lit and unattended, see Exhibit N to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, which is a true and correct redacted copy of the Case Notes dated May 10, 2017 6:09 PM written by Kaedon Grinnell).

41. Also on Sunday May 7 at 11:25 PM, Petitioner came back to Marsha's House intoxicated and with a bottle of wine.  As noted above, possession of alcohol in the shelter is against the rules.  As before, Petitioner refused to comply with the rules and brought the wine into the shelter over the objections of the staff at the front door of Marsha's House.  Attached as Exhibit M to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the May 7, 2017, 11:25 PM incident report concerning these events written by Katina Roye, the Project Renewal Assistant Director. See also Exhibit L to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which Answer is Exhibit 7 hereto, for a true and correct redacted copy of the May 9, 2017 case notes describing the incident with the bottle of wine.

42. On Monday May 8, 2017, Mr. Grinnell met with Petitioner to discuss the three incidents of the prior day.  See Exhibit L to DHS' Answer in <u>Lopez v. DHS & Project Renewal</u>,

100632/2017, which Answer is Exhibit 7 hereto, for true and correct redacted copy of the May 9, 2017 case notes describing the incidents and Mr. Grinnell's meeting with Petitioner.

43. On Tuesday May 9, 2017, Project Renewal, Inc. requested that Petitioner be suspended for three days due to the alcohol incident. Attached as Exhibit P to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct copy of the May 9, 2017 Suspension Request Form submitted by Kaedon Grinnell, the Project Renewal Shelter Director.

44. On Wednesday May 10, 2017, at approximately noon, Petitioner threatened a food service worker at Marsha's House, Tonya Fowler, due to what Petitioner contended was an inadequately sized meal provided by Ms. Fowler to another client. Petitioner threatened Ms. Fowler that "she would beat the shit out of [Ms. Fowler]", and that she would be going outside to "get someone to put their hands on [Ms. Fowler]." The Assistant Director of Marsha's House, Katina Roye, intervened to move Petitioner away from Ms. Fowler. Ms. Fowler reported that she felt unsafe at work and that she believed Petitioner intended to harm her. Attached as Exhibit O to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the May 10, 2017 6:08 PM Notes History recounting the incident and Ms. Fowler's comments written by Kaedon Grinnell, the Project Renewal Shelter Director.

45. On Wednesday May 10, 2017, Mr. Uetake, the DHS Program Administrator responsible for Marsha's House, decided to transfer Petitioner to a shelter with greater mental health services and permanent DHS police, instead of private security guards. However, Mr. Uetake had not yet decided which shelter to transfer Petitioner to.

46. Ms. Roye and Mr. Grinnell subsequently met with Petitioner on May 10, 2017 at approximately 4:15 PM (i) to advise Petitioner that she was being transferred to another shelter and (ii) to discuss Petitioner's threats against Ms. Fowler. Petitioner admitted making the threats quoted above and asserted that they were "conditional threats." In the meeting, Petitioner went on to reiterate her threats against Ms. Fowler and stated that if DHS transferred Petitioner out of Marsha's House there would be a number of people waiting to attack Ms. Fowler. See Exhibit O attached to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto.

47. At the meeting on May 10, 2017, at approximately 4:15 PM, Petitioner was given a copy of the Client Notification of Transfer advising Petitioner that she would be transferred to another shelter on May 11, 2017. Petitioner refused to sign the form. Attached as Exhibit Q to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct redacted copy of the May 10, 2017 Client Notification of Transfer.

48. Mr. Uetake subsequently decided that Petitioner should be transferred to the WIN West shelter, and Ms. Lopez was given notice of her new shelter assignment on May 11, 2017. Attached as Exhibit R to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct copy of the May 11, 2017 Shelter Client Transfer Referral advising Petitioner that she was being transferred to theWIN West shelter.

## THE WIN WEST SHELTER

49. WIN West is a shelter for single adult females run by Women In Need, Inc. at 341 West 51st Street in Manhattan (between 8th and 9th avenues) with approximately 68 beds that has prior and ongoing experience with transgender clients.

