UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIAH LOPEZ,

                Plaintiff,

   - against -

NEW YORK CITY DEPARTMENT OF
HOMELESS SERVICES,

                Defendant.

Civil Action No.: 17-CV-3014 (VEC)

---

**MEMORANDUM OF LAW IN SUPPORT OF PROJECT RENEWAL, INC.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

JACKSON LEWIS P.C.
666 Third Avenue
New York, New York 10017
(212) 545-4000

Richard I. Greenberg, Esq.
Kevin P. Connolly, Esq.

ATTORNEYS FOR
PROJECT RENEWAL, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

PROCEDURAL HISTORY............................................................................................... 2

PLAINTIFF'S AMENDED COMPLAINT....................................................................... 4

NEW YORK STATE SUPREME COURT ARTICLE 78 PROCEEDING ...................... 5

LEGAL STANDARD APPLICABLE TO THIS MOTION ............................................. 7

LEGAL ARGUMENT...................................................................................................... 9

    PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA* ...........9

    PLAINTIFF FAILS TO STATE A CLAIM AGAINST PROJECT RENEWAL FOR

    DISCRIMINATION AND RETALIATION UNDER THE ADA.........................................12

        A.  Plaintiff's Amended Complaint does not name Project Renewal as a Defendant. 13

        B.  Plaintiff fails to state a claim of discrimination against Project Renewal under the

            ADA because she does not allege that Project Refusal refused to accommodate

            her. .......................................................................................................... 13

        C.  Plaintiff fails to state a claim of retaliation under the ADA because she does not

            allege that she engaged in a protected activity, nor does she allege that Project

            Renewal subjected her to an adverse action. ........................................ 14

        D.  Plaintiff's Title II ADA claims against Project Renewal fail because Project

            Renewal is not a public entity. ............................................................. 15

CONCLUSION................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

Allah-Kasiem v. Rivera,
   09 Civ. 9665 (DLC), 2011 U.S. Dist. LEXIS 4793, *11 (S.D.N.Y. Jan. 18, 2011) .................. 8

Allen v. McCurry,
   449 U.S. 90, 94 (1980) ........................................................................................................... 9

APWU v. Potter,
   343 F.3d 619, 623 (2d Cir. 2003) ...................................................................................... 7, 8

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................................................................................... 8

Aurecchione v. Schoolman Transp. Sys., Inc.,
   426 F.3d 635, 638 (2d Cir. 2005) ......................................................................................... 7

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 555 (2007) ...................................................................................................... 8

Bess v. Spitzer,
   459 F. Supp. 2d 191, 199 (E.D.N.Y. 2006) ....................................................................... 11

Bolt Elec. v. City of N.Y.,
   53 F.3d 465, 469 (2d Cir. 1995) ........................................................................................... 8

Channer v. Dep't of Homeland Sec.,
   527 F.3d 275, 280 (2d Cir. 2008) ......................................................................................... 9

Collard v. Inc. Village of Flower Hill,
   759 F.2d 205, 206-07 (2d Cir. 1985) ................................................................................. 11

Conason v. Megan Holding, LLC,
   25 N.Y.3d 1, 17 (2015) ...................................................................................................... 12

Crawford v. Lutheran Med. Ctr.,
   08-CV-3429 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072 (E.D.N.Y. Mar. 14, 2011) ............... 8

Cruz v. Coach Stores, Inc.,
   202 F.3d 560, 566 (2d Cir. 2000) ....................................................................................... 15

Davidson v. Capuano,
   792 F.2d 275, 278 (2d Cir. 1986) ....................................................................................... 10

Federated Dep't Stores, Inc. v. Moitie,
 452 U.S. 394, 398, (1981) .......................................................................................... 9

Flynn v. Cohison,
 16 Civ. 2243 (BMC) (LB) 2016 U.S. Dist. LEXIS 66011, *4-6 (E.D.N.Y. May 18, 2016) .... 13

Fulani v. MacKay,
 No. 06-CV-3747, 2007 U.S. Dist. LEXIS 22415, *19 (S.D.N.Y. March 29, 2007) ............... 11

Gentile v. Town of Huntington,
 288 F. Supp. 2d 316, 322 (E.D.N.Y. 2003) ........................................................... 16

Harris v. City of N.Y.,
 186 F.3d 243, 247 (2d Cir. 1999) ............................................................................. 8

Hogans v. Dell Magazines/Penny Press,
 07 Civ. 7721 (DLC), 2008 U.S. Dist. LEXIS 20898, *6 (S.D.N.Y. Mar. 18, 2008) ................. 8

