UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIAH LOPEZ,                                    :

                 Plaintiff,          :          17 Civ. 3014 (VEC) (AJP)

        -against-                             :          **REPORT & RECOMMENDATION**

                                    :

THE CITY OF NEW YORK and PROJECT
RENEWAL, INC.,                                   :

                Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Valerie E. Caproni, United States District Judge:**

          Pro se plaintiff Mariah Lopez brings this Americans with Disabilities Act ("ADA")

case against defendants New York City and Project Renewal, Inc.  (Dkt. No. 2.)  Presently before

the Court are the City and Project Renewal's motions to dismiss Lopez's Amended Complaint under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. Nos. 44, 49.)  Lopez did not respond

to the motions, despite receiving an extension until September 22, 2017 by which to do so.  (Dkt.

No. 57.)  For the reasons set forth below, the City's motion should be <u>DENIED</u> in its entirety, and

Project Renewal's motion should be <u>GRANTED IN PART</u>.

**FACTS**

          In 2016, the New York City Department of Homeless Services ("DHS") "contracted

with Project Renewal, Inc., a non-profit shelter operator, to operate" Marsha's House, "a shelter

designed to house young clients . . . who self-identify as lesbian, gay, bisexual, transgender or

questioning ('LGBTQ'). . . .   It is the only DHS shelter specifically designated for LGBTQ

individuals." (Dkt. No. 46: Roberts Aff. ¶ 6.)  Lopez, a transgender woman (Dkt. No. 31 at 4), "returned to the DHS shelter system in April 2017 and requested to be placed in Marsha's House. Although [Lopez] exceeded the age parameters for assignment to Marsha's House, DHS, at its discretion, placed her in that shelter on . . . April 20, 2017" (Roberts Aff. ¶ 9).  However, "immediately upon arrival," Lopez allegedly "established a pattern of violating the rules of Marsha's House and of threatening the employees of Project Renewal, Inc."  (Roberts Aff. ¶ 12.)

On April 25, 2017, Lopez filed this action against the City and Project Renewal, alleging violation of Titles II and III of the ADA.  (See Dkt. No. 2: Compl. at 4-5.)[1/]  Lopez alleged that she is legally disabled and faced removal from Marsha's House because the City required Lopez "to 'prove' [her] dog is a 'service animal.'"  (Compl. at 4.)  Lopez's Complaint sought an order directing defendants to permit Lopez to remain in Marsha's House with her service dog.  (Compl. at 5.)

On the same date, April 25, 2017, Lopez filed a motion for temporary restraining order ("TRO") to prevent defendants from prohibiting her entry into Marsha's House.  (Dkt. No. 3.)  On April 27, 2017, Judge Caproni found that "[f]ailure to accommodate [Lopez] and the service animal would potentially cause [Lopez] to be without shelter," and thus "provisionally directed" defendants "to accommodate [Lopez] and her service animal at the 'Marsha's House' homeless shelter until 3:00 p.m. on May 1, 2017."  (Dkt. No. 8: 4/27/17 TRO Order at 2.)

On May 1, 2017, Judge Caproni ordered Lopez to show cause why the TRO should not be dissolved, given that the City had agreed to permit Lopez to reside in Marsha's House or any

---

[1/]   Lopez's Complaint named DHS, not the City, as a defendant (Compl. at 1), but Judge Caproni "construe[d] the complaint as asserting claims against the City of New York, and direct[ed] the Clerk of Court to amend the caption of this action to replace DHS with the City of New York" (Dkt. No. 7: 4/26/17 Order at 2).

other DHS facility with her "dog, without regard to whether it is a service animal or emotional support animal." (Dkt. No. 11: 5/1/17 Order; see also Roberts Aff. ¶ 15.) Later that day, Lopez responded that she did "not oppose the dissolution of the Temporary Restraining Order entered on April 27, 2017 provided that (1) Defendants continue to accommodate Ms. Lopez by allowing her service animal to remain with her in the homeless shelter system and (2) she is not transferred or otherwise removed from Marsha's House because of her service animal." (Dkt. No. 14.) Lopez also "notifie[d] the Court of her intent to amend her Complaint to seek, in addition to injunctive relief, damages under, inter alia, the Americans with Disabilities Act." (Id.) Judge Caproni dissolved the TRO on May 2, 2017. (Dkt. No. 15: 5/2/17 Memo Endorsed Order.)

"Despite having her dog," Lopez allegedly "continued to threaten the staff at Marsha's House and to violate the shelter's and DHS' rules," and on May 9, 2017, "Project Renewal, Inc. requested that [Lopez] be suspended for three days due to her bringing alcohol into the shelter." (Roberts Aff. ¶¶ 16-17.) On May 10, 2017, "Mr. Uetake, the DHS Program Administrator responsible for Marsha's House, decided to transfer [Lopez] to a shelter with greater mental health services and permanent DHS police," but "had not yet decided which shelter to transfer [Lopez] to." (Id. ¶ 18.) "Uetake[] subsequently decided to transfer [Lopez] to the WIN West shelter, and Ms. Lopez was given notice of her new shelter assignment on May 11, 2017." (Id. ¶ 20.) "WIN West is a shelter for single adult females . . . that has prior and ongoing experience with transgender clients. WIN West has extensive mental health services on site and DHS Police security." (Id. ¶ 21.)

On May 11, 2017, Lopez filed a C.P.L.R. Article 78 petition and order to show cause in Supreme Court New York County against DHS and Project Renewal to "[r]estrain DHS and Project Renewal from carrying out an administrative transfer from 'Marsha's Place' Shelter."

(Roberts Aff. Ex. 1: 5/11/17 Sup. Ct. Order to Show Cause at 1-2; see also Roberts Aff. ¶ 25.) Lopez alleged that the transfer was "retaliation for [her] lawsuit and TRO in Federal Court," and because Lopez "confront[ed] [Project Renewal's director] . . . in a private meeting." (Roberts Aff. Ex. 1: 5/11/17 Sup. Ct. Verified Petition at 2.) Lopez further claimed that since filing her federal lawsuit and allowing the TRO to be dissolved, "staff at Marsha's Place have been treating [her] 'different' than other clients." (Id. at 1-2.) Lopez explained: "The transfer came after an incident where I passionately objected to discrimination I witnessed by food service staff against Trans clients. The incident is simply an excuse to transfer me." (Id. at 2.) Lopez requested "[t]hat DHS and Project Renewal be barred from transferring [her] from Marsha's Place Shelter until [the state] Court determines if retaliation was the main reason behind the request for an 'Admin Transfer.'" (Id. at 3.)

Supreme Court Justice Jaffe heard oral argument on Lopez's Article 78 petition on May 12, 2017. (Roberts Aff. ¶ 26 & Ex. 2: 5/12/17 Sup. Ct. Oral Arg. Tr.) At the hearing, Lopez argued that WIN West was unsafe for transgender women, and claimed two transgender women had been assaulted there "within the last couple of months." (5/12/17 Sup. Ct. Oral Arg. Tr. at 3-4.) Justice Jaffe instructed DHS to provide Lopez with a bed at Marsha's House over the weekend, but reserved final ruling on Lopez's petition pending a further conference on May 15, 2017. (Id. at 30-33.)

