```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARIAH LOPEZ,

            Plaintiff,

     v.                              17 CV 3014 (VEC)

PROJECT RENEWAL and
THE CITY OF NEW YORK,
                                     Conference
            Defendants.

------------------------------x
                                     New York, N.Y.
                                     May 23, 2018
                                     4:00 p.m.

Before:

        HON. ONA T. WANG

                                     District Judge



        APPEARANCES


MARIAH LOPEZ
     Plaintiff pro se


JACKSON LEWIS P.C.
     Attorneys for Defendant Project Renewal
BY:  NIDHI SRIVASTAVA


ZACHARY W. CARTER
     Corporation Counsel for the City of New York
     Attorney for Defendants
THOMAS B. ROBER
     Assistant Corporation Counsel
```

1                 (Case called)

2                 THE COURT:  Good afternoon.  I understand Ms.
3     Srivastava needs to leave at 4:30.

4                 MS. SRIVASTAVA:  That's correct.

5                 THE COURT:  So we are going to have to take this a
6     little faster than we originally had planned.

7                 We are here because the two related cases Lopez v. New
8     York City Department of Homeless Services, et al., was referred
9     to me by Judge Caproni for general pretrial and dispositive
10    motions.

11                At the outset, and I want to say this very quickly, I
12    understand there may have been a misunderstanding, Ms. Lopez,
13    about whether you needed to appear.  You consented to ECF
14    notification, and we also directed the pro se office to send
15    you an additional email with the scheduling order in this case.
16    So you do need to check your email frequently.

17                MS. LOPEZ:  Yes, your Honor.

18                THE COURT:  As a litigant in this court, you are
19    expected to prosecute your case, show up on the dates where
20    conferences are scheduled.  Ms. Quinn, my deputy, called me as
21    a courtesy because the Court would have been well within its
22    rights to cancel the conference and sanction you for not
23    showing up.

24                As a further matter, Ms. Quinn speaks to me and speaks
25    for the Court as a whole.  You will treat her with respect.  If

1  I hear of another instance where you treat any court personnel
2  this way again, I will sanction you.  Do you understand?
3             MS. LOPEZ:  I don't understand what a sanction means
4  and I'm not --
5             THE COURT:  Stop, just a minute.  We have very limited
6  time here.  A sanction is essentially some sort of a punishment
7  for transgression in the case.  A typical sanction, if you had
8  been with a lawyer --
9             MS. LOPEZ:  I'm not.
10            THE COURT:  Stop.  I know.  If you had been a lawyer
11 and you had failed to show up, and this actually happened a
12 couple of weeks ago in another case, the defendants could have
13 made a motion for the cost for them coming to attend the court
14 conference and having to wait for somebody to no-show.
15            We have some procedural issues to deal with in this
16 case that I would like to go forward with today that hopefully
17 we can get through in the next 24 minutes.  I'm going to remind
18 you again, everything that we do scheduling going forward and
19 as has happened in the past should come to your email address.
20 You need to check that email inbox, check your junk mail, make
21 sure.  It is your responsibility to check that email inbox
22 periodically to make sure that you get the notifications.
23            If your email address has changed, please notify the
24 pro se office immediately.  If it turns out that you have a
25 mailing address or even a P.O. box where hardcopy items could

1  be mailed to you, please notify the pro se office, so we can
2  also add that to the docket so that there is another way for us
3  to contact you.  The more ways we have to make sure that you
4  get notification of conferences, the better.
5          MS. LOPEZ:  Your Honor, if I may?
6          THE COURT:  Yes.
7          MS. LOPEZ:  Would you like me to stand?
8          THE COURT:  No.  You can stay seated.
9          MS. LOPEZ:  What was the name of the court personnel
10 you said contacted me?
11         THE COURT:  Ms. Quinn.
12         MS. LOPEZ:  Ms. Quinn here?
13         THE COURT:  Yes.
14         MS. LOPEZ:  I record all my incoming calls.  Since you
15 brought up, your Honor, if we are able to get to the issues at
16 hand within 24 minutes, fine.  But you brought up a call that
17 was placed from this Court to my phone who I have a record of,
18 a digital record.  So I take huge issue at someone implying I
19 was rude.  And your tone afterwards was sort of conceding that
20 I was rude.
21         On the record, the communication went as follows.  And
22 if you would like to have the marshals retrieve my phone and
23 have the digital file transferred to yourself and the
24 government, we can do that.  The conversation was, are you
25 going to show up?  I was extremely humble in saying, excuse me?

