**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIAH LOPEZ<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF NEW YORK, NYC DEPT OF HOMELESS SERVICES, NYC HUMAN RESOURCES ADMINISTRATION, PROJECT RENEWAL INC, QPS SECURITY INC, WIN INC, CHRISTINE C. QUINN,<br><br>  Defendants. | CIVIL ACTION<br><br>CASE NO.: 17-cv-3014 (VEC) (OTW)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS WOMEN IN NEED AND CHRISTINE C. QUINN TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) and 12(B)(6)**

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019-6099
(212) 728-8000 (telephone)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

I.    WIN AND CHRISTINE QUINN ................................................................................. 3

II.    PLAINTIFF AND THE WIN DEFENDANTS ............................................................ 4

    A.    Plaintiff Enters The DHS System And Is Placed At Marsha's House .................... 4

    B.    DHS Assigns Plaintiff To Win West ...................................................................... 4

    C.    Plaintiff Contacts Ms. Quinn .................................................................................. 6

    D.    Plaintiff Rejects Win West And DHS's Other Placement Offers ........................... 6

THE SECOND AMENDED COMPLAINT ............................................................................. 7

ARGUMENT ........................................................................................................................... 9

I.    PLAINTIFF LACKS STANDING ............................................................................... 9

    A.    Plaintiff Fails To Allege Any Injury-In-Fact "Fairly Traceable" To The
          Alleged Conduct Of The WIN Defendants .......................................................... 10

    B.    Plaintiff's Claim For Injunctive Relief Is Not Likely To Be Redressed By
          A Favorable Judicial Decision. ............................................................................. 12

II.    PLAINTIFF FAILS TO STATE A HOUSING DISCRIMINATION CLAIM ................ 13

    A.    The WIN Defendants Did Not Fail To Accommodate Plaintiff's Alleged
          Disabilities. ........................................................................................................... 14

    B.    The WIN Defendants Did Not Deny Plaintiff Housing Based On Her
          Gender Or Gender Identity. .................................................................................. 19

    C.    The WIN Defendants Did Not Harass Plaintiff Based On Her Gender or
          Gender Identity. .................................................................................................... 20

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AND
       FOURTEENTH AMENDMENTS ............................................................................. 21

IV.    PLAINTIFF FAILS TO STATE A RACIAL DISCRIMINATION CLAIM
       UNDER TITLE VI OF THE 1964 CIVIL RIGHTS ACT ............................................ 23

CONCLUSION ....................................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                            <u>Page(s)</u>

*Adkins v. City of New York*,
  143 F. Supp. 3d 134 (S.D.N.Y. 2015) ...................................................................23

*Albunio v. City of New York*,
  947 N.E.2d 135 (N.Y. 2011) ..............................................................................15

*Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*,
  No. 96 Civ. 9198 (SAS), 1997 WL 475165 (S.D.N.Y. July 18, 1997)..................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................13

*Bermudez v. City of New York*,
  783 F. Supp. 2d 560 (S.D.N.Y. 2011) ...................................................................21

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ......................................................................................22

*Bryant v. Wright*,
  451 F. App'x 12 (2d Cir. 2011) .........................................................................14

*Crawford v. Lutheran Med. Ctr.*,
  No. 08-CV-3249 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072 (E.D.N.Y. Mar. 14, 2011) ...13

*D.H. v. City of New York*,
  309 F .Supp. 3d 52 (S.D.N.Y. 2018) ............................................................9, 10

*In re  Doe v. Bell*,
  194 Misc. 2d 774 (Sup. Ct. N.Y. Cty. 2003) ...................................................15, 17

*Fernandes v. Moran*,
  No. 2:17-cv-03430 (ADS) (SIL), 2018 WL 2103206 (E.D.N.Y. May, 7 2018)..................22

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ...................................................................................13

*Gorman v. Covidien, LLC*,
  146 F. Supp. 3d 509 (S.D.N.Y. 2015) ...................................................................21

*Green v. McLaughlin*,
  480 F. App'x 44 (2d Cir. 2012) .........................................................................13

*Hispanic AIDS Forum v. Bruno*,
    16 A.D.3d 294 (1st Dep't 2005)..........................................................................19

*Kholost v. U.S.Dep't of Hous. & Urban Dev.*,
    No. 16-CV-6651 (AMD) (LB), 2018 WL 3539814 (E.D.N.Y. July 23, 2018) ...................22

*Logan v. Matveevskii*,
    57 F. Supp. 3d 234 (S.D.N.Y. 2014) ....................................................................15

*Lopez v. City of New York*,
    No. Civ. 3014 (VEC) (AJP), 2017 WL 4342203 (S.D.N.Y. Sept. 28, 2017) ...............4, 5, 16

*MacEntee v. IBM*,
    783 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .......................................................................................19

*McElwee v. County of Orange*,
    700 F.3d 635 (2d Cir. 2012) .............................................................................18

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715, F.3d 102 (2d Cir. 2013)............................................................................20

*Nat'l Collegiate Athletic Ass'n v. Tarkanian*,
    488 U.S. 179 (1988) .......................................................................................22

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) .............................................................................12

*Rodal v. Anethesia Grp. of Onondaga*,
    369 F.3d 113 (2d Cir. 2004) .............................................................................15

*Roggenbach v. Touro Coll. of Osteopathic Med.*,
    7 F. Supp. 3d 338 (S.D.N.Y. 2014) .....................................................................21

*Rothstein v. UBS AG*,
    706 F.3d 82 (2d Cir. 2013) ...............................................................................10

*Sch. Bd. of Nassau Cty. of Fla. v. Arline*,
    480 U.S. 273 (1987) .......................................................................................18

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) .............................................................................12

*Simon v. City of New York*,
    No. 12-CV-1596 (CBA), 2012 WL 4863368 (E.D.N.Y. Oct. 11, 2012) ............................15

*Sinisgallo v. Town of Islip Hous. Auth.*,

865 F. Supp. 2d 307 (E.D.N.Y. 2012) ...................................................................15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...........................................................................9, 10

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
   752 F.3d 239 (2d Cir. 2014) .........................................................................9

*Tasini v. N.Y. Times Co.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ..........................................................9

*Taylor v. Potter*,
   No. 99 Civ. 4941 (AJP), 2004 WL 1811423 (S.D.N.Y. Aug. 16, 2004) ............21

*Temple v. Hudson View Owners Corp.*,
   222 F. Supp. 3d 318 (S.D.N.Y. 2016) .........................................................15

*Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ...................................................................................11

*Vinson v. Thomas*,
   288 F.3d 1145 (9th Cir. 2002)....................................................................15

*Williams v. City of New York*,
   34 F. Supp. 3d 292 (S.D.N.Y. 2014) .......................................................9, 10

*Williams v. NYC Hous. Auth.*,
   61 A.D.3d 62 (1st Dept. 2009) ..................................................................21

## Statutes & Rules

2002 N.Y.C. Local Law No. 3 .............................................................................21

2005 N.Y.C. Local Law No. 85 § 1 .....................................................................15

42 U.S.C. § 12131(1) .........................................................................................14

42 U.S.C. § 2000d..............................................................................................23

42 U.S.C. §§ 3604(a)-(e) ....................................................................................20

42 U.S.C. § 3604(f)(2)(A) ...................................................................................14

N.Y.C. Admin. Code § 8-102(18)........................................................................15

N.Y.C. Admin. Code § 8-102(23).........................................................................21

NYSHRL, Executive Law § 296(2)(a) .............................................................14, 20

NYSHRL, Executive Law § 296(2)(c)(i)....................................................................14

NYCHRL, Human Rights Law § 8-107(4)................................................................14

NYCHRL, Human Rights Law § 8-102(18)..............................................................14

Defendants Women in Need, Inc. ("WIN") and Christine C. Quinn (collectively, the "WIN Defendants") respectfully submit this memorandum of law in support of their motion to dismiss all claims asserted against them in Plaintiff's Second Amended Complaint (the "SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) for a lack of standing and 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

After litigating in both federal and state courts for almost a year, the SAC is Plaintiff Mariah Lopez's fifth complaint related to her dispute with The City of New York, New York City Department of Homeless Services ("DHS"), New York City Human Resource Administration ("HRA") and Project Renewal, but her first complaint against the WIN Defendants. Despite never staying a single night in a WIN shelter, Plaintiff now alleges housing discrimination claims against both WIN and its President and CEO, Ms. Quinn. It appears that the crux of Plaintiff's grievance with WIN is that Ms. Quinn did not lobby DHS on her behalf for the transgender-specific housing she sought. But that allegation, even if true, falls woefully short of stating a housing discrimination claim against the WIN Defendants.

Plaintiff was not denied access to WIN shelter housing at all, and certainly not because of her alleged disabilities or because she is a transgender woman. In May 2017, Plaintiff told this Court that she rejected her placement at a WIN shelter because she felt its Midtown West location was "dangerous" and it is a "trigger" for her. That admission is fatal to Plaintiff's housing discrimination claims against the WIN Defendants because it demonstrates that it was Plaintiff who rejected the housing for a reason entirely out of WIN's control, not WIN or Ms. Quinn that denied Plaintiff equal access to housing. For this reason alone, all of Plaintiff's claims against the WIN Defendants should be dismissed.

1

Plaintiff's claims against the WIN Defendants fail for several other reasons as well.

*First*, Plaintiff lacks standing to bring this action against WIN and Ms. Quinn. Plaintiff has failed to show any injuries traceable to the conduct of the WIN Defendants as required by Article III of the U.S. Constitution.  The alleged actions of the WIN Defendants have no causal connection to the injuries claimed in the SAC.  Furthermore, Plaintiff lacks standing to assert any claim for injunctive relief because she cannot show that there is a threat of repeat injury.

*Second*, Plaintiff fails to establish that the WIN Defendants did not reasonably accommodate her alleged disabilities in violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, Fair Housing Act ("FHA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Plaintiff does not even allege basic elements of a failure to accommodate claim, *i.e.*, that WIN or Ms. Quinn knew of her alleged disabilities and refused to reasonably accommodate them. Moreover, Plaintiff's requested accommodations—assignment to a family apartment and the creation of additional transgender-specific homeless shelters within the DHS system—are patently unreasonable because they require alterations to the fundamental nature of the program. And, even more fundamentally, they are completely outside of WIN's control.  Plaintiff thus cannot state a failure-to-accommodate claim against the WIN Defendants.

*Third*, Plaintiff has failed to state a gender discrimination claim under the FHA, the NYSHRL, and the NYCHRL.  Plaintiff fails to explain how her gender or gender identity had anything to do with denial of WIN housing (in fact, she does not even assert that WIN denied her housing).  Additionally, Ms. Quinn's alleged statements to Plaintiff about being a transgender

woman are completely unbiased and do not state a discrimination or harassment claim under the NYCHRL and NYSHRL.

   *Fourth*, Plaintiff's First and Fourteenth Amendment claims also fail.  Plaintiff fails to establish that the WIN Defendants were acting under the color of state law and that she was deprived of rights guaranteed under the U.S. Constitution.

   *Finally*, Plaintiff has failed to plead facts to establish discrimination based on race, color, or national origin in order to state a claim under Title VI of the Civil Rights Act.

   As discussed more fully below, the WIN Defendants move for dismissal of all claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiff lacks standing to pursue any claims, and for failing to plead factual allegations sufficient to state a housing discrimination claim.

## STATEMENT OF FACTS

## I. WIN AND CHRISTINE QUINN

   WIN is a nonprofit corporation and the largest provider of shelter for homeless families in New York City, serving close to 10,000 homeless women and their children each year.  (Declaration of Christine Quinn at ¶ 4.)[1]  WIN provides transitional and permanent housing, childcare, health and wellness services, education and vocational training, and job search assistance to disadvantaged women and their families.  (*Id.* at ¶ 5.)  WIN manages eleven residential housing shelters across the City's five boroughs, as well as apartments throughout the city (known as "scatter apartments") for families.  (*Id.*)  The shelter location relevant to Ms. Lopez's claims is known as Win West, which is located at 341 West 51st Street in Manhattan. (*Id. at* ¶ 3.)  Win West is WIN's only shelter for individuals.  (*Id.*)  It contains approximately

---

[1] *See* accompanying Declaration of Christine Quinn dated October 4, 2018 ("Quinn Dec.").

seventy beds in a dormitory setup and provides extensive mental health services.  (*Id.*)  Although Win West is a women's shelter, it serves transgender individuals.  (*Id.*)

WIN contracts with DHS.  (*Id.* at ¶ 7.)  DHS is responsible for placing homeless women and their families at all WIN facilities, including Win West.  (*Id.*)  WIN has no control over what clients are sent to its shelters, and to which of its shelters clients are sent.  (*Id.*)

Ms. Quinn is the current President and CEO of WIN.  (*Id.* at ¶ 1.)  Ms. Quinn previously served as a councilwoman in the New York City Council from 1999 to 2013, including seven years as the first female Speaker.  (*Id.* at ¶ 2.)  Ms. Quinn is well known for her support of LGBTQ Rights.  (*Id.* at ¶ 3.)  As Speaker, Ms. Quinn championed Local Law 3, which passed in 2002 and protects transgender individuals from discrimination.  (*Id.*; *see also* Ex. A at 8, SAC.)

