# EXHIBIT J

T. Roberts

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **BARBARA JAFFE** J.S.C.
Justice

PART 12

Lopez, Mariah
-v-
NYC Dept. Homeless Services

INDEX NO. 100632-17

MOTION DATE _____

MOTION SEQ. NO. 1

The following papers, numbered 1 to ____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____
Answering Affidavits — Exhibits _____ | No(s). _____
Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION**

Judgment

**FILED**
OCT 1 0 2017
COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 6/14/17

BARBARA JAFFE, J.S.C.

1. CHECK ONE: ........................ ☑ CASE DISPOSED       ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ........MOTION IS: ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ........................ ☐ SETTLE ORDER          ☐ SUBMIT ORDER
                                                   ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 12
-----------------------------------------------------------------x
In the Matter of the Application of          Index no. 100632/17
MARIAH LOPEZ,
                                             **DECISION AND JUDGMENT**
                        Petitioner,

            -against-


NYC DEPARTMENT OF HOMELESS SERVICES,
PROJECT RENEWAL,

                        Respondents.
-----------------------------------------------------------------x
BARBARA JAFFE, JSC:

    Petitioner seeks an order directing respondent NYC Department of Homeless Services (DHS) to "reverse its decision to approve Project Renewal's request to transfer [her] from Marsha's Place Shelter (for transgender people)." (Verified Petition). She alleges that the transfer constitutes a retaliatory measure against her for having obtained an order from the Southern District of New York enjoining respondents from refusing the entry of her service dog into Marsha's Place. Since then, she contends, she has been treated differently by staff in that they document her alleged infractions more than they do those of other clients, resulting in a "paper trail" and her transfer out of Marsha's Place, which transfer she claims resulted from her objection to the mistreatment of transgender clients by food service staff. She accuses Project Renewal's director of inappropriately sharing with her personal details about himself. (*Id.*). Petitioner also seeks a temporary stay and an order preliminarily enjoining her transfer. (Order to Show Cause, dated May 11, 2017).

## I. BACKGROUND

    Annexed to the petition are respondents' Client Notification of Transfer, dated May 10,

2017, setting forth a shelter client's right to a review of the reasons for a transfer, a Shelter Client Transfer Referral form, dated May 11, 2017, by which petitioner was notified of her transfer as of that day, and a copy of the aforementioned federal temporary restraining order, dated April 27, 2017, which reflects that it was issued "without prejudice to the Defendants' and Marsha's House's right to require [petitioner] to comply with all applicable shelter rules and City and State regulations." (*Mariah Lopez v City of New York*, US Dist Ct, SD NY, 17cv3014, Caproni, J., Apr. 27, 2017).

On May 12, 2017, when the parties appeared before me with respect to the requested stay, petitioner argued that she should not be forced to leave Marsha's Place and take up residence at WIN West Women's Shelter (WIN West) as two transgender residents of that shelter had recently reported being assaulted there. (Transcript of proceedings, May 12, 2017). According to petitioner, her fear of being assaulted at WIN West and of again being placed in an environment where, if disrespected or attacked, her "post-traumatic stress disorder" and "impulse control disorder" could result in her physically defending herself. Thus, she claimed that being transferred from Marsha's Place will result in an irreparable injury which excuses her from any obligation to exhaust her administrative remedies before seeking judicial review of DHS's determination. She added that she lacks any option but to perform "sex work" if she cannot remain at Marsha's Place, and claimed a right to be with other transgender people there and not be forced into a shelter for "cis or legal females."

While she admits having threatened staff at Marsha's Place, she observed that she has not assaulted anyone. She reiterated and refined her position as a fear of being forced by discriminatory behavior to defend herself and thereby be exposed to potential criminal charges,

2

and distinguished the discriminatory conduct directed against transgender people by food service staff at Marsha's Place from the violence at WIN West.

