UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/18

MARIAH LOPEZ

17-cv-3014

Plaintiff,

CITY OF NEW YORK, NYC DEPT OF HOMELESS
SERVICES, NYC HUMAN RESOURCES
ADMINISTRATION, PROJECT RENEWAL INC, QPS
SECURITY INC, WIN INC, CHRISTINE C. QUINN,

Defendants

2018 DEC 20 PM 4: 28
S.D. OF N.Y.
SDNY PRO SE
SDNY RECEIVED

## EMERGENCY MOTION FOR TRO

## BACKGROUND

Plaintiff is 33 and identifies as a Transgender Woman, with an array of medical needs and/or
unique protections related to Plaintiffs conditions and personal identity.

Plaintiff is a lifetime resident of New York, having been raised within the NYC Foster care
system. As such Plaintiffs lodging conditions within gender segregated facilities has always
been regulated, so to speak. Plaintiff has been diagnosed with a number of medical conditions
which qualify as legal Disabilities including GID and PTSD (Gender I.D. Disorder, and Post
Traumatic Stress Disorder). The symptoms of these conditions are exacerbated in certain group
setting and/or especially overnight facilities that include dorm style sleeping quarters, namely
DHS shelters (due to night terrors and flashbacks experienced by the Plaintiffs). Accordingly,
dorm style sleeping quarters in any congregate facility or setting, have been ruled out (by health
care mental health providers) regarding the Plaintiff.

Plaintiff cannot experience meaningful rest or adhere to medical requirements as patients under
treatment, if forced or left to sleep in a group or dorm style setting.

1

The Plaintiff requires and owns a service dog to aid in managing Plaintiff's symptoms.

The Plaintiff has undergone several surgical procedures to manage her (GID associates) symptoms as well.

Managing Plaintiff's post surgical obligations as a patient; for the surgery to be considered successful, and, for the use and function of the service animal, <u>Plaintiff requires a single room for sleeping, for neccessary boundaries required for the service dog to funtion,as well as discretionary privacy within any facility operated by the Municipal Defendants in this matter.</u>

In April 2017 Plaintiff entered into the NYC shelter system, and was almost immediately forced to bring a civil action before this court pro se, seeking an order compelling the Municipal Defendants (along with Project Renewal) to provide reasonable accommodations under the ADA, and allow the Plaintiff's service dog to to accompany Plaintiff into a shelter for GLBTQ identified individuals named Marsha's.

The municipal Defendants were fully aware of the Plaintiffs disabilities and needs (such as a service dog and need for private room) before Plaintiff entered into the actual DHS shelter system.

After Plaintiff won a TRO regarding Plaintiff's service dog being allowed to accompany Plaintiff into the shelter, Plaintiff uncovered misconduct by staff within said shelter. Plaintiff asserts that the Municipal Defendants (along with QPS and Project Renewal) acted to suppress and cover up allegations made by the Plaintiff and other residents of Marsha's shelter. Ultimately the Plaintiff in this matter was sexually harassed, arrested, transferred and ejected from said shelter; made subject to criminal prosecution and loss of liberty based on false allegations; beaten, made homeless and forced to engage in survival sex work due to the actions of multiple Defendants in this matter, primarily the Municipal Defendants.

These actions by the Defendants (which Plaintiff views as retaliation for bringing the original civil matter) and Plaintiffs desperate need for safe housing, triggered the Plaintiff to file multiple pro se civil actions over the period covering May 2017 through May/June of this year, 2018, seeking fair treatment (as per Plaintiffs identity as a Transgender Woman) as well as medically appropriate housing, within the NYC shelter system (operated by the Municipal Defendants).

Plaintiff asserts that Municipal Defendants are legally barred from forcing any Trans identified person into a shelter designed for cis-gender individuals against their wishes, and thus (under its obligations under the law) must open more than one facility for Trans' individuals with unique rights and unique medical needs, among other relief sought and specified within these proceedings.

One of the civil lawsuits filed by the Plaintiff challenging the actions of the Defendants was removed from state court, to Federal court (Municipal Defendant's position is that the case and

facts are related), in order to be consolidated with the ongoing civil matter originating from the controversy over the admission of Plaintiff's service dog.

As such this court ordered the parties WIN Inc, Christine Quinn and QPS Security Inc be added as Defendants in this matter, and adopted the Plaintiffs complaints/petitions and allegations within the removed civil case now the instant matter before the court. Counsel for the Defendants WIN/Mrs Quinn, and QPS have become active in the case, filing appearances and a number of motions.

