J5SAALOPC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   MARIAH LOPEZ,

4                    Plaintiff,

5              v.                          17 CV 3014 (OTW)

6   PROJECT RENEWAL, ET AL.,

7                    Defendants.

8   -------------------------------x
                                        New York, N.Y.
9                                       May 28, 2019
                                        3:00 p.m.
10
    Before:
11
                        HON. ONA T. WANG,
12
                                        Magistrate Judge
13
                            APPEARANCES
14
    MARIAH LOPEZ, PRO SE
15
    NYC DEPARTMENT OF HOMELESS SERVICES
16       Attorney for Defendant
    BY:  THOMAS ROBERTS
17
    PROJECT RENEWAL
18       Attorney for Plaintiff
    BY:  RICHARD GREENBERG
19

20

21

22

23

24

25

J5SAALOPC                    Conference

1                (Case called)

2                MS. BAEZ:  Mariah Lopez, litigant.

3                MR. ROBERTS:  Assistant Corporation Counsel, Thomas

4      Roberts, for the municipal defendants.

5                MR. GREENBERG:  For Project Renewal, Richard

6      Greenberg.

7                THE COURT:  Good afternoon.

8                All right.  So I have to apologize because I managed

9      to wipe my iPad last between the time since our last

10     conference.  So I don't have all of my notes from our prior

11     conferences before us.  But we're going to see if we can move

12     through the issues.  Hopefully, my memory will not be too far

13     off.

14                OK.  So I got the city's proposed order for

15     Ms. Lopez's family court record.

16                Ms. Lopez, I think at the last conference you were

17     saying that you had been trying to get them yourself and they

18     were, the family court was giving you trouble getting them.

19                MS. BAEZ:  I had general difficulty.  It's not fair to

20     characterize that I wasn't be able to get any of the records

21     but getting the entirety of the records was becoming difficult.

22     But I understand that Legal Aid, so there are two dockets.  One

23     is the family court docket, a pins placement.  And the other is

24     a "D" docket case.  I understand that Legal Aid Society, Luis

25     Sartory, used to be my defense counsel, he has requested all

J5SAALOPC                    Conference

1    the records from the court or the court's file.  I am sure

2    Legal Aid has their own file.  I think a master court file

3    would be better and he had asked for that.  I believe the

4    documents filed by Mr. Roberts referencing other material.

5        THE COURT:  OK.  We have to do a little bit of our

6    research to make sure that we could get this.  So I think we

7    are able to get the records and have them stored in the record

8    room where you, each of the parties could access them but

9    nobody else like the general public can't.

10       However, that ends up making you each having to come

11   to the court to get the record.  So then the next thing we

12   were, the Court has been looking into whether or not it might

13   be possible to get the records scanned so that we could provide

14   you each with CD or DVD which contains all the records.

15       I think this might be a viable option if that's

16   amenable to you, Ms. Lopez.

17       MS. LOPEZ:  What I was going to say is I believe that

18   although for purposes of this proceeding we require equal

19   access.  I'm amenable to the solution of both us reviewing the

20   records in some neutral way that the Court determines is fair.

21   However, going past these proceedings I would not feel

22   comfortable with the City Law Department having a hard copy of

23   those files unless there was an order with it saying that they

24   would be willing to destroy them.

25       THE COURT:  Oh, I would absolutely make sure that they

J5SAALOPC                    Conference

 1    would be.

 2              MS. LOPEZ:  Then it's fine, your Honor.

 3              THE COURT:  OK.  So the plan would be to have the

 4    files produced to the Court and then we would take care of, we

 5    would try to get them stamped and then each side would get a CD

 6    or a DVD.  I'm hesitant to have them transmitted over the

 7    Internet because I think bad things can happen that way.  And

 8    then you all have to basically agree that you would just

 9    maintain the file in the format to which it was given to you.

10    And then at the end of this litigation the defendants would

11    agree to destroy or return to you their copy.  And then that

12    would, whether they confirmed whether they returned or

13    destroyed their copy I think that would take care of it.

