Ona T Wang
United States Federal Magistrate
40 Foley Sq.
New York, NY 10007
August 1, 2019

Mariah Lopez, Plaintiff
Pro se

Case Num. 17cv3017

# Update-Letter

Dear Magistrate Wang,

I am writing this letter to update the court concerning events and developments which are relevant to Plaintiff's lawsuit pending, 17 cv 3014.

## The Municipal Defendants Failure To Negotiate In Good Faith; Continue To Violate The Spirit Of The ADA Within It's Counter Offer.

As stated during the most recent settlement conference, Plaintiff believes that the Municipal Defendants offer of a "single room" as a stipulation of settlement is illegal and violates the ADA, and that they have been stalling in order to avoid settlement and Discovery.

Clearly Defendants now believe Plaintiffs requires a single room for medical reasons. This is a definite about-face, legally…and by every other measure…Therefore Defendants must provide said single-room accommodation to Plaintiff, regardless of settlement.

Or this Court must step in and take appropriate action.

Also at issue is the fact that in general Defendants counter offers have been unreasonable, considering the amount of evidence in support of Plaintiffs claims and narrative.

Plaintiff has multiple ex Marsha's staff and clients willing to testify that DHS directed a targeted smear attack and retaliation against Plaintiff.

Plaintiffs likelihood of prevailing in this case, is strictly related to and underscored by: 1. The events involving the Defendants or their starting from 2017 to the present; 2.; Plaintiffs theory that the Defendants cannot force any Trans person into a Cis facility; and Plaintiff can and will prove that 3.

RECEIVED
SDNY PRO SE OFFICE
2019 AUG -1 PM 4:25

Defendants have a pattern on neglecting the needs of homeless Queer New Yorkers, especially those with medical needs (for reasonable accommodations) such as Trans and GNC individuals.

Plaintiffs medical needs for a single room (a indeed plaintiffs documented disabilities) have been known to the municipal defendants for at least 10 years. This facts underscores the caprice carried out by the Defendants.

The inconsistent way in which different NYC Municipal agencies address and accommodate Plaintiff's needs under the ADA (and the retaliation experienced by Plaintiff for asserting and defending these rights) have harmed Plaintiff, and supports the likelihood that Municipal Defendants violated Plaintiff rights in the process.

For purposes of this case, Plaintiff's medical needs have not changed in any significant way since 2017; including and especially the need for a single room.

No amount of "review" of Plaintiffs records will change Plaintiffs needs, or story.

Therefore the Defendants are going to lose if this case proceeds to trial; the City's dirty laundry concerning its failures of the Queer Homeless, will be aired, and Plaintiff medical needs and how they are covered under the ADA will be established...a win for all Trans individuals.

Defendants are only recently becoming mildly proactive in terms of negotiations/settlement, perhaps since seeing their co Defendants settle. Perhaps the Municipal Defendants have reassessed their legal liability and exposure.

Plaintiff awaits this Court's review of Municipal Defendants counter offer for settlement in this case, but in the meantime believe that Discovery (a two sided Discovery process) is warranted and overdue.

Plaintiffs Family Court and foster care records are important, yes, and have been located and imported via order (by this Court). These records are important. Plaintiff accepts this.

Conversely though, so are the records and documents and other Discovery materials in the possession of the Defendants; being kept hidden from Plaintiff within the context of faux negotiations meant to distract from Plaintiffs desire to resume Discovery.

Plaintiffs wishes to both preserve, as well as examine documents and witnesses/witness (including statements and testimony to be gathered within depositions) in the event settlement negotiations are not successful.

Councilman Ritchie Torres is reportedly considering a run for a congressional seat.

Speaker Corey Johnson is also considering a run for Mayor;

Mayor DeBlasio is still a Presidential hopeful, and could become overwhelmingly busy and unavailable if his political aspiration are realized; same for Councilman Torres and Speaker Johnson.

**Therefore there should be no further delay in Discovery, As any delay could harm Plaintiffs right to access Speaker Corey Johnson, Councilman Torres and Mayor Blasio (including their emails and other communication to/from DHS/DOI; or relating to Plaintiff's stay at Marsha's, allegations of misconduct ].**

Surely if settlement cannot be reached between parties then naturally Plaintiff will have the right to request and review documents and testimony from all three of these individuals.

