**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
MARIAH LOPEZ, :
:
                Plaintiff, : 17-CV-3014 (VEC) (OTW)
:
     -against- : **REPORT & RECOMMENDATION**
:
NEW YORK CITY DEPT. OF HOMELESS :
SERVICES, et al., :
:
                Defendants. :
---------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**TO THE HONORABLE VALERIE E. CAPRONI, United States District Judge,**

I. **Introduction**

Plaintiff Mariah Lopez ("Plaintiff"), proceeding *pro se*, filed clams against, *inter alia*, Defendants Women in Need, Inc. ("WIN") and Christine C. Quinn (collectively "WIN Defendants"), alleging violations of the New York City and New York State Human Rights laws, the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act, the First Amendment, and the Fourteenth Amendment. Before the Court now is the WIN Defendants' Motion to Dismiss, filed on October 5, 2018. (ECF 105).[1] Plaintiff filed her opposition on May 28, 2019. (ECF 146). The WIN Defendants' reply was filed on June 21, 2019. (ECF 154). For the following reasons, I recommend that the WIN Defendants' motion be GRANTED in its entirety.

---

[1] On May 25, 2018, I ordered that Plaintiff's related case, 18-cv-4293, be consolidated with Plaintiff's previously-filed case, 17-cv-3014, and that all future filings should be filed in 17-cv-3014 only. (ECF 8 in No. 18-cv-4293). Accordingly, all citations to the docket in this report are for case no. 17-cv-3014, unless stated otherwise.

II. **Background**

Plaintiff filed suit in this Court on April 25, 2017 against New York City Department of Homeless Services ("DHS") and Project Renewal, Inc. ("Project Renewal"). (ECF 2). Plaintiff alleged that Project Renewal was unlawfully refusing to permit her dog into Project Renewal's Marsha's House homeless shelter, where Plaintiff was living, without proof that the dog was a "service animal." *Id*. DHS subsequently reversed its decision and permitted Plaintiff's dog to stay with Plaintiff at Marsha's House regardless of whether it was a service animal. (ECF 11).

On June 15, 2017, Plaintiff filed an emergency request for a temporary restraining order, which the Court later construed as an amended complaint. (ECF 31, 39). In this First Amended Complaint, Plaintiff alleged that DHS transferred her from Marsha's House, "the only transgender shelter in New York,"[2] to WIN West, a female-only homeless shelter, in retaliation for her "whistleblowing" concerning abuses at Marsha's House. (ECF 31 at 1-2). Plaintiff alleged that WIN West was an unacceptable placement because Plaintiff felt the need to "hide" her transgender identity alongside her cisgender female roommates, triggering post-traumatic stress disorder. *Id*. at 3. The City of New York[3] and Project Renewal filed their respective motions to dismiss on July 28, 2017 and August 3, 2017 respectively. (ECF 44, 49). In his report and recommendation, Judge Peck recommended denial of the City's motion in its entirety and denial of Project Renewal's motion in part. (ECF 58). In recommending dismissal of the failure to accommodate claim against Project Renewal, Judge Peck found that Plaintiff's allegations of denying a reasonable accommodation focused "almost entirely on DHS" because Project

---

[2] *See* Second Amended Complaint (ECF 1-2 in 18-cv-4293) at 8.
[3] The Court *sua sponte* substituted the City of New York as the named defendant in place of DHS because a City agency cannot be a named defendant. (ECF 7).

2

Renewal lacked authority over housing placement. *Id*. at 25-26. Plaintiff's retaliation claim against Project Renewal, however, adequately alleged a "close temporal relationship" between Plaintiff's reported complaints about Marsha's House and her transfer to the WIN West shelter. *Id*. at 30. Judge Caproni adopted the report and recommendation in full on March 15, 2018. (ECF 67).

