```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARIAH LOPEZ,

 4                  Plaintiff,

 5             v.                            17 CV 3014 (VEC)(OTW)

 6   NEW YORK CITY DEPARTMENT OF
     HOMELESS SERVICES, et al.,
 7
                    Defendants.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             JULY 10, 2019
10                                           11:40 a.m.

11   Before:

12                        HON. ONA T. WANG,

13                                           Magistrate Judge

14                          APPEARANCES

15   MARIAH LOPEZ (PRO SE)(VIA TELEPHONE)

16   THE CITY OF NEW YORK LAW DEPARTMENT
          Attorneys for Municipal Defendants
17   BY:  THOMAS B. ROBERTS
          TONIE BAEZ
```

1               (Case called)
2               THE COURT:  Okay.  Good morning.  This is Judge Wang.
3    I am going to start the speaking because we have very limited
4    time today.  We do have a court reporter present.
5               Ms. Lopez, Mariah Lopez, who is the plaintiff, is
6    appearing by phone.
7               Ms. Lopez, can you hear me?
8               MS. LOPEZ:  Yes, your Honor.
9               THE COURT:  And then I see on the appearance sheet, we
10   have Thomas Roberts for the city of New York and Tonie Baez for
11   the New York City Homeless Services.
12              Is that right?
13              MS. BAEZ:  Yes, your Honor.
14              MR. ROBERTS:  Yes, your Honor.
15              THE COURT:  And we all can hear Ms. Lopez clearly.
16   Right?
17              MR. ROBERTS:  Yes, your Honor.
18              THE COURT:  Okay.  We're starting at a little bit
19   after 11:40 for a status conference that was supposed to start
20   at 11:00.  I understand this was due to a mistake on
21   Ms. Lopez's part about the time of the conference.
22   Nonetheless, we're here.
23              Ms. Lopez, so now we have about 20 minutes to go.  So
24   what we're going to do today is we're just going to try to get
25   through as much as we can get through.

1                Since I have a hard stop at noon, let's set the next
2     conference date now.
3                MS. LOPEZ:  Sure.
4                THE COURT:  And I think that will be in September.
5                Were you looking at September 10?
6                MS. LOPEZ:  I might be starting school, your Honor.
7     That's what I wanted to discuss, and I understand we have very
8     limited time.  I still want to apologize really quickly.
9                I'm really sorry, your Honor.  I actually was trying
10    to be fervently prepared.  And that's probably why I overlooked
11    what was on the order and that it was supposed to be for 11:00.
12               So I plan to try -- and I relayed this to Mr. Roberts
13    yesterday in a phone call -- to try to restart part-time
14    classes at Schenectady Community College in upstate New York.
15    So hopefully settlement does not take that long unless we go
16    into trial posture fully or discovery, and then I'll make
17    myself available, classes or not.
18               THE COURT:  The other thing is if it turns out that
19    you do start classes part time up in Schenectady, just write in
20    and let us know.  And we'll get another date scheduled that
21    works with your class schedule.  Okay?
22               MS. LOPEZ:  Yes, your Honor.  I will be able to
23    travel.
24               THE COURT:  But I also wouldn't want you to miss
25    classes if there is a mutually convenient time that doesn't

1     involve you missing class.  Right?

2              MS. LOPEZ:  Yes, your Honor.

3              THE COURT:  So right now what we're going to schedule
4     is Tuesday, September 10, at 2:00 p.m.

5              MS. LOPEZ:  Okay.

6              THE COURT:  But as soon as you get your class
7     schedule, Ms. Lopez, if that is a conflict, just write in and
8     let us know.  Okay?

9              MS. LOPEZ:  Yes, your Honor.

10             THE COURT:  Then when you write in, just also let us
11    know which days of the week or times of day are better for you,
12    and we'll see what we can do.  All right?

13             MS. LOPEZ:  Yes, your Honor.

14             THE COURT:  But right now September 10 at 2:00 p.m.

15             MS. LOPEZ:  Yes, your Honor.

16             THE COURT:  Also in case we don't get through
17    everything that we need to get through, Ms. Lopez, please file
18    a status letter with the pro se office by July 31 identifying
19    any issues that you had wanted to address today that we didn't
20    get to, and I'll do my best to deal with them on the papers and
21    try to get them resolved before the next conference so we won't
22    lose any more time.  Okay?

