1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARIAH LOPEZ,

4                   Plaintiff,

5            v.                          17 CV 3014 (VEC)(OTW)

6   THE CITY OF NEW YORK, et al.,

7                   Defendants.
                                         Conference
8   ------------------------------x
                                         New York, N.Y.
9                                        September 10, 2019
                                         2:25 p.m.
10
    Before:
11
                            HON. ONA T. WANG,
12
                                         U.S. Magistrate Judge
13

14                          APPEARANCES

15  MARIAH LOPEZ, Plaintiff Pro Se (by telephone)

16  GEORGIA PESTANA
         Acting Corporation Counsel for the City of New York
17       Attorney for Defendants
    BY:  THOMAS B. ROBERTS
18

19

20

21  Also Present:  Chinyere Ezie, Center for Constitutional Rights
                   Brittany Francois, NYC DSS
22

23

24

25

1          (Case called)

2          THE COURT:  Welcome.  Thank you.  I'm sorry we are

3    starting a little bit late today.  There has been a little bit

4    of a comedy of errors, including on my part.

5          Ms. Lopez, you can hear us all right?

6          MS. LOPEZ:  Yes, your Honor.  Thank you again for

7    accommodating me by this phone conference.  Thank you.

8          THE COURT:  Not a problem.

9          Just to bring defense counsel up to speed, we

10   understand that Ms. Lopez is attending classes outside of the

11   city.  Going forward we will probably try to schedule in-person

12   conferences on Mondays or Fridays, which will enable Ms. Lopez

13   to attend in person.

14          However, I am also now seeing somebody sitting at

15   plaintiff's table who is not Ms. Lopez, so maybe, Ms. Ezie, you

16   can let us know --

17          MS. EZIE:  Thanks, your Honor, for allowing me to

18   attend today's conference.  My name is Chinyere Ezie.  I'm an

19   attorney at the Center for Constitutional Rights.

20          Although we have not had made a formal appearance, we

21   are very optimistic the parties are close to settling.  We are

22   evaluating possibly making a formal appearance, particularly if

23   the Court is still interested in having settlement counsel

24   appointed.

25          THE COURT:  I would say that I am extremely interested

 1    in having settlement counsel.

 2              Mr. Roberts, is Ms. Ezie's appearance today here a

 3    surprise to you, or it sounded like the parties are close to

 4    settling or discussing settlement?

 5              MR. ROBERTS:  Your Honor, Mr. Lopez advised me in a

 6    telephone conversation I think within the last week that she

 7    had reached out to the Center for Constitutional Rights and

 8    they might take some position on her behalf, but I was not

 9    expecting Ms. Ezie.  But I, like the Court, I think, would have

10    no objection to her involvement in some settlement

11    negotiations.

12              THE COURT:  Not only no objection, but I think it

13    would be very, very welcome to have your assistance.

14              One thing I do need to disclose.  I am not sure,

15    Ms. Ezie, if you're aware, but my prior firm was Baker &

16    Hostetler.  Before I left the firm, Ms. Ezie and I were

17    opposing counsel on an employment discrimination case.  It's

18    been decided now.

19              MS. EZIE:  I forgot.

20              THE COURT:  My involvement in the case was very

21    limited to essentially writing a few of the briefs in the case.

22    A large chunk of the case, including a section during most of

23    the summary judgment briefing, I was actually out on maternity

24    leave.  However, I believe I had entered an appearance in that

25    case, so we were actually opposing counsel.  This is the first

 1    time I've seen Ms. Ezie face to face.

 2           I don't think that it is an issue under 28 U.S.C. 455,

 3    having reviewed it just now, but I will leave it open for

 4    anybody to raise that as an issue.  I don't think it's an

 5    issue, but I don't want to pressure anybody.  If anybody thinks

 6    it's an issue at all, I would prefer to have Ms. Ezie

 7    representing Ms. Lopez so that if that were to present a

 8    problem I might be able to recuse myself or have the settlement

 9    conferences be before another MJ.

10           I am just putting that out there to make sure that it

11    is all fully disclosed.  I take no position on the matter.  But

12    I did want to let you all know and give you some time to

13    respond if you think it's necessary.  You don't need to respond

14    today.

