JaiWlopC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MARIAH LOPEZ,

4                    Plaintiff,

5               v.                          17 Civ. 3014 (VEC)(OTW)

6    PROJECT RENEWAL, *et al.*,

7                    Defendants.
                                           Conference
8    ------------------------------x
                                           New York, N.Y.
9                                          October 18, 2019
                                           11:30 a.m.
10
     Before:
11
                            HON. ONA T. WANG,
12
                                           U.S. Magistrate Judge
13

14                          APPEARANCES

15   ANDREA CHINYERE EZIE
          Attorney for Plaintiff
16
     GEORGIA M. PESTANA
17        Acting Corporation Counsel of the City of New York
          New York City Law Department
18        Attorney for Defendant City of New York
     BY:  THOMAS B. ROBERTS
19        Assistant Corporation Counsel

20   Also Present:  Brittany Francois, Esq.

21

22

23

24

25

JaiWlopC

1          (Case called)

2          MS. EZIE:  Hello.  Chinyere Ezie, constitutional

3    rights counsel for plaintiff Mariah Lopez, assisted by Ms.

4    Durante.

5          THE COURT:  Good morning.

6          Good morning, Ms. Durante.

7          MR. ROBERTS:  Thomas Roberts, assistant Corporation

8    Counsel, for the city, and I'm here today with Brittany

9    Francois who is counsel at DHS.

10          I just wanted to thank your Honor for accommodating my

11   schedule this morning.

12          THE COURT:  Oh, no.  In this case, it's all about

13   accommodating the litigants' schedules and needs.

14          I wanted to raise an issue that came up this morning

15   in case defendants weren't aware of it.  We had planned on

16   going forward with scheduling conferences on Mondays and

17   Fridays to accommodate Ms. Lopez, who is more able to be in the

18   city and be able to attend.  But unfortunately, I guess I'm

19   aware that Ms. Ezie called chambers this morning asking if

20   there was any way that Ms. Lopez could either participate or

21   attend by phone because she couldn't make it here today.

22          I think ultimately that was resolved, right, Ms. Ezie?

23          MS. EZIE:  It was, and I would appreciate if there's a

24   clarification on the procedure to follow in the future.  I

25   understood that telephonic appearance could be arranged just by

JaiWlopC

telephone call to chambers, but I did ultimately reach out to

Mr. Roberts.  I think we just both were beginning our commutes

by then.

THE COURT:  OK.  Here's the thing.  Telephonic

appearances are possible, but that's if Ms. Lopez is actually

representing herself and can't make it.  We have done that at

the last minute.  Or now, since you're attorney of record,

Ms. Ezie, if you couldn't make it, if somebody can't make it,

you can apply.  It's best to be done in advance with the other

side's consent.

And this goes for you, Mr. Roberts as well, with the

other side's consent.  That said, this is not the type of case

that I think lends itself to telephonic conferences.  I think

it's helpful for counsel to be here.  If Ms. Lopez wants to be

here, she, of course, is invited and free to attend.  But at

the same time, as long as she's represented, there will be a

transcript made of the conference and the transcript will be

made available.  I think it can sometimes make the proceedings

difficult when one or more parties appear by phone, even if

it's just a partial appearance.  And especially since we'll

have a transcript prepared shortly thereafter, there shouldn't

be any issues that then arise that could not be addressed later

with the benefit of a transcript anyway.

That's going forward.  In the event that something

comes up and somebody can't attend, this is how you make your

JaiWlopC

1    application.  That said, in this case, I prefer to see you all

2    in person because I think it's most helpful.  And of course,

3    now that Ms. Lopez has counsel, she can opt to appear in person

4    or not appear in person, but I also don't think that listening

5    in by phone is productive in any way at this point.  OK?  But

6    that said, we'll try to keep future conferences on Mondays or

7    Fridays so that Ms. Lopez may attend if she chooses.

8           I have a couple of things.  I just wanted to go

9    through the joint agenda, I guess.  Should we look to schedule

10   a settlement conference, and if so, how much time, Ms. Ezie,

11   would you need to be getting up to speed conferring with Ms.

12   Lopez so that you could be prepared for a settlement

13   conference?

