UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIAH LOPEZ,

                              Plaintiff,

            -against-

THE NEW YORK CITY DEPARTMENT OF
HOMELESS SERVICES, et al.

                              Defendants.

---

**PLAINTIFF MARIAH LOPEZ'S
BRIEFING ON JURISDICTION AND
ANCILLARY MATTERS**

Case No. 1:17-cv-03014-MKV-OTW

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

    Relevant Appellate Procedural History ........................................................................ 2

DISCUSSION ..................................................................................................................... 3

I.  The Parties Fully Complied with the Court's Orders Because its Prior Request for Jurisdictional Briefing was Conditional.......................................................................... 3

    A.  This Court Previously Limited its Request for Jurisdictional Briefing to Instances Where the Parties Moved to Restore the Action for Judgment. .................................. 3

    B.  The Parties Never Sought to Reopen the Case, so the Court's Conditional Briefing Requirement was Never Triggered. ........................................................................... 4

    C.  Plaintiff's Request for Attorneys' Fees and Costs Did Not Reopen the Case for Merits Litigation Purposes. ....................................................................................... 5

II.  Courts Enjoy Collateral Jurisdiction Over Attorneys' Fees Motions, Regardless of Whether Other Forms of Jurisdiction Exist. ................................................................. 6

III.  Article III Jurisdiction Continuously Existed Throughout this Litigation Based on Plaintiff's Request for Damages, so Adjudicating Whether Her Injunctive Claims Could Also Proceed to Trial Constitutes an Impermissible Advisory Opinion.................. 7

    A.  Plaintiff Meets All the Requirements of Standing. ...................................................... 8

    B.  Ms. Lopez's Injunctive Relief Claims are Not Relevant to the Question of Article III Jurisdiction. ........................................................................................................ 10

    C.  Ms. Lopez's Places of Residence are Not Germane to Any Other Matter Presently Before the Court.................................................................................................... 11

IV.  Plaintiff's Injunctive and Declaratory Relief Claims Remained Ripe for Resolution, to the Extent the Court Decides to Reach the Issue. ........................................................ 12

    A.  Plaintiff's Injunctive Claims Never Became Moot..................................................... 13

    B.  Plaintiff Could Also Have Addressed Mootness Concerns through a Complaint Amendment......................................................................................................... 14

V.  The Parties' Participation in a Court-Sanctioned Settlement Process Does Not Negate the Fact that a Live Case and Controversy Existed Between Adverse Parties. ................. 16

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    722 F.2d 988 (2d Cir. 1983)...........................................................................18

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
    825 F.2d 634 (2d Cir. 1987)...........................................................................17

*Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*,
    710 F. Supp. 983 (S.D.N.Y. 1989).................................................................18

*Authors League of Am., Inc. v. Ass'n of Am. Publishers*,
    619 F. Supp. 798 (S.D.N.Y. 1985).................................................................16

*Barrows v. Becerra*,
    24 F.4th 116 (2d Cir. 2022) .............................................................................9

*Beyah v. Coughlin*,
    789 F.2d 986 (2d Cir. 1986)...........................................................................10

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993)...........................................................................15

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)...........................................................................10, 17, 18

*Carver v. City of New York*,
    621 F.3d 221 (2d Cir. 2010)...........................................................................13

*Chafin v. Chafin*,
    568 U.S. 165 (2013).......................................................................................12

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...........................................................18

*Chen-Oster v. Goldman, Sachs & Co.*,
    251 F. Supp. 3d 579 (S.D.N.Y. 2017).......................................................10, 11

*Chesley v. Union Carbide Corp.*,
    927 F.2d 60 (2d Cir. 1991)...........................................................................6, 7

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990)......................................................................................6, 7

*County of Los Angeles v. Davis*,
    440 U.S. 625 (1979).......................................................................................13

*Decker v. Nw. Env't Def. Ctr.*,
    568 U.S. 597 (2013) ........................................................................................10

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...............................................................................9

*Flast v. Cohen*,
    392 U.S. 83 (1968) ...........................................................................................16

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 179 (2d Cir. 1987) .............................................................................12

*In re Austrian & German Bank Holocaust Litig.*,
    317 F.3d 91 (2d Cir. 2003) .................................................................................6

*In re Big Apple Volkswagen, LLC*,
    571 B.R. 43 (Bankr. S.D.N.Y. 2017) ..................................................................9

*Karol v. City of New York*,
    396 F. Supp. 3d 309 (S.D.N.Y. 2019) ...............................................................17

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) ........................................................................................10

*Lloyd v. City of New York*,
    43 F. Supp. 3d 254 (S.D.N.Y. 2014) .................................................................14

*Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
    478 U.S. 501 (1986) ........................................................................................12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................9

*Muller v. Olin Mathieson Chem. Corp.*,
    404 F.2d 501 (2d Cir. 1968) ...............................................................................8

*Muze Inc. v. Digit. on Demand, Inc.*,
    356 F.3d 492 (2d Cir. 2004) ...............................................................................5

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017) .............................................................................15

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ........................................................................................11

