UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIAH LOPEZ,<br><br>       Plaintiff,<br><br> -against-<br><br>THE NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, et al.<br><br>       Defendants. | **DECLARATION OF A. CHINYERE EZIE**<br><br>Case No. 1:17-cv-03014-MKV-OTW |

I, A. Chinyere Ezie, declare under penalty of perjury that the following is true and correct:

1. I am a Senior Staff Attorney at the Center for Constitutional Rights and one of Plaintiff Mariah Lopez's attorneys.

2. I joined these proceedings in the Fall of 2019 after the Court entered an Order directing the appointment of settlement pro bono counsel, and Ms. Lopez filed a *pro se* Motion for Class Certification.

3. Ms. Lopez's Motion for Class Certification provided Defendants with the names of additional transgender individuals who suffered discrimination, harassment, and injury while seeking emergency housing services from DHS. It also gave Defendants notice that their policies and practices had led to recurrent problems of sex and disability discrimination, retaliation, and harassment among transgender shelter residents.

4. Following the filing of Plaintiff's Class Certification Motion and my appearance, Defendants agreed to participate in Court-supervised settlement talks. The aim of these talks was to resolve Plaintiff's claims for damages and to address the systemic policies and practices that

were harming transgender shelter clients—policies that went to the heart of both of Plaintiff's injunctive relief claims and her class certification motion.

5. Because the Parties agreed that their settlement negotiations—if successful—would conserve judicial resources by averting the need for further complaint amendments or a ruling on Plaintiff's class certification motion, Plaintiff agreed to withdraw her class certification motion subject to Defendants' and the Court's agreement that she could amend her complaint and refile her Motion for Class Certification in the event that settlement talks failed.

6. Defendants also entered into a tolling agreement with respect to the claims of eight additional plaintiffs represented by Plaintiff's counsel who also alleged that they had been discriminated against by Defendants because of sex or disability. These eight additional plaintiffs included current DHS residents who were seeking the same policy changes as Plaintiff, and who planned to join the lawsuit if meaningful reform could not be achieved through the Parties' settlement talks.

7. Even after the Parties began settlement talks, the litigation between them remained contentious until the case's conclusion. The Parties had frequent disagreements, including disagreements about whether Defendants satisfied their discovery obligations or were liable for sanctions; the precise value of Ms. Lopez's claim for monetary damages; and the provisions that the Parties would mutually agree to in order to avert the need for trial, down to the precise language that the settlement agreement contained. For instance, Plaintiff wanted the settlement to contain an admission of liability on the part of Defendants, but Defendants resisted.

8. Because of the degree of adversity between the Parties, there were many instances where the settlement talks almost failed. The Parties repeatedly requested and attended emergency settlement conferences before Hon. Ona T. Wang, the S.D.N.Y. Magistrate Judge

assigned to the case, in an attempt to resolve their remaining disputes before the time allotted for settlement talks expired.

9. Because Defendants offered Plaintiff a damages award that was far lower than what she expected to recover at trial, she only agreed to its terms in exchange for an agreement that Defendants would complete a series of policy reforms over a 5 year period. Until these policy provisions—which included Defendants' multi-year commitment to train all shelter personnel, implement new policies on discrimination, and revamp DHS complaint procedures—were fully memorialized in writing, there was no agreement between the Parties whatsoever.

10. And although the Parties finally executed the settlement agreement in the eleventh hour of litigation—November 23, 2021, the Court-ordered deadline—our relationship to one another remains very challenging. For instance, a tense dispute exists between the Parties to this day regarding the extent to which Plaintiff is entitled to attorneys' fees, hence the need for this ongoing fee litigation.

Respectfully Submitted,

/s/ A. Chinyere Ezie
A. Chinyere Ezie, Esq.
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway 7th Floor
New York, NY 10012
Tel/Fax: 212-614-6467
Email: cezie@ccrjustice.org