50. Women in Need, Inc. is a non-profit corporation that has contracted with DHS to be a shelter operator.

51. WIN West has extensive mental health services on site and as of May 2017 provided the following on site services: Psychiatric Nurse Practitioner; four (4) social workers; four (4) clinical background Masters Level Case Managers; psychoeducational groups daily; a licensed practical nurse; DHS Police security; and a licensed creative arts therapist.

52. In May 2017, WIN West had transgender individuals residing in the shelter, and the WIN West staff receives EEO Diversity Training and Employment Sensitivity Training.

53. On information and belief, as of May 2017 WIN West had not had any Priority 1, 2 or 3 Incidents – as defined in the DHS Incident report form, see e.g. Exhibit C to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto - related to transgender clients during 2017.

54. As explained in more detail in Mr. Uetake's May 24, 2017 affidavit that accompanied DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Affirmation is part of Exhibit 7 hereto, Mr. Uetake reasonably decided to transfer Petitioner to the WIN West shelter.

## LITIGATION BEFORE JUSTICE JAFFE

55. On Friday May 12, 2017, Petitioner commenced an Article 78 proceeding, Lopez v. Department of Homeless Services and Project Renewal, 100632/2017, challenging

DHS' decision to reassign her from Marsha's House, asserting that the reassignment was illegal retaliation for having brought the federal action under the ADA, and seeking an order reassigning Petitioner to Marsha's House.  Attached as Exhibit 1 hereto is a true and correct copy of Petitioner's May 12, 2017 Request For Judicial Intervention, Order to Show Cause as endorsed by Justice Jaffe, and Notice of Petition in <u>Lopez v. Department of Homeless Services and Project Renewal</u>, 100632/2017.

56. Justice Jaffe heard oral argument from Petitioner and from counsel for the City and DHS on May 12, 2017.  Petitioner contended that the WIN West shelter was not safe for transgender women.  Attached as Exhibit 2 hereto is a true and correct copy of the transcript of the argument on May 12, 2017.  At the end of the argument Justice Jaffe orally instructed DHS to permit Petitioner to return to Marsha's House for the weekend and instructed the parties to return on Monday May 15, 2017.

57. Justice Jaffe heard further oral argument from Petitioner and from counsel for the City and DHS on Monday May 15, 2017.  Attached as Exhibit 3 hereto is a true and correct copy of the transcript of the argument on May 15, 2017.  Petitioner continued to contend that the WIN West shelter was not safe for transgender women, but she also asserted that she had a right to be assigned to Marsha's House because she is transgender, and Petitioner expressly stated that "I'm not going to be put anywhere but with transgender people.  In a transgender specific location." See page 15 of Exhibit 3.

58. At the end of that argument, Justice Jaffe ordered DHS to permit Petitioner to return to Marsha's House.  Specifically, Justice Jaffe ordered: "Pending the determination of this proceeding, respondents are stayed from enforcing the transfer referral of petitioner to the Win West Shelter.  Respondents to appear or answer on or before 5/24 before 5 pm.  This order is

conditioned on petitioner complying with respondents' rules & regulations. Respondents' employees are likewise directed to comply with the pertinent laws & rules of the facility." See endorsement to OTSC in Exhibit 1 hereto.

59. Petitioner was unable to comply with Justice Jaffe's requirement that Petitioner comply with DHS' and Marsha's House's rules and regulations. Specifically, on Wednesday May 24, 2017, Petitioner became involved in a variety of incidents at Marsha's House and hit a security guard at the shelter. The New York City Police were called, the police arrested Petitioner and reportedly, during the arrest, Petitioner bit one of the arresting officers. Attached as Exhibit 4 hereto is a true and correct copy of the incident reports concerning Petitioner's actions on May 24, 2017. Attached as Exhibit 5 hereto is a true and correct copy of the New York Unified Court System, Case Details Summary, dated May 25, 2017, concerning the criminal charges brought against Petitioner arising from these incidents.

60. As a result of this incident, DHS suspended Petitioner on May 24 from the shelter system for seven days, until May 31, 2017. Attached as Exhibit 6 hereto is a true and correct copy of the DHS Suspension Request Form dated May 24, 2017.

61. Also on May 24, 2017, Respondent DHS filed its answer and supporting affidavits to the Verified Petition in Lopez v. Department of Homeless Services and Project Renewal, 100632/2017. Attached as Exhibit 7 hereto is a true and correct copy of DHS' Answer and supporting affidavits as filed in Lopez v. Department of Homeless Services and Project Renewal, 100632/2017.