In re Teltronics Servs.,
 762 F.2d 185, 190 (2d Cir. 1985) ............................................................................. 9

Kamen v. American Tel. & Tel. Co.,
 791 F.2d 1006, 1011 (2d Cir. 1986) ....................................................................... 8

Logan v. Matveevskii,
 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014) ............................................................... 13

Makarova v. United States,
 201 F.3d 110, 113 (2d Cir. 2000) ........................................................................... 8

Marks v. Bldg. Mgmt. Co.,
 99 Civ. 5733 (THK), 2002 U.S. Dist. LEXIS 7506, *9 (S.D.N.Y. Apr. 26, 2002) ................. 14

Mary Jo C. v. N.Y. State & Local Ret. Sys.,
 707 F.3d 144, 152-53 (2d Cir. 2013) ..................................................................... 16

Migra v. Warren City Sch. Dist. Bd. of Educ.,
 465 U.S. 75 (1984) ................................................................................................ 10

Monahan v. New York City Dep't of Corr.,
 214 F.3d 275, 285 (2d Cir. 2000) ........................................................................... 9

Moran v. New York Dep't of Health,
 1997 U.S. App. LEXIS 7173 at *6-7 (2d Cir. 1997) ................................................. 12

Morrison v. Nat'l Austl. Bank Ltd.,
   547 F.3d 167, 170 (2d Cir. 2008) aff'd, 561 U.S. 247, 130 S. Ct. 2869 (2010)............................ 7

Natural Res. Def. Council v. Johnson,
   461 F.3d 164, 171 (2d Cir. 2006) ............................................................................................. 7

Parker v. Blauvelt Volunteer Fire Co.,
   93 N.Y.2d 343, 349 (1999)………………………………………………………………...12

Pike v. Freeman,
   266 F.3d 78, 91 (2d Cir. 2001)................................................................................................. 10

Robinson v. Purcell Constr. Corp.,
   647 Fed. Appx. 29, 30 (2d. Cir. 2016) ............................................................................... 9, 11

Saud v. Bank of N.Y.,
   929 F.2d 916, 919 (2d Cir. 1991)............................................................................................ 10

Smith v. Cuomo,
   06 Civ. 3181 (JS)(WDW), 2007 U.S. Dist. LEXIS 97105, *14-19 (E.D.N.Y. Sept. 30, 2007)
   .......................................................................................................................................... 10, 11

Spavone v. Transitional Servs. Of N.Y. Supportive Hous. Program,
   16 Civ. 1219, 2016 U.S. Dist. LEXIS 63005, *19 (E.D.N.Y. May 12, 2016)......................... 15

St. Pierre v. Dyer,
   208 F.3d 394, 399 (2d Cir. 2000).............................................................................................. 9

Stable v. Kelly Towers Assocs.,
   05 Civ. 3132 (GBD), 2007 U.S. Dist. LEXIS 1975, *2 (S.D.N.Y. Jan. 10, 2007)................... 15

United States v. Georgia,
   546 U.S. 151, 153 (2006)......................................................................................................... 16

Weissman v. Dawn Joy Fashions, Inc.,
   214 F.3d 224, 234 (2d Cir. 2000)............................................................................................ 14

Williams v. New York City Hous. Auth.,
   07 Civ 7587 (RJS), 2009 U.S. Dist. LEXIS 24888, *24 (S.D.N.Y. Mar. 26, 2009) ............... 14

**Statutes**
28 U.S.C. § 1738............................................................................................................................ 10

Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et. seq…………1, 12, 13, 14, 15, 16

New York City Charter, Chapter 24-A, Sections 610-614…………………………………14

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(1)……………………………………………..1,7

Federal Rules of Civil Procedure Rule 12(b)(6)……………………………………………..1,8

New York Civil Practice Law and Rules Article 78………………………….……1, 5, 10, 11, 12

**Other Authorities**

Restatement (Second) of Judgments § 24(2) ................................................................. 9

## PRELIMINARY STATEMENT

Project Renewal, Inc. ("Project Renewal"), through its undersigned attorneys, submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff *Pro Se* Mariah Lopez' ("Plaintiff") Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   In her Amended Complaint, Plaintiff appears to allege claims for disability discrimination and retaliation under Titles II and III of the Americans with Disabilities Act of 1990, 42 U.S.C. §12112 et seq. ("ADA").