At the May 15, 2017 conference, Lopez further argued that the transfer was a result of her "being the proverbial squeaky wheel and blowing the loudest whistle possible" regarding her alleged discriminatory treatment by DHS staff. (Roberts Aff. Ex. 3: 5/15/17 Sup. Ct. Oral Arg. Tr. at 5.) Justice Jaffe held: "Pending the determination of this proceeding, respondents are stayed from enforcing the transfer referral of [Lopez] to the Win West Shelter. Respondents to appear or answer

on or before 5/24 . . . .  This order is conditioned on [Lopez] complying with respondents' rules & regulations."  (Roberts Aff. Ex. 1: 5/15/17 Sup. Ct. Order to Show Cause at 2; see also 5/15/17 Sup. Ct. Oral Arg. Tr. at 11, 19; Roberts Aff. ¶ 28.)

On May 24, 2017, Lopez allegedly "became involved in a variety of incidents at Marsha's House and hit a security guard at the shelter."  (Roberts Aff. ¶ 29 & Exs. 4-5.)  The same day, May 24, 2017, DHS suspended Lopez from Marsha's House for seven days, until May 31, 2017.  (Roberts Aff. ¶ 30 & Ex. 6.)

On May 30, 2017, Lopez wrote an "emergency" letter to Judge Caproni, stating that she was "now homeless again, after DHS lost in a new State Court Article 78, after trying to use an 'Administrative Transfer' mechanism to move [Lopez] from Marsha's" House.  (Dkt. No. 22 at 1.)  Lopez wrote: "DHS officials and lawyers are doing everything in their power to retaliate against me via attempting to use petty infractions in order to justify putting me out. . . .  DHS and I are scheduled to be in Supreme (State) Court tomorrow concerning motions on the [state court] TRO I was granted" by Justice Jaffe.  (Id. at 1, 3.)  Lopez simultaneously filed a motion styled "Emergency Relief (to get back in shelter) Requested."  (Dkt. No. 23.)  Lopez asked Judge Caproni to "[i]ntervene to stop [DHS] from moving [her] from Marsha's Shelter, or suspending [her] services there, until this Court determines if the suspensions of services or transfers are retaliation for the TRO which this Court issued and [she] allowed to dissolve."  (Id.)  Judge Caproni set a hearing for May 31, 2017.  (Dkt. No. 24: 5/30/17 Order.)

On May 31, 2017, DHS, Project Renewal and Lopez appeared before Justice Jaffe, who heard argument on Lopez's Article 78 petition.  (Roberts Aff. ¶ 33 & Ex. 9: 5/31/17 Sup. Ct. Oral Arg. Tr.)  Counsel for DHS asked Justice Jaffe to lift the May 15, 2017 stay to permit DHS to transfer Lopez to the WIN West Shelter.  (5/31/17 Sup. Ct. Oral Arg. Tr. at 19-20.)  Lopez, on the

other hand, sought to "amend the TRO to include that until this proceeding reaches its finality, that[] [DHS and Project Renewal] cannot suspend [her] services [at Marsha's House] without coming back, specifically, in front of this Court."  (Id. at 20-21.)  Lopez continued: "The only facility where a open and transgender person in the Department of Homeless Services that does not want to face harassment from either the outside community outing them as being trans . . . or the people within, is Project Renewal Marsha's House."  (Id. at 21.)

When Lopez was asked what relief she was seeking "in Federal Court today," Lopez stated that she "didn't expressly ask for relief the same way" in her filings with Judge Caproni, but if Justice Jaffe "granted a TRO that [Lopez] ask[ed] for, it would make the issue across the street moot."  (Id. at 22, 24.)  Justice Jaffe stated: "Judge Caproni can just do whatever she wants.  I'm lifting the stay against the transfer based on the record before me and the balancing of the equities here.  But, I will issue a decision on the Article 78 and decide whether or not there will be a hearing."  (Id. at 24-25; see also Roberts Aff. ¶ 34 ("Justice Jaffe lifted her prior stay, permitted DHS to transfer [Lopez] to a shelter other than Marsha's House, including the WIN West shelter, and took the merits of the Article 78 proceeding under advisement.").)

The same day, May 31, 2017, "[i]mmediately after concluding the appearance before Justice Jaffe . . . , the parties appeared before Judge Caproni" regarding Lopez's May 30, 2017 emergency federal court filings in which Lopez sought to prevent her transfer from Marsha's House. (Roberts Aff. ¶ 35; Dkt. No. 40: 5/31/17 Oral Arg. Tr.)  Judge Caproni and Lopez had the following colloquy:

> THE COURT: . . . .  What relief do you want from me today?
>
> MS. LOPEZ:  To reissue the TRO.

THE COURT:  So you're seeking appropriate injunction preventing you from being transferred out of Marsha's House?

MS. LOPEZ:  Yes, your Honor.

THE COURT:  Okay.  Isn't that exactly what was before the Supreme Court justice today?

MS. LOPEZ:  So, yes, but your Honor - -

THE COURT:  Stop.  Sit down.  Why isn't this res adjudicata?

(5/31/17 Oral Arg. Tr. at 10.)

After counsel for the City argued that Justice Jaffe's "decision today was made on precisely these issues" (id. at 11), Judge Caproni remarked that Lopez's "claim, I guess, in front of me is slightly different, which is, she's claiming that this is all retaliatory for having initially obtained preliminary relief" (id. at 12; see also id. at 58 ("THE COURT: . . . .  I am reading her papers that were filed yesterday, and I am viewing them in the light most favorable to the pro se litigant, is that she is seeking a temporary restraining order against a transfer on the grounds that the transfer is retaliatory.  That's her claim.")).  Judge Caproni stated that "[t]he only issue before me is whether [Lopez] will suffer irreparable injury if . . . moved . . . from Marsha's House to WIN West."  (Id. at 60.)  Judge Caproni denied Lopez's request for emergency relief, holding that Lopez "ha[d] not demonstrated that she will suffer irreparable harm in the absence of preliminary relief."  (Id. at 65.)

After the May 31, 2017 proceedings before Justice Jaffe and Judge Caproni, DHS transferred Lopez to the WIN West shelter.  (Roberts Aff. ¶ 37.)

On June 14, 2017, Justice Jaffe issued a decision and judgment in Lopez's Article 78 proceeding.  (Roberts Aff. Ex. 10: 6/14/17 Sup. Ct. Order.)  Justice Jaffe wrote that Lopez "alleges that the transfer [from Marsha's House] constitutes a retaliatory measure against her for having

obtained an order from the Southern District of New York enjoining respondents from refusing the entry of her service dog into Marsha's Place." (Id. at 1.) Lopez thus sought "an order directing [DHS] to 'reverse its decision to approve Project Renewal's request to transfer [her] from Marsha's Place Shelter (for transgender people).'" (Id., quoting Lopez's 5/11/17 Notice of Verified Petition at 1.)[2/]

        In her analysis, Justice Jaffe wrote that "[a]lthough [Lopez] seeks a preliminary injunction, she ultimately requests that [Justice Jaffe] review the determination of an agency," i.e., DHS, and thus Lopez was required to exhaust her administrative remedies before seeking court intervention. (6/14/17 Sup. Ct. Order at 7.) Lopez, however, "offer[ed] no reason to believe that an effort to obtain a fair hearing [before DHS] would be futile, or that a hearing would be other than fair." (Id. at 7-8, citation omitted.) Moreover, Justice Jaffe held that "notwithstanding [Lopez's] report of hearing from two . . . recent victims [of assault] at WIN West, her fear of being assaulted there is nonetheless speculative and does not constitute irreparable injury." (Id. at 8.) Justice Jaffe further held that even if Lopez had exhausted her administrative remedies, given DHS' "broad discretion and the speculative nature of [Lopez's] fears, [Lopez] fail[ed] to demonstrate,