1  I had no idea there was court.

2  In trying to seek procedural clarification, the only
3  New York way I can say it is she got snippy.  I wasn't looking
4  for legal advice.  She said, you need to get here in 20 minutes
5  or else.  When you speak to someone that's been raised by
6  attorneys and you say "or else," even if the "or else" was
7  going to be you could be sanctioned, you could be whatever --
8  Ms. Quinn was nasty with me.

9  I don't want to misrelate what happened.  It was, you
10 need to come, you need to get here.  We have a governor and
11 mayor fighting over the transportation system.  I could have
12 been one stop away and still not been able to get here in a
13 time where she didn't express what the contingent outcome would
14 have been if I didn't make it on time.

15 So I take issue that Ms. Quinn said I was rude.  I'm
16 in touch with a number of attorneys that will attest that I
17 have spoken to.  I deal with people how they deal with me.  So
18 your Honor, noted about the sanctions.

19 Since Ms. Quinn caused the Court and everyone to be
20 wasting our time with this since she elevated that complaint, I
21 will point out to this Court, no matter how we circle this
22 strange, even if the Court were to sanction me, I have been
23 domiciled in a ward of the city and New York State or federal
24 government since I was a child.  Is this Court going to
25 sanction me and make them pay?

1             Let's move on with the matters of the case and please
2    respect that I am a pro se litigant.  I respect this Court, but
3    the allegations within the complaint before this Court are
4    germane to my ability to function on a day-to-day basis.  I'm
5    homeless, I'm stressed out.  I don't appreciate being spoken to
6    like there was numerous occasions of me sort of missing court.
7             Your Honor, because there is such a history, long
8    history, with the specific defendants in this case, and even
9    marshals in this room -- I have a criminal case where my
10   affirmative defense is that marshals in this courthouse, aside
11   from criminal stuff, harassed me and my dog in a separate
12   incident last year.
13            So setting this up as adversarial where you said if I
14   find out if you disrespect another member of this courthouse,
15   you just gave motivation and impetus to the people behind me
16   who are involved in either the criminal matter before Judge
17   Lehrburger or even this case.
18            I am dealing with people how they deal with me, your
19   Honor.  It is our first time meeting with each other.  I
20   apologize if I was late.  You can ask Mr. Roberts.  I always
21   beat him to the courthouse.  This is outside my pattern.  I
22   apologize.
23            THE COURT:  Is there a problem with your email
24   address?
25            MS. LOPEZ:  No, there is not.

1       THE COURT:  It hasn't changed?

2       MS. LOPEZ:  There were just so many filings at the
3  same period regarding the Caproni case and filings by new
4  counsel, her appearance.  They all came within a week period
5  and they all say the same header.  I just must have looked over
6  the one that demanded that I be here today.

7       THE COURT:  The scheduling order will be called an
8  order.  Future conferences for court appearances will be
9  entitled "order" or "scheduling order."

10      MS. LOPEZ:  Yes, your Honor.

11      THE COURT:  Those are the ones that you should really
12 focus on.

13      MS. LOPEZ:  Yes, your Honor.

14      THE COURT:  Because you are a pro se litigant, I will
15 not schedule anything less than three weeks in advance unless
16 it is truly, truly, an emergency that one of the parties
17 raises.  Okay?

18      MS. LOPEZ:  Yes, your Honor.

19      THE COURT:  But the rest of the time I will do so so
20 that there is ample opportunity for you to get the order and
21 for you to seek an adjournment for good cause if you need an
22 adjournment.  If you need to reschedule because you have a
23 conflict, you can always write to the Court, make sure you get
24 consent from the other side, and propose a new date.  Okay?