## II.    PLAINTIFF AND THE WIN DEFENDANTS

### A.    Plaintiff Enters The DHS System And Is Placed At Marsha's House

Plaintiff is a transgender woman who claims to suffer from "PTSD, major depression, anxiety, and insomnia."  (Ex. A at 2, SAC.)  Plaintiff asserts that "housing was a part of [her] healthcare, essentially, since quiet, privacy and sleep were all a fundamental part of [her] treating doctors['] instructions. . . ."  (*Id*.)  According to Plaintiff, she became homeless around April 2017 and sought shelter through DHS.  (*Id.* at 1.)  DHS placed Plaintiff in Marsha's House, the City's only dedicated transgender shelter.  (*Id.* at 3–4.)

### B.    DHS Assigns Plaintiff To Win West

Around May 9, 2017, DHS suspended Plaintiff from Marsha's House for three days because Plaintiff allegedly violated shelter rules.  (Ex. B at 1, 5/9/2017 Suspension Request Form.)  Thereafter, around May 11, 2017, DHS informed Plaintiff of its intent to transfer her from Marsha's House to Win West.  *See Lopez v. City of New York*, No. Civ. 3014 (VEC) (AJP),

2017 WL 4342203, at *2 (S.D.N.Y. Sept. 28, 2017).  To contest that placement, that same day she learned of it, Plaintiff filed an Article 78 proceeding in state court claiming that the transfer was retaliatory.  Justice Barbara Jaffe of the New York Supreme Court stayed the transfer until the court could make a final determination on whether the transfer was in fact retaliatory.  *See Lopez*, 2017 WL 4342203, at *2.  On May 31, 2017, in back-to-back hearings, both Justice Jaffe and this Court denied Plaintiff's requests for emergency injunctive relief returning her to Marsha's House.  *See id.*; (Ex. C, 5/31/2017 Tr. before Judge Jaffe at 24-25; Ex. D at 64-65, 5/31/2017 Tr. before Judge Caproni.)  Ultimately the state court proceeding was dismissed.[2] While it was pending, DHS transferred Plaintiff to Win West, but Plaintiff never checked in there.  (*See* Quinn Dec. at ¶ 9; Ex. E, 8/7/2017 Plaintiff Letter to the Court.)

At the May 31, 2017 hearing before this Court on Plaintiff's application for emergency relief to block her transfer to Win West and order DHS to place her at Marsha's House, Plaintiff stated that she would "not be taking [her] bed at Win West" because "[t]he neighborhood is dangerous."  (Ex. D at 68, 5/31/2017 Transcript before Judge Caproni.)  She elaborated that Win West's location is a psychological "trigger" because she "was abused several blocks away."  (*Id.* at 69–70.)  Plaintiff claimed that she had not been in Win West's neighborhood for twenty years.  (*Id.* at 70.)

Unsurprisingly, Plaintiff does not allege any discriminatory treatment at Win West.  Nor could she, since she never stayed there.  Instead, Plaintiff alleges that another

---

[2] On June 14, 2017, Judge Jaffe dismissed the state court proceeding after finding that Plaintiff had (1) failed to exhaust administrative remedies and (2) failed to show a likelihood of success on the merits, irreparable injury, or that the balance of equities lied in Plaintiff's favor.  (*See* Ex. J at 7-9, 6/14/2017 Jaffe Decision, "Given DHS's broad discretionary authority to effect transfers between homeless shelters, the transfer of [Plaintiff] from Marsha's Place to WIN West is neither unconstitutional nor wholly beyond DHS's grant of authority.")

transgender individual experienced verbal harassment and physical assault at Win West.  (Ex. A at 11-12, SAC.)

### C.      Plaintiff Contacts Ms. Quinn

The only interactions Lopez alleges she had with the WIN Defendants are "at least two separate phone calls" with Ms. Quinn in June 2017.  (Ex. A at 8-9, SAC.)  According to Plaintiff, she made two requests during these phone calls.  (*Id.* at 8-9.)  First, she requested that Ms. Quinn "stand up against DHS forcing Trans people into facilities originally designed for cis gender individuals" and "believed [that Ms. Quinn] would do the right thing" in connection with that request.  (*Id.* at 9.)  Second, Plaintiff claims that she asked Ms. Quinn "to house [Plaintiff] within her agency some place other than Win West like an apartment," and Ms. Quinn "refused." (*Id.* at 10.)  During these calls, Plaintiff claims that she expressed to Ms. Quinn that she "could not accept a placement at a cisgender female shelter. . . ."  (*Id.* at 9.)  Plaintiff's SAC also quotes Ms. Quinn as allegedly stating "but you're a woman now right. . . . isn't that what you want people to think?  Isn't that what you and other [sic] fought so hard for?" (*Id.* at 10.)

### D.      Plaintiff Rejects Win West And DHS's Other Placement Offers

Although Plaintiff did not allege as much in the SAC, the documents submitted to the Court in connection with Plaintiff's preliminary injunction motions show that on the afternoon of June 7, Plaintiff went to Win West, met with the Program Director, and completed a "Staff/Resident Complaint Form."  (Ex. F, 6/7/17 Win West Staff/Resident Complaint Form.)  In that form, Plaintiff stated that she had "medical needs which this facility cannot accommodate," including the inability to sleep in a dorm setting because she suffers from PTSD and her need to "engage in daily dilation as per SRS [sex reassignment surgery] post-op instructions."  (*Id.* at 1, 2.)  Also in that form, Plaintiff acknowledged that "WIN has offered a bathroom to dilate in," but she claimed that was "inappropriate, unsterile, and unsafe."  (*Id.* at 2.)  Plaintiff also noted that

6

the "neighborhood is a trigger" for her PTSD symptoms and "request[ed] to be sent back to

Marsha's House Shelter." (*Id.*)  Plaintiff left Win West after completing this form and did not

return to check in to the facility that day or any time after June 7.  (Quinn Dec. at ¶ 9.)  The

preliminary injunction exhibits also show that on the evening of June 7, 2017, DHS reiterated to

Plaintiff that she was welcome to go to Win West, and additionally offered Plaintiff a bed in four

other women's shelters with mental health services and locations far away from Midtown West.