Notwithstanding petitioner's fear of being transferred to WIN West, respondents insist that it is safe given the police protection it affords, and is thus more suitable for petitioner, who has engaged in threatening conduct at Marsha's Place, where there is no police presence. They asserted that there is no evidence of any assaults at WIN West nor does there appear to be a history or pattern of incidents at WIN West related to transgender individuals, otherwise observing that criminal conduct occurs "at pretty much every single shelter facility within New York City," and that there is no guarantee of safety at any particular shelter. Although staff members at Marsha's Place have tried to work with petitioner, respondents reported that they do not feel safe as a result of her confrontations with them.

Respondents expressed willingness to reach out to WIN West to ensure that a bed was available to petitioner and offered her assistance in utilizing security procedures there, and observed that shelters are designated for women solely according to their gender identity, although they acknowledged that Marsha's Place is a uniquely LGBTQ shelter. While petitioner was exempted from the below-30 age requirement at Marsha's Place, respondents maintained that given her repeated violation of the shelter rules and regulations contained within a written contract she signed with Project Renewal, she no longer qualifies.

Respondents also argued that DHS has the discretionary authority to effect transfers between shelters, and that if a shelter need is not being met, such as one related to safety, timely notice and a pre-transfer hearing are not required. Rather, a client may request a fair hearing to challenge the transfer post-transfer. Given the availability of that remedy, respondents asserted,

3

petitioner is not entitled to any injunctive relief, having failed to exhaust her administrative fair-hearing remedy, and claim that the status quo ante is petitioner's assignment to WIN West, even though she refused placement there.

I ordered respondents to accommodate petitioner at Marsha's Place for the weekend and directed them to appear on May 15 for consideration of petitioner's order to show cause.

On May 15, petitioner characterized the weekend at Marsha's Place as "without incident," although she complained about not having been fed that morning. (Transcript of proceedings, dated May 15, 2017). By contrast, respondents reported that over the weekend, six incidents were reported concerning threats leveled at staff members by petitioner, and that petitioner was given cereal that morning as the kitchen had run out of eggs when she appeared for breakfast near the end of the breakfast period. Nonetheless, I temporarily stayed respondents from enforcing the transferral of petitioner to WIN West, conditioned on her compliance with respondents' rules and regulations. I signed the order to show cause and the parties were directed to return to court on May 31. Respondents were given until May 24 to file their answers to the petition.

On May 24, respondents filed and served their verified answers.

By letter dated May 25, 2017, DHS advised that on May 24, the police had been called to Marsha's Place and petitioner was thereupon arrested. As a result, and given my order conditioning the stay of her transfer to WIN West on her compliance with the shelter's rules and regulations, DHS "suspended" petitioner from shelter services for seven days, which according to counsel, is the standard procedure followed under the circumstances.

On May 26, 2017, petitioner brought a new order to show cause and petition, seeking an order compelling DHS to permit her to return to Marsha's Place. Another justice of this court

4

denied her request for a stay, and scheduled the application to be heard by me on May 31, 2017.

On May 31, DHS advised that petitioner's May 24 arrest resulted in the lodging of felony and lesser charges. (Transcript of proceedings, dated May 31, 2017). It was agreed that the underlying facts would not be discussed to avoid any incriminatory statements from petitioner, although she maintained that the charges lodged against her are the exaggerated product of DHS's urging staff at Marsha's Place to press charges against her in an attempt to deny her "fair access to this Court and its procedures," and she complained that counsel for DHS was not communicating with her. Specifically, she alleged that she had informed him, apparently without response, that there were serious safety concerns at Marsha's Place. She accused counsel of taking advantage of the condition set forth in my order to show cause that she comply with the rules knowing that she would violate them, and thereby rendering her "helpless" in having to resort to sex work.

In response, DHS counsel referenced petitioner's "long history [of] defiantly violating rules and when asked to comply . . ." refusing to do so, alleging that petitioner has slept with other clients, burned candles in her room, brought prohibited wine and food into the shelter, and has a "long history" of threatening shelter employees. He reported that petitioner had called him, proposing to settle the case by "completely reorganizing the management of Project Renewal," which he declined as unproductive. It was soon thereafter, he stated, that occurred the incidents leading to her arrest and suspension from services.