## Current Need For Judicial Relief

<u>As of the time of this filing the Municipal Defendants have failed to provide Plaintiff with medically appropriate housing as per its obligations under the law.</u>

Additionally this court has yet to rule on Plaintiffs motion for preliminary relief and whether or not the Municipal Defendants failure to provide reasonable accomodations, is lawful.

So unfortunately while the court has reviewed the law and facts of this case and Plaintiffs motion for relief over the last year-plus period, Plaintiff has been left essentially homeless; couch and air mattress hopping while engaging in sex work for financial support.

In July of 2018 Plaintiff was brutally assaulted while engaging in survival sex work. As a result of this incident Plaintiff has been left with permanent injuries. Had DHS provided Plaintiff with appropriate housing while this case was litigated, or, had this court granted Plaintiffs request for preliminary injunctive relief, Plaintiff most certainly would not have been assaulted in July; I wouldn't have needed to be where I was, doing what I was doing.

Also over the last year-plus period, Plaintiff has made every reasonable attempt to better myself (which was the entire point of entering into the DHS system to begin with); to find long term housing; return to school and/or secure meaningful employment and getting into mental health treatment. However Plaintiff has been severely limited in these efforts, due to the municipal Defendant's refusal to perform their basic duties and function; as providers of appropriate housing for homeless New Yorkers, where Plaintiff is concerned.

Unlike many of the tens of thousands of homeless New Yorkers who receive services from the Municipal Defendants, due solely to the unresolved legal controversies before this court ("Single room" relief issue, etc), <u>Plaintiff has been unable to rely on Municipal Defendants to provide housing and other such services.</u>

Despite good faith efforts on the part of the Plaintiff, Municipal Defendants have not taken settlement negotiations seriously and so parties are unable come to terms on what constitutes medically appropriate housing, or on any other terms of a resolution outside of court.

## MOTION

Plaintiff moves this court to grant a request for a TRO at this time forcing Municipal Defendants to provide Plaintiff with safe and medically appropriate housing, due to two separate, recent events (which should be viewed as positive by all parties regardless of parties adversarial roles in this instant matter).

However the ultimate positive nature and optimal outcome of these events are threatened if Plaintiff continues to struggle with homelessness.

I am asking for this court to issue an Order compelling NYC DHS to fullfilits duties under the law, and to find appropriate housing for me within the shelter system (according to recommendations of my current mental health provider) OR;

an Order compelling the Municipal Defendants to cover the financial cost of the Plaintiffs locating and securing housing, including paying for first/last month's rent, plus security deposit and brokers fee, for an apartment in (my) Plaintiff's name.

Plaintiff should not be deprived of decent, safe, medically appropriate and humane living conditions for a moment longer.

An employment opportunity, which makes my need for stable housing during urgent, as well as a new threat to my physical safety, are the reasons I am now seeking this TRO.

After an extensive and rigorous application and interview process for a Fellowship announced last summer by NY Governor Cuomo, and despite not being chosen for the Fellowship, Plaintiff has been hired by the NYS Department of Health AIDS Institute for a full time position, to start almost immediately.

Staff attorneys from the NYS Executive Chamber and the Empire State Fellowship Program, who interviewed the Plaintiff as per the application process for the Fellowship which Plaintiff was originally vying for, were apparently impressed enough with Plaintiffs application and interview, that they offered the Plaintiff a role in state government apart from the Fellowship, with the hope that this could serve as a stepping stone in a path towards a life of public service.

Understandably, being homeless during this crucial transitional phase in Plaintiffs life would constitute an unfair burden, and would deprive Plaintiff the benefits afforded to every other working homeless person housed within the DHS Shelter system; the ability to work and save money with the guarantee of a safe place to call home while working to achieve financial independence.

Indeed the entire point of the shelter system is to aid individuals in becoming self-sufficient and to assist individuals who are already employed, to maintain said employment. Being homeless

(without a lease, bouncing place to place) can severely hinder any individual's ability to assume and acclimate to new responsibilities and scheduling associated with any employment scenario, especially one where the employee is brand new. The odds have been stacked against the Plaintiff, by any measure, for more than a year.