14    Obviously, with a representation that they haven't made a copy.

15              MS. LOPEZ:  Yes, your Honor.

16              THE COURT:  OK.  So we'll look into doing that.

17              Mr. Roberts, any objection to that or any thoughts?

18              MR. ROBERTS:  No.  My only thought -- well, just two

19    points.  One, I suggest maybe that you ask the family court to

20    send you a disk.  I don't know how big this is going to be but

21    I suspect it may be quite large.

22              THE COURT:  We'll look at that.  If it's possible,

23    we'll do it.  I'm not sure that we have any control over that.

24              MS. LOPEZ:  I got these form matters from ACS.

25    Ms. Lopez is referring to just two cases.  They gave me four

J5SAALOPC                    Conference

1    cases.  I've confirmed the four cases exist.  I would have no

2    idea of what the subject matter of the four cases is.

3              That is all I have to say.

4              THE COURT:  All right.  Well, we'll get them.  And we

5    do have a protective order in place already, right?

6              MR. ROBERTS:  I don't know.

7              THE COURT:  Was that something that had been on the

8    prior --

9              MR. ROBERTS:  I don't recall a protective order.

10             THE COURT:  OK.  Well, we should probably have

11   something at least at a minimum.  I am going to suggest the

12   four protective orders that's on my website and then for the

13   parties to review that and consider whether they have any

14   issues or modifications to that or any concerns.  And what I

15   will do is we'll look into more how we can get the family court

16   records into and then I'll issue a separate order with that.

17   And then around that time I'll give you all a deadline on

18   reviewing the four protective order and then let you know.

19             MS. LOPEZ:  My apologies.  My pen stopped working,

20   your Honor.

21             THE COURT:  OK.

22             (Pause)

23             THE COURT:  You'll get a copy of the transcript, so

24   don't worry about it too much.  So, that takes care of the

25   family court records.

J5SAALOPC                    Conference

1              Ms. Lopez, you had previously had a -- oh, your

2    opposition date for the motion is now May 31.

3              MS. LOPEZ:  I filed it today.

4              THE COURT:  OK.

5              MS. LOPEZ:  And I wanted to apologize.  I had to

6    purchase a new computer.  My Apple device also stopped working

7    the last week of April.  So I was unable to make a deadline.  I

8    extend my apologies to the Court.

9              THE COURT:  But you filed it already.

10             MS. LOPEZ:  Not just, not by the original deadline.

11             THE COURT:  Great.  Plaintiff's motion for class

12   certificate.  So I understand that you need counsel.  I don't

13   think you can represent yourself.  You can represent yourself

14   obviously but since you are not a lawyer, you can't represent

15   other members of a class.

16             MS. LOPEZ:  May I, your Honor?

17             THE COURT:  Yes.

18             MS. LOPEZ:  So the way I understand it -- and I'm just

19   go on a slight tangent to say that I found this theory or

20   strategy that I am attempting to assert in a chat group of some

21   pretty established law types from Yale University.  Apparently,

22   from my understanding, Section 23 is more of a direction or of

23   a guidelines or guidance to the Court and 23(A)(1) through (4)

24   is specifically meant to guide the Court as it reviews the

25   certification requirements for a class.

1          Obviously, in the same way someone doesn't have to be

2     a lawyer to present before the Court for a TRO or any number of

3     complex and lofty legal endeavors, it is my understanding that

4     one doesn't need to be a lawyer to present before the Court,

5     right.  23(A)(1) through (4) requires certain facts be

6     established.  Those are facts.  There's nothing subjective

7     about one through four.  So section (A)(1) through (4) would

8     then trigger 23(g).

9          And I'm not positing that I am an attorney or that I

10    am capable, your Honor, of representing the class.  In fact,

11    your Honor, just the opposite.  I would like to direct your

12    Honor's attention to a guest with me this afternoon.  Behind me

13    is a gentleman by the name of Jamel Young, who I've mentioned

14    at least by circumstance within these proceedings before.  He

15    is member of the trans community.  He is also an Army veteran

16    and he's been shackled -- Don't excuse the pun.  Pun

17    intended -- to the five boroughs by an erroneous arrest in

18    Bronx County that because New York is not his primary residence

19    has resulted in him becoming homeless.