All three individuals mentioned above are directly involved in and have been directly named throughout, these proceedings (Councilman Torres was aware of the issues at Marsha's, so was Spkr Johnson, and Mayor DeBlasio; personally aware).

All three benefited from the cover-up and lack of proper DOI oversight.

Discovery is the only way to get to the bottom of what happened Back in the summer of 2017.

The status of these individuals as high profile politicians is irrelevant where the law and Discovery is concerned.

Speaker Johnson became directly involved in the case last year after Plaintiff presented Johnson with physical proof of crimes which occurred at Marsha's; Plaintiff executed this hand-off of evidence at a public event.

According to Speaker Johnson staffer Sean Coughlin, after reviewing the evidence, Speaker Johnson alerted General Counsel for City Council, as well as officials from the mayor's office and DOI, of the existence of this physical proof.

Speaker Johnson's testimony, emails and other material are relevant to claims that Mayor DeBlasio and (at the mayors direction) the NYC DOI failed to investigate, document and or prosecute crimes of individuals who worked at Marsha's or DHS  (a legal and political strategy in this case).

Plaintiff certainly recognizes and appreciates the many steps taken by this Court thus far, to move things along in terms of settlement talks, and in particular the importing of Plaintiffs records.

However this has all seemed very one/sided to the Plaintiff; **with the Municipal Defendants avoiding having to face the normal scrutiny which pre trial discovery brings ...absent good-faith negotiations.**

**Plaintiff wishes to engage in meaningful and equitable Discovery going forward. Plaintiff is amenable to this Court scheduling a conference to discuss Discovery as a separate issue, aside from settlement talks or Class Certification.**

**Plaintiff's Plans for the Fall:**

Plaintiff should have a school schedule to provide the Court and the Municipal Defendants with, by the beginning of next week.

As stated during the previous settlement conference via phone, Plaintiff intends on attending Schenectady Community College in the Fall.

Plaintiff recently became aware of new college scholarship under New York State Office Of Children and Family Services, for anyone who was previously in NYC foster care; which Plaintiff is eligible for.

With respect to Plaintiff starting a new job with the New York State Department of Health' AIDS Institute; Plaintiff's start as a state employee, seems imminent.

Plaintiff makes this assertion for several reasons.

As previously stated, last year Plaintiff was contacted by NYS officials from the Executive Chamber (David Turley, Jason Starr) and encouraged to apply for a newly created fellowship within the New York State Empire State Fellowship program.

Plaintiff applied for the fellowship…was interviewed, and reached the final round interviews (eventually being interviewed by General Counsel to Governor Cuomo Alphonso David).

Plaintiff did this while legally homeless, and still engaging in Street/survival sex work, due to the Defendants actions and failures.

The application process and Plaintiffs even being a candidate for the fellowship, had an enormous positive impact on Plaintiffs self esteem.

The whole experience has been a confidence booster, and Plaintiff is more determined than ever to return to school and to a life dedicated to public service.

Plaintiff was not fortunate enough to be chosen for the fellowship.

However, Plaintiff has been offered a position within the New York State AIDS Institute, in large part (Plaintiff believes) due to Plaintiffs past work on the front lines of the 'End-Of-AIDS' movement, which spans two decades. * Plaintiff began work as a peer educator for a HIV Prevention, Harm Reduction based non profit in 1998 and has been fighting on the front lines ever since; losing countless friends to the disease, while managing to avoid infection directly. As the field change from condom distribution, to policy driven healthcare and client-retention models over the past decade, Plaintiff's knowledge and

comprehension of law policy, and "the process" of creating law and policy, became handy and in demand.

Prior to being offered the position last year, Plaintiff worked with the AIDS Institute as an advisor/consultant, and expert (*Women's, Trans', Sex Worker related prevention and policy and research initiatives).

Although it has taken longer than Plaintiff would have liked, Plaintiff has reason to believe that Plaintiff will be asked to begin work at the AIDS Institute within the very near future. Plaintiff has been assured that the employment opportunity at the NYS DOH AIDS Institute still stands. For sure.