Plaintiff initiated a separate state action in the New York Supreme Court on April 26, 2018 against, *inter alia*, DHS, Project Renewal, WIN, Inc., and Christine C. Quinn. (ECF 1 in 18-cv-4293). In her complaint, filed on May 10, 2018, Plaintiff alleged that during her time at Marsha's House,[4] staff members made unwanted sexual advances towards her and verbally harassed her about her transgender identity. Second Amended Complaint ("SAC") (ECF 1-2 in 18-cv-4293) at 6-7.[5] Plaintiff alleged that after she threatened to report on the shelter director, DHS transferred her from Marsha's House to WIN West. SAC at 10. Although she expressed her concern to Defendant Quinn that she could not live with cisgender females, Plaintiff alleges that Defendant Quinn failed to "stand up" to DHS and prevent transfers of transgender individuals to shelters that were not exclusive to transgender individuals. SAC at 12-13. Because Plaintiff believed that living with cisgender females would cause her to feel that she needed to hide her transgender identity and to be exposed to "constant questions," Plaintiff rejected her placement at WIN West and is now homeless. SAC at 16-17. Plaintiff seeks punitive damages of $10 million and injunctive relief against DHS, ordering DHS to transfer Plaintiff to a new shelter

---

[4] Plaintiff mistakenly refers to the shelter as "Marsha's Shelter" in the Second Amended Complaint. The correct name is "Marsha's House," as referenced by Plaintiff in her initial complaint.
[5] Citations to the Second Amended Complaint are to the ECF page number, rather than the printed page number, to avoid confusion caused by the complaint beginning its numbering on page two.

and prohibiting DHS from ever transferring individuals to shelters that are inconsistent with their gender identity. SAC at 18.

The City of New York removed the April 26 state action to this Court based on Plaintiff's federal claims, *i.e.*, claims under the ADA and FHA. (ECF 1 in 18-cv-4293 ¶ 9). After the cases were consolidated, I ordered that the May 10, 2018 state court complaint shall be deemed Plaintiff's Second Amended Complaint in the now-consolidated matter. (ECF 78). The WIN Defendants subsequently filed a motion to dismiss the Second Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6). (ECF 105).

### III. <u>**Legal Standard**</u>

A Rule 12(b)(6) motion to dismiss must be granted where the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, the Court is limited to the complaint's factual allegations, documents attached to the complaint, matters of judicial notice, and documents which the plaintiff relied on in filing the complaint. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If the parties present extrinsic evidence, the Court shall either exclude consideration of those documents or convert the motion to a motion for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). If the latter, the parties should be permitted the opportunity to conduct discovery and supplement the evidentiary record as contemplated by Federal Rule of Civil Procedure 56. *Id*.

Where, as here, the plaintiff is proceeding *pro se*, the complaint is to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This includes drawing all reasonable inferences in the plaintiff's favor and reading the allegations to "raise the strongest claims that

4

the allegations suggest." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 282 (S.D.N.Y. 2011). Although the Court accepts the plaintiff's factual allegations as true when deciding a motion to dismiss, the Court does not need to accept "labels and conclusions" or "assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(1) dismissal is appropriate "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Scroggins v. Scroggins*, No. 15-CV-9524, 2017 WL 1047356, at *3 (S.D.N.Y. Mar. 16, 2017) (quoting *Cortlandt St. Recovery Corp. v. Hallas Telecomms. S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015)). In resolving a 12(b)(1) motion to dismiss, the complaint's allegations are also accepted as true, but the Court may consider "materials outside the pleadings." *McDermott v. N.Y. Metro LLC*, 664 F. Supp. 2d 294, 298 (2d Cir. 2009). Because the burden is on the plaintiff to show she has Article III standing, the Court is not required to draw reasonable inferences in the plaintiff's favor. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

IV. **Analysis**

a. **Standing**

The WIN Defendants argue that each of Plaintiff's claims fail for lack of standing because DHS, and not the WIN Defendants, held the actual authority over housing placement. (ECF 106 at 9). Standing is an "irreducible constitutional minimum" requirement to have a case heard in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing where the plaintiff shows a concrete "injury in fact" "fairly traceable to the challenged action of the defendant" that will "likely" be "redressed by a favorable decision." *Id.* at 560-61. In civil rights cases, such as this one, "a 'broad view of constitutional standing' is appropriate because

5

'private enforcement suits are the primary method of obtaining compliance.'" *See Harty v. Spring Valley Marketplace LLC*, No. 15-CV-8190 (NSR), 2017 WL 108062, at *6 (S.D.N.Y. Jan. 9, 2017).