23             MS. LOPEZ:  Okay.

24             THE COURT:  The first issue I had on my agenda was
25    getting the name change order from you, Ms. Lopez, so that we

1  can get the family court records housed over here so that
2  you --
3            MS. LOPEZ:  I just was a little unclear how to do
4  that, your Honor.  As you guys know, I was just really busy
5  through the month of June.  What I have done is I had reached
6  out to the people that had done the name change for me.
7            If it is as simple -- because I have none of the
8  original documents.  So I can't imagine one would just be able
9  to present with the new ID and no proof of the old ID and get
10 the stuff from the court.
11           So if there is anything -- I am trying.  But who
12 changed my name hasn't gotten back to me.  So if the Court
13 wants to direct or urge me on to do, I will do it to move
14 things along.  I'm not clear.  It happened while I was a
15 teenager, and I didn't handle it.
16           THE COURT:  I don't know if anybody else here has any
17 ideas or suggestions because I didn't change my name when I got
18 married, but I would think that there must be a place somewhere
19 where if you present with some other identifying information --
20           MS. LOPEZ:  I will go to supreme court, your Honor,
21 tomorrow.
22           THE COURT:  See what you can do.  And if you can put
23 that in your status letter by July 31.
24           MS. LOPEZ:  Yes, your Honor.
25           THE COURT:  Just something, because that's what we

1   need.  Then we can break that logjam.

2            MS. LOPEZ:  Okay.

3            THE COURT:  So I have Ms. Lopez's class cert motion
4   has been filed.  I know the motion to dismiss by the Quinn &
5   WIN defendants is fully briefed.  I am going to have to do a
6   report and recommendation on the motion to dismiss.

7            I am not actually sure.  So if defense counsel has any
8   idea whether a motion for class cert would be a decision by me
9   or whether it would be a report and recommendation.  I'm going
10  to direct the defendants to file some sort of a response.  It
11  can be in the form of a letter brief.

12           How much time would you need to get that filed?

13           MR. ROBERTS:  Could I have two weeks, please.

14           THE COURT:  Sure.  So that would be July 24.

15           MS. LOPEZ:  Your Honor, just related to that, if I
16  may.

17           THE COURT:  Yes.

18           MS. LOPEZ:  Just because Mr. Roberts wanted two weeks,
19  he might want more after I let you guys know that the Center
20  for Constitutional Rights has allowed me to expressed today
21  that they are exploring still, but I think they might be
22  leaning strongly towards picking up my representation pro bono
23  in this case if the case does not settle -- I'm trying to get
24  the words correct.  We spoke yesterday, and they were very
25  clear to get the words correct.

1           If the case does not settle today or within an
2  immediate period, that they would be probably picking up the
3  case or exploring picking up the case for the class-related
4  claims and if it were to move forward being briefed or
5  litigated around class issues.
6           THE COURT:  All right.  If and when that --
7           MS. LOPEZ:  It's really dependent on Mr. Roberts.  I
8  won't talk over you anymore.  It's really dependent on
9  Mr. Roberts.
10          If we don't settle, he'll know how long he needs.  It
11 will potentially be the Center for Constitutional Rights
12 potentially lending a hand pro bono.
13          THE COURT:  So you'll keep us posted.  Right?
14          MS. LOPEZ:  Yes, your Honor.
15          THE COURT:  So that's the date.
16          Another issue on my agenda was HIPAA releases, but the
17 sense I got from the previous conferences was we wanted to see
18 what kind of information we could get from the family court
19 before having to go through HIPAA releases because I know,
20 Ms. Lopez, you had some resistance to that.
21          Right?
22          MS. LOPEZ:  Yes, because it's not necessary.
23          THE COURT:  So we'll table those.
24          That is generally what I had to go over.  We had
25 ten minutes.