15           MS. EZIE:  Your Honor, might I just add a point or

16    two.  I think I had forgotten that trivia because this was a

17    previous career.  I was at the EEOC, and I don't believe we

18    overlapped because I joined after summary judgment was fully

19    briefed.

20           THE COURT:  I might have filed a motion for

21    reconsideration.  That's potentially --

22           MS. EZIE:  The only overlap.  That's possible.

23           THE COURT:  I was never in court on the case.

24           MR. ROBERTS:  Your Honor, should the Center for

25    Constitutional Rights appear, I think it extremely unlikely

1    that the defendants would claim that there was any conflict

2    presented by the developments you just disclosed.

3              THE COURT:  I had prepared an agenda based on what I

4    knew a week ago.  Obviously, a lot of things have changed.

5              Why don't we start with what I had as No. 3 on my

6    agenda, which is settlement discussions.  I know that in the

7    past I had asked both sides to provide *ex parte* their history

8    of what the settlement negotiations might have been and then

9    where each side was.  I had done that to try to assess whether

10   there was any potential overlap where a settlement conference

11   might be meaningful or useful.

12             If the Center for Constitutional Rights were to enter

13   an appearance either for the limited purpose of settlement or,

14   I would prefer, for a broader purpose -- Ms. Lopez.

15             MS. LOPEZ:  I hear you, your Honor.  I chuckled.

16             THE COURT:  I wanted to make sure you could hear

17   everything.

18             I would just want to make sure, Ms. Lopez, that you

19   shared your views and your thoughts in any submissions that you

20   have made to the Court *ex parte* to share with Ms. Ezie so she

21   knows sort of what the parties' respective positions were at

22   least a few months ago.

23             MS. LOPEZ:  Sure.  I have and I will continue to do

24   so, your Honor.

25             THE COURT:  Ms. Ezie, how much time would you need to

1   further discuss with Ms. Lopez whether you would be willing to

2   represent her for purposes at least for settlement and then

3   proceed along those lines?

4          MS. EZIE:  Sure.  We have just to complete sort of the

5   conflicts check at my firm.  I think within two weeks' time we

6   would be easily able to accommodate that.

7          THE COURT:  If you elect to proceed that way, let's

8   see if you can file a notice of appearance within the next --

9   two weeks puts us at the 24th.  How about we will give you an

10  extra week on top of that, by October 1, for notice of

11  appearance.  If so, we will pursue settlement discussions

12  avidly and quickly.

13         I know Ms. Lopez had also wanted to proceed with some

14  third-party discovery as well as I think we were in the process

15  of getting, Ms. Lopez, your sealed family court records.

16         MS. LOPEZ:  Sure.

17         THE COURT:  What are your thoughts on proceeding on

18  third-party discovery and -- let's look at that first because I

19  think in my last order I had wanted you to come here today with

20  sort of a list of topics.  However, if Ms. Ezie enters an

21  appearance on your behalf for purposes of litigation as well,

22  then she would actually be able to serve the third-party

23  subpoenas, and you wouldn't need the Court's assistance in

24  doing so.

25         MS. LOPEZ:  Sure.  Obviously.  Yes.

1          THE COURT:  What are your thoughts on that?

2          MS. LOPEZ:  My thoughts are that until the ink is dry

3     and until they finalize with the CCR, I would like to proceed

4     just as we were going to today with the caveat, obviously, that

5     the Court was expecting me to appear in person with certain

6     materials or at least information to provide to -- my desired

7     third-party information.

8          What I think might be a logistical plan is, I'm set to

9     come to the city on the 16th.  So as the Court indicated in the

10    order, the Court itself doesn't need to -- can tell a lot of

11    those documents are available to me under Rule 45 or some other

12    rule.  I can come down on Monday and obviously consult with

13    Center before Monday.  But I can come down Monday and sort of,

14    I think, the next step, if I were proceeding pro se, were to

15    handle the document requests myself because I don't think there

16    is any way that CCR is going to complete its background check,

17    and obviously we set the 1st of October as the next date.

18         I should proceed, your Honor, as normally and during

19    the next couple of days also communicate with CCR the documents

20    I'm looking for.  I think I've also been pretty open on the

21    record on what I've been seeking.  It's a matter of formalizing

22    the requests for the documents.