14          MS. EZIE:  Thank you, your Honor.

15          I think one question, obviously, is both the Court's

16   and the parties' availability for such a conference, but I was

17   hoping I could also get a little bit of insight about your

18   preferred practices for settlement conferences.  I think that

19   might assist me answering this question.

20          THE COURT:  Those are in my individual practices on

21   the website.

22          MS. EZIE:  OK.

23          THE COURT:  It's pretty clearly spelled out and, at a

24   minimum, in this case it will certainly be *ex parte* submissions

25   one week in advance.  But I think because Ms. Lopez has been

JaiWlopC

litigating this case on her own for quite some time, I want the

parties, when you come in for a settlement conference, to

roughly be on the same page, at least the parties and their

counsel, to understand what the scope of the discussions are,

what relief ultimately you might be willing to accept, how that

might play out in the negotiations.

Sometimes it might also fall to me, to counsel parties

and their lawyers on what might be realistic or doable from the

other side's perspective.  But those are all conversations that

I expect the attorneys and the decision-makers and their

clients will be having all along as they're working on writing

their settlement submissions, because I'll take those

settlement submissions and go from there in terms of OK, what

are we going to talk about here, where do I think that the

parties may have some flexibility or some overlap?

The reason why these submissions in particular are *ex

parte* -- I don't require that in all my cases, but in this one

I think it's very helpful for it to be *ex parte* because then

there won't be any need to feel like you need to send any sort

of a message or take a particular position because you know the

other side won't be seeing it, and I think that works for both

sides in this case.  I'd like everybody to look at a potential

settlement in terms of from a problem-solving perspective.

Right?  We have an issue, we have a problem, what are ways to

get over that problem?  And understanding also that defendants,

JaiWlopC

```
1    because the defendants are who they are, have limited

2    flexibility, not just in terms of, say, a monetary settlement

3    but in terms of other avenues that Ms. Lopez might want, that

4    there are potentially different ways to look at it, but

5    ultimately there might be problems with flexibility, and

6    that'll be up to me to assess also.  OK?

7              MS. EZIE:  Thank you.

8              THE COURT:  But definitely take a look at my

9    individual practices.  They're available on the website.  They

10   should set everything out.  And then we can look at dates, but

11   as long as I understand that both parties are still interested

12   and willing to come in for a settlement conference, I think we

13   can get you in.

14             THE COURT:  Yes, Mr. Roberts.

15             MR. ROBERTS:  Your Honor, I agree with everything you

16   just said, but I'd sort of suggest before we schedule a date

17   for settlement conference, I think Ms. Ezie and my clients need

18   to talk.  And I don't think I say anything inappropriate, or

19   stop me, but I talked to her and she is interested in some sort

20   of systemic relief, and I sent her this sort of relatively

21   significant package of our training on these issues, our

22   policies on these issues, and then also a settlement that we,

23   DHS, entered into with city's commission on human rights

24   concerning treatment of transsexual clients.

25             THE COURT:  Transgender clients, right?
```

JaiWlopC

1          MR. ROBERTS:  I'm sorry.

2          And I have this feeling that before scheduling a date,

3     there should be a bunch of work the lawyers do to see what the

4     systemic relief they're requesting is, what can be done and

5     that we probably send you, have a date and then possibly send

6     you a status letter.

7          THE COURT:  OK.

8          MR. ROBERTS:  But I have this feeling, you were

9     looking at the calendar, that if you calendar or schedule the

10    settlement conference, like, a month or something from now, I

11    have this feeling that's going to be entirely premature, that

12    it wouldn't be productive for us, and that there's a fair

13    amount of work that needs to be done by the lawyers.

14         THE COURT:  By the lawyers.

15         Ms. Ezie, is that right?

16         MS. EZIE:  That's Mr. Roberts's position.  He did

17    communicate that to me this morning, and I think we're open to

18    having preliminary discussions with counsel.