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ...............................................................................7

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) ................................................................................................6

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...............................................................................17

*Tavarez v. Moo Organic Chocolates, LLC*,
    No. 21-CV-9816 (VEC), 2022 WL 17094631 (S.D.N.Y. Nov. 21, 2022) ............14

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ..............................................................................................14

*Town of New Windsor v. Tesa Tuck, Inc.*,
    919 F. Supp. 662 (S.D.N.Y. 1996) ......................................................................15

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
    775 F.3d 128 (2d Cir. 2014) ...........................................................................7, 12

*Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*,
    71 F.3d 1053 (2d Cir. 1995) ...........................................................................5, 6, 7

*Van Wie v. Pataki*,
    267 F.3d 109 (2d Cir. 2001) ...............................................................................11

*Wiwa v. Royal Dutch Petroleum Co.*,
    No. 96 Civ. 8386 (KMW)(HBP), 2007 WL 2844832 (S.D.N.Y. Sept. 28,
    2007) .....................................................................................................................15

*White v. N.H. Dep't of Emp. Sec.*,
    455 U.S. 445 (1982) ............................................................................................6, 7

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir. 2018) ..................................................................11, 12, 16

## Rules

Fed. R. Civ. P. 15(a)(2) ...................................................................................14, 15

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...............................................................................3

Fed. R. Civ. P. 54(d) ...........................................................................1, 2, 3, 5, 7, 18

Fed. R. Evid. 201 ...................................................................................................17

S.D.N.Y. Local Civil Rule 83.9 .............................................................................17

S.D.N.Y. Local Civil Rule 83.9(d) ........................................................................18

Hon. Mary Kay Vyskocil's Individual Civil Practice Rule 6(C)......................................................12

**Statutes**

N.Y. Gen. Oblig. Law § 5-701.............................................................................................................9

# INTRODUCTION

Plaintiff commenced her Second Circuit appeal based on her sincere—rather than feigned—confusion as to why the Court foreclosed her ability to file a timely motion for attorneys' fees and costs, pursuant to the post-dismissal process contemplated by Rule 54(d) of the Federal Rules of Civil Procedure, after this action concluded in November 2021. The two Orders from this Court surfacing concerns about jurisdiction were conditional: they each expressly required the Parties to address the Court's concerns only *if* settlement negotiations failed *and* if the Parties sought to restore the action and proceed to summary judgment or trial. Because those conditions never came to pass and the case was voluntarily dismissed following the execution of a private settlement agreement, briefing never came due under the Court's Orders. The question of the Court's pre-existing jurisdiction to continue to adjudicate the merits of the prior dispute also became moot.

Following dismissal, this Court retained corollary jurisdiction to resolve a fee petition under Rule 54(d)—jurisdiction that exists independent of any pre-existing jurisdiction on the merits. At this point in the litigation, approximately eighteen months since the merits of the case was resolved and dismissed, opining about whether the Court retained pre-dismissal jurisdiction would be a theoretical exercise without concrete consequences for the Parties, akin to an unwarranted advisory opinion.

In any event, because Plaintiff's Complaint sought retrospective relief in the form of damages arising out of the harms she alleged Defendants caused her, a "live case or controversy" certainly existed from the time of the Complaint's filing through to the date of dismissal. Plaintiff submits she retained the requisite injury to support her request for declaratory and injunctive relief, but contends that such a showing is unnecessary given the underlying existence of jurisdiction

over her damages claim and because parties are free to enter into settlement agreements (and consent decrees) that contain additional remedial terms. Critically, as Plaintiff communicated to the Court and Defendants prior to commencing settlement negotiations, Plaintiff was prepared to amend her Complaint to make it a class action on behalf of other similarly situated individuals experiencing ongoing injuries if settlement proved untenable. Defendants also consented to this plan. The fact that this contingency was available—and which would have easily cured any jurisdictional deficiencies the Court perceives regarding Plaintiff's pre-dismissal injunctive relief claims—further underscores why it would be conjectural and inappropriate to try to ascertain today whether the Court maintained jurisdiction for injunctive relief as of November 2021.

Because the law respecting attorneys' fees motions and the Court's prior Orders support her request to file an attorneys' fees motion, Plaintiff respectfully requests that the Court authorize her motion to proceed.

<u>Relevant Appellate Procedural History</u>

On December 23, 2021, Plaintiff Mariah Lopez commenced an appeal of this Court's November 29, 2021 Order ("November 29th Order") denying her the ability to seek attorneys' fees after this matter concluded, ECF Nos. 260, 261,[1] contrary to Rule 54(d) of the Federal Rules of Civil Procedure and the Court's prior Order of October 7, 2021 ("October 7th Order"). ECF No. 242. The October 7th Order authorized Plaintiff to file an attorneys' fees motion after the Parties memorialized their settlement, stating in pertinent part "Plaintiff's time to seek attorney's fees and costs under Rule 54 of the Federal Rules of Civil Procedure is extended to fourteen days after the parties have finalized their settlement agreement." ECF No. 242 at 1. In contrast, the November

---

[1] Unless otherwise specified, all ECF citations are in reference to *Lopez v. New York City Department of Homeless Services et al.*, Case No. 17-cv-03014 (MKV)(OTW) (S.D.N.Y. filed Apr. 25, 2017). Familiarity with the relevant factual background is assumed.