62. On the evening of Friday May 26, 2017, Petitioner returned to Marsha's House and threatened to kill one of the staff, telling the staff member "I showed your picture to everyone in Fort Green Brooklyn." "I'm going to have my cousins come and blow your fucking

head off." "I hate your fucking ass I'm going to get you killed." Attached as Exhibit 8 hereto is a true and correct copy of the incident reports concerning Petitioner's actions on May 26, 2017.

63. On May 31, 2017, the parties appeared before Justice Jaffe, who heard argument on the merits of the Article 78 proceeding. Attached as Exhibit 9 hereto is a true and correct copy of the transcript of the May 31, 2017 argument before Justice Jaffe. Although Petitioner described a series of problems and conditions at Marsha's House that she objected to and claimed to have been subject to, Petitioner argued that she should be reassigned to Marsha's House because, as an advocate for transgender people she should be participating in the administration of the shelter. She argued:

> "Project Renewal and City has represented over and over and over, your Honor, 'This is a new facility. This is a new facility.' There's no person in New York that is more experienced at opening new facilities than me. Joel A. v. Giuliani, I'm Joel A. Jean Dole v. I'm Jean Dole, Mariah Lopez v. Malory, I'm Mariah Lopez. Every single bed in social services that exists today, that did not exist before 1998, I had a direct hand in the opening of those programs. There are witnesses from the department of – from Administration for Children Services including their commissioner, deputy commissioner, that are willing to come in and provide testimony only to the limited fact that I'm an expert for new programs geared for young people." (underlining added) See pages 16-17 of Exhibit 9 hereto.

64. Petitioner also continued to contend that the WIN West shelter was not safe for transgender women. However, on the morning of May 31, 20167, Justice Jaffe dissolved her prior order, permitted DHS to transfer Petitioner to a shelter other than Marsha's House, including the WIN West shelter, and took the merits of the Article 78 proceeding under advisement.

65. On June 14, 2017, Justice Jaffe issued a decision and judgment in Lopez v. Department of Homeless Services and Project Renewal, 100632/2017, denying the Article 78

- 19 -

petition in its entirety and dismissing the proceeding on the merits.   Attached as Exhibit 10 hereto is a true and correct copy of Justice Jaffe's decision and judgment.

## THE EMERGENCY MOTION IN FEDERAL COURT

66. Immediately after concluding the appearance before Justice Jaffe on May 31, 2017, the parties appeared before Judge Caproni in the federal case on an emergency motion that Petitioner had filed on May 30, 2017 seeking an order enjoining Respondents from moving Petitioner from Marsha's House.   Attached as Exhibit 11 hereto is a true and correct copy of Petitioner's emergency motion in the federal court.

67. Judge Caproni heard arguments and took testimony on the emergency motion on May 31, 2017.   Petitioner continued to contend that the WIN West shelter was not safe for transgender women and called a witness to support that contention.   Judge Caproni heard the testimony, ruled that Petitioner had not demonstrated irreparable harm if she were transferred to the WIN West shelter, and denied Petitioner the preliminary relief she requested.   Attached as Exhibit 12 hereto is a true and correct copy of the transcript of the proceedings before Judge Caproni on May 31, 2017.

68. In the wake of these two May 31 proceedings, DHS transferred Petitioner to the WIN West shelter.

## EVENTS SINCE MAY 31, 2017

69. Petitioner never spent a night at the WIN West shelter.   Only at the end of the hearing before Judge Caproni did Petitioner assert that she viewed the neighborhood in which the WIN West shelter is located, the Theater District, to be a trigger for her PTSD because she had been sexually abused in that neighborhood when she was a child.

70. DHS subsequently took this assertion into account, and in an effort to find Petitioner a shelter she would accept, DHS offered her a bed at four other women's shelters with mental health services.  Petitioner rejected them all. Attached as Exhibit 13 hereto is a true and correct copy of the June 7, 2017 email chain between Petitioner and Assistant Corporation Counsel Evan Schnittman concerning such placements.