As explained in greater detail below, Plaintiff's claims are barred by the doctrine of *res judicata* as she previously litigated these claims in a New York State Supreme Court Article 78 proceeding.   Significantly, Plaintiff's prior Article 78 proceeding involved: 1. an adjudication on the merits; 2. the same parties as the instant matter; and 3. the same claims which are being raised in the instant action.   As such, the doctrine of *res judicata* prohibits Plaintiff from being allowed to re-litigate her claims.

Further, Plaintiff's Amended Complaint fails to state a claim against Project Renewal for discrimination and retaliation under the ADA.   Plaintiff's Amended Complaint fails to even name Project Renewal as a Defendant in its caption.   Moreover, it does not assert any allegations of wrongdoing against Project Renewal.   The Amended Complaint does not allege that Project Renewal failed to reasonably accommodate Plaintiff's medical disabilities, nor does it allege that Project Renewal held any decision-making authority related to Plaintiff's housing, let alone decision-making authority that was motivated by retaliatory animus.   As the Amended Complaint does not allege that Project Renewal failed to accommodate Plaintiff or that it took an adverse action against her, Plaintiff's discrimination and retaliation claims should be dismissed.

Finally, Plaintiff's Title II ADA claims against Project Renewal fail as a matter of law because Project Renewal is not a public entity.

1

For the foregoing reasons, Plaintiff's Amended Complaint against Project Renewal should be dismissed in its entirety.

## PROCEDURAL HISTORY

Plaintiff *pro se* filed the instant action on April 25, 2017 seeking "an order which directs NYC Dep of Homeless Services and Project Renewal ("Marsha's House") to allow [her] access to entry with [her] service animal, under Titles II and III of the ADA." (Plaintiff's Complaint dated April 25, 2017, ¶ VI, Greenberg Aff. at Ex. "A"). Plaintiff subsequently obtained counsel. After hearing argument from Plaintiff, Plaintiff's counsel and attorneys for the New York City Department of Homeless Services (the "City") on April 27, 2017, the Honorable Justice Valerie E. Caproni entered a Temporary Restraining Order providing in part "that the Defendants are provisionally directed to accommodate Plaintiff and her service animal at the 'Marsha's House' homeless shelter until 3:00 p.m. on May 1, 2017, unless this Court orders otherwise. This Order is without prejudice to the Defendants' and Marsha's House's right to require Plaintiff to comply with all applicable shelter rules and City and State regulations." (Temporary Restraining Order dated April 27, 2017, Greenberg Aff. at Ex. "B"). The City subsequently determined that Plaintiff was entitled to have her service animal in the City's shelter system as a reasonable accommodation for Plaintiff's disability, and Plaintiff's counsel advised the Court that in light of the City's determination, Plaintiff did not oppose the dissolution of the Temporary Restraining Order. (Response to Order to Show Cause dated May 1, 2017, Greenberg Aff. at Ex. "C"). On May 2, 2017, Justice Caproni dissolved the Temporary Restraining Order. (Order dissolving Temporary Restraining Order dated May 2, 2017, Greenberg Aff. at Ex. "D"). Plaintiff's counsel then withdrew from the case, and thereafter Plaintiff has acted pro se. (Order granting Plaintiff's counsel's application to withdraw from case dated May 23, 2017, Greenberg Aff. at Ex. "E").

On May 8, 2017, the City received a Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint from the U.S. Marshals Service. The City mailed a completed Acknowledgment of Receipt of Service by Mail to the U.S. Marshals Service on June 2, 2017. (City Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint, Greenberg Aff. at Ex. "F").

On May 9, 2017, Project Renewal received a Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint from the U.S. Marshals Service. Project Renewal subsequently entered its Notice of Appearance and mailed its Acknowledgment of Receipt of Service by Mail to the U.S. Marshals Service on June 5, 2017. (Project Renewal Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint, Greenberg Aff. at Ex. "G").

On May 30, 2017, Plaintiff sought an emergency order "to stop New York City Department of Homeless Services from moving [her] from Marsha's House shelter, or suspending [her] services there, until this Court determines if the suspensions of services or transfer are retaliatory for the TRO which this Court issued and [she] allowed to dissolve." (Plaintiff's Notice of Motion for Emergency Relief dated May 30, 2017, Greenberg Aff. at Exhibit "H"). After hearing argument from Plaintiff and attorneys for the City and Project Renewal and taking testimony on May 31, 2017, Justice Caproni denied Plaintiff's request for emergency relief. (Dkt. 25).