---

[2/]    Justice Jaffe stated in her decision that "[o]n May 26, 2017, [Lopez] brought a new order to show cause and petition, seeking an order compelling DHS to permit her to return to Marsha's Place." (6/14/17 Sup. Ct. Order at 4.) Justice Jaffe further noted: "Another justice of this court denied [Lopez's] request for a stay, and scheduled the application to be heard by me on May 31, 2017." (Id. at 4-5.) The May 26, 2017 filings do not appear in the record. However, at the May 31, 2017 conference, Justice Jaffe "lifted the stay and marked as fully submitted [Lopez's] motion for a preliminary injunction and her petition." (Id. at 6.) It therefore appears that Justice Jaffe treated those subsequent filings as a supplement to Lopez's initial petition filed on May 11, 2017. (See pages 3-4 above.) Moreover, Justice Jaffe referenced these "new papers" at the May 31, 2017 conference that were not served on defendants beforehand and in any event do not appear to have substantively altered Lopez's claims based on the ensuing discussion and Justice Jaffe's June 14, 2017 decision. (See 5/31/17 Sup. Ct. Oral Arg. Tr. at 2.) Neither defendant argues that the May 26, 2017 filings have any bearing on the instant motions. (See generally Dkt. Nos. 45, 50.)

respectively, a likelihood of success on the merits and irreparable injury" to warrant a preliminary injunction.  (Id. at 9.)  Justice Jaffe accordingly denied Lopez's Article 78 petition in its entirety and dismissed the proceeding.  (Id. at 10.)

On June 15, 2017, Lopez filed another motion for temporary restraining order in this Court, claiming that DHS had placed her in a facility that could not reasonably accommodate her disabilities, and "the decision for DHS to move [her] from Marsha's was retaliatory."  (Dkt. No. 31 at 1.)  Lopez demanded the following relief: "DHS to place me back at Marsha's until this Court reviews whether I will be harmed by a placement other than Marsha's," and "DHS to reserve a bed a[t] Marsha's until the conclusion of my ADA case in front of this court, or until I have found permanent housing . . . ."  (Dkt. No. 31 at 7.)  On the same date, June 15, 2017, the Part One Judge denied the motion because it was not clear what irreparable harm Lopez sought to avoid.  (Dkt. No. 32: 6/15/17 Order at 2.)

On June 30, 2017, Judge Caproni held a conference to obtain clarification regarding Lopez's June 15, 2017 filing.  (Dkt. No. 42: 6/30/17 Conf. Tr.)  Judge Caproni observed that Lopez's claims had "shifted from the original complaint," and Lopez's "original complaint is now moot" because her service animal was accepted into the DHS shelter system.  (Id. at 2; see also id. at 8 ("THE COURT: . . . .  The dog is accommodated.  That's moot.  That claim is dismissed.").)  Lopez clarified that the two claims raised in her June 15, 2017 motion were: (1) Lopez's removal from Marsha's House was retaliatory, and (2) the only reasonable accommodation for Lopez's disabilities is placement at Marsha's House.  (Id. at 2-3.)  On July 5, 2017, Judge Caproni ruled that Lopez's June 15, 2017 motion would be construed as an amended complaint.  (Dkt. No. 39: 7/5/17 Order.)

The City and Project Renewal presently move to dismiss Lopez's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. Nos. 44, 49.) Specifically, the City alleges that Lopez's claims are barred by res judicata or collateral estoppel. (Dkt. No. 45: City Br. at 11-17.)  Project Renewal alleges that Lopez's claims are barred by res judicata (Dkt. No. 50: Project Renewal Br. at 9-12), and also that Lopez fails to state a claim under the ADA (id. at 12-16).

## ANALYSIS

## I.   LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

### A.   The Standard Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.   The Twombly-Iqbal "Plausibility" Standard

In the Twombly and Iqbal decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

> Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

       In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")).[3/]

---

[3/]    Accord, e.g., Affinity LLC v. GfK Mediamark Research & Intelligence, LLC, 547 F. App'x 54, 55-56 (2d Cir. 2013); Massena v. Bronstein, 545 F. App'x 53, 55 (2d Cir. 2013); Cancel v. Home Depot, 488 F. App'x 520, 520 (2d Cir. 2012); Spataro v. Glenwood Supply, 479 F. App'x 403, 404 (2d Cir. 2012); Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied, 562 U.S. 1168, 131 S. Ct. 901 (2011); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Scerba v. Allied Pilots Ass'n, 13 Civ. 3694, 2013 WL 6481583 at *6-7 (S.D.N.Y. Dec. 10, 2013) (Peck, M.J.), aff'd, 589 F. App'x 554 (2d Cir. 2014), cert. denied, 135 S. Ct. 2313 (2015); Florio v. Canty, 954 F. Supp. 2d 227, 229-30 (S.D.N.Y. 2013) (Peck, M.J.) (citing cases); Mahoney v. Sony Music Entm't, 12 Civ. 5045, 2013 WL 491526 at *4-5 (S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); Toto, Inc. v. Sony Music Entm't, 12 Civ. 1434, 2012 WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck, M.J.), R. & R. adopted, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013).

Even after Twombly and Iqbal, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Bison Capital Corp. v. ATP Oil & Gas Corp., 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), R. & R. adopted, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[4/]

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citation omitted). Courts accordingly must "'liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest.'" McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017). "'[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.' Rather, '[f]actual allegations alone are what matters.' That principle carries particular force where a pro se litigant is involved." Id. at 158 (citations & fn. omitted).

**2.   Consideration of Documents Outside The Pleadings**

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[4/]   Accord, e.g., Florio v. Canty, 954 F. Supp. 2d at 230-31; Tasini v. AOL, Inc., 851 F. Supp. 2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), aff'd, 505 F. App'x 45 (2d Cir. 2012); Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[5]   The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[6]

---

[5]   <u>Accord</u>, <u>e.g.</u>, <u>Grant</u> v. <u>Cty. of Erie</u>, 542 F. App'x 21, 23 & n.1 (2d Cir. 2013); <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[6]   <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2013) (Peck, M.J.); <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (quoting <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d at 98); <u>Drum Major Music Entm't Inc.</u> v. <u>Young Money Entm't, LLC</u>, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); <u>Maniolos</u> v. <u>United States</u>, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), <u>aff'd</u>, 469 F. App'x 56 (2d Cir. (continued...)

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

"A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014); accord, e.g., Wendt v. BondFactor Co., 16 Civ. 7751, 2017 WL 3309733 at *4 (S.D.N.Y. Aug. 2, 2017); O'Callaghan v. City of N.Y., 16 Civ. 1139, 2016 WL 7177509 at *4 (S.D.N.Y. Dec. 8, 2016); Nash v. Bd. of Educ. of City of N.Y., 99 Civ. 9611, 2016 WL 5867449 at *4 (S.D.N.Y. Sept. 22, 2016) ("In considering these preclusion arguments, the Court may take judicial notice of [plaintiff's] Amended Petition in his second Article 78 proceeding and the New York State Supreme Court's ruling in that proceeding.").