25      MS. LOPEZ:  Yes, your Honor.

1         THE COURT:  This is how we will deal going forward.

2         MS. LOPEZ:  Yes, your Honor.

3         THE COURT:  We now have less than 20 minutes before
4    Ms. Srivastava turns into a pumpkin.  What we have today are a
5    lot of procedural matters.  It is really a matter of the
6    parties being here and hearing.  We are not hearing argument on
7    anything of substance.

8         The first thing is a question for the defendants.
9    Were any of the nonmunicipal defendants served in the state
10   court action?

11        MS. LOPEZ:  Thank you, your Honor.  Right before that
12   little tidbit, I was going to start by saying I know that I
13   have no right to counsel in this case.  But even if the Court
14   were to accept the minimal of my factual chronological
15   assertions of the order of things, it is beyond complicated for
16   many attorneys --

17        THE COURT:  Let me stop you.  I don't mean to
18   interrupt you to be rude, but we really do need to move
19   quickly.

20        MS. LOPEZ:  I would was going to ask if the Court
21   would consider asking, as did Judge Caproni in the initial ADA
22   case, ask a favor or ask a firm if they would for procedural
23   reasons stand up with me in the initial part of the case to
24   help me.  I have no problem navigating this and --

25        THE COURT:  Okay, stop.

1       MR. ROBERTS:  Your Honor, could I ask a question?

2       THE COURT:  I have one question.  It was a procedural
3  issue.

4       MS. LOPEZ:  No, I didn't understand that I had to.
5  I'm sorry.  I didn't understand the process.

6       THE COURT:  I'm not asking if you had to or not.  I'm
7  asking were the nonmunicipal defendants served.

8       MR. ROBERTS:  My understanding is no.

9       MS. LOPEZ:  No.

10      THE COURT:  This is a preliminary matter.  If they had
11 been served, removal would have been improper, we would have
12 had to remand to the state court, and so on.  It is actually
13 quicker that they have not been served.  So the removal is
14 proper.  That was the first thing I had to deal with.

15      The second is the request for consolidation of the
16 newly removed case, the state court case that got removed to
17 federal court, and whether that can be consolidated with the
18 case that you previously had brought before Judge Caproni.

19      MS. LOPEZ:  Now we are all on board.

20      THE COURT:  Do you agree?

21      MS. LOPEZ:  No.  I would like to challenge it, and I'm
22 not sure procedurally or legally how to do so.  To save
23 everyone's time and back and forth, if the government is so
24 convinced that they are going to win, it just speeds along
25 their win.

1           THE COURT:  Time out.  What I would do if the case can
2    be consolidated -- maybe I can convince you to consent to
3    consolidation -- is rather than having two separate filings and
4    the cases going on parallel tracks and having your inbox
5    inundated with emails and trying to figure out what case it is
6    on, it all would be conglomerated under one case number, one
7    case number.
8           The complaint that you filed in state court would be
9    deemed to be the amended complaint in the original action that
10   you brought in federal court.  That complaint would control,
11   and we would be dealing with that complaint and the allegations
12   that you make in that complaint.  It would not be depriving you
13   of any additional rights.  The claims that you made in state
14   court will be brought before the federal court.
15          MS. LOPEZ:  I understand.  Your Honor, since we are on
16   the record, I will inform you and the government my plan is to
17   file a whole nother article 78 tomorrow.  Basically, there has
18   been another conflict around an administrative procedure.
19          I'll stop, Mr. Roberts.  I don't want you to miss what
20   I'm saying.  It's quite important.
21          I'm just laying this on the table.  The issue for me
22   is always because I'm still in the living situation as last
23   year.  Until that changes, until DHS capitulates to following
24   the law, I might be filing another article 78 tomorrow, which
25   will be mucking things up even more.