(Ex. G, 6/7/2017 Email.)  Plaintiff rejected them all.  (*Id.*)

Less than a month after attempting to place Plaintiff at Win West, DHS assigned

her to Park Slope Armory Women's Shelter ("Park Slope Armory").  (*See* Ex. A at 1, 11, SAC;

Ex. H, 6/26/17 Reasonable Accommodation Request Determination.)  Plaintiff rejected that

placement as well.  (*See* Ex. A at 15, SAC.)  According to documents Plaintiff has filed with this

Court, she is currently "street homeless" and has lived "for more than a year without stable

housing."  (*See* Ex. E, 8/7/2018 Plaintiff Letter to the Court.)

## THE SECOND AMENDED COMPLAINT

In May 2018, almost eleven months after Plaintiff refused to stay at Win West,

Plaintiff filed a new action in state court alleging housing discrimination based on her alleged

disabilities and her gender.  The named defendants in that action were DHS, Project Renewal,

HRA, QPS Security, WIN, and Ms. Quinn.  (Ex. A at 1, SAC.)  DHS and HRA removed the case

to federal court and asked to consolidate the case with *Lopez v. City of New York*, No. 17-cv-

3014-VEC-OTW (S.D.N.Y. Apr. 25, 2017).  *See Lopez v. City of New York*, 18-cv-4293-VEC-

OTW, D.I. 1 (N.Y. Sup. Ct. May 14, 2018).  After there were no objections, the court

consolidated the cases and ordered that the "Court will treat the Complaint removed to this Court

in 18-CV-4293 as the operative [SAC] in the consolidated matter."  (Dkt No. 78.)  The WIN

Defendants accepted service from the United States Marshal Service on July 2, 2018.

The allegations in the SAC are similar to other allegations Plaintiff has made in her requests for relief from this Court, which the Court denied.  For example, on June 15, 2017, Plaintiff sought emergency relief to be re-placed at Marsha's House and to stay any transfers during the pendency of this action.  (Ex. I, First Amended Complaint, Dkt. No. 31.)  In that motion, Plaintiff argued that "all other DHS facilities besides Marsha's [House]" are also not "reasonable accommodations" and that "New York Law prohibits DHS from labeling someone as 'female' or 'male' in order to house them.  New Yorkers get to choose 'Transgender/Transsexual' as an option." (*Id.* at 4-6.)  Plaintiff made no allegations against WIN or Ms. Quinn at that time, even though she had been assigned to Win West and rejected that placement by then.

Plaintiff enumerates several causes of action in the SAC, but she does not specify which claims are asserted against which defendants.  Therefore, the WIN Defendants move to dismiss all claims under Rule 12(b)(1) for a lack of standing and Rule 12(b)(6) for failure to state a claim, including:

- Violations of the Americans with Disabilities Act ("ADA"), Fair Housing Act ("FHA"), Section 504 of the Rehabilitation Act, the NYSHRL, and NYCHRL on the basis of a failure to accommodate her disability.

- Gender discrimination, including harassment, under the FHA, the NYCHRL and the NYSHRL.

- Violations under the First and Fourteenth Amendments to the United States Constitution.

- Violations under Title VI of the 1964 Civil Rights Act.

Plaintiff seeks a variety of relief from this Court, including: punitive damages in the amount of $10,000,000, declaratory relief stating that Defendants failed to accommodate her disabilities, injunctive relief in the form of an order (i) placing her at a shelter that follows the recommendations of her medical providers, (ii) requiring DHS to begin the process of creating transgender specific shelters, and (iii) barring DHS from placing individuals in facilities which are not consistent with their legal gender identity. (Ex. A at 15-16. SAC.) None of the injunctive relief Plaintiff seeks involves the WIN Defendants, which underscores Plaintiff's lack of standing to pursue this type of relief from the WIN Defendants.

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING

Standing is an "irreducible constitutional minimum" that serves the important purpose of limiting the jurisdiction of federal courts to actual cases and controversies. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Williams v. City of New York*, 34 F. Supp. 3d 292, 294 (S.D.N.Y. 2014); *D.H. v. City of New York*, 309 F. Supp. 3d 52, 68 (S.D.N.Y. 2018). "An objection to standing is properly made on a Rule 12(b)(1) motion." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002). To survive a 12(b)(1) motion challenge to subject-matter jurisdiction, "[t]he party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). Here, Plaintiff cannot meet that burden.

To establish standing, Plaintiff must prove (i) that she has "suffered an injury-in-fact" (ii) "that is fairly traceable to the challenged conduct of the defendant," and (iii) that "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "The third prong of the test—redressability—has been interpreted to mean that a plaintiff's standing

depends on the form of relief requested." *Williams*, 34 F. Supp. 3d at 295 (citation omitted).

Here, Plaintiff has alleged that she has "suffered an injury-in-fact," *i.e.*, that she has "lost a year

of [her] life to homelessness" and several injuries she claims stem from being homeless,

including "permanent psychological scars" and damage to her "public image." (Ex. A at 15,

SAC.)  However, Plaintiff has not alleged, nor can she, that (i) her injuries are fairly traceable to

WIN or Ms. Quinn or (ii) that she is likely to be harmed again in order to be entitled to injunctive

relief from the WIN Defendants.  For these reasons, Plaintiff's claims against the WIN

Defendants must be dismissed for lack of standing.

### A.    Plaintiff Fails To Allege Any Injury-In-Fact "Fairly Traceable" To The Alleged Conduct Of The WIN Defendants.

To satisfy the "fairly traceable" standard, Plaintiff must demonstrate a "causal

nexus between the defendant's conduct and the injury." *D.H. v. City of New York*, 309 F. Supp.

3d at 68 (quoting *Rothstein v. UBS AG*, 706 F.3d 82, 91 (2d Cir. 2013)) (quotations omitted).

"That is, plaintiffs must plausibly allege that 'the asserted injury was the consequence of the

defendants' actions.'" *Id*.  Here, the only allegations in the SAC concerning the WIN

Defendants involve two phone conversations Plaintiff allegedly had with Ms. Quinn in June

2017.[3]  But Plaintiff has not plausibly alleged how these conversations, even if true, caused her

to be homeless, suffer emotional distress, or experience damage to her public image.