As the suspension was to expire that day, DHS asked that I lift the stay to permit petitioner's transfer to a different facility in order to avoid her further disruption of Marsha's Place, and strongly denied petitioner's suggestion that safety issues were not taken seriously by

5

Project Renewal. Counsel observed that upon petitioner's return to the shelter on May 26, she confronted one of the directors and told him that "she thought she knew where he lived and she would have his fucking head blown off." He thus contended that a transfer to a shelter with better mental health services is appropriate, especially as several staff members refused to come to work with petitioner in the building.

Petitioner additionally complained that counsel intentionally served her with DHS's verified answer the day she "was made homeless," and that her transfer from Marsha's Place would "impact[]" her canine service animal. Petitioner maintained that all of the evidence against her cited by respondents originates from individuals whose words are tainted by conflicts of interest given the departmental investigation she commenced against them the previous week. She denied "sneaking" wine into the shelter, as she had only forgotten that she had it, claimed that she had burned candles in her room as part of a religious observance, and denied that her conduct endangered any clients, a majority of whom had signed a petition calling for the ouster of the shelter's present director. She asked that I modify the stay to prevent her transfer to any facility, not just WIN West, and amend it to extend to a determination of her application, asserting that the only facility for an open transgender person to feel safe from harassment is Marsha's Place.

Given the incidents that preceded those allegedly precipitating petitioner's arrest, which were essentially uncontested except to the extent that petitioner sought to excuse them, and absent a sufficient showing that immediate and irreparable injury would result if DHS were not restrained from transferring petitioner to WIN West, I lifted the stay and marked as fully submitted petitioner's motion for a preliminary injunction and her petition.

6

## II. ANALYSIS

### A. Exhaustion of remedies

Although petitioner seeks a preliminary injunction, she ultimately requests that I review the determination of an agency. "[A]s a general principle, absent extraordinary circumstances, courts are constrained not to interject themselves into ongoing administrative proceedings until final resolution of those proceedings before the agency." (*Galin v Chassin*, 217 AD2d 446, 447 [1st Dept 1995], citing *Doe v St. Clare's Hosp. & Health Ctr*, 194 AD2d 365, 366 [1st Dept 1993], *lv denied* 82 NY2d 662). Thus, one seeking such review must first exhaust administrative remedies. The exhaustion rule is not, however, inflexible, as it "need not be followed, for example, when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury." (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]).

Given DHS's broad discretionary authority to effect transfers between homeless shelters, the transfer of petitioner from Marsha's Place to WIN West is neither unconstitutional nor wholly beyond DHS's grant of authority; petitioner's avowed purpose in advocating for others by verbally threatening staff at Marsha's Place and her complaints about shelter services do not encroach on that authority. As respondents' answers were to be filed and served on May 24, they cannot be faulted for serving her then. Moreover, her attempt to minimize the impact of her threats is unpersuasive.

Petitioner also offers no reason to believe that an effort to obtain a fair hearing would be futile (*see McFadden v Fonda*, 148 AD3d 1430, 1431 [3d Dept 2017] [no evidence offered

7

substantiating petitioner's contention that his ability to file appeal in accordance with administrative directive was hindered]), or that a hearing would be other than fair. At that hearing, she would have an opportunity to argue and prove her allegations of retaliatory conduct by shelter staff.

Although it was reported in 2016 that, nationally, 22 percent of transgender residents of homeless shelters were sexually assaulted by staff or other residents,[1] and notwithstanding petitioner's report of hearing from two such recent victims at WIN West, her fear of being assaulted there is nonetheless speculative and does not constitute irreparable injury (*see eg Heyliger v Trombley*, 2017 WL 1064680, *2 [ND NY 2017] [preliminary injunction seeking transfer to different correctional facility denied as plaintiff's concern of possible assault or mistreatment speculative]; *Trowell v Upstate Correctional Facility*, 2016 WL 7156559, *8 [ND NY 2016], and cases cited therein [allegations of possible future assault speculative and thus insufficient to establish irreparable harm]), nor does her anticipation of having to defend herself or others. That she cannot control her impulses does not entitle her to relief, nor does her claim that she has no choice but to engage in "sex work" to avoid being homeless. A professed inability to conform one's conduct to the law or to support oneself in any capacity other than in sex work cannot be countenanced as to do so would condone illegality and unjustifiably ignore available onsite social services, as well as others such as the Urban Justice Center's Sex Workers Project (www.urbanjusticecenter.org).