The Plaintiff has never been given the opportunity to fully enjoy the services and benefits provided by the Municipal Defendants, yet, Plaintiff has made it through a storm of being wrongfully ejected from the shelter system and effectively prevented from re-entering; sexual violence, crippling PTSD, and humiliating poverty. Now more than ever, Plaintiff needs "The system" to work.

The Municipal Defendants cannot deny that Plaintiffs new found chance to serve the public in an official capacity, and to discontinue the need for state and federal benefits, is great and positive news.

As such, it should not *(M.L)* be considered a burden for the Municipal Defendants to provide Plaintiff with the optimal circumstances in order to succeed in this new career path. Helping Homeless individuals to find long term Housing, one way or another, is the duty and function of the Department of Homeless Services.

Plaintiff has struggled for over a year; on my own, Homeless, without being able to enjoy the relief of free, medically appropriate housing within the shelter system, all while focusing on self improvement.

DHS has been able to manipulate this court and to shirk its duties to house Plaintiff in a facility which meets Plaintiffs unique needs, starting with convincing this court to allow the agency to transfer the Plaintiff from Marsha's.

Instead of agreeing to be housed at a shelter contrary to Plaintiff's providers recommendations; Plaintiff refused DHS punitive shelter assignment, choosing homelessness and sex work instead.

Plaintiff has had to 'tough it out', engaging in sex work to make ends meet (needing more than the $700 provided by SSI, in order to rent rooms and space in multiple apartments and hotels), all while suffering from severe PTSD, keeping up a smile in public. Plaintiff strove to work towards accomplishing personal goals.

Plaintiffs housing needs and personal trajectory in life have shifted, and Plaintiff only requires a very limited and finite amount of aid assistance from the Municipal Defendants from here on out.

Still, Plaintiff was essentially forced out of the adult shelter system here in NYC, and so the Municipal Defendants should not be let off the legal or financial hook so easily.

5

The employment opportunity before the Plaintiff is life changing in the best possible way, and will mean that Plaintiff will no longer need rely on the government for aid and assistance, from Housing to Mediaid, to Food Stamps and even monthly SSI.

In reality the 'government'/taxpayers actually save money if Plaintiff is able to successfully transition into this new job and permanent housing. Meaning any argument made by the Municipal Defendants, that the cost of the relief Plaintiff is seeking is a burden, is not compelling as a matter of math.

The cost of the relief Plaintiff is seeking, related to the Defendants footing the bill for the Plaintiff to find long term housing in Plaintiff's name until Plaintiff can assume paying the rent, should not exceed $4-7,000. However the cost of a single adult housed within a DHS shelter in close to $200 a day.

A single adult housed within the DHS system for a little over a month costs the Municipal Defendants around the lower end of the amount the Plaintiff is asking for (to be dispersed by the Municipal defendants to landlords or brokers) at this time. Most homeless adults end up costing the Municipal Defendants double or quadruple the amount I am asking for.

Conversely, a lifetime of state and federal benefits and entitlements for the Plaintiff, if Plaintiff cannot maintain this new employment, would be in the range of hundreds of thousands of dollars. Plaintiff would rely on Medicaid and SSI indefinitely to survive, as is currently the case

If this court is moved to order the Municipal Defendants to find and pay for long term housing forthwith, the court would not be inconveniencing them, rather the court would be helping save the Municipal Defendants money, by any measure.

The local, state and federal government...tax payers, stand to save tens of thousands of dollars if and when Plaintiff no longer depends on a system of benefits and entitlements to survive, and is successfully able to transition into meaningful full time employment.

Also, if this court grants Plaintiff relief within this motion, it would render the issue of Preliminary relief before the court, moot. The court and the parties could essentially move passed the issue of Plaintiffs needs for housing within DHS semi long and short term, and focus on the larger issues in the case.

**The second event and reason which creates Plaintiffs need for immediate appropriate housing (and entitled to a TRO; compelling the Municipal Defendants to help identify safe and appropriate housing) is due to activity in a case where Plaintiff was the victim of a violent crime in Kings County back in early 2017. There has been new and recent activity in the case.**

The Assistant District Attorney assigned to the case is set to make an arrest in the coming days, and this will place the Plaintiff in real physical danger, from either the perpetrator (soon to be

criminal Defendant) or, from those associated with him. The Assistant District Attorney assigned (Linda Weinman 7182502965) has spoken with counsel for the Municipal Defendants Tom Roberts, and he is now aware of these facts and the general circumstances of the case first hand (including the danger I will be in).