20          Jamel being trans-masculine, your Honor, is important

21    because it sort of in some ways rounds off a class as 23 or A 1

22    through 4 seeks to have clarified through the courts sort of

23    exercise of 23(A).  23(A) is meant to make sure that there is a

24    reason for a class -- I am paraphrasing -- that the class is

25    numerous and that multiple law suits of a similar type alleging

J5SAALOPC                     Conference

1   similar allegations against similar parties don't clog up the

2   court system, so to speak.

3          It also speaks to the ability of the class.  This is

4   where I think it's important and I think it's what your Honor

5   was referencing in terms of what it might have believed

6   plaintiff was trying to do.

7          The representative parties will fairly and adequately

8   protect the interests of the class.  I believe Congress

9   intended that that just like (inaudible), your Honor, the

10  plaintiffs were young people that had experienced all manner of

11  placement within ACS.  Some of the plaintiffs in (inaudible)

12  were gay kids that were only in foster homes.  Some had never

13  made it to congregate facilities and so they chose a certain

14  sample population of gays in foster care to cover the gamut of

15  what could happen to a kid in care who had never been to a

16  foster group home or a congregate facility.

17         So it's my belief that so many transgender people or

18  gender variant people presenting before the Departement of

19  Homeless Services with requests for reasonable accommodation

20  clear and documented medical conditions that would require

21  reasonable accommodations under the ADA, not to mention all

22  making similar and unique claims under First Amendment

23  violations by needing to hide one's trans identity and new

24  violations of gender, your Honor, would satisfy that if a group

25  of individuals looking as diverse as myself, Jamel, Accassa and

1    other transgender people presenting as diversely as we do, we

2    satisfy without a doubt one through three of Section A of the

3    prerequisite Rule 23.

4           And then because we do as a class factually present it

5    for Court, we do round out a good group of transgender people

6    as a sample size that we would be entitled to class

7    certification under Section 23 and 23(g) would be triggered.

8           I also want to note, your Honor, that although I've

9    filed a motion for class certification, I'm not asking that the

10   Court consider that on its own.  The reason that I physically

11   brought Jamel here is that we have every intention, myself

12   Jamel, Jamel also works within Star of submitting supplemental

13   documents of other transgender people.

14          Lastly, bringing Jamel in personally putting the

15   municipal defendants on notice about his requests for

16   reasonable accommodations.  So Jamel is set to appear for a

17   mandated court appearance on the 31st.  He may be exploring the

18   opportunity of forthwith trial.  That would require Mr. Young

19   to be in the New York area for an immediate extended period of

20   time and he's homeless.

21          So Mr. Roberts had said to me and Accassa that the

22   city policy for screening any trans person, they have to

23   present into a shelter which in itself might be a violation to

24   the reasonable accommodation to be screened.  So just like

25   when I had to go to Marshals I had to report to Franklin Avenue

J5SAALOPC                    Conference

1    shelter.  We realize that that probably wasn't the smartest

2    move.

3            Likewise, Mr. Roberts is asking Jamel or just to be

4    the best advocate I can be in the context of asking for class

5    certification from the Court because I understand it's a big

6    deal.  Mr. Roberts is asking for trans men who fear rape and

7    physical violence from men that occupy most mens shelters run

8    by the municipal defendants.  This isn't apples and oranges.

9    This isn't when -- in the same as another shelter.

10           So the issue I think that just to go back real quick.

11   I think the issues all trans people have with the intake and

12   screening policy, there were issues of fact that are common to

13   certain trans people as it relates to win west when obviously

14   class certification would pertain, your Honor, to some of the

15   element -- excuse me -- some of the allegations made out in

16   this complaint.

17           But I just want to be clear that plaintiff is very

18   aware that class certification is a big thing, so to speak and

19   that also class certification would allow a broader class of

20   people to come forward and make allegations pertaining to their

21   stay at Marshals s within the limited time described in this

22   complaint but trans gender people that have never been at

23   Marshals that either avoid the shelter system.  And that in

24   itself is a claim, your Honor, that I'd argued myself and other

25   trans gender people are due process and entitled to our day in

J5SAALOPC                    Conference

1    court.  We are arguing that damage, the injury and I'm going to

2    have a seat right now, but Jamel has been driving up and down

3    the east coast since the last time that he stayed with me in a

4    single room no bigger than a common bathroom with his partner,

5    all trying to tough out avoiding the homeless shelter system

6    that we think could harm us.