During recent discussions with the current head of the AIDS Institute and professional mentor Johanne Morne, Plaintiff was informed that Plaintiff will be working out of Albany's famed Corning Tower (as opposed to lower Manhattan).

Ms Morne offered support and assistance (same as any other future employee; services and advice are available) with navigating the transition from a life of chronic homelessness and Public/Disability Assistance, to a full-time work; for the people of this great state.

Plaintiff takes comfort in the knowledge that there will be professional help and support available, when Plaintiff finally starts working.

During this same conversation, Plaintiff expressed the desire to immediately resume college classes part-time (while working), and Ms Morne supported this decision.

In terms of Plaintiff's Fall plans to return to college, discussions concerning Plaintiff's becoming a public servant, have always involved Plaintiff's continued education. These developments don't come out of thin air.

What's more, Ms Morne and Plaintiff both agree that Plaintiff will be able to handle the workload from school and work (provided Plaintiff is afforded the proper support).

Plaintiff received permission from Ms Mourn to inform this Court as to some details of the position which awaits Plaintiff, such as the fact that Plaintiff will be working out of the Special Projects Division of AI, and as a full time employee, once Plaintiff begins work Plaintiff will enjoy a benefits package which includes first class healthcare.

Plaintive is willing to share more specific details with the court through correspondence filed under seal or in chambers during the next settlement conference. In the meantime if the court has any questions they may contact Miss Morne. directly

Johanne Morne

Johanne.morne@health.ny.gov

NYSDOH-AIDS Institute, Director
518-473-8778

**Working And/Or Attending Classes, Will Not Impact Plaintiffs ability to be Present or To Participate in, this Case If/When Required needed.**

**Also, When Plaintiff is finally working, and is no longer eligible for public benefits, Plaintiff will adhere to all local and state rules and regulations, Plaintiff will inform NYC HRA and the Social Security Administration.**

### Plaintiffs Current Living Conditions:

Plaintiff is still legally and technically Homeless (with no legal-residence; without a lease) and will be homeless by definition for the next several months, at least.

Ms. Mourne is aware of Plaintiffs plan to travel to and from Upstate as needed.

Plaintiff is currently "Squatting" at a location in Brooklyn; residing in a basement studio with No Certificate Of Occupancy; **Black Mold** and other safety concerns are numerous.

Relief within this case, via housing which meets Plaintiffs medical needs, is long overdue and warranted..

Plaintiff plans for the immediate future are to save as much money possible while building a work history; a work history meant to compliment Plaintiffs efforts to locate and apply for an apartment long term.

In terms of the winter months to come, Plaintiff will be more attractive to landlords as a student, with a 'government' job, pay stubs included...with a work history of at least a few months.

Plaintiff will assess whether living in New York City is feasible sometime before Winter.

### Plaintiff Will Be Legally and By Definition, Homeless (for a Period), Even Once Classes/Work Begins:

This is an important legal distinction because it means judicial relief: Commuting via train to and from Upstate NY during the Fall *would not make Plaintiff ineligible for relief of appropriate services from the Municipal Defendants.*

Municipal Defendants should not be allowed to avoid ever providing Plaintiff with appropriate housing and other services in the meantime.

This Court should direct the Municipal Defendants to assist Plaintiff financially, in Plaintiffs escape from homelessness, and efforts towards saving money and becoming financially independent.

Plaintiff has asked this Court to order the Defendants to pay for an apartment/housing for Plaintiff in previous motions, still undecided.

The monetary amount of this preliminary relief would cost the taxpayers far less than what it would cost the taxpayers/Municipal Defendants, just to house Plaintiff in a shelter or similar placement for any extended period of time.

**Many of the conditions and accommodations which the Municipal Defendants are offering at this point are inadequate or are still in dispute as a matter of law and fact in this case.**

I'm the meantimePlaintiff remains legally and technically "home-less" and receiving public assistance and SSI.

As such Plaintiff remains eligible for services from the Municipal Defendants; who have not provided reasonable accommodations since 2017.

Indeed Plaintiff has never enjoyed the use of facilities or adequate services from the Defendants, in part because of policy failings, and in part due to retaliation by the Defendants or their agents.

Defendants have not followed their own rules where Plaintiff is concerned, and Plaintiff has not been treated equally or fairly by the Defendants.