The WIN Defendants do not dispute that Plaintiff has alleged a concrete injury. (*See* ECF 106 at 10). Plaintiff alleges that because she was denied a reasonable accommodation at any of DHS's contracted shelters, she has been forced into homelessness, an actual injury that affects Plaintiff's physical, emotional, and mental well-being. SAC at 17; *see also Lee v. Pierce*, 698 F. Supp. 332, 336 (D.D.C. 1988) (finding homelessness a concrete injury).

The WIN Defendants' contention is with the lack of traceability and redressability. Although a defendant's conduct does not need to be the "proximate cause" of the injury, the plaintiff must at least show a "causal nexus." *See D.H. v. City of New York*, 309 F. Supp. 3d 52, 68 (S.D.N.Y. 2018). The WIN Defendants argue that none of Plaintiff's injuries, *e.g.*, emotional distress and displacement, are alleged in the complaint to be connected to any specific action of the WIN Defendants. (ECF 106 at 10-11). The primary factual allegations concerning the WIN Defendants consist of the following: Plaintiff alleges that she called Defendant Quinn multiple times after her transfer to WIN West to request that she be housed elsewhere. SAC at 11-12. Plaintiff then alleges that the WIN Defendants' inability to provide the necessary accommodations caused her psychological stress. SAC at 15.

While accepting Plaintiff's allegations as true, but not making any favorable inferences, I find that Plaintiff fails to tie the WIN Defendants' actions to her injuries of trauma caused by potentially living with cisgender females and her subsequent homelessness. Although Defendant Quinn refused Plaintiff's request for transgender-specific housing, Plaintiff does not

6

allege that the WIN Defendants had such housing accommodations available or that they even had the authority to place her in alternative housing without DHS's consent. Indeed, the opposite. Defendant Quinn states in her affidavit that DHS determines the specific shelter where a client is placed. Declaration of Christine C. Quinn ("Quinn Decl.") (ECF 108) ¶ 7. In other words, even if the WIN Defendants had transgender-specific housing, the WIN Defendants lacked the authority to transfer Plaintiff to that housing. Requests for reasonable accommodations are submitted to DHS and decided by DHS. *See* Declaration of Jill Grant, Ex. H (ECF 107-8) at 3; *see also* SAC at 8 (claiming that DHS, without mentioning the WIN Defendants, illegally required Plaintiff to live in a cisgender facility). Therefore, any injuries caused by Plaintiff's inability to transfer from WIN West lack a sufficient causal nexus to the WIN Defendants.

Nor does Plaintiff allege any psychological injury caused specifically by any act of the WIN Defendants. Plaintiff only includes the conclusory allegation that the WIN Defendants, along with DHS and Project Renewal, "engaged in actions which caused me considerable psychological stress." SAC at 15. In contrast to her allegations about specific interactions with Marsha's House staff, Plaintiff does not allege that any particular interaction with the WIN Defendants caused her stress, other than the denial of transfer. Plaintiff does not allege that the WIN Defendants negligently failed to maintain her safety or actively participated in harassment, understandably so because Plaintiff never lived at WIN West. *See* Quinn Decl., ¶ 9.

Significantly, Plaintiff reiterates in her Opposition that her stress was caused by the "Municipal Defendants['] failure to provide reasonable accommodations." (ECF 146 at 5).[6]

The WIN Defendants' second attack on standing arises from their contention that Plaintiff's request for injunctive relief will not provide redress to Plaintiff. (ECF 106 at 12). The WIN Defendants' focus on injunctive relief is misplaced, however, because Plaintiff only seeks injunctive relief against DHS. SAC at 18. The pertinent question is whether Plaintiff's specific request for monetary damages from the WIN Defendants can provide redress.[7] Notably, Plaintiff does not allege any specific economic injury, *e.g.*, expenditures for alternative housing or medical costs, but rather categorizes her request for damages as "punitive," rather than compensatory. SAC at 17. Because Plaintiff's injury is her homelessness, and derivative psychological and mental stress from being forced to live in cisgender female shelters, total relief would come in the form of DHS providing Plaintiff with transgender-specific housing.