1          Ms. Lopez, is there anything I'm missing that you
2    wanted to get to today?
3          MS. LOPEZ:  I don't think you are missing anything,
4    your Honor.  There are some things that I would like to bring
5    up.
6          So first and foremost, this case is about housing.
7    And regardless of maybe the inside of the parties in this case
8    of what I may or may not have now in terms of resources because
9    of the other parties that are settled, I am still homeless
10   without a lease.
11         The conditions I am staying in are still identical to
12   what they've been throughout this case, me sort of winging it.
13   Trying to find housing here and there in New York City is
14   partially why I'm considering moving up to Schenectady.
15         I believe Mr. Roberts' or the city's settlement offer
16   last time was illegal.  And I'd like this Court to address what
17   I think is a pretty controversial, scandalous issue with the
18   fact that they seem to be making an illegal settlement offer
19   within their last offer.
20         Regardless of whether it's illegal or not, it violates
21   the Americans With Disabilities Act because they haven't given
22   me a single room yet.  So they have in one breath conceded that
23   I need a single room with more "mental health services" than a
24   shelter.  But they haven't provided that room, and they seem to
25   attack that room to be releasing theses claims which is

1    unconstitutional.

2            At this point, I am living in an apartment -- I will
3    say this quickly in the interest of time -- and there is black
4    mold that is a danger to myself and my service animal.  I am
5    still at risk of being evicted at the whim of my landlord
6    because I don't have a lease and I'm technically squatting.

7            It would be appropriate, your Honor, because of the
8    wide discretion that this Court has at this time, to direct
9    this municipal defendant to place me within the shelter system
10   within a single room as they have conceded on my need.

11           This isn't about let's get rid of the case.  I'm not
12   going to live in the shelter system for the rest of my life.
13   This isn't something -- giving me a room in the shelter isn't
14   something that would allow the parties to walk the other way
15   and to resolve issues with each other.

16           So they seem to want their cake and eat it too.
17   They've dangled a very low number, and then didn't offer the
18   room directly, your Honor.  They sort of -- I mean, it just
19   really is slimy, if you ask me, well, we might have a single
20   room.  If you take this money, we will let you know, but we
21   agree you'll get it.

22           Just another thing, because I know I'm probably
23   running on four or five minutes now at this point, I am asking
24   the Court to lift the stay on discovery and to direct immediate
25   expedited discovery or whatever there is without being in front

1  of the Court until the next date. We could do it on paper.

2  But at this juncture, the city has completely gotten
3  to skirt all the federal rules around discovery when there is
4  injunctive relief being requested and there needs to be
5  expedited discovery.

6  Even if the discovery is for settlement, it needs to
7  happen at this point. This case is two years old. They keep
8  yapping about what records they want on my side. And plaintiff
9  has not had one single chance to exercise her due federal
10 rights around discovery.

11 So the single room, your Honor -- because it is not
12 okay for them to continue to not give me a single room where I
13 can save my money and get away from this black mold and any
14 other hazards and the discovery.

15 THE COURT: Okay. Ms. Lopez, this sounds a bit like
16 there are additional facts perhaps to renewing or additional
17 facts that you'd like to raise in support of your motion for
18 preliminary injunctive relief.

19 MS. LOPEZ: Okay.

20 THE COURT: I think I -- did I not or did I issue an
21 R&R on a motion back in December which the district court
22 hasn't yet acted on?

23 Is that right?

24 MS. LOPEZ: I believe that is the case. Besides that,
25 your Honor -- I'm sorry to try to quip with you over this --

1  but I can't see what other facts -- the municipal defendants
2  have filed with the Court very clear, simple language saying at
3  this time they are going to provide a single room.
4        But there are two issues.  The ADA applies regardless.
5  There are no huge facts that need to be determined around that.
6  And the single room was at the heart of this case from the
7  beginning, right beside the mold, was conceded to.
8        This is exactly the tone of Mr. Roberts.  So he would
9  agree.  He sent a letter is what he said.  You'll get a single
10 room.  It's illegal to try to attach that to a settlement.
11       And I resent at this point even trying -- maybe at
12 some point if it was the Court's prerogative, I would adhere to
13 it.  But without going through any more process around this,
14 they said, oh, we'll have a single room.
15       I'd ask the Court to direct them to find that single
16 room, and I can mull over the number while I'm sitting in my
17 single room with my dog.
18       It is not fair to do what they're doing, and this
19 Court should not allow them to get away with skirting the ADA
20 and now factually stating that they are willing to provide me
21 with a single room but only if I release claims against them.
22       What are they going to give me the single room for, as
23 a permanent apartment in a shelter?  If they were going to do
24 that, your Honor, I would release claims today.
25       Do I get a single room for all of perpetuity?  It