23         THE COURT:  One potential wrinkle in all of this is

24    that the week of the 16th I am on criminal duty.

25         Let me just check something.

1              MR. ROBERTS:  Your Honor, could I be heard for just a

2      second?

3              THE COURT:  Yes.

4              MR. ROBERTS:  Seems to me it's really ill-advised to

5      go into discovery in the next three weeks.  I can assure you

6      that if there is a subpoena served on the mayor, the mayor has

7      not been deposed in any case now in seven years, there will be

8      significant motion practice.

9              I really don't think it's productive for us to go off

10     on a real frolicking detour of motions to suppress subpoenas

11     and all of that when counsel may well be about to appear and

12     put the case in a posture where it could actually move forward.

13             I would request that we not generate a great deal of

14     disputes in the next three weeks.  If indeed the Center does

15     not appear after three weeks, then Ms. Lopez can start her

16     disputes.  I really request that we not foul the mess further.

17     Leave it somewhat clean for the new counsel to come in.

18             THE COURT:  Stop.

19             Ms. Lopez, you may get a chance to respond, but first

20     I have to check something on my schedule.

21             MS. LOPEZ:  No worries.

22             Can I respond to Mr. Roberts, your Honor?

23             THE COURT:  Ms. Lopez, I don't think you need to

24     because I am going to.

25             I don't think that allowing Ms. Lopez to proceed in

1    terms of trying to clarify or even work on formalizing a list

2    of discovery demands is going to imminently lead to the

3    issuance of subpoenas because if during this time CCR enters an

4    appearance that's broader, this may well be obviated.  If not,

5    and we know, we won't have lost time.

6              I understand, and I recall that we had a conference in

7    August that had to be truncated because of various issues, but

8    this is an issue, this is a discovery issue that has been very

9    important to Ms. Lopez for several months, and we have not been

10   able to get any traction on it.

11             I'm not going to issue subpoenas immediately upon

12   Ms. Lopez formulating demand and being able to discuss those

13   demands.  Indeed, those may be something that she may want to

14   discuss with Ms. Ezie during the period of time when CCR is

15   considering whether to enter an appearance either for

16   settlement or for more purposes.  I don't think that there is

17   necessarily any benefit to staying the case or directing

18   Ms. Lopez not to do what she wants to do in terms of litigating

19   her case.  Rest assured, nobody is going to be running out and

20   serving subpoenas and ordering depositions of the mayor in the

21   next week.  That's not going to happen.

22             As far as the third-party discovery goes, I guess,

23   Ms. Ezie, I am going to prevail on you, since you are here, to

24   discuss with Ms. Lopez the potential timing for that and how it

25   might play into settlement discussions.

 1        If CCR were to enter an appearance for the limited

 2   purpose of settlement, what would probably happen is, I would

 3   probably try to get a settlement conference on the calendar

 4   sooner rather than later, and I might move things to make it

 5   happen.

 6        And while at the same time I don't necessarily see a

 7   problem with pursuing some third-party discovery or limited

 8   discovery in aid of settlement, you might want to think about

 9   what discovery might be necessary in order to have more fulsome

10   settlement discussions and maybe try to tailor the more

11   immediate requests to be more in aid of settlement since I

12   would really like to try to focus on that.

13        Ms. Lopez, why don't you work on that.  If there

14   arises a need for you to actually write in to the Court for

15   relief without Ms. Ezie's assistance or before she has had an

16   opportunity to resolve whether they would or would not be

17   entering an appearance on your behalf for any purpose, go ahead

18   and do that, and we will try to resolve it.

19        MS. LOPEZ:  If I can, your Honor, I am going to

20   obviously allow for the Court to finish its agenda.

21        But I just have to say, starting from the top of my

22   notes that I was writing over the last couple of minutes, what

23   is occurring right now organically is exactly part of the

24   reason that the plaintiff didn't necessarily want to sort of

25   expeditiously include outside counsel for settlement

1    negotiations only just because I already feel like the lawyers

2    in the room are like, we can handle this and someone explain

3    this to her.

4            I am very aware of what I'm asking for, the posture of

5    this case.  The types of motions I initially filed entitles me

6    to expedited discovery and no part of this discovery, none of

7    it.  That's No. 1.