19         THE COURT:  OK, but Mr. Roberts just held up a packet.

20         Mr. Roberts, was that provided to Ms. Lopez or to

21    Ms. Ezie?

22         MR. ROBERTS:  Ms. Ezie.

23         THE COURT:  OK.  All right.

24         Yes.  I expect the parties to have done some work.

25    And Ms. Ezie, I recognize that you're coming in here about two

JaiWlopC

```
1    years after, while this case has been proceeding for two years.
2    I think maybe what I can do is set a status-letter date now and
3    in that you can discuss or propose maybe particular days that
4    you think might work for you all for a settlement conference.
5    I may or may not have time by then, but at least I'll get a
6    sense of how far out we need to have that be scheduled.
7             For the status letter I don't expect you to have
8    resolved anything.  I think I'd want you to have a
9    conversation.  Maybe in the next week have a conversation about
10   how much prework you both should be doing before an actual
11   settlement conference and how much of that prework you need to
12   do in order to prepare a fairly fulsome presettlement
13   conference submission, because you will have written product
14   you'll need to produce.  Right?
15            Why don't you take the next week and submit a joint
16   status letter on October 25 to just let me know that you've had
17   these discussions about what types of prework you might need to
18   do and how long you might need to do that, and then at that
19   point maybe propose either some dates or some weeks where you
20   think you might be ready for a settlement conference,
21   recognizing that you'll need to make your submissions one week
22   in advance.  OK?
23            MS. EZIE:  Your Honor, just looking at my calendar, I
24   know that next week I'll be out of the office for quite a bit,
25   and I understood from Mr. Robert's proposal, we were hoping
```

JaiWlopC

```
1    that we would have some more detailed discussions about the
2    actual, the settlement postures of the parties.  So just to
3    facilitate time for those conversations, might we have a date
4    that's perhaps two to three weeks from now?
5            THE COURT:  OK.  November 1 instead.  OK?
6            And remember, I'm not saying that you have to have
7    made progress on those discussions.  I think I'd like you to
8    just talk about what you think you would each need to do in
9    terms of prework to prepare.  OK?  Because I would like you to
10   have at least some preliminary discussions about what types, if
11   systemic relief is being sought, what types of systemic relief
12   are being sought that are not already being addressed or aren't
13   being addressed quickly enough, in Ms. Lopez's view, and what
14   that might mean.  OK?
15           This actually bleeds into or segues into plaintiff's
16   motion for class certification, which was going to be denied
17   when Ms. Lopez was pro se.
18           I was wondering, Ms. Ezie, if you might be intending
19   to file a renewed motion for class cert.
20           MS. EZIE:  So, your Honor, with respect to that
21   motion, what I was going to respectfully request is that it be
22   either withdrawn or denied without prejudice to refile.  It is
23   my hope that settlement discussions between myself and
24   defendants would be productive in the next few weeks and
25   months, but in the event that we're not able to reach a meeting
```

JaiWlopC

1   of the minds, at that point in time I would be seeking to have

2   a scheduling order entered and some provision found for

3   plaintiff to file a renewed class motion.

4          THE COURT:  OK.  And then the other thing that

5   Ms. Lopez had been trying to do and had been running into

6   trouble with was getting her sealed family court records.

7          Does either side have an update on that?

8          MS. EZIE:  Mr. Roberts and I spoke briefly about that

9   matter over email last week, and I think that we had placed it

10   within the bucket of fact discovery matters that do need to be

11   attended to if we're unable to reach settlement.  But it was my

12   suggestion, particularly just in the spirit of conserving

13   resources, to really focusing on settlement issues.

14          THE COURT:  All right.

15          Was there anything else?  I think that takes care of

16   the issues on the joint agenda.  Is there anything else that

17   anybody wanted to raise today?

18          MS. EZIE:  Nothing here, your Honor.

19          MR. ROBERTS:  No, your Honor.

20          THE COURT:  OK.  Again, the city is directed to order

21   a copy of the transcript.  Provide a copy to Ms. Ezie so that

22   she can provide it to Ms. Lopez.

23          I'm not going to set a follow-up date for you all

24   because I will wait to see the status report on November 1, and

25   then hopefully we'll be able to set up a settlement conference

JaiWlopC

1    date.  OK?

2              All right.  Anything else?

3              MS. EZIE:  Not here.  Thank you, your Honor.

4              THE COURT:  Thank you very much.

5              We are adjourned.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25