29th Order, filed shortly after the Parties executed their settlement agreement and filed a Stipulation of Voluntary Dismissal,[2] states in its entirety: "This case was dismissed with prejudice on November 23, 2021. The case is closed. The Court is not retaining jurisdiction, and the parties may not file any new motions." ECF No. 260.

On February 24, 2023, the U.S. Court of Appeals for the Second Circuit issued an order stating "it is unclear from the record whether the district court intended its November 29th order to supersede its prior order of October 7th, which granted Lopez's request to seek attorney's fees and costs under Rule 54(d) of the Federal Rules of Civil Procedure within fourteen days of the parties' final settlement." ECF Nos. 262, 263.  The Second Circuit remanded Plaintiff's appeal to the District Court with instructions that it determine whether its "November 29th order did supersede its October 7th order, thereby precluding Lopez from making a motion for attorney's fees and costs[.]" ECF Nos. 262, 263.

On May 4, 2023, this Court requested briefing from the Parties concerning "whether Plaintiff had standing and there was a live case or controversy between the parties before the parties reached their settlement." ECF No. 264 at 2. Plaintiff now responds as follows.

**DISCUSSION**

**I.   The Parties Fully Complied with the Court's Orders Because its Prior Request for Jurisdictional Briefing was Conditional.**

A.   This Court Previously Limited its Request for Jurisdictional Briefing to Instances Where the Parties Moved to Restore the Action for Judgment.

As a preliminary matter, the Court's May 4, 2023 Order ("May 2023 Order") is the first order that has required the Parties to brief issues related to the Court's jurisdiction. ECF No. 264. Prior to issuing its May 2023 Order, the Court only requested briefing on jurisdiction in the event

---

[2] Due to a technicality, the Parties' Stipulation of Voluntary Dismissal filed pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure was docketed two times. *See* ECF Nos. 258, 259.

a condition precedent was met. This condition precedent was a motion by the Parties to restore the action to the Court's active calendar, in the event their settlement talks failed to conclusively settle the case. ECF Nos. 246 at 1, 257 at 2. In an Order issued on November 8, 2021, the Court stated: "*If the parties move to restore* this action to the Court's calendar, they must satisfy the Court that there is a live case or controversy." ECF No. 246 at 1 (emphasis added). The Order also indicated that the Parties would "be required to move promptly for summary judgment or proceed to trial," *id.*, if they availed this procedure, thereby linking its request for jurisdictional briefing to a request by the Parties to continue the litigation through to a judgment on the merits.

The language on briefing that appears in the Court's November 23, 2021 Order, which extended the Parties' deadline to conclude settlement negotiations by a single day, was similarly conditional. ECF No. 257 at 2. The Order stated that jurisdictional briefing would be required "[i]f the parties *fail to resolve the matter today* [November 23, 2021] and move to restore the action." *Id.* (emphasis added). Thus, the Court's prior Orders, taken together, only required the Parties to brief issues related to jurisdiction in the event they (1) sought to restore the action to the Court's calendar for decision on the merits because (2) settlement negotiations failed. ECF Nos. 246, 257. The question of the Court's jurisdiction to hear the underlying merits of the dispute became moot when the dismissal finally ended the controversy between the parties.

B.  The Parties Never Sought to Reopen the Case, so the Court's Conditional Briefing Requirement was Never Triggered.

After the Court outlined its procedure for restoring litigation to the Court's docket for judgment on the merits, the Parties' settlement negotiations resumed. The Parties worked tirelessly to resolve their many disputes under the close supervision of S.D.N.Y. Magistrate Judge Hon. Ona T. Wang. *See, e.g.*, ECF Nos. 248, 249, 250, 251, 253, 254, 255, 257. And, ultimately, the Parties agreed to and executed their settlement on November 23, 2021—the final deadline provided by

the Court—as memorialized in their Stipulation of Voluntary Dismissal filed that same day. ECF No. 258. Because the Parties dismissed the action with prejudice instead of seeking to restore it, briefing on questions of jurisdiction never came due under the plain language of the Court's Orders. *See* ECF Nos. 246, 257 (conditioning briefing on the filing of a restoration motion that never arose); *Muze Inc. v. Digit. on Demand, Inc.*, 356 F.3d 492, 494 (2d Cir. 2004) ("A district court's discretion to interpret its own order . . . does not extend to inserting a new provision."). As such, the Parties and their counsel did not "blatantly disregard[]" any of the Court's prior Orders. ECF No. 264 at 1. Instead, the Parties complied with the Court's Orders by working exhaustively to resolve their disputes by the Court-ordered deadline in November 2021. ECF Nos. 257, 258.