71. In the wake of Petitioner's refusal to accept shelter at WIN West, DHS reassigned her to the Park Slope Women's shelter at the Park Slope Armory, a safe location far from the Theater District with significant mental health services provided in part by Housing Works Healthcare, which is the same mental health provider Petitioner uses.   Park Slope Women's shelter has a Psychiatric Nurse Practitioner from Housing Works onsite Monday and Wednesday between the hours of 9:00am-5:00pm.  In addition, the Park Slope Women's shelter has a Patient Navigator from NYU Lutheran Medical at the shelter Monday through Friday from 9:00am-5:00pm who makes and escorts clients to their medical appointments.  There is also a Care Coordinator from CAMBA's Health Homes who is at the shelter Monday through Friday from 9:00am-5:00pm.  The shelter also provides a Substance Abuse counselor from Housing Works who provides individual and group therapy at the shelter Mondays and Wednesdays from 10:00am to 6:00pm.  In addition, the shelter has a MICA Specialist[2], four Case Managers, two Social Worker Supervisors, and an licensed master social worker on staff.

72. The Park Slope Women's shelter has beds for approximately 100 women, is safe, and accommodates transgender women.   Currently there are at least two transgender women in residence at the Park Slope Women's shelter.

---

[2] MICA stands for mentally-ill chemical abuser or mentally-ill chemically affected.

73. Petitioner has refused this assignment and has never spent a night at the Park Slope Women's shelter.

74. Petitioner then turned to her doctors in her continuing effort to have DHS reassign her to Marsha's House. On June 7, 2017, Petitioner provided DHS with a letter from Dr. Harold M. Reed, her surgeon, which letter says that Petitioner "needs to maintain the patency of her neo-vagina with dilations for 15 minutes 3 times a day. This cannot easily be done standing or sitting. She needs to be able to have the privacy of lying down during these times, as well as water soluble lubricant such as KY jelly." Attached as Exhibit 14 hereto, is a true and correct copy of Dr. Reed's June 7, 2017 letter.

75. On June 20, 2017, Dr. Pierre Arty, a psychiatrist with Housing Works Healthcare, provided DHS with a letter recommending that Petitioner be reassigned to Marsha's House or be provided SRO housing. Attached as Exhibit 15 hereto (and Exhibit A to the Verified Petition) is a true and correct copy of Dr. Arty's June 20, 2017 letter.

76. DHS treated Dr. Reed and Dr. Arty's letters as requests for reasonable accommodations to be made for Petitioner.

77. Dr. Arty's June 20 letter of recommendation was based upon Petitioner's subjective assertions. Dr. Arty noted that DHS had assigned Petitioner to a "dormitory-like set-up. She considers this a harm setting, that being with a cisgender female population inhibits herself to express her own gender identity, causing her more distress, mood changes." Apparently, Dr. Arty mistakenly believed that Petitioner was still assigned to the WIN West shelter, because in the second paragraph of his letter, he asserted that the "location of her shelter is a triggering factor for her PTSD, since she experienced her trauma within the same neighborhood." Dr. Arty also stated that Petitioner "reports having flashbacks of traumatic

- 22 -

events that she experienced when she was younger in multiple institutions in dormitory settings."

Dr. Arty correctly noted that DHS had offered Petitioner several alternative shelter locations and

asserted that "none of these options are psychologically healthy alternatives for her."

78. DHS' Medical Director, Fabienne Laraque, MD, MPH, evaluated these letters

and spoke with Dr. Reed and Dr. Arty by phone.  In their conversation, Dr. Arty acknowledged

that he did not have knowledge of the conditions in DHS shelters, that he believed DHS had

offered Petitioner reasonable shelter options, and that he did not have knowledge of Petitioner's

conduct at Marsha's House.

79. With Dr. Laraque's participation and approval, on June 26, 2017 DHS issued

a "Reasonable Accommodation Request Determination" in response to Dr. Reed and Dr. Arty's

letters.  Attached as Exhibit 16 hereto (and Exhibit C to the Verified Petition) is a true and

correct copy of the June 26, 2017 Reasonable Accommodation Request Determination.