On June 15, 2017, Plaintiff again sought an emergency order directing the City to transfer Plaintiff back to Marsha's House. (Plaintiff's Emergency Request for a Temporary Restraining Order dated June 15, 2017, Greenberg Aff. at Ex. "I"). On June 15, 2017, the Honorable Justice Deborah A. Batts denied the request for a Temporary Restraining Order and

directed the parties to appear at the previously scheduled status conference on June 30, 2017 before Justice Caproni. (Order denying Plaintiff's June 15, 2017 Request Emergency Request for a Temporary Restraining Order, Greenberg Aff. at Ex. "J").

On June 30, 2017, the parties appeared before Justice Caproni for a status conference. (Order dated July 5, 2017, Greenberg Aff. at Ex. "K").  On July 5, 2017, Justice Caproni issued an Order ruling "that the Court shall construe Ms. Lopez's June 15, 2017 application for a temporary restraining order, Dkt. 31, as an amended complaint." (Id.).  Justice Caproni also granted Defendants leave to file Rule 12 motions by August 4, 2017. (Id.)  As such, Plaintiff's June 15, 2017 application for a Temporary Restraining Order now serves as her Amended Complaint in the instant matter (hereinafter "Amended Complaint").

## PLAINTIFF'S AMENDED COMPLAINT

In her Amended Complaint, Plaintiff alleges that, "DHS has placed me at facilities which cannot reasonably accommodate my medical disabilities, PTSD and Gender Identity Disorder.  I believe the decision for DHS to move me from Marsha's was retaliatory and DHS refusal to temporarily place me back at Marsha's is a failure to make 'reasonable' accommodations for my disabilities." (Ex. I).  Plaintiff asks the Court to issue an Order requiring the City to place her back at Marsha's House until the conclusion of her case. (Id. at 7).

Significantly, Plaintiff's Amended Complaint does not assert any allegations of wrongdoing against Project Renewal. (Id.)  The Amended Complaint does not allege that Project Renewal failed to reasonably accommodate Plaintiff's medical disabilities, nor does it allege that Project Renewal held any decision-making authority related to Plaintiff's housing, let alone decision-making authority that was motivated by retaliatory animus. (Id.)  In fact, Plaintiff's Amended Complaint does not even name Project Renewal as a Defendant in the caption. (Id.).

4

## NEW YORK STATE SUPREME COURT ARTICLE 78 PROCEEDING

On May 11, 2017, Plaintiff filed a verified petition in New York State Supreme Court pursuant to Article 78 of the New York Civil Practice Laws and Rules challenging the City's decision to transfer her from Marsha's House. In said petition, Plaintiff raised identical claims and sought the same exact relief that she currently seeks in the Amended Complaint (Plaintiff's New York State Supreme Court Verified Petition dated May 11, 2017, Greenberg Aff. at Ex. "L"). Specifically, Plaintiff sought an Order from the Court directing the City to "reverse its decision to approve Project Renewal's request to transfer [her] from Marsha's [House] Shelter" and barring the City from transferring her "until this Court determines if retaliation was the main reason behind the request for an 'Admin-Transfer.'" (Id.) Plaintiff also argued that other shelters, aside from Marsha's House, cannot reasonably accommodate her because she is "disabled and [has] unique medical needs as a Trans woman." (Id.). After hearing oral argument on May 31, 2017, the Honorable Justice Barbara Jaffe issued a decision on June 14, 2017 denying Plaintiff's claims of retaliation and failure to provide a reasonable accommodation and dismissing her petition in its entirety. (New York State Supreme Court Decision and Judgment dated June 14, 2017, Greenberg Aff. at Ex. "M"). In reaching its decision, the Court noted that Plaintiff's petition, "ultimately requests that [the Court] review the determination of an agency", and as such, treated the petition as an Article 78 petition. (Id. at 7).

After carefully considering each parties' arguments, Justice Jaffe denied Plaintiff's retaliation claims. (Id.). The Court took into consideration Plaintiff's arguments that her transfer from Marsha's House "constitute[d] a retaliatory measure against her for having obtained an order from the Southern District of New York enjoining respondents from refusing the entry of her service dog into Marsha's [House]" and "resulted from her objection to the

mistreatment of transgender clients by food service staff." (Id.).  The Court measured Plaintiff's retaliation claims against the non-retaliatory reasons offered by the City as its basis for transferring Plaintiff from Marsha's House, including Plaintiff's admission that she had threatened staff at Marsha's House, complaints from staff at Marsha's House that they did not feel safe as a result of the threats Plaintiff levied towards them and the minimal police presence stationed at Marsha's House in comparison to other shelters. (Id. at 2-3).  After carefully considering the parties' arguments, Justice Jaffe rejected Plaintiff's retaliation claims, ruling, "Given DHS's broad discretionary authority to effect transfers between homeless shelters, the transfer of petitioner from Marsha's [House] to WIN West is neither unconstitutional nor wholly beyond DHS's grant of authority; petitioner's avowed purpose in advocating for others by verbally threatening staff at Marsha's [House] and her complaints about shelter services do not encroach on that authority." (Id. at 7).