"A court may apply collateral estoppel to dismiss claims on a 12(b)(6) motion." Manhattan Review LLC v. Yun, 16 Civ. 0102, 2017 WL 1330334 at *4 (S.D.N.Y. Apr. 10, 2017), R. & R. adopted, 2017 WL 3034350 (S.D.N.Y. July 17, 2017).  "'[W]hen a motion to dismiss is premised on the doctrine of collateral estoppel, a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions without having to convert the motion to dismiss into a summary judgment motion.'"  MMA Consultants 1, Inc. v. Republic of Peru, 15 Civ. 5551, 2017 WL 1235005 at *6 (S.D.N.Y. Mar. 24, 2017).

---

6/      (...continued)
        2012).

## II.   DEFENDANTS HAVE NOT SHOWN THAT RES JUDICATA OR COLLATERAL ESTOPPEL APPLIES

### A.   Res Judicata Legal Standards

"The doctrine of res judicata provides that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Rackowski v. Araya, No. 522005, 152 A.D.3d 834, 2017 WL 2870421 at *1 (3d Dep't July 6, 2017) (quotations omitted).[7] "'The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation.'" Young-Szlapak v. Young, 151 A.D.3d 1646, 1646, --- N.Y.S.3d ---- (4th Dep't 2017).[8] "However, '[w]here a dismissal does not involve a determination on the merits, the

---

[7]   "When 'determin[ing] the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state.'" Giannone v. York Tape & Label, Inc., 548 F.3d 191, 192-93 (2d Cir. 2008); accord, e.g., Houck v. U.S. Bank, N.A., No. 16-CV-3660, 2017 WL 1735252 at *1 (2d Cir. May 3, 2017) ("Our precedents require us to apply the preclusion law of the rendering state."); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment, and New York law in determining the preclusive effect of a New York State court judgment." (citations omitted)). In any event, "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel." Marvel Characters, Inc. v. Simon, 310 F.3d at 286.

[8]   See also, e.g., Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017) ("The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (quotations omitted)); Outdoors Clothing Corp. v. Schneider, No. 2015-05854, 2017 WL 3496248 at *2 (2d Dep't Aug. 16, 2017) ("Pursuant to the doctrine of res judicata, a valid final judgment bars future actions between the same parties on the same cause of action. . . . Thus, '[t]he doctrine is applicable . . . to issues which were or could have been raised in the prior proceeding.'"); Chapman v. Faustin, 150 A.D.3d 647, 647, 55 N.Y.S.3d 219, 220 (1st Dep't 2017) ("'[W]here a plaintiff in a later action brings a claim for damages that could have been presented in a prior . . . proceeding against the same party, based upon the same harm and arising out of the same or related facts, the claim is barred by res judicata.'").

doctrine of res judicata does not apply.'" <u>Cortazar</u> v. <u>Tomasino</u>, 150 A.D.3d 668, 670, 54 N.Y.S.3d 89, 92 (2d Dep't 2017).

    Thus, "[w]hen alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single 'factual grouping,' the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." <u>O'Brien</u> v. <u>City of Syracuse</u>, 54 N.Y.2d 353, 357-58, 445 N.Y.S.2d 687, 689 (1981) (citation & fn. omitted).[9/]   "[W]hat 'factual grouping' constitutes a 'transaction' or 'series of transactions' depends on how 'the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether . . . their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" <u>Smith</u> v. <u>Russell Sage Coll.</u>, 54 N.Y.2d at 192-93, 445 N.Y.S.2d at 71; <u>accord</u>, <u>e.g.</u>, <u>Wendt</u> v. <u>BondFactor Co.</u>, 16 Civ. 7751, 2017 WL 3309733 at *6 (S.D.N.Y. Aug. 2, 2017).

  **B.**  <u>**Collateral Estoppel Legal Standards**</u>

    "Under the doctrine of collateral estoppel, . . . [a] plaintiff should not be allowed . . . to raise any of the issues he unsuccessfully litigated in his prior CPLR article 78 proceeding." <u>Parker</u> v. <u>Blauvelt Volunteer Fire Co.</u>, 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 482 (1999).  The doctrine of collateral estoppel, or issue preclusion, accordingly applies when the following four conditions are met:

---

[9/] <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Russell Sage Coll.</u>, 54 N.Y.2d 185, 192, 445 N.Y.S.2d 68, 71 (1981) ("[I]n deciding <u>res judicata</u> issues, we have moved to a more pragmatic test, which sees a claim or cause of action as coterminous with the transaction regardless of the number of substantive theories or variant forms of relief . . . available to the plaintiff. . . .  [E]ven if there are variations in the facts alleged, or different relief is sought, the separately stated causes of action may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought." (quotations omitted)).

> "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."

Conason v. Megan Holding, LLC, 25 N.Y.3d 1, 17, 6 N.Y.S.3d 206, 215 (2015); accord, e.g., FC Notes SVC, LLC v. United Gen. Title Ins. Co., 146 A.D.3d 935, 936, 46 N.Y.S.3d 159, 160 (2d Dep't 2017).[10/]   "[T]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in [the] prior action or proceeding." Highlands Ctr., LLC v. Home Depot U.S.A., Inc., 149 A.D.3d 919, 921, 53 N.Y.S.3d 321, 324 (2d Dep't 2017) (quotations omitted); accord, e.g., Corvetti v. Town of Lake Pleasant, 146 A.D.3d 1118, 1121, 46 N.Y.S.3d 679, 683 (3d Dep't 2017).

## C.  Application To Article 78 Proceedings

"Article 78 proceedings are 'used to challenge action (or inaction) by agencies and officers of state and local government.'" Sheffield v. Sheriff of Rockland Cty. Sheriff Dep't, 393 F. App'x 808, 812 (2d Cir. 2010); see also C.P.L.R. §§ 7801, 7803.  Res judicata and collateral estoppel are applicable, in certain circumstances, to bar relitigation of claims or issues decided in Article 78 proceedings.  See, e.g., Dutrow v. N.Y.S. Gaming Comm'n, 607 F. App'x 56, 57 n.1 (2d Cir. 2015) ("[C]ollateral estoppel bars relitigation of issues decided in Article 78 proceedings."); Ehrlich v. Inc.

---

[10/]   See also, e.g., Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d at 349, 690 N.Y.S.2d at 482-83 ("The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action."); London Leasing Ltd. P'ship v. Div. of Hous. & Cmty. Renewal, No. 2015-08660, 2017 WL 3496255 at *2 (2d Dep't Aug. 16, 2017) ("'Collateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent action or proceeding an issue that was raised in a prior action or proceeding and decided against that party' or those in privity.").

<u>Vill. of Sea Cliff</u>, 95 A.D.3d 1068, 1069, 945 N.Y.S.2d 98, 100 (2d Dep't 2012) ("As 'it is clear that the relief sought [by these causes of] action is essentially the same as that sought in the article 78 proceeding previously determined adversely to the plaintiff[s], and that the claims arise out of the same or related facts', the Supreme Court properly granted . . . defendants' motion . . . dismissing the . . . causes of action as barred by the doctrine of res judicata." (citation omitted)).