1               Just to make your Honor aware, the state court here
2    across the street has made it very easy for poor plaintiffs to
3    come forward.  They have a new in-house procedure that assigns
4    index numbers for periods of four months at a time so that new
5    poor person proceedings don't need to be made with every case.
6    I can use the existing document number or file as a poor
7    person.
8               MR. ROBERTS:  Can you are well under your rights to
9    file an article 78 proceeding.  I cannot give you legal advice,
10   but my understanding is that the complaint that you filed in
11   state court also had a motion for a preliminary injunction.  If
12   the 2018 case is consolidated with the previous case you had
13   with Judge Caproni and we order that the complaint in that case
14   becomes the controlling complaint, we will get to your motion
15   for preliminary injunction faster.  In fact, one of the issues
16   I had on my agenda today was to set a briefing schedule for the
17   defendants to respond to your motion for preliminary
18   injunction.
19              If you want to oppose consolidation, which it is your
20   right to do -- although from my reading of the two complaints,
21   they cover many of the same facts and much of the same case
22   law -- we would end up briefing the motion for consolidation
23   which you are opposing.  The case would probably get
24   consolidated anyway, and then it would be that much later that
25   we could deal with your motion for preliminary injunction.

1                MS. LOPEZ:  I understand.
2                THE COURT:  On that basis, do you still object to
3     consolidation?  What is your position right now?
4                MS. LOPEZ:  Right now everything the Court has put
5     forth is reasonable in terms of my desire to get immediate
6     review of my request for preliminary relief.  If it pleases the
7     Court, may I ask for literally 24 hours to check with an
8     outside friend?  Can I just get 24 hours?
9                THE COURT:  Yes.
10               MS. LOPEZ:  I will by your directive, either through
11    chambers or email, however you direct me, respond within 24
12    hours as to my decision.
13               THE COURT:  You can respond by email to chambers for
14    this limited instance only because we really want to get to the
15    end result.
16               MS. LOPEZ:  Yes, your Honor.
17               THE COURT:  The rest of the time your communications
18    with the Court should be through the pro se office.
19               MS. LOPEZ:  Yes, your Honor.
20               THE COURT:  You may respond by email with a copy to
21    the defendants.
22               MS. LOPEZ:  Yes, your Honor.
23               THE COURT:  Copy them on the email so we know that
24    they got it as well.
25               MS. LOPEZ:  Yes, your Honor.

1           THE COURT:  I assume the defendants have no objection
2    to the consolidation?
3           MR. ROBERTS:  Correct.  I in fact support the
4    consolidation as a housekeeping matter.
5           THE COURT:  The other issue is service.  We will order
6    service on the nonmunicipal defendants because you are pro se
7    and you are proceeding in forma pauperis.  Once we get your
8    answer, Ms. Lopez, on whether you consent to consolidation,
9    then we will also issue an order that cleans up the caption so
10   it makes it a little clearer for our purposes.
11          I will say right now, because I have you here and we
12   have a court reporter here, that if we do not hear from you by
13   close of business tomorrow, we will assume that that means
14   consent.
15          MS. LOPEZ:  Yes.  That saves me work.
16          THE COURT:  Exactly.  You should email us only if you
17   object to consolidation.  How's is that?
18          MS. LOPEZ:  Okay.
19          THE COURT:  On the motion for preliminary injunction,
20   let's set a schedule assuming that Ms. Lopez consents to
21   consolidation.  If that doesn't happen, then we will have to
22   set a new scheduling order with a briefing on consolidation as
23   well.
24          Ms. Lopez, we are going to deem your state court
25   filing to be the opening brief, so you don't need to file