It is undisputed that neither WIN nor Ms. Quinn have any authority over shelter

placements within the DHS system.  It is difficult to understand how Plaintiff can show that her

alleged injuries are "fairly traceable" to the WIN Defendants when she admits that they had no

control over what shelter to which she was assigned.  (*See, e.g.*, Ex. A at 1, 11, 14, SAC.)

---

[3] The SAC also alleges that "facilities under Quinn's [sic] control were/are dangerous for Transgender residents," but that is not a "particularized" injury that "affect[s] the plaintiff in a personal and individual way" so as to satisfy the "injury-in-fact" requirement.  *Spokeo*, 136 S. Ct. at 1548.

Furthermore, Plaintiff admitted to this court that she would not stay at Win West.  She asked

DHS for a new placement, and rejected DHS offers to be placed at four different shelters.

Plaintiff's homelessness is not traceable to the actions of the WIN Defendants.

Similarly, Plaintiff's alleged emotional injuries are not traceable to actions taken

by the WIN Defendants.  Plaintiff points to failures to accommodate her medical needs,

discrimination and harassment, and "[a]ll of this back and forth" as sources of emotional distress.

(See Ex. A at 12-13, SAC.)  However, Plaintiff does not identify any actions of the WIN

Defendants traceable to these alleged sources of distress.  As to the alleged accommodations,

Plaintiff never alleges any accommodations within Win West that she requested and was denied.

Furthermore, Plaintiff had minimal contact with the WIN Defendants and alleges no

discriminatory or harassing conduct by either WIN or Ms. Quinn that caused injury sufficient for

standing.[4]  As to the alleged "back and forth," to the extent emotional distress as the result of

legal conflict could be considered a legitimate injury-in-fact, Plaintiff specifically connects that

disagreement to the "NYC Law Department opposition to [her] gender identity and medical

treatment since [she] was a child."  (See Ex. A at 13, SAC.)  Plaintiff does not connect her

emotional distress to any actions of the WIN Defendants.

Finally, Plaintiff suggests that she has suffered reputational damage, but fails to

allege a causal connection between this damage and any actions by WIN.  For example, Plaintiff

alleges that other Defendants "engage[d] in fabricating lies about [her] in an attempt to damage

---

[4] Plaintiff's emotional distress and disappointment that Ms. Quinn did not "do the right thing" in Plaintiff's view by helping stand up to DHS fails to rise to the level of injury in fact for the purposes of standing.  See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 484 (1982) ("[T]he psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III . . .").

[her] reputation," but makes no such accusations against the WIN Defendants.  (*See* Ex. A at 5, SAC.)

   The minimal interaction alleged between Plaintiff and the WIN Defendants further underscores the complete disconnect between Plaintiff's alleged injuries and any conduct of WIN or Ms. Quinn.  Plaintiff does not allege that the WIN Defendants took any action to exclude her from Win West.  Plaintiff has already stated to this Court that she refused to accept DHS's placement of her at Win West because of its location.  Plaintiff cannot plausibly show that her alleged injuries are "fairly traceable" to conduct of the WIN Defendants.  For this reason, she lacks standing to bring all claims against the WIN Defendants, and all claims against the WIN Defendants should be dismissed.

  **B.**  **Plaintiff's Claim For Injunctive Relief Is Not Likely To Be Redressed By A Favorable Judicial Decision.**

   "For each form of relief sought, a plaintiff 'must demonstrate standing separately.'"  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). Here, Plaintiff seeks injunctive relief, namely (1) an order directing DHS to place her in a shelter that meets her medical needs, (2) an order requiring shelters designed specifically for transgender individuals, and (3) "an order barring DHS from placing individuals in facilities which are not consistent with their legal gender identity."  (Ex. A at 16, SAC.)  A plaintiff lacks standing to pursue injunctive relief unless she can "show a likelihood that she will be injured in the future." *Williams*, 34 F. Supp. 3d at 295; *see also Shain v. Ellison*, 356 F.3d 211, 214-16 (2d Cir. 2004) (no standing for injunctive relief where plaintiff "has failed to demonstrate a likelihood of future harm").  "[A]n abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  *Id.* (citation omitted).  Here, Plaintiff does not allege that she is likely to be harmed in the future by the WIN Defendants.

The injunctive relief Plaintiff seeks is not directed at the WIN Defendants and is not within the power of the WIN Defendants to effectuate.  Notwithstanding that fatal pleading flaw, Plaintiff has not alleged a real and immediate injury or threat of injury by either WIN or Ms. Quinn as she must do to establish standing for injunctive relief.  DHS assigned Plaintiff from Win West to Park Slope Armory many months before commencing this action, thus there is no basis on which Plaintiff can allege that she is likely to even interact with the WIN Defendants in the future, let alone be injured by them.  Because she has not established a likelihood of future harm, Plaintiff lacks standing to request injunctive relief with respect to the WIN Defendants.

## II.   PLAINTIFF FAILS TO STATE A HOUSING DISCRIMINATION CLAIM

Plaintiff advances two theories of housing discrimination:  (1) failure to accommodate her alleged disabilities, and (2) gender-based claims for being placed "in shelter designed for cisgender individuals (females)" (SAC 1.)   Both of these claims are wholly conclusory and fail to state a claim as required by *Twombly* and *Ashcroft*.

Rule 12(b)(6) dismissal is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must, at a minimum, plead "factual allegations"—as opposed to "legal conclusion[s]"—sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even a *pro se* plaintiff's complaint must be dismissed at the pleading stage if it fails to set forth sufficient factual allegations to state a claim. *See, e.g., Crawford v. Lutheran Med. Ctr.,* No. 08-CV-3249 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072 (E.D.N.Y. Mar. 14, 2011) (dismissing *pro se* plaintiff's discrimination claims); *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (affirming dismissal of pro se plaintiff's

13

complaint); *Bryant v. Wright*, 451 F. App'x 12, 14 (2d Cir. 2011) (same).  As detailed below, none of Plaintiff's housing discrimination claims against the WIN Defendants meets this standard.