---

[1] Demoya Gordon, "Transgender People Need Safe and Dignified Access to Homeless Shelters," Lambda Legal, Feb. 16, 2016, https://www.lambdalegal.org/blog/20160216_transgender-people-need-access-to-homeless-shelters.

8

### B. Preliminary injunction

Even had petitioner exhausted her administrative remedies, the result is the same. To obtain a preliminary injunction, she must demonstrate, by non-conclusory statements, the likelihood of success on the merits, a danger of irreparable injury, and that the balance of equities is in her favor (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of New York, CPLR 6312, Bk 7B, C6312:1 [2010]). That petitioner is no longer at Marsha's Place poses no obstacle, as it has been held that injunctive relief may restore the status quo as it existed before the defendant's wrongful act. (Vincent C. Alexander, Supplementary Practice Commentaries, McKinneys Consol Law of New York, CPLR 6301, Bk 7B, C6301:1 [2014]; *Bd. of Ed. of City of New York v Marcus*, 63 Misc 2d 268, 271 [Sup Ct, Kings County 1970], citing 7-A Weinstein-Korn-Miller § 6301.16). However, for the reasons set forth above (II.B.), namely, respondents' broad discretion and the speculative nature of her fears, petitioner fails to demonstrate, respectively, a likelihood of success on the merits and irreparable injury. And given the indisputable public interest in the safe administration of homeless shelters, the balance of equities here lies in respondents' favor.

Petitioner's May 26, 2017 order to show cause and petition, is thus moot and the "Preliminary Report" annexed to it is not reviewed as it addresses issues beyond the purview of her application and is neither signed nor notarized.

### III. CONCLUSION

As a self-described experienced advocate whose professed goal is to reform the shelter system as it relates to transgender individuals, it should come as no surprise to petitioner that a more nuanced approach to reaching her goal may be more productive. To the extent that her

9

conduct may be characterized as civil disobedience, under the circumstances presented here, she is herself to blame for the consequences of her conduct. (*See United States v Kroncke*, 459 F2d 697, 703 [8th Cir 1972] ["Among philosophers and religionists throughout the ages there has been an incessant stream of discussion as to when, if at all, civil disobedience, whether by passive refusal to obey a law or by its active breach, is morally justified. However, they have been in general agreement that while in restricted circumstances a morally motivated act contrary to law may be ethically justified, the action must be non-violent and the actor must accept the penalty for his action. In other words, it is commonly conceded that the exercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law."]).

Accordingly, it is hereby

ORDERED and ADJUDGED, that the petition is denied in its entirety; it is further

ORDERED and ADJUDGED, that petitioner's May 26, 2017 order to show cause and petition are denied as moot and dismissed; and it is further

ORDERED and ADJUDGED, that the proceeding is dismissed.

ENTERED:

_____
Barbara Jaffe, JSC

DATED:   June 14, 2017
         New York, New York

10

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: _JAFFE_   PART _12_
Justice

LOPEZ, MARIAH
-v-
NYC. DEPT HOMELESS SERVICES

INDEX NO. _100632/17_
MOTION DATE ____
MOTION SEQ. NO. _02_

The following papers, numbered 1 to ____, were read on this motion to/for _____
Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). ____
Answering Affidavits — Exhibits _____ | No(s). ____
Replying Affidavits _____ | No(s). ____

Upon the foregoing papers, it is ordered that this motion is

> This petition is decided in accordance with the decision and order and judgment filed under motion sequence number __001__

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S): _____

Dated: _6/14/17_

_____, J.S.C.
BARBARA JAFFE J.S.C.

1. CHECK ONE: ............................................... ☒ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED  ☒ DENIED    ☐ GRANTED IN PART    ☐ OTHER
3. CHECK IF APPROPRIATE: ............................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER
                                                                         ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE



**57 Willoughby St, 2nd Floor, Brooklyn, NY 11201**  WWW.HOUSINGWORKS.ORG

June 29, 2017

Re: Mariah Lopez

To whom it may concern:

**FILED**

**OCT 1 0 2017**

**COUNTY CLERK'S OFFICE**
**NEW YORK**

My patient, Ms. Lopez, a transgender woman, requires a housing situation that allows her complete privacy and agency to dilate her neovagina, due to a vaginoplasty performed in 2009. It is essential that she be able to choose when and where she dilate, as it requires her to focus on erotic thoughts to increase blood flow and decrease pain. She has reported emotional distress to having to ask permission to dilate. If she is forced to ask DHS shelter staff to access a room for dilation, her medical confidentiality is compromised as she must carry medical equipment with her. Furthermore, if she cannot dilate in a safe and comfortable place at her will, she may develop vaginal stenosis that requires treatment by narcotic pain medication to dilate per her surgeon, increasing risk of dependency.

If Ms. Lopez is not able to dilate her neovagina regularly (three times a day for 15 minutes as prescribed by her surgeon), she will have to undergo additional surgery that will put her at risk of complication and serious infection that puts her at risk of mortality. It is imperative that she be moved to a shelter that can fully accommodate her needs.

Ms. Lopez has been under my care since 2016. She has expressed concern about access to safe spaces to dilate to preserve vaginal depth since our first meeting. As her medical provider, I'm aware of the Reasonable Accommodation request made by Ms. Lopez to DHS which was denied. I can consider her medical needs urgent, and any placement in a dorm setting inappropriate and not a reasonable accommodation. Furthermore, from a Women's Health perspective, a woman should not have to seek permission from a governmental agent to care appropriately for her body, which is what the accommodation outlines per DHS. If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sarah Acker, ANP-BC
Nurse Practitioner
T: 347-473-7400 ext. 4101
F: 347-473-7465

*Sarah Acker, ANP-BC*
*Nurse Practitioner*
*NY Lic. # 307091*
*DEA # MA 3330266*



# WebCivil Supreme - Appearance Detail

Court: **New York Supreme Court**
Index Number: **0100871/2017**
Case Name: **LOPEZ, MARIAH vs. NEW YORK CITY DEPARTMENT**
Case Type: **ARTICLE 78**
Track: **Standard**

### Appearance Information:

| Appearance Date | Time | On For | Appearance Outcome | Justice / Part | Comments | Motion Seq |
|---|---|---|---|---|---|---|
| 09/28/2017 | | Motion | | BANNON, NANCY M. IAS MOTION 42 | | 1 |
| 08/24/2017 | | Motion | ADJOURNED | BANNON, NANCY M. IAS MOTION 42 | | 1 |
| 07/31/2017 | | Motion | ADJOURNED | BANNON, NANCY M. IAS MOTION 42 | . | 1 |
| 07/27/2017 | | Motion | ADJOURNED | BANNON, NANCY M. IAS MOTION 42 | | 1 |

Close



FILED OCT 10 2017 COUNTY CLERK'S OFFICE NEW YORK

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: Nancy Bannon, Justice        PART 42

Lopez, Mariah   [INTERIM ORDER]   INDEX NO. 100871-17
-v-                                 MOTION DATE 8/24/17
NYC Dept. of Homeless Serv.         MOTION SEQ. NO. 1

The following papers, numbered 1 to ___, were read on this motion to/for CPLR article 78 Petition

| Notice of Motion/Order to Show Cause — Affidavits — Exhibits | No(s). |
| Answering Affidavits — Exhibits | No(s). |
| Replying Affidavits | No(s). |

Upon the foregoing papers, it is ordered that this petition is adjourned to Sept 28, 2017 at 2:30 pm, final for the petitioner to appear for oral argument on the petition. The petitioner was notified of the adjournment from 7/31/17 to 8/24/17, by the court and the respondents but she did not appear. The petitioner is advised that her failure to appear on 9/28/17 at 2:30 pm will result in denial of the petition and dismissal of the proceeding.