The threat to my physical safety as it relates to my participation in this case, is real. The individual responsible for victimizing me is facing substantial prison time and as such would have every motive to harm me personally or, to arrange for such an act to be carried out.

Safe Housing is part of a plan for Plaintiff to remain safe during this trying period. Plaintiff is not exaggerating when stating that Plaintiffs life could be in danger if essentially homeless; if left to juggle findings safe housing/relocating myself, and establishing a new routine along with executing my new responsibilities related to work...while also participating in grand jury proceedings and other acts as per my statutory obligations as victim

Also, Plaintiff is following the advice of law enforcement assigned to the case mentioned above, in seeking long term housing at this time.

"Moving" (into safe housing) from where Plaintiff frequently couch and air mattress hop, into an appropriate shelter with a single room, OR permanent long term housing by way of a new apartment, would allow Plaintiff; to Come up with a safety plan designed to take into account all facets and factors of Plaintiff's life at this point; To transition into a new job with ease.

Free or low cost housing at this point would give Plaintiff the chance to develop a safety plan by giving Plaintiff the best chance to save money, and to come up with a reasonable, long-term plan and routine for managing finance. This would free the Plaintiff from poverty, homelessness, and sex work; all of which make it easier for Plaintiffs attacker. Plaintiff was originally targeted and victimized by the suspect/attacker while engaging in sex work.

For victims of human trafficking, or sex crimes or domestic violence, safety plans save lives. Safe housing is at the center of any safety plan.

### Plaintiff has a High Likelihood of Succeeding in this case on the Merits.

Plaintiff stands a high likelihood of prevailing in this case on the merits; proving DHS failed to perform its basic duties under the law i.e. medically appropriate housing/shelter for all who need it; proving that the transfer from Marsha's was retaliatory; proving that Trans individuals cannot, under the law, be forced in CIS designed gender segregated facilities; proving that DHS, QPS and Project Renewal acted in retaliation when transferring me from Marsha's, and proving a large cover up of misconduct by shelter staff and officials, will not be difficult.

Plaintiff will also have no trouble substantiating claims against WIN Inc. and Christine Quinn; that WIN Inc acted outside of the law in accepting my transfer from Marsha's even though WIN

West as a facility could not meet my needs and, that Ms Quinn's statements to me during a phone call last year constitutes Harassment under NYC HRC, at a legal minimum.

My assertions and legal claims are supported by physical evidence in the form of photographs, video, and texts messages which I possess, as well as other material which Plaintiff will have access to via Discovery.

## No Other Avenue for Seeking Relief; Plaintiff to Face and Experience an Undue Burden, Irreparable Harm Without Judicial Intervention

Filing this motion for a TRO is the only legal avenue available to the Plaintiff, for obtaining relief at this time.

Negotiations between parties has been fruitless. However, within the last month or so Municipal Defendants have indicated that Plaintiff should consider re-entering the shelter system given that there exists a "new" team of experts willing to re-evaluate the medical basis and requirement for a single room for the Plaintiff when housed in congregate settings. Plaintiff does not trust the Municipal Defendants to act in good faith or with due speed and diligence, if and when Plaintiff decides to submit to any such re evaluation by this 'new' team of experts and officials.

There is no other way for Plaintiff to convince or compel the Municipal Defendants to provide the emergency housing Plaintiff requires and is entitled to at this time. Housing; safety privacy, four walls.

Plaintiff has a tentative start date of 1/7/19 to begin employment at the NYS DOH.

In regards the case involving the suspect/attacker: it should be noted by this court that Plaintiff cannot (and will not) authorize law enforcement to arrest the suspect/attacker in the case mentioned above (even though there is DNA proof and a firearm was used) until Plaintiff is safely housed and no longer homeless and in unnecessary danger linked the suspect/attacker.

The individual suspect/attacker poses a significant threat to public safety as well, and his arrest and prosecution is now dependent on the Municipal Defendants providing Plaintiff with safe appropriate housing.

Without said relief being granted Plaintiff is likely to experience an unfair burden and irreparable harm.

For the reasons stated within this motion Plaintiff respectfully prays the court grant this petition for relief and or any and all other relief this court deems just and appropriate.

**Respectfully Submitted**

**Mariah Lopez**
**Plaintiff**

December 20th 2018