7              So this is sort of the class we are trying to make out

8    and I think that sort of as some background to the motion.

9              THE COURT:  OK.  All right.  So I think what we'll do

10   is since it sounds like you are still in the process of filing

11   some supporting documents is we'll wait until you file the

12   things you say you are going to file and then maybe put the

13   parties on a briefing schedule.  OK?

14             MR. ROBERTS:  Your Honor?

15             THE COURT:  Yes, Mr. Roberts.

16             MR. ROBERTS:  It's beyond -- that pro se non lawyers

17   may not represent other people.  I really object to having to

18   brief this.

19             And with regard to Jamel Young, I am told he's a

20   veteran.  The DHS is one of the reasons why we request to go

21   through assessment.  They have a special assessment for

22   veterans, a special facility for veterans and Ms. Lopez is

23   here.  If Jamel Young wishes to speak to Ms. Lopez afterwards,

24   she can take his information.  But the proposition the Court is

25   going to entertain a motion for class certification from a pro

J5SAALOPC                    Conference

1    se counsel is really not productive for any of the parties or

2    for the Court.

3         THE COURT:  I already said I am going to take a look

4    at the motions and papers that are filed and it's necessary for

5    the city to provide a response, I will direct the city to

6    provide a response.  OK?  And it may be as simple as what you

7    are saying which is that you can't, pro se plaintiff cannot

8    represent a class.  OK?  I'm not going to rule on Ms. Lopez's

9    motion before it's fully submitted.  OK?  Or at least before

10   she's been able to submit what she feels she needs to submit.

11   OK?  I will take a look at it and if we need to have another

12   conference or need to resolve it some other way, we will.  OK?

13        MS. LOPEZ:  I'm not trying to represent a class of

14   people.  Like I said, we're trying to as a group trigger the

15   mechanics of the statute pertaining to counsel being appointed

16   for a class.  I believe Congress's intention as to cover

17   exactly what's happening here, your Honor.

18        THE COURT:  We will take a look at it.  I understand

19   what the issues are.  We'll take at look at Rule 23 and if we

20   need a response from the city, we'll direct a response from the

21   city.  OK?  All right.  That's all I had on my agenda for today

22   because I know that we were looking for a response from

23   Ms. Lopez on a motion to dismiss.

24        So is there anything else that we need to address

25   right now?

1            MS. LOPEZ:  Yes, your Honor.  Please.

2            THE COURT:  Oh, HIPAA releases.  Did we have an issue

3    with those?

4            MS. LOPEZ:  We do.  I am trying to do my best to abide

5    by the Court's directive the last time and that the Court

6    exhaust its own guidelines or objectives for the conference

7    before I move on to my list of issues cause this way I can know

8    what the Court's concerns are.  I actually have a bullet to

9    address with HIPAA and the discovery and stuff when the Court

10   is done.

11           MR. ROBERTS:  Your Honor, with regard to the HIPAA

12   releases I sent both draft HIPAA release and a release for

13   sealed record pursuant to Criminal Law 16050 and 165 to

14   Ms. Lopez on May 15.  I have not received a response from her

15   but I am happy to hand up to the Court if you'd like to see

16   what I sent her with a draft release that I requested her to

17   sign and a cover letter.

18           THE COURT:  OK.  So what's the issue again?  I'm

19   sorry.

20           Ms. Lopez.

21           MS. LOPEZ:  So, I'm actually just going to go in the

22   order that I had my list.  It helps me in my ADHD, your Honor.

23   I apologize.

24           So the number one thing is that I take that this is

25   the first time I've not received a transcript, your Honor,

J5SAALOPC                      Conference

1    after the Court had directed that I receive a transcript.  So

2    if I may, when we were before the Court last, the Court was

3    very much trying to assist settlement talks by helping

4    plaintiff get counsel in any way that plaintiff can, including

5    directing the clerk to find me counsel.  But in addition to

6    directing me to contact a certain firm and direct the firm's

7    attention to the portion of the transcript which would

8    highlight the discussions in open court where this Court would

9    be pleased if the firm took the case.  This is the first time

10   since we have been in front of your Honor that the defendants

11   have failed to provide me with a --

12           THE COURT:  Stop right there.  Let's not infer any bad

13   motive.  If you haven't ordered the transcript, I always direct

14   the defendant to order the transcript, provide it to Ms. Lopez.