The two largest benefits which most homeless New Yorkers enjoy while housed within shelters; are 1. A safe environment in which to sleep and bathe, *And* 2. the ability to save money while receiving homeless and shelter related services.

Plaintiff has been deprived of these benefits since the inception of this case

Though Plaintiffs long struggle with chronic homelessness is almost over, it isn't quite over yet.

Plaintiff will inform the Court and parties if and when Plaintiff locates long term housing, and signs a lease. Hopefully this will be before the holidays and inclement weather to come.

**Regarding Plaintiff's Motion for Class Certification; Plaintiff Requests a Date in Late September to Submit Additional Material to Support Motion for Class Certification:**

As previously stated, Plaintiff has been authorized to inform this Court that the Center for Constitutional Rights is considering stepping in to aid Plaintiff with settlement talks (*if such settlement involves policy reform within the larger DHS system), *or* to potentially step in as co counsel regarding Plaintiff's motion Class Cert', if settlement cannot be reached.

The Center for Constitutional Rights is planning to hold a public, community focused event in **late August** ((8/23) in order to gather more information and to develop a better sense of the issues faced by Trans-GNC New Yorkers, especially those with documented disabilities.

Plaintiffs point is that both the Center for Constitutional Rights and the Plaintiff, respect the Courts time as well as the complexity of issue placed before it by Plaintiffs motions for Class Cert'.

However we'd like some time to cast the net for screening for Class members as wide as possible. During the peak of the summer', homelessness' looks different so to speak. We want to be sure we've heard from as many individuals as possible.

Issues within this case are of the utmost importance; life and death.

TLGBQ Homelessness can (often) prove fatal from a number of collateral consequences, such as long term neglect of healthcare and violence directed at the Homeless, especially in TLGBQ individuals.

A Homeless, African American Woman of Trans experience was brutally attacked in Texas just days ago, and authorities believe that the victims status as a homeless individual contributed to the suspects motives.

Here in New York, a Trans person under the Defendants care (a Queer senior who was deemed 'Too old' for Marsha's) was senselessly murdered after a dispute with a Cis Gender person at a DHS Shelter, days after Plaintiff filed this case back in 2017.

With these events serving as a historical and social justice backdrop, Plaintiff will participate in the event on 8/23 hosted by Center for Constitutional Rights with the objective using the event as an opportunity to invite individuals with similar stories (and legal standing) to joining the Class described by Plaintiff.

The event on 8/23 will also allow lawyers a chance to hear from individuals from all backgrounds and scream their stories for submission within this case (as evidence of a pattern of harmful policies and facilities) in order to strengthen Plaintiffs motion for Class Certification.

Plaintiff knows of at least six individuals (some of whom are known to the Defendants), who are willing to join to case. Still, there is no need to rush, in Plaintiffs view.

**Plaintiff would ask to be given until after this event to submit supporting Documents related to plaintiffs recent motion for Class' Cert'.**

Considering the serious issues at the heart of this case (*systemic neglect of vulnerable NYers, and a potential cover up and retaliation of and against those same individuals), as well as the relative positive nature in the fact that several parties have already reached settlement (shrinking the pool of Defendants and streamlining the case where procedure and motion practice is concerned), a **minimum extension/deadline of late September for Plaintiff to submit material in support of motion for Class Certification, seems reasonable.**

**As such Plaintiff requests a minimum date of late September to submit documents or respond in any way to the Defendants on paper, regarding Plaintiffs motion for Class Certification.**

**Plaintiffs Settlement Demands Have Been Reasonable; Plaintiff is Willing To Continue Negotiations.**

Considering that Plaintiffs account is that Plaintiff was discriminated against, then retaliated against; Made homeless, forced to endure at least two years of additional homelessness, and may suffer permanent psychological scars from the events of the previous two years, Plaintiffs demands have been reasonable.

Plaintive reiterates the fact that even apart from Discovery Plaintiff has a reasonable amount of evidence (including witnesses) which support the allegations made within Plaintiff's second amended complaint.

Plaintiff is willing to continue negotiations with the Defendants.

Respectfully Submitted

Mariah Lopez
Plaintiff, Pro se

August 1st 2019