It is unclear how imposing monetary penalties on *Defendants* would result in *DHS* assigning Plaintiff to a reasonable accommodation. In her Opposition, Plaintiff appears to acknowledge the WIN Defendants' secondary role but argues that "WIN should have refused the proposed transfer of Plaintiff since WIN West couldn't accommodate Plaintiff['s] needs." (ECF 146 at 6). As Plaintiff alleges in her complaint, Plaintiff seeks to hold Defendant Quinn responsible for failing to "stand up against DHS forcing Trans people into facilities originally

---

[6] Plaintiff raises for the first time in her Opposition that Defendant Quinn's confusion on why Plaintiff could not accept a cisgender female shelter "hurt" and caused her "pain." (ECF 146 at 7). This allegation of emotional injury was not alleged in the complaint but will be addressed briefly in the Local Law 3 section below to show why amendment would be futile.

[7] Whether Plaintiff has standing to seek relief against DHS is an independent inquiry from whether Plaintiff has standing to seek relief against the WIN Defendants. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63 (2d Cir. 2012) (requiring showing of standing as to each defendant).

8

designed for cis gender individuals [sic]." SAC at 11. This requested form of relief would be improperly holding the WIN Defendants responsible for the independent conduct of third parties. *See Himber v. Intuit, Inc.*, No. 10-CV-2511 (JFB) (AKT), 2012 WL 4442796, at *1 (E.D.N.Y. Sept. 25, 2012) (citing "well settled [] Supreme Court and Second Circuit jurisprudence that there is no standing where a finding of harm is contingent on the discretionary decision of an independent actor"). Accordingly, I agree that Plaintiff lacks Article III standing and recommend that the claims against the WIN Defendants be dismissed for lack of subject-matter jurisdiction. *Cf. Cunney v. Bd. of Trustees of Grand View*, 56 F. Supp. 3d 470, 491 (S.D.N.Y. 2014) (finding monetary damages sufficient where the plaintiff alleged economic injury in §1983 claim).

    b. **ADA[8]**

Even assuming Plaintiff had constitutional standing, Plaintiff fails to articulate a cognizable claim against the WIN Defendants for violations of the ADA. Although Plaintiff does not specify which part of the ADA covers under claim, Plaintiff's general allegation that the WIN Defendants "[r]efuse[d] to protect and accommodate Trans Individuals in NYC DHS run shelters" would be appropriately classified as an ADA failure to accommodate claim. Because neither WIN Defendant is a government entity,[9] Plaintiff's claims against them would be under Title III of the ADA, not Title II. Compare 42 U.S.C. § 12132 (public entities) with 42 U.S.C. § 12182 (public accommodations).[10] The ADA requires making "reasonable modifications in

---

[8] The following sections analyze the WIN Defendants' motion to dismiss under Rule 12(b)(6). Accordingly, the Court has not considered, and will not cite, extrinsic evidence for these arguments.

[9] Private contractors performing "services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity. Instead it is a parallel private entity." *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006). Further, Plaintiff does not allege that the WIN Defendants are a government entity.

[10] "Monetary relief, however, is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004). Because Plaintiff is only seeking monetary relief against the WIN

9

policies, practices, or procedures, when such modifications are necessary." 42 U.S.C. § 12182 (b)(2)(A)(ii). To bring a failure to accommodate claim, a plaintiff must show (1) she suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation. *Sinisgallo v. Islip Hous. Auth.*, 865 F. Supp. 2d 307, 336 (E.D.N.Y. 2012).

Plaintiff alleges that she suffers from, *inter alia*, gender identity disorder[11] and depression. SAC at 3-4. Defendants do not dispute that Plaintiff is disabled. (ECF 106 at 21). The WIN Defendants instead argue that they did not know of Plaintiff's disabilities, that they did not refuse to provide reasonable accommodations, and that Plaintiff's demands were unreasonable. *Id*. at 17-18. At the outset, the WIN Defendants admit they knew that Plaintiff required a private room for dilation. *Id*. at 22 n. 10. Additionally, Plaintiff alleges in her complaint that she expressed her concerns with WIN West's living arrangements to Defendant Quinn. SAC at 11. While it is unclear whether the WIN Defendants knew about all of Plaintiff's alleged disabilities, the WIN Defendants were on notice of Plaintiff's medical needs requiring a private room.