1   sounds like an accommodation attached to a settlement, and that
2   is illegal.
3           THE COURT:  Mr. Roberts or Ms. Baez, any response?
4           We have about four minutes.
5           MR. ROBERTS:  Your Honor, one of the things I had
6   discussed or put on the agenda that I had sent to you on July 3
7   was whether to have a settlement conference.
8           I learned yesterday from Ms. Lopez that she was
9   planning on moving to Schenectady.  That is something that the
10  agency has not been able to think about yet, and it may be that
11  we should try to respond to that in another week or two,
12  whether there can be an arrangement over the summer.  But the
13  agency has not been able to develop a position on that.
14          THE COURT:  Okay.
15          MS. LOPEZ:  Your Honor, I believe it's within the
16  Court's discretion to issue, even as a magistrate,
17  your Honor -- given the issue is still in front of
18  Judge Caproni, I'm going to ask this Court to please -- and
19  I'll put it in writing.
20          It's either you direct them, your Honor, to find me a
21  room immediately or we have another Americans with Disabilities
22  reasonable accommodation failure case.  And I can file it under
23  another docket, or now this gets really complicated.  I'm
24  tired.
25          Let me just be very clear on the record when we have

1  about two minutes left.  I'm keeping track, your Honor.  I'm
2  going to state some facts now, and I'm tired of Mr. Roberts and
3  the city getting to hang adjourning or postponing stuff on my
4  words.
5           Whether or not I start school in Schenectady will not
6  mean that I am no longer homeless in the city of New York.
7  Those are issues of definition and distinction held within the
8  Department of Health and several other agencies in New York.
9  Those are definitions.
10          I could potentially start school, your Honor, and
11 Mr. Roberts and Ms. Baez, and move back and forth between the
12 city.
13          Joanne Moran, who is the head of the Aids Institute
14 who will be my boss, is discussing with me what it would look
15 like to travel back and forth and not start full time classes
16 but part-time classes.
17          But none of what's going to happen in September or
18 tomorrow will absolve the city of New York of their obligations
19 to follow the ADA and to now act within some parameters of
20 their illegal settlement offer with we'll give you $5,000 and a
21 room.
22          So, your Honor, please order them to find me a single
23 room as per their own prerogative and their own admittance that
24 they were going to find me a single room.  That would move
25 things along.

1    You don't keep somebody homeless and struggling and
2  able to just pull themselves up from the bootstraps and
3  completely absolve the municipal defendants of their statutory
4  obligation to find homeless people housing.
5    I have black mold in the place that I'm squatting at.
6  It is unsafe for my dog.  I am unable to save money.
7    MR. ROBERTS:  I'll just respond.  The offer of the
8  room was not a concession that she was entitled to it.  It was
9  an attempt to resolve the case.  There are --
10    MS. LOPEZ:  But you've admitted you have it now.
11    THE COURT:  Wait.
12    MS. LOPEZ:  Sorry, your Honor.
13    MR. ROBERTS:  There are issues concerning even what's
14  been said today that she has a landlord.  There are a variety
15  of issues about whether she's entitled to this, but we made an
16  offer in an attempt to resolve the case.  The offer was
17  rejected.
18    We're still willing to explore it, but Ms. Lopez quite
19  quickly wrote me back saying she rejected the offer.  It was
20  the money portion that she rejected.
21    THE COURT:  Since we're still on the record and it is
22  now looking at 12:01 or 12:02, I am going to direct that,
23  Mr. Roberts, you send to the Court, without filing on the
24  docket, because it's going to be considering settlement
25  discussions, the history and your understanding of what that

1  history was and what the offer was.