8            I don't want the Court or the parties to feel, all

9    right, well, CCR is here and we can deal with CCR.  I am not

10   also sort of having a tantrum or trying to hit the city with a

11   blitzkrieg of subpoenas.

12           My desire is to focus in on the misconduct that I am

13   alleging occurred in 2017 and ask for supporting documents and

14   witness testimony to support that, including the mayor,

15   including the speaker, including Richie Torres, and I repeated

16   this over and over.

17           I am starting to feel like maybe the Court and

18   defendants and even CCR might sort of not be taking the reasons

19   for my discovery requests seriously or underestimate my ability

20   to gauge whether or not they are important, even in discovery,

21   your Honor.

22           Piggybacking on what you just said, I don't think it's

23   appropriate to move forward in any settlement negotiation

24   posture without some form of discovery on the part of the

25   defendants.  We know everything about Mariah.

```
 1              There can be no doubt, your Honor, that Mr. Roberts,
 2   as Corporation Counsel, has access to more than just what's
 3   provided before the Court in terms of plaintiff's background
 4   information.  He is a city lawyer.  He has access to hundreds
 5   of documents related to either my placement at Marsha's House
 6   or gosh knows what else.
 7              I think moving forward plaintiff is digging in her
 8   heels.  We should not -- I don't expect plaintiff to move one
 9   iota forward unless we resolve at least -- I believe expedited
10   discovery is long overdue.
11              I believe the very narrowed requests, even though they
12   seem broader, macro to people that don't, you know, rub elbows
13   with politicians, but I am very narrow focused in my desire to
14   ask for all of the e-mail and electronic communications to and
15   from Richie Torres regarding plaintiff and the Marsha's shelter
16   or DHS' dealings with Marsha's shelter residents.  You get it.
17              I know the Court is limited with its time.  I
18   appreciate accommodating the phone conference.  I feel like I'm
19   the little kid in the room and that people don't think the
20   documents I'm requesting are to be taken seriously or that
21   hopefully we will resolve this before we get those, your Honor.
22              As you pointed out, I think discovery should move
23   forward even in a meaningful way.  If CCR is going to say to
24   the city or even take a position to the city, come on, you are
25   not being fair because we have e-mails for Richie Torres
```

1    calling her crazy or making unsupported comments behind the

2    scenes about what was or was not happening at Marsha's based on

3    the evidence that we have today, then that's relevant.

4              THE COURT:  Ms. Lopez, this is part of the problem if

5    you're on the phone, is that one of the reasons why I wouldn't

6    let you respond to Mr. Roberts was, I was checking my calendar

7    to see if I could actually potentially have you in in person

8    when I am supposed to be on criminal duty, if there was a way

9    to accommodate that.

10             Now that I am looking at the order that I entered, and

11   that is ECF No. 174 which was actually issued on Friday, you

12   don't need my permission or my intervention to serve the

13   subpoenas you want to serve.

14             MS. LOPEZ:  I'm aware of that, your Honor.

15             THE COURT:  Go ahead and do what you want to do.  I'm

16   only suggesting that you talk to Ms. Ezie, see if you think

17   that's what would move things forward.

18             Also, you know, if there is something in your

19   discovery or if there is particular information that you think

20   would be helpful in terms of framing your position in a

21   settlement conference, we should make that a priority.

22             MS. LOPEZ:  Yes, your Honor.

23             THE COURT:  You will go do what you need to do on

24   that, and we will see what happens there.

25             MS. LOPEZ:  Yes, your Honor.

 1          THE COURT:  The next item on my agenda was the family

 2    court records.  We needed your name change order in order to

 3    forward it to the family court so that the SDNY could get those

 4    records.

 5          MS. LOPEZ:  I have not heard back from the Sylvia

 6    Rivera Law Project.  I think, especially with CCR on board now,

 7    it might be easier to help me navigate getting that order.

 8    Like I expressed before, it has been a bit of a legal limbo for

 9    me because it wasn't my law guardians who handled the name

10    change.  I was still a minor, though.  It was under Sylvia

11    Rivera Law Project.  I have not been able to get a copy of the

12    name change order myself.  Maybe Center for Constitutional

13    Rights can be helpful in either contacting Sylvia Rivera Law

14    Project --

15          THE COURT:  Ms. Lopez, I'm sorry to interrupt you, but

16    the court reporter is having a very hard time keeping up with

17    you.