C. Plaintiff's Request for Attorneys' Fees and Costs Did Not Reopen the Case for Merits Litigation Purposes.

The Parties' Stipulation of Voluntary Dismissal, ECF No. 258, also supports the conclusion that the briefing related to jurisdiction never came due under the Court's prior Orders. The Stipulation of Voluntary Dismissal closed the matter and dismissed it with prejudice, ending the merits phase of this litigation. ECF No. 258. Although the Stipulation indicated that Plaintiff was reserving her entitlement to seek fees pursuant to the Court's prior Orders and applicable law, this language did not have the effect of restoring the Parties' underlying case. *Id.*; *see also* ECF No. 260 (acknowledging dismissal with prejudice effective Nov. 23, 2021). The Stipulation merely acknowledged—consistent with the Court's prior Orders and well-settled law—that Plaintiff could seek attorneys' fees now that the Parties' litigation had concluded. *See, e.g.*, Fed. R. Civ. P. 54(d) (authorizing post-judgment attorneys' fees motions); *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1055-57, 1060 (2d Cir. 1995) (same); ECF No. 242 (Oct. 7, 2021 Order authorizing Plaintiff to "seek attorney's fees and costs under Rule 54 . . . after the parties have finalized their settlement agreement").

Pertinent here, fee motions are not the functional equivalent of merits proceedings, let alone the summary judgment proceedings or trial that the Court contemplated would need to ensue if it restored the case. *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 170 (1939); *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 452 (1982) (attorneys' fees awards are "separable from the cause of action to be proved at trial"). Rather, as the Supreme Court has repeatedly held, "motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (citing *Sprague,* 307 U.S. at 170); *accord White*, 455 U.S. at 452 (1982).

Because Plaintiff's request to have her attorneys' fees motion heard following dismissal was not a request to reopen the case but "an inquiry separate from the decision on the merits," *White*, 455 U.S. at 451-52, briefing on jurisdiction was never required under the plain language of the Court's prior Orders. ECF Nos. 246 at 1, 257 at 2.[3]

## II.   Courts Enjoy Collateral Jurisdiction Over Attorneys' Fees Motions, Regardless of Whether Other Forms of Jurisdiction Exist.

Although Plaintiff contends that Article III jurisdiction existed in this case at all times relevant to this litigation, *see* Section III, *infra*, the binding case law is clear that the Court has jurisdiction to decide Plaintiff's attorneys' fees motion following the November 23, 2021 dismissal of this action. More specifically, the Court's jurisdiction to decide attorneys' fees motions exists regardless of whether it had the jurisdiction to review this case on the merits because attorneys' fees are a collateral issue over which district courts have independent jurisdiction. *Valley Disposal*, 71 F.3d at 1055-57, 1060; *see also Cooter & Gell*, 496 U.S. at 395-96; *In re Austrian & German Bank Holocaust Litig.,* 317 F.3d 91, 98 (2d Cir. 2003); *Chesley v. Union Carbide Corp.,* 927 F.2d

---

[3] Nor was it required under the well-settled law governing courts' ability to resolve all such motions, as discussed in Section I, *supra*.

60, 65 (2d Cir. 1991). "'[A] federal court may consider collateral issues after an action is no longer

pending,' including motions for . . . attorney's fees . . . because they are 'not a judgment on the

merits of an action.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)

(quoting *Cooter & Gell*, 496 U.S. at 395-96). Thus, "even when a district court lacks subject matter

jurisdiction over an underlying action, it still possesses jurisdiction to [address collateral matters]

arising from the underlying case," *id.*; *accord Valley Disposal*, 71 F.3d at 1055-57, 1060, and fee

motions can be adjudicated "years after the entry of a judgment on the merits," or "after an action

is dismissed for want of jurisdiction." *Cooter & Gell*, 496 U.S. at 395-96 (quoting *White*, 455 U.S.

at 451 n.13).

Because this Court has the ability to decide Plaintiff's fees motion pursuant to the collateral

jurisdiction that *all* federal district courts enjoy to decide such matters, *id.*, Plaintiff respectfully

requests that the Court enter an order providing her "a new fourteen-day period to file a motion

for attorney's fees and costs under Rule 54(d)," ECF Nos. 262, 263, consistent with the Second

Circuit's February 24, 2023 mandate and governing law.

### III. Article III Jurisdiction Continuously Existed Throughout this Litigation Based on Plaintiff's Request for Damages, so Adjudicating Whether Her Injunctive Claims Could Also Proceed to Trial Constitutes an Impermissible Advisory Opinion.

As described *supra* in Section I, Plaintiff contends, consistent with the terms of the Court's

own Orders, that the question of the Court's jurisdiction over the underlying merits of the case

became moot at the time the case was voluntarily dismissed. "A voluntary dismissal without

prejudice 'vitiate[s] and annul[s] all prior proceedings and orders in the case, and terminat[es]

jurisdiction over it for the reason that the case has become moot.'" *U.S. D.I.D. Corp. v. Windstream*

*Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014) (citation omitted). Given that the case was

unambiguously dismissed with prejudice on November 23, 2021 and no orders remain pending,

7

ECF No. 260, adjudicating whether the Court previously had jurisdiction over the merits—with no material consequences for the Parties once before the Court—would represent a disfavored advisory opinion. *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir. 1968) (only definite, concrete and substantial controversies are justiciable; hypothetical, abstract or academic ones are not).