80. In that determination, DHS denied Petitioner's request for a private room in a

shelter as a habitation but granted Petitioner access to a private room with a place to lie down

and a locking door at the Park Slope Women's shelter when plaintiff needed to perform her

dilation.  DHS denied Petitioner's request to return to Marsha's House as unreasonable due to the

prior safety incidents and the risk Petitioner presented to the health and safety of other shelter

residents and staff at Marsha's House.  DHS continued Petitioner's assignment to the Park Slope

Women's shelter, and DHS noted that the experienced mental health professionals at the Park

Slope Women's shelter were competent to treat PTSD.  DHS also assured Petitioner of its

willingness to assist her in finding permanent housing as soon as possible.

81. The determination concluded with a statement explaining the administrative

appeal procedure available to Petitioner if she disagreed with the determination.  "You or your

representative may appear this Determination by filing an Appeal within **ten (10) business days** of receipt of this Determination.  Appeals should be directed to the Office of Diversity & Equal Opportunity Affairs Office, 33 Beaver Street, New York, New York 10004 or eoa@dhs.nyc.gov …." (emphasis in original)

82. Petitioner did not file an administrative appeal, and instead on June 27, 2017 filed the present Article 78 proceeding.

83. On June 29, 2017, Petitioner amended her Order to Show Cause by adding an additional letter dated June 29, 2017 from Sarah Acker, ANP-BC, Nurse Practitioner (and Exhibit E to the Verified Petition).  Ms. Acker disputed that the accommodation DHS was making for Petitioner to dilate was sufficient.  Attached as Exhibit 17 hereto is a true and correct copy of the Request for Judicial Intervention, Order to Show Cause and Verified Petition that Petition filed in this proceeding, including a copy of the June 29, 2017 letter of Sarah Acker.

84. Also on June 29, 2017, the parties appeared before the Honorable Nancy Bannon to argue whether Petitioner's application for a TRO should be granted.  After argument, Justice Bannon denied the application for a stay, required Petitioner to serve the Respondent with a copy of her order and the petition on or before July 6, 2017 and made the Order to Show Cause returnable on July 27, 2017 at 11:30 am.  See Exhibit 17 hereto for a true and correct copy of the June 29, 2017 Amended Order to Show Cause as endorsed by Justice Bannon.

85. Petitioner did not serve Respondent with a copy of Justice Bannon's order or a copy of the petition on or before July 6, 2017, and Petitioner has not served Respondent to date.

86. Dr. Laraque has reviewed Ms. Acker's letter, and with Dr. Laraque's agreement, DHS adheres to its June 26, 2017 determination.  Dr. Laraque discounts Ms. Acker's letter because, among other things, Ms. Acker makes assertions that are not supported by Dr.

Reed's letter or Dr. Laraque's conversation with Dr. Reed. Specifically, Dr. Reed made no assertion that Ms. Lopez needed to have erotic thoughts to dilate or that Ms. Lopez could not sleep in a congregate room.

87. At the Park Slope Women's shelter, DHS will provide Petitioner with access to a medical examination room with an examining table upon which Petitioner can lie down in private, lock the door, and safely perform her dilation.

88. Beyond this, Petitioner's request for a single room to sleep in at a DHS shelter is not reasonable. DHS shelters for single adults are congregate facilities where multiple people sleep in the same room. DHS has a very limited supply of single rooms available for single adults and often assigns those rooms to clients with severe medical needs, such as chemotherapy or recovery from major surgery. Currently DHS has only seven single rooms in shelters that provide significant mental health services and are not otherwise reserved for a specialized population that would exclude Petitioner (such as a shelter reserved for employed women). Three of those beds are at the WIN West shelter, which Petitioner rejects. The four other single-room beds are at the Weston shelter in Harlem and are all currently occupied. It is reasonable for DHS and its Medical Director to have determined on this record that assigning Petitioner to the Park Slope Women's shelter and providing her with access to a medical examining room as needed for dilation is a reasonable accommodation for Petitioner's condition.