The Court also denied Plaintiff's claims that other homeless shelters, aside from Marsha's House, are incapable of reasonably accommodating Plaintiff's medical disabilities and that Marsha's House is the only facility that could reasonably accommodate her.  (See Id.).  The Court rejected Plaintiff's claim that "her fear of being assaulted at WIN West and of again being placed in an environment where, if disrespected or attacked, her 'post-traumatic stress disorder' and 'impulse control disorder' could result in her physically defending herself", and denied Plaintiff's request that the Court issue a determination that "the only facility for an open transgender person to feel safe from harassment is Marsha's [House]." (Id. at 2 and 6).  The Court measured Plaintiff's arguments against the City's position that WIN West would be a safe and reasonable accommodation for Plaintiff given the police protection that it affords and mental health services that it offers. (Id. at 3 and 6).  The City also noted that there was no evidence of

any assaults at WIN West, nor did there appear to be a history or pattern of incidents at WIN West related to transgender individuals. (<u>Id.</u>).   Finally, the City argued that shelters are designated for women solely according to their gender identity. (<u>Id.</u> at 3 and 6).  In dismissing Plaintiff's claim that Marsha's House is the only facility that could offer Plaintiff a reasonable accommodation, the Court ruled that Plaintiff's "fear of being assaulted [in another shelter] is nonetheless speculative." (<u>Id.</u> at 8).  The Court further stated, "That [Plaintiff] cannot control her impulses does not entitle her to relief, nor does her claim that she has no choice but to engage in 'sex work' to avoid being homeless.  A professed inability to conform one's conduct to the law or to support oneself in any capacity other than in sex work cannot be countenanced as to do so would condone illegality and unjustifiably ignore available onsite social services, as well as others such as the Urban Justice Center's Sex Workers Project (<u>www.urbanjusticecenter.org</u>)." (<u>Id.</u> at 8).

## LEGAL STANDARD APPLICABLE TO THIS MOTION

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." <u>Morrison v. Nat'l Austl. Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), <u>aff'd</u>, 561 U.S. 247, 130 S. Ct. 2869 (2010).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005).  When deciding a Rule 12 motion to dismiss, the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." <u>Morrison</u>, 547 F.3d at 170 (quoting <u>Natural Res. Def. Council v. Johnson</u>, 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted)).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." <u>Id.</u> (quoting <u>APWU v. Potter</u>, 343 F.3d

7

619, 623 (2d Cir. 2003)).   When "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court…may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."   See Fed. R. Civ. P. 12(b)(6).   On such a motion, the Court "must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff."   See Bolt Elec. v. City of N.Y., 53 F.3d 465, 469 (2d Cir. 1995); see also Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).   However, factual allegations set forth in the Complaint "must be enough to raise a right to relief above the speculative level" and a complaint must have "facial plausibility" in order to survive a motion to dismiss.   See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).   Indeed, even a *pro se* plaintiff must do more than offer "naked assertions devoid of further factual enhancement."   See Allah-Kasiem v. Rivera, 09 Civ. 9665 (DLC), 2011 U.S. Dist. LEXIS 4793, *11 (S.D.N.Y. Jan. 18, 2011)[1];   Crawford v. Lutheran Med. Ctr., 08-CV-3429 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072 (E.D.N.Y. Mar. 14, 2011) (dismissing discrimination claims of *pro se* plaintiff for failure to state a claim); Hogans v. Dell Magazines/Penny Press, 07 Civ. 7721 (DLC), 2008 U.S. Dist. LEXIS 20898, *6 (S.D.N.Y. Mar. 18, 2008) (a *pro se* "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.") (internal citations omitted).

---

[1] Copies of all unreported cases are attached collectively to the Greenberg Aff. as Exhibit "N."

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*

Plaintiff's claims are barred because the doctrine of *res judicata* prohibits her from re-litigating claims she previously litigated or had the opportunity to litigate in her New York State Court Article 78 proceeding.  "Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, (1981)).  *Res judicata* "is a rule of fundamental repose important for both the litigants and for society." In re Teltronics Servs., 762 F.2d 185, 190 (2d Cir. 1985).  It "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980).