### D.   <u>Defendants Have Not Shown That Res Judicata Or Collateral Estoppel Applies</u>

Defendants argue that Justice Jaffe adjudicated Lopez's Article 78 petition "on the merits" and thus res judicata applies to bar Lopez's present claims.  (Dkt. No. 45: City Br. at 13 ("Justice Jaffe's decision and judgment are an adjudication on the merits entitled to <u>res judicata</u> effect."); Dkt. No. 50: Project Renewal Br. at 10 ("Plaintiff's Article 78 proceeding involved an adjudication on the merits, as evidenced by Justice Jaffe's decision.").)  Defendants further argue that collateral estoppel applies because issues identical to those in this case were "actually litigated and decided" by Justice Jaffe in the Article 78 proceeding.  (City Br. at 16; Project Renewal Br. at 12 n.2.)

Defendants are incorrect on both fronts.  As to res judicata, Justice Jaffe, presented with Lopez's verified petition and accompanying order to show cause, ruled that: (1) Lopez did not exhaust her administrative remedies with DHS; and (2) no preliminary injunction was warranted because Lopez did not demonstrate, among other things, "a likelihood of success on the merits." (Dkt. No. 46: Roberts Aff. Ex. 10: 6/14/17 Sup. Ct. Order at 7-9; <u>see</u> pages 7-9 above.)  Neither the failure to exhaust[11] nor the denial of a preliminary injunction[12] operated as a final decision on the

---

[11]   <u>See</u>, <u>e.g.</u>, <u>33 Seminary LLC</u> v. <u>City of Binghamton</u>, No. 11-CV-1300, 2012 WL 12888394 at *13 (N.D.N.Y. Apr. 19, 2012) ("A state court dismissal for failure to exhaust administrative remedies is presumed to be without prejudice, and therefore, it can have no (continued...)

merits, even though the former resulted in the dismissal of Lopez's petition.[13/]   As to collateral

estoppel, Justice Jaffe decided whether to grant Lopez a preliminary injunction considering her

"likelihood of success on the merits" (6/14/17 Sup. Ct. Order at 9), not whether DHS' actions were,

in fact, retaliatory or WIN West was an unreasonable accommodation.  Cf. Univ. of Texas v.

Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981) ("The purpose of a preliminary

injunction is merely to preserve the relative positions of the parties until a trial on the merits can be

---

[11/]   (...continued)
res judicata effect."); Hall v. N.Y. Hosp., 99 Civ. 10554, 2000 WL 222858 at *1 (S.D.N.Y. Feb. 25, 2000) (same); Lamar Outdoor Advert., Inc. v. City Planning Comm'n of Syracuse, 296 A.D.2d 841, 842, 744 N.Y.S.2d 283, 284 (4th Dep't 2002) ("Because that [Article 78] proceeding was dismissed based upon petitioner's failure to obtain personal jurisdiction . . . , the dismissal is not the equivalent of a final disposition on the merits and the doctrine of res judicata does not apply."); Town of Caroga v. Herms, 20 Misc. 3d 1130, 872 N.Y.S.2d 693, 693 (Sup. Ct. Fulton Cty. 2008) (table) ("It is well-established in the law that a prior decision must be 'on the merits' before it can be given res judicata effect . . . .  [T]he failure by a petitioner to exhaust their administrative remedies forecloses their ability to raise an issue in court.  A court dismissing an Article 78 petition on the basis of failure to exhaust administrative remedies therefore does not reach the merits of the case." (citations omitted)), aff'd, 62 A.D.3d 1121, 878 N.Y.S.2d 834 (3d Dep't 2009).

[12/]   See, e.g., Town of Concord v. Duwe, 4 N.Y.3d 870, 875, 799 N.Y.S.2d 167, 170 (2005) ("[M]ere denial of the motion for a preliminary injunction did not constitute the law of the case or an adjudication on the merits."); Van Wagner Advert. Corp. v. S & M Enters., 67 N.Y.2d 186, 190 n.1, 501 N.Y.S.2d 628, 630 n.1 (1986) ("[D]enial of a motion for a preliminary injunction does not 'constitute the law of the case or an adjudication on the merits.'"); 360 W. 11th LLC v. ACG Credit Co., 46 A.D.3d 367, 367, 847 N.Y.S.2d 198, 198 (1st Dep't 2007) ("[T]he purpose of a preliminary injunction is to maintain the status quo pending a hearing on the merits, rather than to determine the parties' ultimate rights."); Peterson v. Corbin, 275 A.D.2d 35, 40, 713 N.Y.S.2d 361, 365 (2d Dep't 2000) ("[A] preliminary injunction is a provisional remedy and a decision concerning a preliminary injunction does not become the law of the case, nor would it constitute an adjudication on the merits so as to preclude reconsideration of that issue at a trial on the merits.").

[13/]   Justice Jaffe did not state, and defendants do not argue, that Lopez cannot exhaust her administrative remedies.  See, e.g., Witchard v. Montefiore Med. Ctr., 05 Civ. 5957, 2006 WL 2773870 at *7 (S.D.N.Y. Sept. 26, 2006) ("[A] dismissal is considered to be on the merits where it is no longer possible to properly exhaust administrative remedies.").

held. . . .   A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.  In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." (citations omitted)).[14]  Defendants have not shown that res judicata or collateral estoppel applies here.

Because the only basis for the City's motion to dismiss was res judicata and collateral estoppel (City Br. at 11-17), the City's motion to dismiss (Dkt. No. 44) should be <u>DENIED</u>.  Project Renewal's motion to dismiss on this ground (Dkt. No. 49) also should be <u>DENIED</u>.

---

[14]   See also, e.g., <u>FC Notes SVC, LLC</u> v. <u>United Gen. Title Ins. Co.</u>, 146 A.D.3d 935, 936, 46 N.Y.S.3d 159, 160 (2d Dep't 2017) ("The instant action is not barred by the doctrine of collateral estoppel since the dismissal of the prior action for failure to state a cause of action did not involve a determination on the merits."); <u>Zinter Handling, Inc.</u> v. <u>Britton</u>, 46 A.D.3d 998, 1000, 847 N.Y.S.2d 271, 273-74 (3d Dep't 2007) ("Here, plaintiff asserts that defendants' failed attempt to obtain an injunction against enforcement of the covenant in the prior litigation collaterally estops defendants from now contesting the enforceability of the covenant.  We disagree.  Supreme Court's denial of defendants' request for a preliminary injunction was premised on its conclusion that defendants' submissions failed to adequately establish the three elements necessary for the issuance of a preliminary injunction.  Since the issue of enforceability of the covenant was not specifically decided by Supreme Court in conjunction with the denial of the preliminary injunction, the doctrine of collateral estoppel has no application." (citation omitted)); <u>Tortura</u> v. <u>Sullivan Papain Block McGrath & Cannavo, P.C.</u>, 41 A.D.3d 584, 585, 837 N.Y.S.2d 333, 334 (2d Dep't 2007) ("[T]his action is not barred by the doctrine of res judicata or the doctrine of collateral estoppel since the dismissal of the prior action did not involve a determination on the merits and the issues were not actually litigated therein." (citation omitted)); <u>James</u> v. <u>Bernhard</u>, 34 Misc. 3d 1242, 950 N.Y.S.2d 608, 608 (Sup. Ct. N.Y. Cty. 2012) (table) ("[B]lack letter law accords no collateral estoppel effect to preliminary injunction orders . . . .  A preliminary injunction order is an interim order issued without discovery or an evidentiary hearing and therefore does not constitute the 'full and fair opportunity' to litigate the issues, let alone the required adjudication and decision on the merits.  Thus, the grant or denial of a preliminary injunction has no collateral estoppel effect.").