1  another motion for preliminary injunction.  We'll take that.
2             Defendants, how long would you need to respond to that
3  assuming that by the end of this week all the cases are
4  consolidated?  If they are not, we will have to talk about
5  another order.  But let's try to get this done today.
6             MR. ROBERTS:  Your Honor, I'm going to be on vacation
7  for the next two weeks, so I would request my papers to be due
8  on June 13th or 14th, somewhere towards the end of that week.
9             THE COURT:  Ms. Srivastava, are you okay with that
10 date as well or do you need more time?
11            MS. SRIVASTAVA:  That date is fine.
12            THE COURT:  Let's do the 15th, which is a Friday.
13            MR. ROBERTS:  Thank you.
14            THE COURT:  The defendants' opposition brief will be
15 due June 15th.
16            Ms. Lopez, how much time would you need to file a
17 response to that?  I'm inclined to give you more time rather
18 than less so don't feel like you need to cut your time short.
19            MS. LOPEZ:  A month minimum, your Honor, please.
20            THE COURT:  Let's set it at the end of July.  How
21 about the 27th, which is a Friday?
22            MS. LOPEZ:  That works.
23            THE COURT:  If you need more time, you will write to
24 the Court.  If it turns out that the defendants need more time,
25 of course we will shift the dates accordingly so you wouldn't

1   lose any more time.  That would be July 31st.  I did say July
2   27th, that's the Friday.  Sorry.  July 27th for plaintiff's
3   reply brief and June 15th for the opposition brief.
4            That is all I have for today.  It's really just about
5   procedural matters and housekeeping.  Since you will likely be
6   briefing the preliminary injunction over the summer, there
7   shouldn't be additional -- or should there be an additional
8   status conference?  Ms. Lopez?
9            MS. LOPEZ:  I just take exception, your Honor, to the
10  issue.  I don't think we are going to be briefing anything all
11  summer.  I only say that because in my intent to seek judicial
12  relief tomorrow in state court, which I won't be doing if I
13  consolidate, it is my plan, whether it exhausts the government
14  or this Court, to be back in front of this Court arguing for
15  TRO until I get safe housing.
16           With that said, there are changes.  I want to go back
17  to something you originally said about there being so much
18  overlap or duplicity in the case that was originally in front
19  of Judge Caproni and the new case removed from state court.  I
20  believe that there were two or three fundamentally new issues,
21  one relating to my eligibility for relief for immediate relief
22  and the circumstances about irreparable harm.
23           But irreparable is only one element.  I think that I
24  would be in a much better position to argue the City of New
25  York's arbitrary and capricious nature of my placement at this

1  time is inconsistent with the rest of their policies.

2  　　　　With that said, I don't want to annoy people, but I
3  will be coming to court soon.  If this Court could maybe urge
4  the other side to engage in good faith settlement talks so that
5  we don't have to keep coming back to court and it keeps me from
6  having to keep seeking relief in different ways, that would
7  probably be best for everyone.

8  　　　　I want to say on the record here, I want this to be
9  done.  I don't actually enjoy litigating.  One day I will, but
10 not yet.  I'm not getting paid.

11 　　　　THE COURT:  Here is what I am going to do, because I
12 do understand and Ms. Srivastava needs to go.  We are at 4:22
13 now.  Why don't you also, Ms. Lopez, file a status letter with
14 the pro se office a month from now.  We'll give you to June
15 29th, but you can file it before that if you want.  File a
16 status letter with the pro se office indicating whether you
17 have reached out, whether you and the defendants have engaged
18 in settlement negotiations.  I am not going to get involved
19 right now because you have indicated that you plan to file
20 another article 78.

21 　　　　MS. LOPEZ:  This brings me back.  If I don't and I
22 concede to consolidation, it will be sort of this Court's
23 business.

24 　　　　THE COURT:  Then it will be and we will be moving
25 along.  If you have an application for emergency relief, that

1      would be brought to Judge Caproni in the first instance.  She

2      may refer that to me, she may not, but it is really up to her.

3                MS. LOPEZ:  That's what I'm not clear about.  I will

4      be moving for immediate injunctive relief.  And it is leaning,

5      80 percent of me, to agreeing to consolidation because, like I

6      said, it would most likely occur regardless.

7                THE COURT:  Essentially you have already filed your

8      injunction motion.  You just filed it in state court, but we

9      can treat it as your injunction motion.