      **A.**    **The WIN Defendants Did Not Fail To Accommodate Plaintiff's Alleged Disabilities.**

Plaintiff alleges a failure to accommodate claim under Title III of the ADA,[5] Section 504 of the Rehabilitation Act, the FHA,[6] the NYSHRL[7] and NYCHRL.[8]  Plaintiff alleges that "Defendants," in connection with housing Plaintiff in the system of homeless shelters in New York City, failed to accommodate her alleged disabilities, including "PTSD, major depression, anxiety and insomnia" and "PTSD, [Gender Identity Disorder ("GID"),] ADHD" (Ex. A at 2, SAC.)  However, there is not a single factual allegation against the WIN Defendants concerning a failure to accommodate these alleged disabilities.  Plaintiff merely makes sweeping legal conclusions about all "defendants" generally.  The SAC thus falls woefully short of sufficiently pleading a disability-based housing discrimination claim against the WIN Defendants.

---

[5] Although Plaintiff generally alleges an ADA violation without further specification, the WIN Defendants assume she intends to bring a claim under Title III.  To the extent Plaintiff intends to bring a Title II claim against WIN, that claim would fail because WIN is not a public entity.  42 U.S.C. § 12131(1) (defining "public entity" as either "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority").

[6] The Fair Housing Amendments Act of 1988 further extended the Fair Housing Act's prohibition on discrimination based on "race, color, religion, or national origin" to include individuals with handicaps.  *See* 42 U.S.C. § 3604(f)(2)(A).

[7] NYSHRL, Executive Law § 296(2)(a) states "[i]t shall be unlawful discriminatory practice for any person . . . of any place of public accommodation . . . because of the . . . sex or disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations . . . ."  Section 296(2)(c)(i) defines discriminatory practice as including "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

[8] NYCHRL, Section 8-107(4) states that "[i]t shall be an unlawful discriminatory practice for any person…or provider of public accommodation because of the actual or perceived . . . gender, disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person . . . any of the accommodations, advantages, facilities and privileges of any such place."  Section 8-102(18) defines a reasonable accommodation as one "that can be made that shall not cause undue hardship in the conduct of the covered entity's business."

To state a prima facie failure-to-accommodate claim for housing discrimination, Plaintiff must show that: (1) she suffers from a handicap as defined by the FHA or a disability as defined by the ADA, Rehabilitation Act, the NYSHRL, or the NYCHRL; (2) the defendant knew or reasonably should have known of her handicap or disability; (3) accommodation of the handicap or disability may be necessary to afford her an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.[9]  For the third element, the Plaintiff bears the burden of "identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits."  *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citation omitted).  In other words, the accommodation identified must be "reasonable."  *See id.*  Under the broader NYCHRL, an accommodation is reasonable as long it does "not cause undue hardship in the conduct of the covered entity's business."  2005 N.Y.C. Local Law No. 85 § 1, N.Y.C. Admin. Code § 8-102(18); s*ee also Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011).

For purposes of this motion, the WIN Defendants do not dispute that Plaintiff is an individual with a disability under the statutes at issue.  However, Plaintiff's failure to accommodate claims against the WIN Defendants fail because (i) the WIN Defendants did not refuse to accommodate Plaintiff, (ii) neither WIN nor Ms. Quinn knew of Plaintiff's disabilities,

---

[9] The FHA, ADA, Rehabilitation Act, and NYSHRL all prohibit discrimination on the basis of disability and all require that covered entities make "reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities," and so, the analysis for a failure to accommodate claim is the same under all four statutes.  *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 252-253 (S.D.N.Y. 2014); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 337 (E.D.N.Y. 2012) ("[a]nalysis of a reasonable accommodation claim under the [FHA, ADA, Section 504] is treated the same.") (alterations, citations, and internal quotation marks omitted).  *See also Rodal v. Anethesia Grp. of Onondaga*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."); *see also Simon v. City of New York*, No. 12-CV-1596 (CBA), 2012 WL 4863368, at *6 (E.D.N.Y. Oct. 11, 2012); *In re Doe v. Bell*, 194 Misc. 2d 774, 781 (Sup. Ct. N.Y. Cty. 2003); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

and (iii) the accommodation Plaintiff demanded—a single apartment or a single room in a transgender-only shelter—was patently unreasonable.

        1.   *The WIN Defendants Did Not Refuse To Accommodate Plaintiff.*

      As detailed above, Plaintiff refused to go to Win West.  At the May 31, 2018 hearing before this Court, Plaintiff stated that she would not accept her placement there because she felt the location was "dangerous" and it was a psychological "trigger" for her.  (Ex. D at 69-70, 5/31/2017 Transcript before Judge Caproni.)  That admission is fatal to her claim.  Plaintiff cannot now claim that she did not stay at Win West because she was denied a reasonable accommodation.

      Additionally, the WIN Defendants did not have the authority to determine Plaintiff's placement.  This Court has already determined Plaintiff's failure-to-accommodate claim "is properly directed at DHS" and "focuses on DHS' actions."  *Lopez v. City of N.Y.*, No. 17-Civ.-3014 (VEC) (AJP), 2017 WL 4342203, at *12 (S.D.N.Y. 2017).  Thus, Plaintiff's failure-to-accommodate claim against the WIN Defendants should be dismissed.

        2.   *The WIN Defendants Did Not Know Or Should Not Have Reasonably Known*
            *About Plaintiff's Disabilities.*

      Plaintiff does not allege that the WIN Defendants had knowledge of her disabilities.[10]  Plaintiff's allegation that her "doctors made themselves available via phone if DHS/HRA administrators needed to confirm [her] needs and their recommendations" has nothing to do with the WIN Defendants.  (Ex. A at 2, SAC.)

---

[10] Although the SAC fails to plead this element of her claim, the "Staff/Resident Complaint Form" that Plaintiff completed on June 7, 2017 shows that Plaintiff did inform WIN of her PTSD and her need to dilate related to her sex reassignment surgery, which Win offered to accommodate with a private bathroom and Win West's mental health services, but Plaintiff concluded that "this facility cannot accommodate me" and requested to return to Marsha's House.  (Ex. F, 6/7/17 Win West Staff/Resident Complaint Form.)  However, Plaintiff now alleges that "defendants" failed to accommodate several other disabilities, such as depression, anxiety, insomnia, and Gender Identity Disorder, about which WIN had no knowledge or could not have reasonably known about at the time.