Dated: 8/24/17

                                    /s/ Nancy M. Bannon, J.S.C.
                                    HON. NANCY M. BANNON
                                    ☒ NON-FINAL DISPOSITION

1. CHECK ONE: .................... ☐ CASE DISPOSED
2. CHECK AS APPROPRIATE: ........ MOTION IS: ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ........ ☐ SETTLE ORDER  ☐ SUBMIT ORDER
                                   ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

- no contact - send nos
- 3:15 -





## WebCivil Supreme - Appearance Detail

Court: **New York Supreme Court**
Index Number: **0100871/2017**
Case Name: **LOPEZ, MARIAH vs. NEW YORK CITY DEPARTMENT**
Case Type: **ARTICLE 78**
Track: **Standard**

### Appearance Information:

| Appearance Date | Time | On For | Appearance Outcome | Justice / Part | Comments | Motion Seq |
|---|---|---|---|---|---|---|
| 08/24/2017 | | Motion | | BANNON, NANCY M. IAS MOTION 42 | 2:30PM | 1 |
| 07/31/2017 | | Motion | ADJOURNED | BANNON, NANCY M. IAS MOTION 42 | 2:30PM | 1 |
| 07/27/2017 | | Motion | ADJOURNED | BANNON, NANCY M. IAS MOTION 42 | 11:30AM | 1 |

Close



FILED
OCT 1 0 2017
COUNTY CLERK'S OFFICE
NEW YORK



| ZACHARY W. CARTER<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | THOMAS B. ROBERTS<br>Phone: (212) 356-0872<br>Fax: (212) 356-2089<br>E-mail: throbert@law.nyc.gov<br>(not for service) |
|---|---|---|

FILED July 20, 2017

**By Hand**
Honorable Nancy M. Bannon
Supreme Court of the State of New York
County of New York
111 Centre Street, Room 1127B
New York, N.Y. 10013

OCT 1 0 2017
COUNTY CLERK'S OFFICE
NEW YORK

RECEIVED
JUL 2 0 2017
PART 42
NYS SUPREME COURT - CIVIL

Re: <u>Lopez v. Department of Homeless Services, 100871/2017</u>

Dear Justice Bannon:

  I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, counsel for the New York City Department of Homeless Services ("DHS") in the above referenced special proceeding.
  I write to request the Court to hold DHS's Verified Answer and the Affidavit of Dr. Laraque in confidence until the oral argument of Ms. Lopez' Article 78 proceeding on July 27, 2017, at which time the parties and the Court can determine whether the Verified Answer and Dr. Laraque's Affidavit, in whole or in part, should be placed under seal, pursuant to Part 216 of the Uniform Rules for N.Y.S. Trial Courts.
  I am making this request because the June 7, 2017 letter of Dr. Harold Reed to DHS and references to that letter[1], which letter is attached as Exhibit 14 to the Verified Answer, may warrant confidential treatment. In his letter, Dr. Reed describes Ms. Lopez' medical condition and describes her need for dilation. Ms. Lopez has raised these medical issues in this proceeding and has attached as Exhibit E to her Amended Petition a June 29, 2017 letter from Nurse Practitioner Sarah Acker that expressly refers to Dr. Reed's recommendation and addresses dilation issues. Nevertheless, should Ms. Lopez request that Dr. Reed's letter warrants confidential treatment, DHS will not oppose having part or all of DHS' Verified Answer and the Affidavit of Dr. Laraque placed under seal.

---

[1] Dr. Reed's letter is referred to at paragraphs 74 and 86 of the Verified Answer and in paragraphs 6, 7 and 17 of Dr Laraque's Affidavit.

Thank you for your consideration of this request that the Verified Answer and Affidavit of Dr. Laraque not be placed in the public record until this issue concerning confidentiality can be addressed on July 27, 2017.

Respectfully,

Thomas B. Roberts
Assistant Corporation Counsel

CC by overnight courier and email to
Mariah Lopez
Park Slope Women's Shelter
1402 8th Avenue
Brooklyn, NY 11215
Mariah4change@gmail.com

2