15   It's possible that this has been some delay or whatever.

16           Now getting back to what we are talking about,

17   potentially having settlement discussions.  I thought that

18   settlement discussions were off the table.

19           MS. LOPEZ:  Is that why they just responded?

20           THE COURT:  That's why I'm a little confused.

21           MS. LOPEZ:  Your Honor, I appreciate that everyone

22   here is a legal professional that has way more cases than this

23   one and this might be every day the center of my universe right

24   now but because of that I keep a better mental note probably of

25   most here.  I am almost certain that transcript would have been

 1    helpful.  The order of the last proceeding was to make sure I

 2    was directed as plaintiff and I followed the Court's directive.

 3    So in my mind it's sort of linear that way.  I was directed to

 4    reach out to Emery, whatever the firm is, and to direct their

 5    attention to the transcript.  I couldn't do a portion of my

 6    homework because I wasn't given a transcript.  Moving on --

 7              THE COURT:  So we'll give you more time after you get

 8    a transcript.

 9              MS. LOPEZ:  Towards the end of the proceeding the

10    issues about the HIPAA release form -- because this is not a

11    small issue and I guess this is why we are here today.  We need

12    to discuss this.  The issue of the HIPAA release form came up.

13    And I believe the way we start sort of left it is somewhat

14    where Mr. Roberts is in terms of us -- somewhat because I have

15    a caveat on that -- on where we are today with parties are to

16    work jointly together.  The objectives being out of all this

17    rigmarole are to get family court records to advance -- cause

18    this where I get a bit confused.  If settlement negotiations

19    were all the way off the table, then I would be the one with

20    the ball in my court to be having conversations about expedited

21    discovery.  I don't have any subpoenas up here.  I'm pretty

22    sure that's not where we were at.  I'm pretty sure where we

23    were at was having a conversation about family court records.

24    But getting to the instant matter, we were also having a

25    conversation about what they need and they don't need, your

J5SAALOPC                    Conference

 1   Honor.

 2             And I need to really dig my heels in on this, right,

 3   because even based on what Mr. Roberts is asking for, it's one

 4   or the other.  You want to move forward with trying in best

 5   faith to figure out the consistency of my medical conditions

 6   and needs and also any appropriate settlement that may come

 7   from those needs not being met for the last two years or we're

 8   barely towards trial and he is billing out requests for

 9   criminal records stuff.

10             And by the way, if we're going in that direction,

11   Project Renewal employed all ex-cons.  I will submit my own

12   request for criminal records.  But in keeping on trying my best

13   to try to bring this case to a resolution outside of class

14   litigation, outside further litigation really trying to stop

15   this case, I asked this Court cause I had notes, to please

16   today once and for all, can we clarify so there will be no

17   contention, no argument, no ambiguity, what the questions are,

18   the specific legal questions that the municipal defendants want

19   to answer with all the records we've discussed this far.

20   Because I warn the Court and the municipal defendants that they

21   are right in thinking that there are an immense amount of

22   records in that family court file.  And if we just start at

23   this point without knowing what they want, without being clear

24   it's a discovery posture we're in, then this is just more

25   wasting of time.

1          And I will say, your Honor, I don't appreciate the

2     fact that I have tried really hard to reach out to the

3     municipal defendants to try to expedite getting the records, to

4     try to expedite curating said records so we could don't have to

5     look at all the records from when I was 11 to 24.  That is the

6     potential.

7          So I am making a claim that could trigger them

8     potentially to be within their right, your Honor, to look at

9     that entire timeframe.  So I was trans that whole time.  There

10    is a possibility that if we don't narrow down here, and I think

11    it's appropriate, what they'd be looking for, the legal

12    questions, next steps for all parties, we are just going to be

13    fishing, fishing, fishing within the discovery/settlement

14    process for months and month and months.