But, Plaintiff has failed to allege that the WIN Defendants, as opposed to DHS, denied her a reasonable accommodation. Plaintiff alleges that "DHS is fully aware of these disabilities . . . yet, they have chosen to ignore" Plaintiff's medical requests. SAC at 13. There is no corresponding allegation as to the WIN Defendants. Because the WIN Defendants lacked the power to transfer Plaintiff to a transgender-specific facility, it was DHS, not the WIN

---

Defendants, Plaintiff is precluded from pursuing her Title III ADA claim against the WIN Defendants for this reason as well. *See* SAC at 17-18.

[11] Although Plaintiff uses this term in her complaint, this condition has also subsequently been named "gender dysphoria."

Defendants, who rejected Plaintiff's request. *See Lopez v. City of New York*, No. 17-CV-3014 (VEC) (AJP), 2017 WL 4342203, at *12 (S.D.N.Y. Sept. 28, 2017) (dismissing failure to accommodate claim against Project Renewal because DHS controlled shelter placement), *adopted by* 2018 WL 1371164 (Mar. 15, 2018). Plaintiff only alleges that the WIN Defendants should have refused DHS's transfer to WIN West, SAC at 11, which is different from affirmatively denying a reasonable accommodation.

The WIN Defendants further argue that Plaintiff's accommodation demand is akin to a personal preference rather than a reasonable accommodation. (ECF 106 at 24). Although assessing the reasonableness of an accommodation request is generally a more fact-intensive inquiry that is more appropriate at the summary judgment stage, s*ee Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995), Plaintiff's accommodation demand must still be tied to Plaintiff's disability to state a proper ADA claim at the pleading stage. *See Sinisgallo*, 865 F. Supp. 2d at 337. Plaintiff's demand to be transferred out of a cisgender female facility, rather than just be assigned a private room, has no claimed connection to any disability of Plaintiff. While Plaintiff alleges, with supporting physicians' notes, that her medical needs require privacy, *e.g.*, a private room, Plaintiff has not alleged in her complaint, nor cited to any case law, showing why any of her disabilities requires the removal of all cisgender female occupants from any *building* in which she lives.[12] *See Logan v. Matveeskii*, 57 F. Supp. 3d 234, 263 (S.D.N.Y. 2014) (requiring reasonable accommodation under ADA to have "demonstrated relationship" to the disability). Plaintiff's only proffered reason is that she wishes to avoid "questions,

---

[12] In Plaintiff's First Amended Complaint, she attaches a letter from Dr. Pierre Arty, who notes that Plaintiff reported being distressed while around cisgender females in a dorm-like setting. (ECF 31). Dr. Arty does not endorse that as a medically required limitation and does not tie living with cisgender females to her disabilities. In contrast, Dr. Arty only advised that the shelter's location may trigger Plaintiff's post-traumatic stress disorder. *Id*.

11

harassments, and being the subject of gossip." SAC at 12. This is different from alleging that medical professionals have found that her disabilities require that she only live with transgender individuals. While the harassment of Plaintiff at her previous shelter is inexcusable, Plaintiff's desire to avoid potentially harassing roommates in the future, without alleging a link to her alleged disabilities, is not an ADA claim.[13]

   c. **Fair Housing Act**

Similar to the ADA, the Fair Housing Act provides a private right of action for victims of "discriminatory housing practice[s]." 42 U.S.C. § 3613 (a)(1)(A). This includes the "refusal to make reasonable accommodations in rules, policies, practices, or services" when those accommodations are necessary for a person's enjoyment of the dwelling. 42 U.S.C. § 3604(f)(3)(B). As discussed above, Plaintiff alleged that DHS, not the WIN Defendants, ultimately rejected Plaintiff's request to be transferred to a transgender-specific shelter. Accordingly, I recommend that Plaintiff's FHA claims also be dismissed.