2  And then to the extent that Ms. Lopez might be
3  pursuing part-time classes at Schenectady, whether that makes
4  any difference or not, maybe you can send your position on that
5  via email to the Court, to our chambers' email address, and
6  have that ex parte.  Okay?

7  But as to the history and what the prior offer was,
8  put that in a separate document, and you can email it to
9  chambers.  Do not file it on the docket.  And then also send a
10 copy of that to Ms. Lopez.

11 Ms. Lopez, would you prefer to get that by email or by
12 hard copy?

13 MS. LOPEZ:  Email is fine.

14 I'm a bit confused about what's happening.  I don't
15 really understand.

16 THE COURT:  We're out of time right now.  So that's
17 why I'm directing Mr. Roberts first to just give me in a
18 confidential, confidential as to the Court and the parties --
19 it will not be filed on the docket -- a summary of what the
20 defendants' understanding of the settlement offer was.

21 And then, Ms. Lopez, if you want to respond to that
22 similarly without filing it publicly, filing anything publicly
23 on the docket, you are free to do so.  So that way I can just
24 make an assessment for my own self whether and how to try to
25 move forward with some settlement discussions.

MS. LOPEZ: I wasn't aware your Honor hadn't seen that document. I understand you have stuff to do. So now that I understand what's happening, I will respond to Mr. Roberts.

I might even file something without those details but to the Court and on the docket in the meantime.

Thank you, your Honor, for making an accommodation today.

MR. ROBERTS: Can I submit that a week from today?

THE COURT: A week is fine.

MS. LOPEZ: What about discovery, your Honor?

THE COURT: Until we get the family court records, it's not --

MS. LOPEZ: It's not my right under federal law to have discovery access?

THE COURT: Excuse me, Ms. Lopez. We are over the time. Normally when parties don't show up for a conference that's been previously ordered and don't submit a status letter, they get sanctioned. Okay? I'm not doing that.

We decided to hold a telephone conference to try to resolve as many issues as we can. Okay? So excuse me. Please do not infer that I'm going to say something about your rights or not. All right? Stop. Right now.

My understanding for holding back on full-blown discovery was, number one, to see if settlement or pursuing settlement discussions might make sense.

1          What I'm hearing from the parties is that there is
2    some appetite for pursuing that which is why I directed
3    Mr. Roberts to submit what their understanding of the
4    discussions has been to date and what the offers were that were
5    on the table.
6          You are free to respond to that.  You are free to
7    write with your own characterization of your demand or what you
8    would like to get in order to settle this case.
9          I just explained that the reason for that is so that I
10   can take a look at these and take the time to digest and review
11   and understand so that I can also make my own assessment
12   whether it would be fruitful to go forward with settlement
13   discussions and, if so, what's the best way to do that.  That's
14   number one.
15         Number two on discovery is that we had been
16   discussing -- and, Ms. Lopez, you had raised -- that much of
17   the information that the defendants would be trying to get from
18   you in discovery in this case and that you need to prove your
19   claims is contained in the family court records that are
20   sealed, and we are literally one or two steps away from getting
21   those records.
22         And we would take those records first because,
23   otherwise, you'd be signing HIPAA releases and they would be
24   doing discovery on you and you would be doing discovery on them
25   which would likely be duplicative of what you're saying are in

1  the family court records.

2          MS. LOPEZ:  But, your Honor -- I don't mean to talk
3  over you.  Let me be very clear.

4          What I want is the records from the municipal
5  defendants and their communication and the information that is
6  not my own record.  Everything from their side -- this is very
7  one-sided, and that is not how discovery works.  So even if we
8  were going with that theme of minimizing stuff, that's all.

9          THE COURT:  Ms. Lopez, put that in your letter of
10 July 31.  Be specific about what you're seeking.

11         MS. LOPEZ:  Yes, your Honor.

12         THE COURT:  That letter can be filed on the docket,
13 and as I said at the outset of this conference, I will try to
14 address it on the papers so we don't lose any time.

15         MS. LOPEZ:  Yes, your Honor.

16         THE COURT:  If an order for discovery needs to be
17 entered, it will issue.

18         MS. LOPEZ:  Thank you.  Thank you, your Honor.

19         THE COURT:  Thank you.  We're adjourned.

20         (Adjourned)