18          MS. LOPEZ:  My apologies.

19          THE COURT:  I'm going to give you guidance on how to

20    make it easier for the court reporter to understand you.

21          When you are on the phone, you need to speak about

22    half the speed you are speaking right now.  I understand it's

23    hard.  Speak slowly and overenunciate your words.

24          MS. LOPEZ:  Yes, your Honor.

25          THE COURT:  Thank you.

1          MS. LOPEZ:  You're welcome.

2          THE COURT:  To recap, because I think I heard it

3    correctly, you need to get the name change order from the

4    Sylvia Rivera Law Project, and you simply have not been able to

5    get it yet.

6          MS. LOPEZ:  That is the one place that I knew it was

7    where I reached out to -- yes, I have not gotten a response.

8          THE COURT:  Just keep at it.  I just really wanted a

9    status on that.

10         MS. LOPEZ:  Your Honor, part of the problem, just to

11   put it on the record, is that I think in court, in civil court,

12   where the name change occurred, you have to have proof of the

13   previous name, and I no longer have that.  Just to be clear why

14   I didn't just go straight to the clerk of the court.

15         THE COURT:  Got it.

16         Unfortunately, that makes perfect sense to me, but it

17   makes it difficult for you.

18         Anything else that we should address at this time?

19         MS. EZIE:  Your Honor, if I may, just a question about

20   discovery in aid of settlement.

21         Defendants, would you have any objection to exchanging

22   some discovery prior to settlement conference?

23         MR. ROBERTS:  Probably not.  At your Honor's

24   instruction, I sent Ms. Lopez on June 17 a proposed protective

25   order.  I never heard back from her.  But maybe that might be a

1    preliminary before actually producing something.  If there were

2    document requests served on me, I would respond to it in an

3    appropriate fashion.

4              MS. EZIE:  Your Honor, do you have a sense of your

5    next availability for a settlement conference?

6              THE COURT:  Let me take a look.  My problem is that I

7    rearranged my schedule several months ago, so I have one

8    criminal duty week in September and one criminal duty week in

9    October.  That means that all my civil cases that need

10   attention during that time now only have six weeks instead of

11   eight weeks to get the attention they need.

12             That said, because this case weighs heavily on me,

13   right now I am looking at mid October, but I might be able to

14   move some things around if we needed to do it sooner than that.

15             MS. EZIE:  Just thinking about, if we are not able to

16   respond to discovery requests on a more expedited basis, just

17   thinking ahead to November, early November, if you have --

18             THE COURT:  November isn't a problem.  I thought you

19   wanted to get in earlier than that.

20             What I have been doing in this case, since Ms. Ezie is

21   new, is I've been setting in-person status conferences.  This

22   case is on what I call the dental plan.  You never leave

23   without another conference date.  It might make sense to have

24   the next conference date on a Monday or Friday after CCR either

25   files or doesn't file a notice of appearance.  Unfortunately,

1    that takes us to criminal duty.

2          You know what we can do.  I was looking at the week of

3    October 7.  October 4 is a Friday.  We could try for October 4

4    at 9:00 is the only time I have that day, unfortunately.

5          MR. ROBERTS:  Your Honor, I have a doctor's

6    appointment scheduled at that time.  I hope you wouldn't do it.

7          If counsel has only appeared three days in advance, I

8    don't really think we would be quite ready to productively

9    meet.

10          THE COURT:  That wouldn't be a settlement conference.

11    That would be a status --

12          MR. ROBERTS:  Even a status conference.

13          THE COURT:  Mr. Roberts, normally in a regular civil

14    case I have a presettlement telephone call that is off the

15    record where the parties talk about the relative merits of the

16    case and where they have been in the past in terms of

17    settlement discussions, if there has been discovery that needs

18    to be exchanged and so on.  At that telephone conference is

19    when I set the settlement conference date.  I don't want this

20    case to slip too far.

21          In the event that CCR elects not to enter an

22    appearance, we need to address that.  And having addressing

23    that on the 4th will be necessary.  we are not doing the 4th

24    anyway because you have a doctor's appointment.