Nevertheless, with respect to the questions addressed by the Court's May 4, 2023 Order, Article III jurisdiction was proper in this matter at all times relevant to the litigation because Plaintiff had standing to bring the suit; an actual case or controversy existed between the Parties prior to dismissal; and Plaintiff's damages claims remained fully redressable, regardless of whether her claims for injunctive relief ultimately became moot.[4]

A.   Plaintiff Meets All the Requirements of Standing.

Plaintiff's Complaint alleges that Defendants violated her rights under the First and Fourteenth Amendments to the U.S. Constitution and federal, state, and local civil rights laws when they denied her emergency housing that reasonably accommodated her disabilities as a transgender woman with gender dysphoria, Post Traumatic Stress Disorder (PTSD), Major Depressive Disorder, anxiety, and insomnia. *See generally* ECF No. 83-1. Plaintiff alleges that Defendants subjected her to discrimination, harassment, and sexual harassment while she was a resident of NYC Department of Homeless Services (DHS) shelters, and subjected her to an involuntary and retaliatory transfer after she formally lodged complaints. *Id*. Plaintiff also asserts that she suffered physical and emotional injury such as worsening PTSD and psychological health as a result of Defendants' actions. *Id*. at 14-16. Plaintiff sought monetary damages as well as prospective injunctive relief as a remedy. *Id*. at 17-18.

---

[4] While Plaintiff contends that her injunctive relief claims were never mooted prior to dismissal, this question is no longer properly before the Court for the reasons discussed below in Section III, *infra*.

Plaintiff's allegations and the relief she requests in the operative Complaint are sufficient to satisfy all of the elements of standing. Specifically, Plaintiff has alleged: "(1) an 'injury in fact' that is (2) fairly traceable to the challenged action of the defendant and is (3) likely to be redressed by a favorable decision." *Barrows v. Becerra*, 24 F.4th 116, 127 (2d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). *See also, e.g., In re Big Apple Volkswagen, LLC*, 571 B.R. 43, 50 (Bankr. S.D.N.Y. 2017) ("emotional distress plainly constitutes a concrete injury for purposes of Article III standing."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) ("emotional or psychological harms [ ] suffice for standing purposes").

Because Plaintiff's claim for monetary damages remained redressable by this Court until the moment the action concluded, a live case or controversy existed until November 23, 2021 when the settlement was executed and the case was voluntarily dismissed. *See, e.g., Denney*, 443 F.3d at 266 (Article III standing was proper where plaintiffs could recover monetary damages in the event they prevailed).

Defendants agree that Plaintiff's damages claim provided this Court with an independent basis for Article III jurisdiction. ECF No. 266 at 3. However, they contend this claim was resolved when the Parties reached a verbal settlement in principle on September 23, 2021. *Id.* The notion that the Parties' settlement was achieved before it was even reduced to writing conflicts with reality and settled contract law. Plaintiff accepted a damages award that was far lower than what she expected to recover at trial, in exchange for Defendants' agreement to complete a series of policy reforms over a 5 year period. Ezie Dec. ¶ 9. Until the Parties' verbal agreement was memorialized in writing, it was not legally effective under governing law. *See, e.g.*, N.Y. Gen. Oblig. Law § 5-701 (N.Y. Statutes of Frauds, requiring that agreements be reduced to writing whenever their obligations cannot be completed within one year's time from the date of the contract); *see also*

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016) (rejecting the notion that "an unaccepted settlement offer can put a plaintiff out of court."). Accordingly, November 23, 2021—the date the settlement was executed in writing—not September 23, 2021 is the date by which Plaintiff's damages claims were extinguished.

B.   <u>Ms. Lopez's Injunctive Relief Claims are Not Relevant to the Question of Article III Jurisdiction.</u>

Next, the Court requests detailed information from Plaintiff concerning her places of residence at various stages of the litigation. ECF No. 264 at 12-13.[5] These questions appear to relate to the issue of whether Plaintiff's requests for injunctive and declaratory relief ever became moot. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (citing *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). Therefore, whether Plaintiff's case ever became moot turns on the nature of her request for relief. *Decker*, 568 U.S. at 610 (instructing courts evaluating their jurisdiction to consider only the scope of requested relief, not the plaintiff's likelihood of success on the merits).

In the operative Complaint in this case, Plaintiff requests monetary damages for her past injuries, in addition to prospective forms of relief. ECF 83-1 at 16-18. Although Plaintiff contends that her claims for injunctive and declaratory relief never became moot, the answer to this question is purely academic because Plaintiff's request for retrospective relief is more than sufficient to establish Article III jurisdiction. *See, e.g. Beyah v. Coughlin*, 789 F.2d 986, 988-89 (2d Cir. 1986) (fact that prisoner was no longer incarcerated did not moot prison condition case where damages were sought in addition to declaratory and injunctive relief); *Chen-Oster v. Goldman, Sachs &*

---

[5] Because Ms. Lopez is a victim of trafficking and stalking and some of her answers to the Court's questions implicate both her privacy and safety, Plaintiff separately moves to redact the Lopez Declaration filed herewith.

*Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017) ("Whether an 'injunctive relief [claim] can continue . . . is a question of mootness, not standing.'") (internal quotation omitted); *Van Wie v. Pataki,* 267 F.3d 109, 115 n.4 (2d Cir. 2001) ("[H]ad the plaintiffs sought money damages in addition to their request for injunctive relief, this controversy would not be moot.").

Because Article III jurisdiction is proper regardless of whether Ms. Lopez's claims for prospective relief could have proceeded to trial, attempting to adjudicate whether her injunctive relief claims also remained redressable may well constitute the very type of advisory opinion deemed impermissible by courts. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

C.   Ms. Lopez's Places of Residence are Not Germane to Any Other Matter Presently Before the Court.

In addition to being irrelevant to questions of jurisdiction, standing, or mootness, Ms. Lopez's current and former places of residence, whether she "presently is homeless or has a stable residence," and "the dates . . . [she was] in the custody of the Department of Homeless Services" are irrelevant to any other issues that were pending in this case prior to dismissal. ECF No. 264 at 12. Plaintiff's injunctive and declaratory relief claims were not submitted to the Court for decision on summary judgment or at trial, and the Court did not enter any injunctions that remained in effect at the end of the case. *See* ECF Nos. 8, 15. Instead, Plaintiff's lawsuit concluded via a private settlement agreement for which the Court relinquished enforcement jurisdiction, consistent with the Court's Order of October 6, 2021, which stated:

> [T]he parties are free to enter into a settlement agreement including whatever terms upon which they agree. Court approval is not required unless specifically mandated by statute or controlling law, and the Court is unlikely to endorse or retain jurisdiction over any settlement for which approval is not required.

ECF No. 242. *See also* Rule 6(C) of Hon. Mary Kay Vyskocil's Individual Rules of Practice in Civil Cases ("As a general rule, the Court will not retain jurisdiction to enforce settlement agreements").

Even if the Parties had been permitted to style their settlement as a consent decree, demonstrating that Plaintiff's injunctive claims could proceed to trial would not have been a prerequisite for the relief she ultimately obtained. *See Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (consent decrees may "provide[] broader relief than the court could have awarded after a trial.") (citations omitted); *accord In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 185 (2d Cir. 1987) ("[A] district court may provide broader relief in an action that is resolved before trial than the court could have awarded after a trial.") (cleaned up, internal quotations and citations omitted).

Finally, because this matter was dismissed with prejudice in November 2021—an act which "terminated jurisdiction" and "vitiated and annulled all prior proceedings," *Windstream Communications*, 775 F.3d at 134 (cleaned up), the Court's queries concerning Ms. Lopez's residence are neither justiciable nor germane. *See, e.g., Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (federal courts may not give opinions advising what the law would be in a hypothetical state of facts); *Zarda,* 883 F.3d at 110 (same).

## IV.   Plaintiff's Injunctive and Declaratory Relief Claims Remained Ripe for Resolution, to the Extent the Court Decides to Reach the Issue.

To the extent the Court still seeks to resolve whether Plaintiff's prospective relief claims remained ripe prior to the November 23, 2021 dismissal of this action, Plaintiff answers the question in the affirmative.

A. <u>Plaintiff's Injunctive Claims Never Became Moot.</u>

"To establish standing to obtain prospective relief, a plaintiff must show a likelihood that [s]he will be injured in the future." *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (cleaned up, internal quotations and citations omitted). Ms. Lopez makes the necessary showing here because she is a native New Yorker, born and raised in New York City, who has experienced numerous bouts of homelessness—as far back as the 1990s. Lopez Decl. ¶¶ 5-7. When Ms. Lopez became homeless again in 2017, she urgently sought emergency housing services from Defendants. Lopez Decl. ¶¶ 7, 18. However, instead of providing her safe or accessible shelter, Defendants discriminated against Ms. Lopez on account of her sex and disabilities, and subjected her to a retaliatory transfer when she complained. Lopez Decl. ¶ 18. Because the retaliatory transfer Ms. Lopez was subjected to constructively evicted her from shelter, Ms. Lopez's housing instability persisted for years, along with her need for emergency housing services. Lopez Decl. ¶¶ 19-22. Defendants also refused to change any of the policies or practices that led her to be harmed as a transgender woman—actions that all but ensured Ms. Lopez would continue to face discrimination if she relied on Defendants for housing services. Lopez Decl. ¶¶ 22-25.