### AS AND FOR A FIRST DEFENSE

89. Petitioner has not served Respondent with process as required by this Court's endorsement on the Amended Order to Show Cause, Exhibit 17 hereto. Accordingly, Petitioner has failed to establish personal jurisdiction over Respondent, and the Verified Petition must be dismissed. Matter of Czajka v. Dellehunt, 125 A.D.3d 1177, 1182 (3rd Dep't 2015) ("It is well

established that actual notice received by other means does not result in jurisdiction upon a failure of service." collecting cases)

### AS AND FOR A SECOND DEFENSE

90. Petitioner has failed to exhaust available administrative remedies.

91. Under CPLR § 3211(a)(2), a pleading is subject to dismissal if the court does not have jurisdiction over the subject matter of the cause of action. A court lacks subject matter jurisdiction over an action where the petitioner is required to exhaust her administrative remedies but has failed to do so. See, e.g., Ancrum v. St. Barnabas Hosp., 301 A.D.2d 474, 474-75 (1st Dep't 2003); Harold Levinson Assocs., Inc. v. New York State Dep't of Taxation & Fin., 2005 N.Y. Misc. LEXIS 2931, at *8 (Sup. Ct., N.Y. Co. Dec. 23, 2005) ("[B]ecause plaintiff did not exhaust its administrative remedies, this court lacks jurisdiction over the subject matter of this action.").

92. Petitioner has brought this Article 78 proceeding to challenge DHS' June 26, 2017 Reasonable Accommodation Request Determination and to challenge DHS' decision to assign her to the Park Slope Women's shelter. However, a litigant who wishes to challenge the action of an administrative agency pursuant to an Article 78 proceeding "may not do so until they have exhausted their administrative remedies." Walton v. New York State Dep't of Correctional Servs., 8 N.Y.3d 186, 195 (2007). The New York Court of Appeals has held that this requirement to exhaust administrative remedies:

> furthers the salutory goals of relieving the courts of the burden of deciding questions entrusted to an agency, preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its expertise and judgment.

<u>Watergate II Apartments v. Buffalo Sewer Authority</u>, 46 N.Y.2d 52, 57 (1978) (internal citations omitted).

93. A claim challenging an agency action brought pursuant to Article 78 should be dismissed where the litigant fails to exhaust her administrative remedies by challenging the agency action at a fair hearing. <u>Bien-Aime v. New York City Human Resources Admin</u>., 685 N.Y.S.2d 54, 55 (App. Div. 1st Dep't 1999).

94. Temporary housing assistance, which Petitioner has been offered, is a public assistance benefit, and public assistance recipients have the right to a fair hearing to challenge the adequacy of their services. 18 N.Y.C.R.R. §§ 352.35(b)(4), 358-3.1(b)(6) & 358-5.9.  State regulations even provide priority in fair hearing scheduling and determination to those public assistance recipients requesting hearings to challenge the adequacy or appropriateness of their shelter placement. 18 N.Y.C.R.R. § 358-3.2(b)(3).  Emergency hearings are generally scheduled within 48 hours of the request.  State regulations therefore explicitly provide Petitioner with the right to request a fair hearing to challenge DHS' June 26, 2017 Reasonable Accommodation Request Determination and to challenge DHS' decision to assign her to the Park Slope Women's shelter.

## AS AND FOR A THIRD DEFENSE

95. To the extent Petitioner seeks to challenge DHS' determination to transfer her out of Marsha's House and to assign her to another location in DHS' shelter system, that issue is precluded from further review by the June 14, 2017 decision and judgment of Justice Jaffe in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017, which is *res judicata* on all issues which were before Justice Jaffe or could have been brought based upon the facts described in the Verified Petition in <u>Lopez v. DHS & Project Renewal</u>, 100632/2017.  <u>Matter of Pepin v. New York City</u>

<u>Dep't of Education</u>, 148 A.D.3d 443 (1st Dep't 2017); and <u>Beth Rifka, Inc. v. State</u>, 144 A.D.2d

560 (2d Dep't 1985).

**AS AND FOR A FOURTH DEFENSE**

96. To the extent Petitioner seeks to challenge DHS' determination to transfer her

out of Marsha's House and to obtain an order directing DHS to reassign her to Marsha's House,

such relief must be denied because Petitioner has failed to join a necessary and indispensable

party: Project Renewal, Inc.

97. Petitioner has assaulted and threatened the life of employees and agents of

Project Renewal, Inc. and has disrupted the operations of Marsha's House.  An order directing

Petitioner to be returned to Marsha's House would have a material adverse impact upon Project

Renewal, Inc. and such relief may not be granted unless Project Renewal, Inc. is a party to this

proceeding.  C.P.L.R. § 1001(b).  See, <u>Matter of Feder v. Town of Islip Zoning Bd. of Appeals</u>,

114 A.D.3d 782, 784-86 (2d Dep't 2014).

98. Petitioner understands this legal requirement and joined Project Renewal, Inc.

as a respondent in both <u>Lopez v. DHS & Project Renewal</u>, 100632/2017 and <u>Lopez v. New York

City & Project Renewal</u>, 17cv3014 (S.D.N.Y.).