A claim is barred by *res judicata* if (1) the prior action involves a judgment on the merits; (2) the prior action involves the same parties or those in privity; and (3) the claims asserted in the action were, or could have been, asserted in the prior action. Robinson v. Purcell Constr. Corp., 647 Fed. Appx. 29, 30 (2d. Cir. 2016) (citing Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000)).  In the Second Circuit, the third element of *res judicata* is further analyzed under the "transactional test" of the Restatement (Second) of Judgments, which applies three inquiries: (1) whether the underlying facts are "related in time, space, origin, or motivation;" (2) whether the underlying facts "form a convenient trial unit;" and (3) whether their "treatment as a unit conforms to the parties' expectations." Id. (citing Channer v. Dep't of Homeland Sec., 527 F.3d 275, 280 (2d Cir. 2008)); Restatement (Second) of Judgments § 24(2)

(1982).  "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Saud v. Bank of N.Y., 929 F.2d 916, 919 (2d Cir. 1991) (internal quotation marks omitted)

In cases such as the instant matter, where a state court previously issued a judgment involving the same parties, the federal court must look to state law to determine whether *res judicata* applies. Smith v. Cuomo, 06 Civ. 3181 (JS)(WDW), 2007 U.S. Dist. LEXIS 97105, *14-19 (E.D.N.Y. Sept. 30, 2007).  Pursuant to 28 U.S.C. § 1738, federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Id. (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984)).  As such, in the instant matter, the Court must look to New York law to determine whether *res judicata* applies. Id.

Like the Second Circuit, New York courts employ a "transactional approach" to claim preclusion. Id.  In other words, "if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of action and the later claims will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." Id. (citing Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986)).  Under New York law, *res judicata* bars a subsequent action if the Court finds that:  (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. Id. (citing Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001)).

In the instant matter, Plaintiff's Amended Complaint should be dismissed because all three elements of *res judicata* are met.  First, Plaintiff's Article 78 proceeding involved an adjudication on the merits, as evidenced by Justice Jaffe's decision. (Ex. M.).  Indeed, the courts

have regularly held that there is no rule against giving Article 78 proceedings preclusive effect provided that the relief sought in the subsequent proceeding was available to the plaintiff in the prior action. Smith, 2007 U.S. Dist. LEXIS at *18-*19; See Collard v. Inc. Village of Flower Hill, 759 F.2d 205, 206-07 (2d Cir. 1985) (affirming dismissal of subsequent federal action on grounds of *res judicata* following an unsuccessful Article 78 proceeding); Fulani v. MacKay, No. 06-CV-3747, 2007 U.S. Dist. LEXIS 22415, *19 (giving preclusive effect to a prior Article 78 proceedings that declined to declare a New York statute unconstitutional) (S.D.N.Y. March 29, 2007); Bess v. Spitzer, 459 F. Supp. 2d 191, 199 (E.D.N.Y. 2006) (affording prior Article 78 proceeding preclusive effect where plaintiff sought injunction barring continued criminal prosecution). Here, Plaintiff requests the same type of relief that she sought in the Article 78 proceeding, which is placement back to Marsha's House and a determination that other City homeless shelters are not a reasonable accommodation for her disabilities.  Consequently, her previous Article 78 proceeding precludes the instant action.

The second element of *res judicata* is met as the instant matter involves identical parties as Plaintiff's Article 78 proceeding, Plaintiff, the City and Project Renewal.

The third, and final, element of *res judicata* is met because the claims asserted in the instant action were previously raised in Plaintiff's Article 78 proceeding as both matters are based on the same "same factual grouping" and the underlying facts are "related in time, space, origin, or motivation." Smith, 2007 U.S. Dist. LEXIS at *17; Robinson, 647 Fed. Appx. at 30. Plaintiff's Article 78 proceeding and the instant matter both arise from the same set of facts and challenge the same decision—the City's decision to transfer Plaintiff from Marsha's House.

Accordingly, under the "transactional approach" adopted by the Second Circuit and New York state courts, Plaintiff's claims should be precluded by the doctrine of *res judicata*.[2]

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM AGAINST PROJECT RENWAL FOR DISCRIMINATION AND RETALIATION UNDER THE ADA

Plaintiff appears to allege claims for disability discrimination and retaliation under Titles II and III of the ADA. In her original complaint, Plaintiff sought "an order which directs NYC Dep of Homeless Services and Project Renewal ("Marsha's House") to allow [her] access to entry with [her] service animal, under Titles II and III of the ADA." (Ex. A). In her Amended Complaint, Plaintiff alleges that, "DHS has placed me at facilities which cannot reasonably accommodate my medical disabilities, PTSD and Gender Identity Disorder. I believe the decision for DHS to move me from Marsha's was retaliatory and DHS refusal to temporarily place me back at Marsha's is a failure to make 'reasonable' accommodations for my disabilities." (Ex. I).