## III.   LOPEZ'S FAILURE TO ACCOMMODATE AND TITLE II ADA CLAIMS AGAINST PROJECT RENEWAL SHOULD BE DISMISSED

### A.   Discrimination In Public Services And Accommodations Under The ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

A plaintiff may establish a violation of Titles II and III by proving: "(1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to [the ADA]; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir. 2004); accord, e.g., B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016).  An ADA "plaintiff may base her discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016) (Title II); accord, e.g., B.C. v. Mount Vernon Sch. Dist., 837 F.3d at 158 ("Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation.") (Title II); see also, e.g., Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 77 (2d Cir. 2016) ("The House Committee on Education and Labor's report on the ADA . . . stat[ed]

'that the forms of discrimination prohibited by [Title II are] identical to those set out in the applicable provisions of titles I and III of this legislation.'"); <u>Mary Jo C.</u> v. <u>N.Y.S. & Local Ret. Sys.</u>, 707 F.3d 144, 159 n.6 (2d Cir.) ("Courts have read the requirements of Title II and Title III as being consistent with each other . . . ."), <u>cert. dismissed</u>, 133 S. Ct. 2823 (2013).

### B.    Lopez's Amended Complaint and Project Renewal's Arguments

Lopez's initial complaint under ADA Titles II and III focused on the removal of her service animal from Marsha's House (<u>see</u> Dkt. No. 2: Compl. at 5), which was mooted by defendants' stipulation permitting the animal in any DHS facility (<u>see</u> page 9 above).  Lopez alleges in her Amended Complaint that "DHS refusal to block Project Renewals request to transfer [her] from Marsha's house was a violation of [her] rights to be 'reasonably accommodated' under local, state and federal law." (Dkt. No. 31: Am. Compl. at 6.)  According to Lopez, neither WIN West, nor any other DHS facility save Marsha's House, constitutes a reasonable accommodation under the ADA.  (<u>Id.</u> at 3 ("<u>ALL</u> other DHS facilities besides Marsha's are . . . not reasonable accommodations for my" disabilities.).)  Specifically, Lopez alleges that "DHS has placed [her] at facilities which cannot reasonably accommodate [her] medical disabilities, PTSD, and Gender Identity Disorder." (<u>Id.</u> at 1.)  Lopez alleges that she will be "forced to 'hide' [her] trans-identity, and needs" at these non-LGBTQ facilities for fear of harassment.  (<u>Id.</u> at 3, 5.)  Lopez further alleges that "the decision for DHS to move [her] from Marsha's was retaliatory," caused in part by Lopez's "whistleblowing at Marsha's House."  (<u>Id.</u> at 1-2.)

Project Renewal argues that Lopez's ADA failure to accommodate and retaliation claims should be dismissed on the following grounds: (1) Lopez fails to name Project Renewal as a defendant (Dkt. No. 50: Project Renewal Br. at 13); (2) Lopez fails to state a failure to accommodate claim because the Amended Complaint contains no allegations "that Project Renewal

had knowledge of her disability, [or] that Project Renewal had any decision-making authority with respect to [Lopez's] shelter placement" (id.); (3) Lopez fails to state a retaliation claim "because she does not allege that she engaged in a protected activity," nor does she "allege that Project Renewal subjected her to an adverse action" (id. at 14-15); and (4) Project Renewal is not a public entity covered by Title II of the ADA (id. at 15-16).

### 1.  Lopez's Failure To Name Project Renewal As A Defendant Does Not Merit Dismissal

Project Renewal correctly notes that it is not named as a defendant in Lopez's Amended Complaint.  (Dkt. No. 50: Project Renewal Br. at 13; see Dkt. No. 31: Am. Compl. at 1.) Project Renewal, however, was named in Lopez's initial complaint.  (Dkt. No. 2: Compl. at 1.) Judge Caproni deemed Lopez's June 15, 2017 filing to constitute an amended complaint, even though it was styled "Letter re: Emergency request for TRO" (Am. Compl. at 1), to benefit not harm Lopez.  There is no indication that Lopez desired to dismiss Project Renewal from this lawsuit, and Project Renewal does not argue that it has been prejudiced by this technical pleading failure.  Lopez should be given an opportunity to amend the case caption to comply with Federal Rule of Civil Procedure 10.  Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."); see also, e.g., Shariff v. United States, No. 15-3357-cv, 2017 WL 1493674 at *1 (2d Cir. Apr. 26, 2017) ("We conclude that the district court erred in dismissing [plaintiff's] complaint based on infirmities in the caption. . . .  Rule 10 is, of course, subject to the command 'never to exalt form over substance.'  Indeed, we 'excuse technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party.' . . .  [O]ur flexible construction of pro se pleadings leads us to conclude that [plaintiff] must be given further opportunity to conform the caption with Rule 10's requirements." (citations omitted)).

Project Renewal's motion to dismiss due to the deficient case caption should be DENIED, but Lopez should amend the caption accordingly. (Indeed, to avoid any further confusion, Lopez should file a formal "Second Amended Complaint.")

### 2.    Lopez Has Not Alleged A Failure to Accommodate Claim Against Project Renewal

Project Renewal argues that Lopez's failure to accommodate claim should be dismissed because Lopez makes no allegations that Project Renewal knew of her disability or had any decisionmaking authority with respect to her shelter placement. (Dkt. No. 50: Project Renewal Br. at 13-14.)

"Discrimination in violation of the ADA includes, inter alia, not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Sheng v. M&TBank Corp., 848 F.3d 78, 86 (2d Cir. 2017) (quotations omitted). "Title III of the [ADA] requires without exception that any 'policies, practices, or procedures' of a public accommodation be reasonably modified for disabled 'individuals' as necessary to afford access unless doing so would fundamentally alter what is offered." PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S. Ct. 1879, 1896 (2001) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii) ("[D]iscrimination [under Title III of the ADA] includes . . . failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.")).[15]

---

[15]    Although Project Renewal argues that it is not subject to Title II of the ADA (see page 31 below), it makes no such argument regarding Title III, and instead only challenges whether
(continued...)

To establish an ADA failure to accommodate claim in this context, a plaintiff must allege that: "(1) he suffers from . . . a disability as defined by the ADA . . . ; (2) the defendant knew or reasonably should have known of the plaintiff[']s . . . disability; (3) accommodation of the . . . disability may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Flynn v. Cohison, No. 16 Civ. 2243, 2016 WL 2946173 at *2 (E.D.N.Y. May 19, 2016); accord, e.g., Williams v. N.Y.C. Hous. Auth., 07 Civ. 7587, 2009 WL 804137 at *7 (S.D.N.Y. Mar. 26, 2009), aff'd, 408 F. App'x 389 (2d Cir. 2010).[16/]  Project Renewal only challenges the second and fourth elements.  (See Project Renewal Br. at 13-14.)