10               MS. LOPEZ:  Sure.  What I'm saying is that I'm giving

11     you notice.  We are talking about days.  I know we are just

12     going over housekeeping in a lot of ways.  Days.  There are

13     changes in circumstances and also.  At the incept of this case

14     and the defendants' actions, Zarda, the case out of the Second

15     Circuit did not exist.  That is not a fake ruling.  I think it

16     applies to transgender people.  I think this Court has an

17     impetus to decide whether that applies.  And it is certainly

18     new, your Honor.

19               THE COURT:  Okay.

20               MR. ROBERTS:  Your Honor, one other procedural matter,

21     if I could.

22               THE COURT:  Okay.

23               MR. ROBERTS:  Regarding the time for a response to

24     this new complaint, whether consolidated or not, the city was

25     served I think on the 11th but the other defendants haven't

1  been served yet.  I think it makes sense and I request that
2  there be a period of time for the service to get done by the
3  marshals and get everybody in, and then we can have one date
4  when everybody either answers or moves to dismiss that motion
5  rather than having them come seriatim.  It is a long-winded way
6  of asking for an extension of time from you for me to answer
7  the complaint in the second action.
8          THE COURT:  What is your response?
9          MS. LOPEZ:  He has had the complaint for this entire
10 time.  Whether or not the other parties have the complaint is
11 absolutely not relevant to Mr. Roberts unless there is some
12 type of assertion here that there will be some kind of
13 coordinated joint defense.  If you have read, some of the
14 parties, the defendants, acted completely independent of the
15 city in their own particular.  There is no need, and I object.
16         THE COURT:  Ms. Lopez, this is part of the Court's
17 housekeeping needs.  It becomes very difficult for us to keep
18 track of which defendants and to have the parties in for a
19 status conference, frankly.  It's better to have all of the
20 defendants here when we have the next status conference.
21         We are going to adjourn today.  We are going to issue
22 an order for service on the remaining defendants who have not
23 yet been served.  They will then have an answer date.  I'm not
24 sure how long it will take for the service.  Mr. Roberts, we
25 can set a housekeeping date.  You can write in for an

1  adjournment of that date if it turns out the defendants haven't
2  been served yet.
3          MR. ROBERTS:  If I can get until the end of June.
4          THE COURT:  Okay.  Ms. Lopez, it is actually okay
5  because their response date for your preliminary injunction
6  motion is June 15th.  You will get something from them before
7  that.
8          MR. ROBERTS:  June 27th?
9          THE COURT:  Yes, June 27th.
10         MS. LOPEZ:  Can I consider the notoriety of the one of
11 the defendants, Christine Quinn and her agency, how long does
12 this Court project that it takes for the marshals to serve
13 them?
14         THE COURT:  It shouldn't take long.
15         MS. LOPEZ:  I will engage Ms. Quinn and WIN separately
16 in terms of settlement.  They just haven't received the papers
17 yet.  It might even get their attention now that it is coming
18 from a marshal.
19         THE COURT:  Anything else?  You have one minute, Mr.
20 Roberts.
21         MR. ROBERTS:  On the record.  This is a new matter.  I
22 am giving Ms. Lopez a copy of the transcript of the sealed
23 argument on March 30th.  I have been through the transcript,
24 and I think there are significant portions of it that don't
25 need to be sealed.  I have written a draft letter that shows

1    what I think should be redacted and what not.  I am asking her
2    to review it in the next couple of weeks.  With her consent or
3    without, I am going to end up writing Judge Caproni saying I
4    think these portions of the transcript should be unsealed.
5              THE COURT:  That is not before me, but I get it.
6              MS. LOPEZ:  I can give you an answer.  Is the stuff
7    underlined?  I can try to look at it today.
8              MR. ROBERTS:  It is not underlined.  The cover letter
9    will guide you to what it is.  I am giving her a copy of the
10   sealed transcript.
11             THE COURT:  Hopefully, the parties can work together
12   on that and come to some form of agreement of a redacted
13   transcript that can be filed.  Thank you very much.  This
14   matter is adjourned.
15             (Adjourned)