Plaintiff also does not claim that the WIN Defendants should have reasonably known about her disabilities.  A diagnosis of depression, anxiety, and insomnia is not outwardly apparent and must be affirmatively disclosed to put the WIN Defendants on notice of Plaintiff's alleged mental health disabilities.  *See MacEntee v. IBM*, 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011) ("[U]nlike disabilities that are visible to an employer, the presence, duration and ever-varying severity of depression cannot be adequately perceived or accommodated unless an employee informs in some manner her employer of her limitations as a result of such a disability.").  Likewise with GID, it can be impossible to tell by looking at a person that they have been diagnosed with GID, absent any follow up questions or medical reports.[11]  While Plaintiff is openly transgender and told Ms. Quinn about her status as a transgender woman, Plaintiff does not purport that the WIN Defendants knew of her underlying disabilities and stages of treatment pertaining to her GID.  Thus, in light of these defects, Plaintiff has not sufficiently pled this element of a failure-to-accommodate housing discrimination claim.

### 3. *Plaintiff's Requested Accommodation Is Not Reasonable And Would Cause An Undue Hardship To WIN.*

Plaintiff's requested accommodations that were communicated to the WIN Defendants were either placement in a transgender-specific facility (not a "shelter designed for cisgender individuals (females)") or in an apartment, which she claims "WIN has access to." (Ex. A at 1, 10, SAC.)  Neither of these proposed accommodations is reasonable as to the WIN Defendants under federal and New York law.  And both accommodations would cause an undue hardship to WIN under the more liberal NYCHRL standard.

---

[11] While the updated DSM-V refers to Gender Identity Disorder as Gender Dysphoria, the DSM-IV classified three components of GID: 1) "a strong and persistent cross-gender identification, which is the desire to be, or the insistence that one is, of the other sex;" 2) "there must also be evidence of persistent discomfort about one's assigned sex or a sense of inappropriateness in the gender role of that sex;" and 3) "clinically significant distress or impairment in social, occupational, or other important areas of functioning."  *In re Doe v. Bell*, 194 Misc. 2d at 775.

As to Plaintiff's placement in a transgender-specific facility, this accommodation involves the creation of additional transgender-only facilities, which is completely out of the WIN Defendants' control. [12]   (*See* Ex. A at 9, SAC, "I explained that the issue DHS was facing was a lack of enough Trans shelter within DHS.")  Plaintiff's requested accommodation will be considered "unreasonable if it either imposes undue financial and administrative burdens . . . or requires a fundamental alternation in the nature of [the] program."  *Sch. Bd. of Nassau Cty. of Fla. v. Arline*, 480 U.S. 273, 287 (1987) (citations omitted).  The WIN Defendants do not control the availability of transgender-specific facilities offered by the City or DHS, thus this accommodation is administratively impossible and forcing WIN to make such an accommodation would require a "fundamental alteration" to its program.

Plaintiff also alleges that she asked Ms. Quinn to "house [Plaintiff] within her agency some place other than Win West like an apartment, which WIN has access to."  (Ex. A at 10, SAC.)  But WIN's scatter apartments are designated for families, not single women.  (Quinn Dec. at ¶ 5.)  Like all WIN shelters, WIN does not select clients who are placed in scatter apartments; DHS does.  (Quinn Dec. at ¶ 7.)  This request is also administratively impossible, and thus unreasonable as a matter of law.  Furthermore, Plaintiff's insistence on a private apartment that houses homeless families was not a reasonable accommodation; her personal preferences need not be taken into account when choosing which accommodation she should be given.  *See McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (finding that when

---

[12] Only DHS, and not WIN, has final decision-making authority with respect to shelter placement.  The Department of Homeless Services has the power and duty to "in consultation with other appropriate governmental agencies, plan housing for homeless families and individuals."  New York City Charter Chapter 24-A, Section 612(3).  Plaintiff apparently appreciates that critical fact, as she is asking this Court to issue an order to direct DHS, not the WIN Defendants, to place her in alternate housing.

making a reasonable accommodation, the entity "does not have to provide a disabled individual

with every accommodation [she] requests or the accommodation of [her] choice").

### B.      The WIN Defendants Did Not Deny Plaintiff Housing Based On Her Gender Or Gender Identity.

Plaintiff asserts that she was unlawfully placed "in [a] shelter designed for

cisgender individuals (females)" in violation of the FHA, NYSHRL, and NYCHRL.  (Ex. A at 1,

SAC.)  Notably, Plaintiff does not claim that she was denied housing by the WIN Defendants (or

any defendants, for that matter) because she is a transgender woman.  She merely claims that the

lack of sufficient transgender-only housing is discriminatory.  This fails to state a claim of

gender discrimination.

### 1.   The Limited Availability Of Transgender-Only Housing Does Not Violate The FHA and NYSHRL.

To establish gender-based housing discrimination under the NYSHRL and FHA,

Plaintiff must show that (1) she is a member of a protected class, (2) qualified for housing, (3)

suffered an adverse housing action, and (4) that the adverse housing action occurred under

circumstances that give rise to an inference of discrimination.  *See McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802 (1973).[13]  Plaintiff cannot show that (1) she suffered an adverse

housing action or (2) an adverse housing action occurred under circumstances that give rise to an

inference that she was denied housing because she is a transgender woman.[14]

---

[13] The standards governing gender discrimination under NYSHRL and FHA are the same as the standards governing Title VII cases.  *See Hispanic AIDS Forum v. Bruno*, 16 A.D.3d 294, 303 (1st Dep't 2005) ("Because Title VII and the [NYSHRL] have many similarities, federal case law has been looked to in analyzing questions under state law.") s*ee Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, No. 96 Civ. 9198 (SAS), 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997) ("The Second Circuit has repeatedly recognized that Title VII (employment discrimination) cases are relevant to Title VIII (housing discrimination) cases by virtue of the fact that the 'two statutes are part of a coordinated scheme of federal civil rights laws enacted to end discrimination.'") (citation omitted.)

[14] For the purposes of this motion, the WIN Defendants do not dispute that Plaintiff is a member of a protected class or that she qualified for housing under DHS policies.  However, Plaintiff's alleged conduct at Marsha's House may have disqualified her from being eligible for housing through DHS.

First, as detailed above, the WIN Defendants have not denied Plaintiff housing in any way.[15]  Plaintiff admits that she refused to go to Win West, and never alleges that WIN or Ms. Quinn excluded her from Win West in any way.  Second, the facts alleged cannot give rise to an inference of discrimination.  The alleged statements attributed to Ms. Quinn in 2017 are not sufficient to give rise to an inference of discrimination based on gender or gender identity.  As Plaintiff fails state a claim of gender discrimination under the FHA or NYSHRL against the WIN Defendants, those claims should be dismissed.