15          THE COURT:  All right.  I hear you.

16          What I'd like to do is I think we should table the

17    HIPAA releases for now because we're going to get the family

18    court records.  Let's see, what once an appropriate protective

19    order is entered and what you get from the family court

20    records, then let's continue to talk about discovery.

21          So do the defendants have any other issues you need to

22    address today?

23          MR. ROBERTS:  No, your Honor.

24          THE COURT:  OK.  If the parties consent -- if you

25    don't consent I won't do it -- is to propose going off the

 1    record for a few minutes so that I can discuss with Ms. Lopez

 2    separately and then discuss with defense counsel separately

 3    some of your thoughts about settlement.  This would be similar

 4    to what I would normally do as a presettlement telephone call

 5    off the record.  And I recognize that this is a slightly

 6    unorthodox process, but if either party is willing to do that,

 7    we're not going to talk about legal argument or anything like

 8    that but it's just to -- I understand there's a lot of acrimony

 9    and a lot of history between the parties and I'd like a speak

10    to each side separately without them feeling that the other

11    side is hearing what they have to say about how this case

12    should proceed.  OK?

13           So, everybody needs to consent to that.  If that

14    doesn't happen, it's not going to happen.  And the rules, Rule

15    408 and settlement procedures rules will govern the ex parte

16    communications that I have which means that you are not to

17    refer to them with each other or use them against the other

18    side.  OK?  Anything that I said back there because it's really

19    to try to get a handle on where the parties want to go and to

20    sort of seeing how hard I should push potentially to settlement

21    and how hard I should or whether we should just go into

22    discovery of which the family court records are sort of the

23    beginning.  OK?

24           MS. LOPEZ:  I consent.

25           MR. ROBERTS:  I consent as well.

1              MR. GREENBERG:  I consent.

2              MS. BAEZ:  I consent.

3              THE COURT:  So what I'm going to do first is we're

4     really going to take like five minutes for each side and then I

5     envision wrapping this conference up to just very briefly have

6     a little conversation.  OK?

7              All right.  So sit tight.  I'll ask Ms. Moore to go

8     off the record but I don't want to take more than ten minutes.

9     OK?

10             (Recess)

11             THE COURT:  We're back on the record.

12             All right.  So, I will issue a written order after

13    this conference that just sort of sets out some of the

14    procedural issues we talked about with the family court records

15    and then also with the motion for class cert.  I am going to

16    also direct that the defendants order the transcript, share the

17    cost and provide a copy to Ms. Lopez.  If you haven't done that

18    with the last conference please do so, so that Ms. Lopez can

19    follow-up with seeking, potentially seeking pro bono counsel

20    either for purposes of this case or for the purposes of

21    settlement.

22             And on settlement, after talking to each of you

23    separately I want to say I am not giving up on you.  OK?  I

24    actually think that there may be a way to get to a settlement

25    but it might be a difficult process.  Both sides may need to go

J5SAALOPC                    Conference

1    somewhere and sort of dial back on some of the things you're

2    looking for.  What I understand and I am not going to get into

3    too much detail because we are on the record but what I got

4    from speaking to both of you is that I think there's a slight

5    disconnect on the city's latest offer.  So I'm going to ask, I

6    am going to direct that Mr. Roberts and Mr. Greenberg discuss

7    with Ms. Lopez after this conference is over, specifically,

8    just go over the letter that you sent and what that entails.

9              Now my understanding is that the components of what

10   Ms. Lopez would seek roughly breakdown to three categories.

11   One relates to housing.  The second relates to a monetary

12   component.  And then the third relates to policy changes.  And

13   you know that each of these three, the defendants may have

14   limited ability in what they can do.

15             And so you know, for example, sometimes some policy

16   changes, for example, Ms. Lopez, that you would like or you

17   would like to see just might not be doable in the near term.

18   For example, I would like to see a reversal in climate change

19   but just by ordering it doesn't make it so and it might not be

20   possible.  A lot of other things have to fall into place, most

21   of which I have no control over.

22             So I see the policy changes as part of that.  I have

23   settled civil rights cases before where there's a policy change

24   component but largely in my experience that's really hard to do

25   because unless the city was doing that anyway, it's like it

J5SAALOPC                    Conference

1   will move at a glacial pace and that may not be what you want

2   especially when it comes to housing and monetary components.