---

[13] Plaintiff suggests in her Opposition that she brought a retaliation claim against the WIN Defendants. (ECF 146 at 5). While Judge Peck found Plaintiff had sufficiently alleged that her transfer was retaliation for her "whistleblowing" regarding Marsha's House's violations, *see* ECF 58, the Second Amended Complaint contains no allegations of retaliation, let alone any allegations of retaliation by the WIN Defendants. Plaintiff does not allege that the WIN Defendants knew of Plaintiff's "whistleblowing" or were responsible for Plaintiff's transfer out of Marsha's House (the alleged retaliation). *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (requiring knowledge of protected activity and an adverse action taken by the defendant in response). To the extent Plaintiff suggests in her Opposition that WIN West engages in retaliation against its residents who report WIN West abuses, ECF 146 at 5-6, that allegation would not state a claim as to Plaintiff because Plaintiff never alleged that she reported any abuses at WIN West or that WIN West took any retaliatory action against her. Plaintiff's reference to other transgender WIN West residents who "have come forward," *see id*. at 5, as victims of retaliation is insufficient to confer standing for this claim. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (requiring that the plaintiff herself suffer the alleged injury).

### d. New York State Human Rights Law ("NYSHRL")

Plaintiff does not allege which section of the NYSHRL Defendants allegedly violated.[14] To the extent Plaintiff is bringing claims of housing discrimination under the NYSHRL, as the pleadings indicate, Plaintiff's claims would fail for the same reasons articulated above. *See Woods v. Real Renters Ltd.*, No. 01-CV-269 (MHD), 2007 WL 656907, at *12 (S.D.N.Y. Mar. 1, 2007) (finding New York State and New York City housing discrimination laws' elements "parallel" the FHA).

### e. New York City Human Rights Law ("NYCHRL")

Plaintiff repeatedly cites in her complaint to Local Law 3,[15] which incorporated greater protection for transgender individuals into the NYCHRL.[16] *See, e.g.*, SAC at 10, 12, 13. Namely, Plaintiff alleges that the WIN Defendants violated Local Law 3 by its "forced placement of Trans identified individuals into . . . gender segregated facilit[ies]." SAC at 13. The WIN Defendants argue that they did not violate the NYCHRL because they did not treat Plaintiff "differently" from other clients. (ECF 106 at 26-27).

There is no clear language in Local Law 3 prohibiting transgender individuals from being housed with cisgender individuals. Indeed, the opposite. Local Law 3 strengthens protections to permit transgender individuals to participate in single-gender facilities and programs "consistent with their gender identity," despite objections from cisgender individuals. New York

---

[14] The WIN Defendants brief the issue of whether gender discrimination by employers has been alleged. (ECF 106 at 26). Not only is this not an employment case, Plaintiff does not allege anywhere in her complaint that the WIN Defendants' actions were motivated by an animus towards Plaintiff's gender. Rather, Plaintiff's claims are for failure to accommodate. *See* SAC at 14 (alleging violation of the NYSHRL for failure to provide proper "gender segregated places of public accommodation").

[15] Local Law 3 amended New York City, N.Y., Rule Tit. 47, §2-01 and §2-06.

[16] In line with its greater protections than its state counterpart, the NYCHRL contains a broader definition of "gender" which includes "gender identity or expression." N.Y.C. Admin. Code § 8-102.

City, N.Y., Rules Tit. 47, §2-06(b). Plaintiff does not allege that the WIN Defendants denied her the ability to participate in their single-gender facility because of her gender identity. Nor does Plaintiff cite any case law, or language in Local Law 3, that requires an entity to affirmatively create new facilities for use only by transgender women. Even taking as true Plaintiff's interpretation that forced placement in a cisgender facility violates Local Law 3, as discussed above, DHS, not the WIN Defendants, held the authority over shelter placement. Plaintiff does not allege that the WIN Defendants played any role in assigning Plaintiff to a particular shelter; the WIN Defendants were only the passive recipient of individuals assigned by DHS. *See* SAC at 13 (alleging that DHS "tried to force me" into shelters). As a result, Plaintiff has not pleaded a NYCHRL claim against the WIN Defendants for forced placement.

In addition to forced placement, the WIN Defendants argue that a NYCHRL claim cannot be established either as to a harassment claim. Defendants' arguments are misplaced, however, because their cited cases all reference gender discrimination in the context of employment discrimination, which are largely inapplicable here. *See, e.g., Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 532 (S.D.N.Y. 2015) (analyzing NYCHRL employment discrimination claim); *Bermudez v. City of New York*, 785 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (dismissing NYCHRL hostile work environment claim). The NYCHRL does not contain a general anti-harassment provision for social interactions, but specifically prohibits unequal treatment for "conditions and privileges of employment." *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 75 (N.Y. App. Div. 2009); *see also* New York City, N.Y., Admin. Code § 8-107. Plaintiff does not allege she was ever employed by the WIN Defendants. Therefore, Plaintiff has not alleged sufficient facts to

show that a claim of injury caused by Plaintiff's calls with Defendant Quinn is actionable under the NYCHRL.