25          My point is, having a next status conference a month

1   or so from now is not unreasonable whether CCR enters an

2   appearance or not and whether it's limited or not.  We need to

3   see where we are.  If they elect not to enter an appearance, we

4   need to figure out what we are going to do, where we are going

5   to go from there.  If they do enter an appearance and we are

6   going to be talking about settlement, that's when we will

7   schedule the settlement conference, and you will need enough

8   time to prepare for the settlement conference.  If we are going

9   to schedule something in late October or November, that's about

10  as much time as I would like the parties to prepare for a

11  settlement conference.

12          The following week, the week of October 7, I could try

13  to see you early in the morning on the 11th or early in the

14  morning on the 7th.  By early I mean either 9 or 9:30.

15          MR. ROBERTS:  I routinely have a doctor's appointment

16  Friday mornings, but I could be here by 10:30 on Fridays.  I

17  take it the 7th is a Monday.  I don't have a calendar in front

18  of me.  Is the 7th a Monday?

19          THE COURT:  Yes.

20          MR. ROBERTS:  That day works or any Monday.

21          THE COURT:  The next conference, in-person conference,

22  will be on October 7, which is a Monday at 10:30 in the

23  morning.

24          Ms. Lopez.

25          MS. LOPEZ:  Yes, your Honor.

 1                THE COURT:  I thought you were going to say something.

 2                MS. LOPEZ:  I was just making sure we were on the same

 3     page.

 4                THE COURT:  October 7, 10:30 a.m.

 5                MS. LOPEZ:  I did have one other thing I wanted to

 6     bring up.  I can't stress enough.  I am not trying to take any

 7     steps backwards or any of the steps forward that we have taken

 8     in this case.  However, plaintiff has brought up the fact that

 9     I believe that Mr. Roberts last counteroffer --

10                THE COURT:  Wait, wait.  Settlement discussions need

11     to be confidential.  We have a court reporter here.  I now have

12     at least one attorney for my next conference sitting in the

13     courtroom.  Can you talk about it more generally, about your

14     issue more generally without disclosing --

15                MS. LOPEZ:  What's in the offer there was a reasonable

16     accommodation that I do not think can be deprived, even if

17     plaintiff does not take this universal settlement.

18                I continuously feel that although all parties

19     understand that homelessness is the central issue in this case,

20     I'm pretty sure that no relief has been ordered by this Court

21     to resolve the central issue.  And even if we resolve with

22     settlement, we are either putting a Band-Aid on something or

23     let it heal in open air, whatever figurative term you want.

24                The issue at the center of the case, that is also

25     unaddressed with the contingent accommodation, if I'm skirting

```
 1   around it, I just think it's illegal.  It is patently illegal
 2   for him to have attached that stipulation to that
 3   accommodation.  And I think the Court should order the
 4   accommodation that the issue was central to this case and it
 5   represents a pivot on the part of the municipal defendants.  It
 6   should be addressed.
 7          THE COURT:  We can talk about it more when we talk
 8   about how settlement conferences are different from open
 9   litigation.
10          But one of the issues here is, I'm only the magistrate
11   judge in this case, so I do not have the authority to enter any
12   kind of injunctive relief or case dispositive relief.  The only
13   instances where something like that may happen is where I'm
14   successful in the settlement conference, but that's only
15   because both parties agree with what should happen.  Even then
16   the district judge is the one who enters the final order
17   resolving the case.
18          I hear you loud and clear.  I understand and I think I
19   know what your issue is because you have raised it before and
20   you have raised it with me before when we broke out in our
21   separate sessions when we were first talking about settlement,
22   I believe earlier in the spring.  I will keep that thought in
23   mind.  Believe me.
24          MS. LOPEZ:  Yes, your Honor.
25          THE COURT:  Anything else?
```

1          MS. EZIE:  No, your Honor.

2          THE COURT:  Ms. Lopez, anything else for today?

3          MS. LOPEZ:  No, your Honor.  Thank you.

4          THE COURT:  Mr. Roberts.

5          MR. ROBERTS:  No, your Honor.

6          THE COURT:  Defendants are directed to order the

7     transcript and provide a copy to Ms. Lopez.  I'll see you on

8     October 7.

9          Thank you.  We are adjourned.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25