Ms. Lopez's housing insecurity and the likelihood that she would face future discrimination within DHS did not meaningfully abate until the Parties executed a settlement on November 23, 2021 that established new training and anti-discrimination protocols for DHS shelter personnel and provided Ms. Lopez the funds to secure stable housing. Lopez Decl. ¶ 26.[6]

In this case, as in any other, it is the Defendants who bore "heavy" burden to demonstrate mootness, i.e. where "it can be said with assurance that there is no reasonable expectation that the alleged violation will occur." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (cleaned

---

[6] Additional particulars appear in Ms. Lopez's accompanying Declaration, filed herewith under seal.

up, quotations and citation omitted). In any event, prior to the Parties' settlement, Ms. Lopez also remained able to pursue her prospective claims under well-established exceptions to mootness, since the actions she challenged—i.e. Defendants' refusal to accommodate her disabilities or house her in a safe, non-discriminatory manner—were "too short to be fully litigated," yet almost certain to reoccur given Defendants' propensity to engage in retaliatory transfers and their lack of changed policies or procedures on discrimination prior to the settlement. *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 269–70 (S.D.N.Y. 2014) (internal quotations omitted) (action challenging custodial conditions was not mooted by transfer, because action was "capable of repetition, yet evading review."). Therefore, Plaintiff's claims for prospective relief were never mooted; they remained ripe and redressable.

## B. Plaintiff Could Also Have Addressed Mootness Concerns through a Complaint Amendment.

Additionally, Ms. Lopez's injunctive claims never became moot because any perceived defects in her pleadings could have been cured by a complaint amendment that added current DHS residents already known to Defendants as plaintiffs prior to trial.[7] *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[W]hen there are multiple plaintiffs[,] [a]t least one plaintiff must have standing . . . ."); *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 17094631, at *3 (S.D.N.Y. Nov. 21, 2022) (complaint amendment was permitted where it would serve to establish standing). Not only would such a measure have cured any mootness concerns the Court may have, but it would have been fully consistent with Rule 15(a)(2) of the Federal Rules of Civil Procedure and the Parties' expectations. *See* Fed. R. Civ. P. 15(a)(2)

---

[7] Because the Parties participated in settlement negotiations in this case subject to the understanding that the Complaint could be permissibly amended, *see* ECF No. 224, they entered into a tolling agreement with respect to the claims of eight additional transgender clients of DHS—a group that included a number of current DHS residents. Ezie Decl. ¶ 6.

(permitting pre-trial complaint amendments where the opposing party consents in writing *or* the court gives leave); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW)(HBP), 2007 WL 2844832, at *1 n.1 (S.D.N.Y. Sept. 28, 2007) (quotation omitted) ("Once the adverse party has consented to the amendment of a pleading, the court has no control over the matter under Rule 15(a).").

Indeed, before settlement talks began in earnest in this case, Ms. Lopez filed a Motion for Class Certification to restyle her lawsuit as a case brought on behalf of all transgender DHS residents who had been subjected to discrimination. ECF Nos. 143, 166. Plaintiff only withdrew this Motion after the Parties agreed to begin settlement talks to conserve judicial resources, subject to the express agreement that she could amend her Complaint and "re-file at a later date" in the event that talks failed. ECF Nos. 191, 224. Given Defendants' consent to this approach, ECF No. 224, and Plaintiff's reliance on past court orders, a Complaint amendment would have been fully authorized under the Federal Rules. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 675 (S.D.N.Y. 1996) ("Mere delay, absent bad faith or undue prejudice, does not provide a basis for denial of leave to amend."); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (ruling that "denial of leave to amend based solely on delay and litigation expense" where there had been "years of litigation" was an abuse of discretion).

The prospect that Plaintiff could have easily cured any perceived injunctive mootness concerns—but did not have to, given the settlement and voluntary dismissal—only reinforces the hypothetical, speculative, and advisory nature of the Court's proposed inquiry; an inquiry that falls

well outside the prohibition on advisory opinions and the strictures of Article III of the U.S. Constitution. *See Zarda*, 883 F.3d at 110.

**V.     The Parties' Participation in a Court-Sanctioned Settlement Process Does Not Negate the Fact that a Live Case and Controversy Existed Between Adverse Parties.**

Finally, a live case and controversy between adverse parties also existed in this litigation prior to dismissal, as the Parties' dispute was neither a "friendly suit" nor "feigned or collusive in nature." *Authors League of Am., Inc. v. Ass'n of Am. Publishers*, 619 F. Supp. 798, 804 (S.D.N.Y. 1985), *aff'd sub nom. Authors League of Am., Inc. v. Oman*, 790 F.2d 220 (2d Cir. 1986) (citing *Flast v. Cohen*, 392 U.S. 83, 100 (1968)). The Parties forcefully disagreed with each other at every stage of this litigation since its very inception, and the Parties' settlement negotiations were no exception. These disagreements extended to, *inter alia*: whether Defendants subjected Ms. Lopez to actionable sex and disability discrimination and unlawfully retaliated against her; whether procedural issues warranted dismissal of her litigation; whether Defendants satisfied their discovery obligations or were liable for sanctions; the precise value of Ms. Lopez's claim for monetary damages; and what the Parties would need to mutually agree to in order to avert the need for trial, down to the precise language that the settlement agreement contained, as the case docket colorfully demonstrates. Ezie Decl. ¶¶ 7-8; *see, e.g.,* ECF Nos. 197 (Joint Status Report discussing Plaintiff's and Defendants' positions on a discovery dispute), 199 (Defendants' Status Report detailing DHS's opposition to producing relevant records), 200 (Plaintiff's Motion to Compel Discovery, which describes unsuccessful meet-and-confers and details Plaintiff's arguments for access to relevant records), 224 (Defendants' Status Report describing unresolved settlement items related to the damages claim and policy changes), 235 (Plaintiff's Letter Motion Requesting a Status Conference to discuss "Defendants' dilatory conduct" regarding discovery and motion practice), 245 (Plaintiff's Letter Motion Requesting a Status Conference, describing "challenges