**AS AND FOR A FIFTH DEFENSE**

99. DHS' actions were in all respects legal, proper, reasonable, and in conformity

with all applicable laws and regulations, and were neither arbitrary nor capricious.

100.    It is well-established that Temporary Housing Assistance recipients in

New York do not have a right to choose their own shelter placement.  Petitioner's allegations

challenging her transfer from Marsha's House and challenging her assignment to the Park Slope

Women's shelter accordingly fails to state a claim and should be dismissed.

- 28 -

101.    Under New York law, DHS has broad discretion in assigning Temporary Housing Assistance recipients to specific shelters. The administrative directive promulgated by OTDA to advise local districts of their responsibilities in providing temporary housing explicitly states that "[h]omeless persons do not have the right to choose their own temporary placements." 94 ADM-20(V)(D)(3)(attached as Exhibit S to DHS' Answer in Lopez v. DHS & Project Renewal, 100632/2017, which Answer is Exhibit 7 hereto, is a true and correct copy of Administrative Directive 94 ADM-20); see also McCain v. Koch, 117 A.D.2d 198, 218 (1st Dep't 1986) ("Emergency shelter residents do not have a due process right to be housed in any particular neighborhood or type of housing."), rev'd on other grounds, 70 N.Y.2d 109 (1987).

102.    Since there is no right to a specific shelter placement, homeless individuals also do not have a right to advance notice and a hearing prior to a shelter transfer. Nuraina v. OTDA, 2011 N.Y. Misc. LEXIS 5024, at *3-4 (Sup. Ct., N.Y. Co. Oct. 7, 2011) (citing 94-ADM-20(V)(F)(1)). While Petitioner may request a fair hearing to challenge the adequacy of the shelter to which she was transferred, Petitioner does not have a right to challenge the transfer itself. See id. at *6.

**AS AND FOR A SIXTH DEFENSE**

103.    DHS' June 26, 2017 Reasonable Accommodation Request Determination is reasonable, appropriate and not arbitrary or capricious, and by assigning Petitioner to the Park Slope Women's shelter, DHS has assigned Petitioner to an appropriate shelter that will make reasonable accommodations for Petitioner's disabilities.

**WHEREFORE**, Respondent DHS respectfully requests that the Verified Petition be denied in its entirety and the relief sought therein be denied in all respects, with costs and disbursements.

Dated:      New York, New York
            July 20, 2017

                                        ZACHARY W. CARTER
                                        Corporation Counsel of the City of New York
                                        Attorney for DHS
                                        100 Church Street, Room 2-110
                                        New York, New York 10007
                                        (212) 356-0872
                                        throbert@law.nyc.gov


                              By:  _____
                                        THOMAS B. ROBERTS
                                        Assistant Corporation Counsel


To:     **BY EMAIL and Overnight Courier**
        Mariah Lopez
        Park Slope Women's Shelter
        1402 8th Avenue
        Brooklyn, N.Y. 11215
        Mariah4change@gmail.com
        *Petitioner*

- 30 -

## VERIFICATION

STATE OF NEW YORK    )
                           SS.:
COUNTY OF NEW YORK  )

        Tonie Baez, being duly sworn, deposes, and says, that she is an attorney employed by the Department of Homeless Services of the City of New York, that she is acquainted with the facts herein, that she has read the foregoing Verified Answer and it is true based on her own knowledge and information obtained from the records of the Department of Homeless Services of the City of New York, and statements made by certain, officers, agents, and employees of the Department of Homeless Services of the City of New York and other city employees, except as to matters stated therein to be based on information and belief and, as to those matters, he believes them to be true.

                                     _____
                                     TONIE BAEZ

Sworn to before me this
20th day of July 2017

_____
NOTARY PUBLIC

PAUL LIGRESTI
Notary Public, State of New York
No. 02LI6021802
Qualified in Kings County
Commission Expires May 12, 20___
7/31/19

- 31 -