---

[2]   Additionally, the issues raised in Plaintiff's Amended Complaint are barred by collateral estoppel. New York law provides that, "[c]ollateral estoppel comes into play when four conditions are fulfilled: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and decided; (3) there was a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid judgment on the merits. Conason v. Megan Holding, LLC, 25 N.Y.3d 1, 17 (2015) (quotation marks and citations omitted); see also Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) (collateral estoppel prevents a litigant from bringing claims for damages that is premised on an issue that was decided against the plaintiff in his prior C.P.L.R. Article 78 proceeding); and Moran v. New York Dep't of Health, 1997 U.S. App. LEXIS 7173 at *6-7 (2d Cir. 1997) (ADA and Rehabilitation Act claims precluded by collateral estoppel based upon prior Article 78 decision). Here, all four elements of collateral estoppel are satisfied. As set forth above, the issues raised in Plaintiff's Amended Complaint are identical to the issues that were previously litigated and ruled upon in the Article 78 proceeding before Justice Jaffe. Justice Jaffe already has addressed the issues of whether the City's decision to transfer Plaintiff from Marsha's House was based upon retaliatory animus and whether other homeless shelters, aside from Marsha's House, are incapable of reasonably accommodating Plaintiff's medical disabilities. These issues were necessary to support her valid judgment on the merits denying Plaintiff's Article 78 petition. As such, Plaintiff's Amended Complaint is also barred by collateral estoppel.

A.  **Plaintiff's Amended Complaint does not name Project Renewal as a Defendant.**

Plaintiff's Amended Complaint fails to even name Project Renewal as a Defendant in the caption.  As such, Project Renewal has not been named as a party to Plaintiff's Amended Complaint and all claims against Project Renewal should be dismissed.

B.  **Plaintiff fails to state a claim of discrimination against Project Renewal under the ADA because she does not allege that Project Refusal refused to accommodate her.**

Plaintiff's ADA discrimination claims against Project Renewal fail to state a claim upon which relief can be granted and, therefore, should be summarily dismissed.  In order to make out an ADA claim of discrimination based upon a failure to accommodate, a plaintiff must allege that: (1) she suffers from a disability as defined by the ADA; (2) the defendant knew or reasonably should have known of the plaintiff's disability; (3) accommodation of the disability may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Flynn v. Cohison, 16 Civ. 2243 (BMC) (LB) 2016 U.S. Dist. LEXIS 66011, *4-6 (E.D.N.Y. May 18, 2016) (citing Logan v. Matveevskii, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014)).  Here, in her Amended Complaint, Plaintiff alleges that "DHS has placed me at facilities which cannot reasonably accommodate my medical disabilities, PTSD and gender identity disorder" and that "DHS refusal to temporarily place me back at Marsha's is failure to make 'reasonable' accommodations for my disabilities." (Ex. I). Significantly, none of Plaintiff's allegations are directed at Project Renewal.  Plaintiff does not assert any allegations, whatsoever, that Project Renewal had knowledge of her disability, that Project Renewal had any decision-making authority with respect to her shelter placement or that Project Renewal had the decision-making authority to offer her the accommodation that she

seeks, let alone refused to do so.[3]  As such, Plaintiff fails to allege sufficient facts from which the

Court can infer that Project Renewal discriminated against her based upon her disabilities by

failing to accommodate her.

### C.    Plaintiff fails to state a claim of retaliation under the ADA because she does not allege that she engaged in a protected activity, nor does she allege that Project Renewal subjected her to an adverse action.

Plaintiff's retaliation claims should be dismissed based upon her failure to plead a

prima facie case.  To make out a valid claim of retaliation against Project Renewal under the

ADA, Plaintiff must allege that: (1) she engaged in a protected activity; (2) Project Renewal

knew of that activity; (3) Project Renewal subsequently subjected her to an adverse action; and

(4) there was a causal connection between the alleged adverse action and her protected activity.

Williams v. New York City Hous. Auth., 07 Civ. 7587 (RJS), 2009 U.S. Dist. LEXIS 24888, *24

(S.D.N.Y. Mar. 26, 2009); Marks v. Bldg. Mgmt. Co., 99 Civ. 5733 (THK), 2002 U.S. Dist.