As Project Renewal argues, Lopez's allegations in the Amended Complaint focus almost entirely on DHS.  (Dkt. No. 31: Am. Compl. at 1-2 ("DHS has placed me at facilities which

---

[15/]     (...continued)
Lopez has pled a prima facie case of discrimination.  (See Project Renewal Br. at 13-14.) Title III bars discrimination in "place[s] of public accommodation." 42 U.S.C. § 12182(a). Thus, "[i]n order to state a claim for violation of Title III, . . . a plaintiff must 'establish that . . . the defendants own, lease, or operate a place of public accommodation.'" Krist v. Kolombos Rest. Inc., 688 F.3d 89, 94-95 (2d Cir. 2012) (reciting text of 42 U.S.C. § 12182(a)).  Various "private entities are considered public accommodations . . . if the operations of such entities affect commerce," including "homeless shelter[s] . . . or other social service center establishment[s]."  42 U.S.C. § 12181(7)(K); see also 28 C.F.R. § 36.104.  Drawing all reasonable inferences in Lopez's favor on this motion, the Court finds that Project Renewal falls within the ambit of Title III, see, e.g., PGA Tour, Inc. v. Martin, 532 U.S. at 676-77, 121 S. Ct. at 1890 ("The phrase 'public accommodation' . . . 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." (fns. omitted)), although as to the City, the homeless shelter system falls under Title II.

[16/]     See also, e.g., Ibrahim v. Pena, 16 Civ. 7774, 2017 WL 3601246 at *2 (S.D.N.Y. Aug. 21, 2017) (Caproni, D.J.) ("To state a failure-to-accommodate claim, the plaintiff must allege facts showing '(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide.'").

cannot reasonably accommodate my medical disabilities"; "the decision for DHS to move me from Marsha's was retaliatory"; "DHS refusal to temporarily place me back at Marsha's is a failure to make 'reasonable' accommodations for my disabilities"); id. at 4 ("DHS decision to 'force' me into a 'female' facility is a violation of New York City and State law"); id. at 6 ("DHS has no facilities beside Marsha's which can accommodate my needs"); id. at 7 ("I am asking the Court to . . . order[] . . . DHS to place me back at Marsha's").)  Lopez's sole allegations that mention Project Renewal state: "DHS refusal to block Project Renewals request to transfer me from Marsha's House was a violation of my rights to be 'reasonably accommodated' under local, state and federal law. (Demanding Project Renewal staff prove their allegations while I'm still at Marsha's is not unreasonable)." (Id. at 6.)

These scattered references to Project Renewal do not suggest that it rejected Lopez's request for a reasonable accommodation or otherwise failed to accommodate her disabilities. Lopez's accommodation claim instead focuses on DHS' actions and the failings of the DHS shelter system, over which Project Renewal is not alleged to have any control. (See Am. Compl. at 3 ("ALL other DHS facilities besides Marsha's are . . . not reasonable accommodations for my" disabilities.).)  If DHS refuses to reinstate Lopez at Marsha's House, and allegedly none of DHS' other facilities accommodate Lopez's disabilities, it would seem that this claim is properly directed at DHS, not Project Renewal, as evidenced by Lopez's allegations.

On the other hand, Lopez's allegations suggest that Project Renewal caused her transfer from Marsha's House, thus denying Lopez her preferred accommodation, i.e., to remain at that facility.  Lopez claims that her transfer was precipitated by Project Renewal's allegations that Lopez broke the shelter's rules and threatened its staff.  (See Am Compl. at 6 ("Demanding Project Renewal staff prove their allegations while I'm still at Marsha's is not unreasonable"); see also pages

4-5 above.)   Lopez does not claim, however, that her alleged outbursts were triggered by her disabilities (see Roberts Aff. Ex. 10: 6/14/17 Sup. Ct. Order. at 9-10 ("To the extent that [Lopez's] conduct may be characterized as civil disobedience, . . . she is herself to blame for the consequences of her conduct")), such that she requires a reasonable accommodation (counseling services, for example) to comply with Marsha's House rules and thus permit her continued residence there.[17]   To the contrary, Lopez argues that Marsha's House itself is a reasonable accommodation.  And, because none of the other shelters, allegedly controlled solely by DHS, would accommodate her disabilities, Lopez claims she is entitled to a permanent residency at Marsha's House—no matter the circumstances.  That is not a reasonable accommodation as a matter of law and would result in an impermissible "heads I win tails you lose" outcome in Lopez's favor: Project Renewal never could transfer Lopez because a transfer anywhere else would constitute an unreasonable accommodation, yet Lopez would be free to disregard the shelter's rules with impunity.  See, e.g., Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 76 (2d Cir. 2016) ("[T]he plaintiff 'bears the initial burdens of both production and persuasion as to the existence of an accommodation' that is 'facial[ly] reasonable.'").

Project Renewal's motion to dismiss Lopez's failure to accommodate claim should be GRANTED.  However, Lopez should be given leave to file a "Second Amended Complaint" if she can allege a facially reasonable accommodation that Project Renewal failed to provide.

---

[17]   Compare Roe v. Hous. Auth. of City of Boulder, 909 F. Supp. 814, 816-17 (D. Colo. 1995) (Defendant "served [plaintiff] with a '30 Day Notice of Intent to Terminate Tenancy' . . . . [Defendant] seeks to evict [plaintiff] based, in large part, on his abusive and threatening behavior . . . .  [Plaintiff] contends that each allegation of the Notice implicates a symptom of either his mental disability or his hearing impairment. . . . [Plaintiff] alleges that the symptoms and related behavior associated with each of his conditions are controllable and readily accommodated.").

### 3.    Lopez Has Plausibly Alleged A Retaliation Claim Against Project Renewal

Project Renewal argues that Lopez's retaliation claim fails because she does not allege that she engaged in a protected activity or was subjected to an adverse action as a result. (Dkt. No. 50: Project Renewal Br. at 14-15.)

In addition to its anti-discrimination provisions, the ADA contains an anti-retaliation provision: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A prima facie case of retaliation under the ADA requires a showing that: "'(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002); accord, e.g., Ibrahim v. Pena, 16 Civ. 7774, 2017 WL 3601246 at *3 (S.D.N.Y. Aug. 21, 2017) (Caproni, D.J.). "A plaintiff's burden at this prima facie stage is de minimis." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Lopez has alleged a plausible retaliation claim against Project Renewal. Lopez filed this action against DHS and Project Renewal under ADA Titles II and III on April 25, 2017 (see page 2 above)—an ADA protected activity of which Project Renewal was aware as a named defendant.[18/] On May 31, 2017, Justice Jaffe lifted her previous stay and DHS transferred Lopez

---

[18/]    See, e.g., Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015) ("Plaintiff's engagement in a federal lawsuit . . . constitute[s] a 'protected activity.'"); Gaines
(continued...)

from Marsha's House to WIN West.  (See page 6 above.)  Lopez alleges that Project Renewal allegedly "request[ed] to transfer [Lopez] from Marsha's House" and DHS failed to "block" that request.  (See page 22 above.)  Lopez's allegations, read liberally, suggest that Project Renewal's request was the proximate cause of DHS' transfer decision, even if DHS had the ultimate decisionmaking authority to effectuate a transfer.[19/]  Borrowing from ADA employment cases, "[t]he Second Circuit has construed 'adverse employment action' to be broader for retaliation claims than for discrimination claims.  In the context of an ADA retaliation claim, an adverse employment action is an action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Bien-Aime v. Equity Residential, 15 Civ. 1485, 2017 WL 696695 at *7 (S.D.N.Y. Feb. 22, 2017) (Caproni, D.J.) (citations omitted).  Project Renewal's request to DHS to remove Lopez from Marsha's House—allegedly the sole LGBTQ facility within the DHS system (Dkt. No. 31: Am. Compl. at 6 ("only one GLBTQ facility exists"); Dkt. No. 46: Roberts Aff. ¶ 6

---

[18/]    (...continued)
v. N.Y.C. Transit Auth., 528 F. Supp. 2d 135, 149 (E.D.N.Y. 2007) ("Plaintiff engaged in protected activity under the ADA when he filed . . . [a] lawsuit against the" defendant.), aff'd, 353 F. App'x 509 (2d Cir. 2009), cert. denied, 560 U.S. 979, 130 S. Ct. 3411 (2010).