2. *The Limited Availability Of Transgender-Only Housing Does Not Violate The NYCHRL.*

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other [residents] because of her gender."  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715, F.3d 102, 110, 113 (2d Cir. 2013) (employment discrimination) (quotations marks and citations omitted).  As detailed above, Plaintiff has failed to establish that the WIN Defendants have treated her less well than others because of her gender.  Indeed, there is not a single allegation in the SAC that plausibly suggests that Plaintiff's transgender identity has anything to do with any alleged conduct by WIN or Ms. Quinn.  Thus, Plaintiff's NYCHRL claim must also fail.

**C.   The WIN Defendants Did Not Harass Plaintiff Based On Her Gender or Gender Identity.**

In 2002, the NYC Council passed a Transgender Rights Bill (also known as Local Law 3) designed to expand the scope of gender-based protections guaranteed under the

---

[15] Adverse housing actions include (1) refusing to rent or sell, (2) discriminating in the terms, conditions, or privileges of rental or sale, (3) indicating a preference in advertising, (4) misrepresenting the availability of any dwelling, or (5) for profit, inducing sale or rent by representing entry of a person of a particular race, color, religion, sex, etc.  *See* 42 U.S.C. §§ 3604(a)-(e); N.Y. Exec. Law § 296(2)(a).

NYCHRL.  Local Law No. 3 (2002); N.Y.C. Admin. Code § 8-102(23).  To state a claim of

harassment motivated by gender under the NYCHRL, Plaintiff would have to prove by a

preponderance of the evidence "that she has been treated less well than other[s] . . . because of

her gender."  *Williams v. NYC Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009).

        Under the NYCHRL, a plaintiff must show that she was a "member of a protected

class [who] was treated differently than [another] who was not a member of that protected class."

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015).  Plaintiff has made no

allegation that WIN or Ms. Quinn treated her differently than non-transgender individuals.

Furthermore, the "broader purposes of the [NYCHRL] do not connote an intention that the law

operate as a 'general civility code.'"  *Williams*, 61 A.D.3d at 79.  Isolated, one-time remarks—

even if offensive—are insufficient to state a claim of discrimination, particularly where they

have no connection to the ultimate adverse decision.  *Taylor v. Potter*, No. 99 Civ. 4941 (AJP),

2004 WL 1811423, at *15 (S.D.N.Y. Aug. 16, 2004) (employment decision).  *See also*

*Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 347-48 (S.D.N.Y. 2014)

(finding that a single comment, even if offensive, is insufficient to state a claim for

discrimination).  However, even under the broader NYCHRL standard, "petty, slight, or trivial

inconvenience[s] are not actionable."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579

(S.D.N.Y. 2011) (quotation marks and citations omitted).  Here, Ms. Quinn's alleged statements

are not trans-phobic or in any way derogatory, and do not amount to gender discrimination under

the NYCHRL.

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AND FOURTEENTH AMENDMENTS

        The first and only mention of the United States Constitution in the SAC is a

vague, conclusory statement that "[t]hese actions also violate the rights guaranteed to me under

the First and Fourteenth amendments of the United States Constitution."  (Ex. A at 15, SAC.)
This passing mention is insufficient to state a claim.

As an initial matter, these claims cannot stand against WIN and Ms. Quinn
because they are private parties.  The U.S. Constitution protects private citizens from conduct by
the state, but not conduct by other citizens unless those citizens are acting under the color of state
law.  *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (discussing the
state-action requirement as it relates to the Fourteenth amendment).  To allege that a private
party is acting under the color of state law, a plaintiff must show there is a close nexus between
the state and the challenged private action such that the private behavior can be treated as that of
the state's.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295
(2001); *Kholost v. U.S. Dep't of Hous. & Urban Dev.*, No. 16-CV-6651 (AMD) (LB), 2018 WL
3539814, at *4 (E.D.N.Y. July 23, 2018).

In this case, Plaintiff fails to allege any facts to show that the WIN Defendants
were acting under the color of state law.  The alleged phone conversations between Plaintiff and
Ms. Quinn concerned Plaintiff's request that Ms. Quinn lobby DHS and provide Plaintiff with an
apartment in which WIN houses homeless families.  There is no conceivable nexus between
these conversations and state action, let alone an alleged connection.

Even if Plaintiff could meet that burden, her claims under the First and Fourteenth
Amendments still fail.  First, it is impossible to understand what Plaintiff's First Amendment
claim is against the WIN Defendants.  This claim is entirely too conclusory to survive.  *See*
*Fernandes v. Moran*, No. 2:17-cv-03430 (ADS) (SIL), 2018 WL 2103206, at *7 (E.D.N.Y. May,
7 2018) ("A complaint which alleges retaliation in wholly conclusory terms may safely be
dismissed on the pleadings alone.") (quotation marks and citations omitted).  Second, assuming

Plaintiff intends to bring an equal protection claim under the Fourteenth Amendment (which is not clear at all from the SAC), she has not sufficiently pled such a claim.  To state an equal protection claim, a plaintiff must show that she was treated differently than others similarly situated as a result of intentional discrimination.  *Adkins v. City of New York*, 143 F. Supp. 3d 134, 138 (S.D.N.Y. 2015).  Plaintiff has pled no facts in support of this claim.  For all of these reasons, Plaintiff's claims under the First and Fourteenth Amendments should be dismissed.

## IV.   PLAINTIFF FAILS TO STATE A RACIAL DISCRIMINATION CLAIM UNDER TITLE VI OF THE 1964 CIVIL RIGHTS ACT

Title VI of the 1964 Civil Rights Act prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  *See* 42 U.S.C. § 2000d.  Plaintiff has not alleged any actions by the WIN Defendants that include discrimination based on race, color, or national origin.  As a result, Plaintiff's Title VI claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12 (b)(6) as to Women in Need, Inc. and Christine Quinn.

Dated:  New York, New York
October 5, 2018

WILLKIE FARR & GALLAGHER LLP

By:  /s/ Ameila A. Cottrell
Amelia A. Cottrell
Jill K. Grant
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
acottrell@willkie.com
jgrant@willkie.com
*Attorneys for Defendants Women in Need, Inc.
and Christine C. Quinn.*

TO:   **BY ECF**

Mariah Lopez
*Plaintiff, pro se*

Thomas B. Roberts
*Counsel for Defendants NYC Dept. of
Homeless Services and NYC Human
Resources Administration*

Nidhi Srivastava
*Counsel for Defendant Project Renewal,
Inc.*

Stephen Paul Pischl
*Counsel for Defendant QPS Security, Inc.*

24