3   OK?

4           My sense is that the monetary components are areas

5   where you both may have the most ability to move because it is

6   money.  That said, recognize that with the defendants that

7   there's multiple layers of approval that need to happen.  So

8   sometime again, the individual lawyers who we're talking to may

9   have all the desire in the world to get you where you need to

10  be or want to be but there is just some, there is only a

11  limited amount that they can do.  Like I wish climate change

12  wasn't happening but I can issue all I orders I want and it's

13  not going to change anything.  And then the housing component,

14  like think about how each of these, prioritize how each of

15  those matters to you and sort of what range you're willing to

16  accept.

17          And then I guess my last sort of piece of advise on

18  that is when we want to talk about settlement and really want

19  settlement, it comes down to what's acceptable, not sort of

20  what you would prefer unfortunately.  I think that a good

21  settlement is a settlement the parties agree because otherwise

22  you don't have a settlement.  And oftentimes that's something

23  that neither side is terribly happy with but you know what,

24  you're also, Ms. Lopez, you're plaintiff.  Have a right to your

25  day in court and if you want to litigate, that's also your

J5SAALOPC                    Conference

1   prerogative.  OK?

2          MS. LOPEZ:  May I just -- I actually, as much as I'd

3   like to be productive and streamline, I do have an issue with

4   Mr. Greenberg and Mr. Roberts sort of jointly now becoming one

5   entity even it's for the limited purposes of trying to find out

6   where we all are for moving forward.  They don't have exactly

7   the same objectives, at least as per my latest conversation

8   with Mr. Greenberg, we are not all speaking on the same

9   wavelength or --

10          THE COURT:  OK.  You know what, I just call them the

11   defendants, lumping them all together, but if you can settle

12   with one entity and you can't with the other, you are free to

13   do that.  OK?  So that is something you are willing to, you can

14   explore to your heart's content.

15          So I think what we'll do is I'll set a date for

16   another conference sometime in the summer and what we'll do is

17   one week before the conference you can write in with your

18   proposed agenda.  If you want to convert it to settle a

19   conference because you have had discussions we could do that or

20   we're just convert it to the status conference and we'll see

21   where you are.  OK?

22          MS. LOPEZ:  Sure.  And with possibility of an order,

23   your Honor, in keeping with the municipal defendants' desire to

24   have a full picture of my mental health and medical history, I

25   believe it would be appropriate, I've discussed this on the

J5SAALOPC                    Conference

1    record before, but for the Court to direct even though they

2    might do this on their own, to direct the municipal defendants

3    to identity a competent mental health provider and expert in

4    the field of gender identity disorder or gender dysphoria.

5    Ideally, one that knows myself and my records and I'd place

6    Dr. Christine Wheeler's name up for possibility.

7         And I see Mr. Roberts writing it down which gives me

8    hope but I'd also ask this Court to direct the municipal

9    defendants.  It is the municipal defendants that have been

10   hanging both settlement and discovery on medical records and a

11   medical view and lens of this case.  And their position, I

12   think it's wholly appropriate given Dr. Wheeler's history with

13   reviewing my medical information and her place in the case

14   Lopez v. Mattingly where she had to sit with me for a very,

15   very long time to simplify things.  I think her and I get along

16   well.  Our relationship is established.  Her credentials are

17   impeccable and the city has paid her before.  They've chosen

18   her.

19         THE COURT:  All right.  So for the status letter

20   before the next conference which we still have to schedule, one

21   of the things that the defendants and the city defendants

22   should consider is explaining to me, to the Court, where the

23   need for a mental health provider regarding gender dysphoria

24   comes into play, both in litigation and for settlement purposes

25   and then also if you made any progress either discussing with

1  Ms. Lopez who that person should be or what your thoughts are

2  if you can't come to an agreement, where you are on that.  OK?

3          MS. LOPEZ:  OK.

4          THE COURT:  All right.  Let's pick a date for the next

5  conference.  July 10 at 11 which makes your status letter due

6  July 2nd or July 3rd.  Although if that ends up being a

7  problem, you can submit them July -- and we'll try to figure

8  out.  We'll go from there.

9          All right.  Thank you.  We are adjourned.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25