To the extent Plaintiff is also bringing claims of housing discrimination under the NYCHRL, Plaintiff's claims would fail for the same reasons articulated above for the Fair Housing Act. *See Woods*, 2007 WL 656907, at *12.

   f. **First and Fourteenth Amendment**

By invoking violations of the First and Fourteenth Amendments, Plaintiff is seeking to bring a §1983 claim against the WIN Defendants. To plead an actionable §1983 claim, Plaintiff must show that the WIN Defendants acted "under color of state law" in a manner that deprived her of her constitutional rights. *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir. 1990); *see also Rodriguez v. Clinton*, 357 Fed. Appx. 355, 356 (2d Cir. 2009) ("It is axiomatic that the First and Fourteenth Amendments, and §1983, apply only to state actors."). Plaintiff does not allege that the WIN Defendants are government entities. In her complaint, Plaintiff acknowledges that Defendant WIN Inc. "operates a number of shelters under contract with NYC DHS" and that Defendant Quinn "runs WIN Inc." SAC at 3. Private entities are not converted to state actors merely by reason of contracting with the government. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).

A private entity may be deemed a state actor where the state delegates its authority to the private entity. S*ee NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (limiting §1983 liability for private actors to those who "represent [a state] in some capacity"). In the WIN Defendants' case, DHS delegated no authority to the WIN Defendants but retained its authority to place its clients. *See* SAC at 13 (accusing DHS of "forc[ing]" Plaintiff into shelters); Quinn Decl. ¶ 7. The

15

WIN Defendants' inability to reverse DHS's placement and transfer Plaintiff elsewhere is at the crux of Plaintiff's frustration with Defendants. *See* SAC at 11 (alleging that she wanted Defendant Quinn to "stand up" to DHS's placement of transgender individuals in cisgender facilities). Because the challenged conduct, forced placement, was conducted solely by DHS, Defendants cannot be held responsible as a state actor.

### g. Title VI

Plaintiff further generally brings claims of Title VI violations. SAC at 16. As an initial matter, Plaintiff's conclusory allegation that her Title VI rights were violated fails to provide sufficient notice of the claims pleaded. *Twombly*, 550 U.S. 544, 570. Title VI is limited to discrimination "on the ground of race, color, or national origin" by "program[s] or activit[ies] receiving Federal financial assistance." 42 U.S.C. §2000d. Nowhere in Plaintiff's complaint does she allege that the WIN Defendants received federal financial assistance. Nor does the complaint contain any allegation that the WIN Defendants' conduct towards Plaintiff was motivated by her race, color, or national origin. As a result, Plaintiff's Title VI claims should be dismissed.

### h. Rehabilitation Act

Similar to Title VI, Plaintiff adds the conclusory allegation that failure to provide accommodations violates Section 504 of the Rehabilitation Act. *See* SAC at 14, 16. Under Section 504, individual with disabilities may not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by any program receiving federal financial assistance. 29 U.S.C. § 794. Rehabilitation Act Section 504 claims are "treated identically" as ADA claims. *See Getso v. City University*, No. 08-CV-7469 (LAP), 2009 WL

4042848, at *4 (S.D.N.Y. Nov. 18, 2009). As a result, the Rehabilitation Act claim should be dismissed for the same reasons fatal to the ADA accommodation claims, as described above. (ECF 106 at 14-15).

V. **Conclusion**

For the foregoing reasons, I recommend that Defendant Quinn and WIN, Inc.'s Motion to Dismiss be GRANTED in its entirety.

VI. **Objections**

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Valerie E. Caproni, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Caproni.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Plaintiff wishes to review, but does not have access to, cases cited herein that are reported on Westlaw, she should

request copies from the WIN Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Respectfully submitted,

*s/ Ona T. Wang*

Dated: August 2, 2019
New York, New York

**Ona T. Wang**
United States Magistrate Judge