16

the Parties have encountered while trying to memorialize their settlement agreement and the need for ongoing Court supervision"), 247-255 (Orders scheduling status conferences with Magistrate Judge Wang to oversee settlement negotiations), 256 (Joint Motion for Extension of Time to negotiate settlement, discussing how even on the day the Stipulation was signed Parties were "still negotiating language on a small number of settlement provisions").  Even the Parties' settlement fell short of resolving all these matters, as Defendants refused to include a statement admitting their liability. Ezie Decl. ¶ 7.

Indeed, the degree of adversity between the Parties was so pronounced that Hon. Magistrate Judge Wang was repeatedly called upon to mediate the Parties' disputes, including over successive days in November 2021. Ezie Decl ¶ 8; ECF Nos. 247-255 (scheduling telephonic and in-person settlement conferences with the Parties and Judge Wang). A tense dispute even exists between the Parties to this day regarding the extent to which Plaintiff is entitled to attorneys' fees, hence the need for this ongoing fee litigation.[8] Ezie Decl. ¶ 9. As such, the Parties' participation in a court-sanctioned settlement process *should not* be a basis for concluding that Article III jurisdiction does not exist. *See* S.D.N.Y. Local Civil Rule 83.9 ("The U.S. District Court for the Southern District of New York provides litigants with opportunities to discuss settlement through judicial settlement conferences and mediation."). *See also Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) ("The fact that the parties have arrived at a settlement agreement, however, does not lead inevitably to the conclusion that no controversy exists between the parties up to the time the judgment is entered."); *accord Campbell-Ewald*, 577 U.S. at 163  (until a settlement offer

---

[8] Defendants' press statements—made months after the conclusion of this lawsuit, during its implementation phase—do not alter this reality. Nor are they admissible evidence, as no federal rule permits courts to take judicial notice of news articles for the truth of the matter asserted, *sua sponte* or otherwise. *See Karol v. City of New York*, 396 F. Supp. 3d 309, 318 (S.D.N.Y. 2019) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008)) (explaining that the court could "not take judicial notice of the truth of the facts in the article" consistent with Fed. R. Evid. 201).

is accepted, "parties remain[] adverse"). As with any settlement, the adversity between the Parties led Plaintiff to obtain less than she had hoped for and Defendants to give up more than they wished.

A ruling that faulted the Parties for working to achieve a resolution of their litigation under the supervision of an S.D.N.Y. appointed magistrate judge would significantly "undermine the strong public policy favoring out of court settlements." *Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*, 710 F. Supp. 983, 987 (S.D.N.Y. 1989); *accord ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983) ("courts favor the policy of encouraging voluntary settlement of disputes"). *See also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012) (internal quotation omitted) ("Settlements are strongly favored as a matter of policy, because '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.'"). Penalizing the Parties for their settlement participation would also be inconsistent with the Local Rules for the Southern District of New York in effect at the time of the litigation, which state "In *all* civil cases . . . each party *shall consider* the use of mediation or a judicial settlement conference." S.D.N.Y. Local Civil Rule 83.9(d) (effective Oct. 15, 2021) (emphasis added).

## CONCLUSION

Because the law and this Court's Orders did not require Plaintiff to show standing for the underlying merits of the case once the case was concluded and dismissed, and because the Court unambiguously had Article III jurisdiction over this matter at all relevant times and collateral jurisdiction to hear Plaintiff's attorneys' fees motions, Plaintiff respectfully requests that the Court issue an order giving Plaintiff two weeks to file her attorneys' fees motion consistent with Rule 54(d) and the Second Circuit's Order, ECF No. 262.

Respectfully submitted,

A. Chinyere Ezie
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel./Fax: (212) 614-6467
Email: cezie@ccrjustice.org
Email: bazmy@ccrjustice.org

Alexander Chen
HARVARD LAW SCHOOL LGBTQ+ ADVOCACY CLINIC
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-2656
Email: achen@law.harvard.edu

*Attorneys for Plaintiff Mariah Lopez*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, counsel for Plaintiff Mariah Lopez served the

foregoing document on Defendants through their counsel of record.

/s/ A. Chinyere Ezie
A. Chinyere Ezie
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone/Fax: (212) 614-6467
Email: cezie@ccrjustice.org

*Counsel for Plaintiff Mariah Lopez*