LEXIS 7506, *9 (S.D.N.Y. Apr. 26, 2002); see also Weissman v. Dawn Joy Fashions, Inc., 214

F.3d 224, 234 (2d Cir. 2000) (discussing the elements of an ADA retaliation claim).

Plaintiff's retaliation claim fails because she does not allege that she engaged in a

protected activity.   Plaintiff's Amended Complaint only alleges that she engaged in

"whistleblowing at Marsha's House" and fails to offer any further detail about what actions of

Plaintiff, if any, allegedly motivated the City to transfer her from Marsha's House.  Significantly,

Plaintiff does not allege that this "whistleblowing" involved Plaintiff taking action to protest or

oppose statutorily prohibited discrimination.  As such, her allegations fail to establish that she

---

[3] It is undisputed that the City, and not Project Renewal, has final decision-making authority with respect to shelter placement.  Pursuant to Chapter 24-A, Section 612(a)(3) of the New York City Charter, the commissioner of the Department of Homeless Services shall, "in consultation with other appropriate government agencies, plan housing for homeless families and individuals." See NYC Charter Chapter 24-A, Section 610-614.  Moreover, in both its Memorandum of Law and Declaration in Support of its Motion to Dismiss, the City readily admits on several occasions that the decision to transfer Plaintiff from Marsha's House was made by the City.

engaged in a "protected activity". <u>See</u> 42 U.S.C. § 12203 (prohibiting retaliation against an individual who has "participated in any manner in an investigation, proceeding, or hearing" under the ADA); <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000) (defining "protected activity" as "action taken to protest or oppose statutorily prohibited discrimination"); <u>Stable v. Kelly Towers Assocs.</u>, 05 Civ. 3132 (GBD), 2007 U.S. Dist. LEXIS 1975, *2 (S.D.N.Y. Jan. 10, 2007). As Plaintiff fails to allege that she engaged in a protected activity, her retaliation claim should be dismissed.

In addition to Plaintiff's failure to allege that she engaged in a protected activity, she fails to allege that Project Renewal subjected her to an adverse action. As set forth above, the Amended Complaint fails to direct any allegations towards Project Renewal and does not allege that Project Renewal held any decision-making authority that impacted which shelter Plaintiff would be placed in, let alone decision-making authority that was motivated by retaliatory animus. Accordingly, Plaintiff's retaliation claim should be dismissed based upon her failure to plead a prima facie case.

**D.     Plaintiff's Title II ADA claims against Project Renewal fail because Project Renewal is not a public entity.**

Plaintiff's Title II ADA claims against Project Renewal should be dismissed because Project Renewal is not a public entity. Title II of the ADA prohibits discrimination against qualified individuals with disabilities in all programs, activities, and services of public entities. 42 U.S.C. § 12132. Title II of the ADA "provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities <u>of a public entity</u>, or be subjected to discrimination by any such entity." <u>Spavone v. Transitional Servs. Of N.Y. Supportive Hous. Program</u>, 16 Civ. 1219, 2016 U.S. Dist. LEXIS 63005, *19 (E.D.N.Y. May 12, 2016) (emphasis

added); quoting 42 U.S.C. § 12132); see Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 152-53 (2d Cir. 2013) (quoting United States v. Georgia, 546 U.S. 151, 153 (2006)); Gentile v. Town of Huntington, 288 F. Supp. 2d 316, 322 (E.D.N.Y. 2003) (The ADA "provides disabled individuals redress for discrimination by a 'public entity.'" (citation omitted)).  The ADA defines "public entity to include any State or local government and any department, agency, . . or other instrumentality of a State." Id. (quoting Georgia, 546 U.S. at 154).  In her Amended Complaint, Plaintiff does not allege that Project Renewal is a government agency or an instrumentality of a State, and, therefore, fails to state a public services ADA claim. Accordingly, Plaintiff's Title II ADA claims against Project Renewal should be dismissed.

## CONCLUSION

As set forth above, Project Renewal respectfully requests that the Court enter an Order: (1) dismissing Plaintiff's Amended Complaint in its entirety, with prejudice; and (2) awarding Project Renewal the costs it has incurred in filing and pursuing the instant motion to dismiss, as well as such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue
New York, New York 10017
(212) 545-4000

By: _____
Richard I. Greenberg, Esq.
Kevin P. Connolly, Esq.

ATTORNEYS FOR PROJECT RENEWAL, INC.

Dated: August 3, 2017
        New York, New York