[19/]    Cf. Gierlinger v. Gleason, 160 F.3d 858, 872-73 (2d Cir. 1998) (Plaintiff "was of course also required to prove that her termination was proximately caused by [defendant's] retaliatory conduct.  But since [plaintiff's] claim was not that [defendant] personally made the decision to terminate her but rather that he made retaliation-based decisions and recommendations that led to her termination, the proximate cause determination was governed by ordinary principles of causation . . . .  [T]he jury could find the necessary causation if it concluded that the retaliatory actions by [defendant] proximately led to the ultimate decision."); Jong-Fwu v. Overseas Shipholding Grp., Inc., 00 Civ. 9682, 2002 WL 1929490 at *7 (S.D.N.Y. Aug. 21, 2002) ("Plaintiff's claim of retaliatory discharge under Section 1981 against defendant . . . can survive a motion for summary judgment only on a showing of 'some affirmative link to causally connect the actor with the discriminatory action.' . . . [Defendant] recommended to his supervisor that [plaintiff's] position be eliminated . . . .  This is sufficient to constitute personal involvement in the decision to terminate [plaintiff's] employment." (citation omitted)).

(Marsha's House "is the only DHS shelter specifically designated for LGBTQ individuals"))—could dissuade a reasonable person in Lopez's position from pursuing a discrimination claim.[20/]  Finally, "a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient to establish causation."  Treglia v. Town of Manlius, 313 F.3d at 720.[21/]  The one-month gap between the filing of Lopez's ADA complaint and her transfer from Marsha's House (actually less because the TRO stayed in effect for much of that period) supports an inference of causation at this phase of the litigation.[22/]

Project Renewal's motion to dismiss Lopez's ADA retaliation claim should be DENIED.

---

[20/]   See, e.g., Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) ("[C]onsidering the perspective of a reasonable employee . . . bespeaks an objective standard.  The standard may be objective, but '[c]ontext matters.'  '"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."'  Therefore, 'an act that would be immaterial in some situations is material in others.'  For example, '[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.'" (citations omitted)).

[21/]   Accord, e.g., Graham v. Macy's, Inc., 14 Civ. 3192, 2016 WL 354897 at *9 (S.D.N.Y. Jan. 28, 2016) ("Such a causal connection may be inferred from temporal proximity."), aff'd, 675 F. App'x 81 (2d Cir. 2017).

[22/]   See, e.g., Nagle v. Marron, 663 F.3d 100, 111 (2d Cir. 2011) ("While we have not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line we might draw." (citation omitted)); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) ("Although the plaintiff filed her complaint with the EEOC on February 4, 1994, the complaint was not served on [defendant] until the beginning of April 1994.  She was suspended later that month.  This time span is short enough to permit a jury to infer a causal connection."); Saber v. N.Y.S. Dep't of Fin. Servs., 15 Civ. 5944, 2017 WL 985889 at *13 (S.D.N.Y. Mar. 10, 2017) ("The passage of approximately one month between the protected activity and the retaliation may give rise to an inference of causation.").

### 4.      Lopez Has Not Alleged That Project Renewal Is A "Public Entity" Covered by Title II of the ADA

Project Renewal argues that Lopez's claims under Title II of the ADA should be dismissed because it is not a "public entity."  (Dkt. No. 50: Project Renewal Br. at 15-16.)

Title II provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, . . . be denied the benefits of the services . . . of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  As used in Title II, the term "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) . . . any commuter authority."  42 U.S.C. § 12131(1); accord, e.g., Pierce v. Fordham Univ., Inc., No. 16-2078-cv, 2017 WL 2589378 at *2 (2d Cir. June 15, 2017) ("Title II [of the ADA] applies only to state and local governments, their instrumentalities, and commuter authorities.").

Project Renewal is not a "State or local government" or a "commuter authority," nor does it appear to be a government "department, agency, . . . or other instrumentality."  The Second Circuit has held that the phrase "instrumentality of a State" "suggests that to be an instrumentality, an entity must somehow belong to the government or have been created by it," and "is thus a creature of the municipality or state whose ends it serves."  Green v. City of N.Y., 465 F.3d 65, 79 (2d Cir. 2006).  In Green, the Second Circuit held that "[a] private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.  Instead it is a parallel private entity."  Id.; accord, e.g., Phillips v. Tiona, 508 F. App'x 737, 748 (10th Cir. 2013) ("'A private contractor does not . . . become liable under Title II [of the ADA] merely by contracting with the

32

State to provide governmental service, essential or otherwise.  Numerous courts have agreed with this analysis." (citation omitted, citing cases)).  Neither Lopez's initial nor Amended Complaint allege that Project Renewal is a "public entity," let alone contain any allegations regarding Project Renewal's relationship to DHS or the City.  (See generally Dkt. No. 2: Compl.; Dkt. No. 31: Am. Compl.)[23/]  Lopez has not plausibly alleged that Project Renewal is subject to Title II of the ADA. Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir. 2004) ("[F]or a plaintiff to establish a prima facie violation . . . , she must demonstrate . . . that the defendants are subject to" the ADA.).

Project Renewal's motion to dismiss the claims against it under Title II of the ADA should be GRANTED.

## CONCLUSION[24/]

For the reasons set forth above, the Court should rule as follows:

(1) the City's motion to dismiss (Dkt. No. 44) should be DENIED in its entirety;

(2) Project Renewal's motion to dismiss (Dkt. No. 49) should be DENIED, except GRANTED as to Lopez's failure to accommodate claim and any claims under Title II of the ADA; and

(3) Lopez should be granted leave to file a Second Amended Complaint to name Project Renewal as a defendant and to add facts to support her Title III failure to accommodate claim against Project Renewal.

---

[23/]   According to the City's brief, Project Renewal is a private contractor.  (See Dkt. No. 45: City Br. at 2 ("[I]n 2016 DHS contracted with Project Renewal, Inc., a non-profit shelter operator, to operate" Marsha's House.).)

[24/]   If Lopez requires copies of any of the cases reported only in Westlaw, she should request copies from defense counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni, 40 Foley Square, Room 240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Caproni (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:          New York, New York
                September 28, 2017

                                          Respectfully submitted,

                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge


Copies ECF to:      All Counsel
                    Mariah Lopez
                    Judge Caproni